

Exhibit A

# DUBOSE MILLER

ATTORNEYS AT LAW
75 14TH STREET N.E., SUITE 2110 • ATLANTA, GEORGIA 30309
TELEPHONE 404.720.8111 • FACSIMILE 404.921.9557 • WWW.DUBOSEMILLER.COM

October 24, 2022

**VIA EMAIL & OVERNIGHT MAIL**

Regnery Publishing
A Division of Salem Media Group
122 C Street, N.W., Suite 515
Washington, D.C. 20001
Customerservice@regnery.com

**Demand Letter Re:   Liability for Publishing Any False Statements About Mark Andrews
                     in *2000 Mules: They Thought We'd Never Find Out. They Were Wrong.***

Dear Sirs,

We understand that you plan to publish the book *2,000 Mules: They Thought We'd Never Find Out. They Were Wrong* by Dinesh D'Souza. We further understand that this book is based on the purported documentary *2000 Mules* and we write to inform you that the film contains multiple defamatory statements about our client, Mark Andrews. Further, the film's makers, promoters, and

distributors have appropriated his likeness for commercial gain. To the extent, the book also includes such statements or depictions, your publication of those statements or depictions will render you liable for defamation and related torts.

Mr. Andrews is the Gwinnett County, Georgia voter of whom footage appears in the film *2000 Mules*, in its trailer, as well as in promotional appearances for the film as an example of a so-called "mule" – that is, someone paid to illegally traffic large quantities of ballots to steal the 2020 election. The film contains multiple statements explicitly and impliedly claiming that Mr. Andrews (a) engaged in a nationwide criminal conspiracy, along with others, to accept payments to illegally pick up and place in ballot drop boxes fraudulent votes to engage in election fraud; (b) was in such a poor financial position that he needed to commit crimes in exchange for small sums of money, and (c) was previously engaged in violent crimes such as rioting. Each of these statements is false and portrays Mr. Andrews in a false light.

Contrary to the statements in *2000 Mules* and its promotional materials:

- Mr. Andrews *legally* deposited his absentee ballot and the ballots of his family in a ballot drop box for the 2020 general election.
- Mr. Andrews did not visit any ballot drop box on more than one occasion and did not visit multiple drop boxes.
- Mr. Andrews has never engaged in any violent riots.
- Mr. Andrews is not in such poor financial condition that he needed to commit crimes in exchange for small sums of money.

As a result of a complaint lodged by a True the Vote ("TTV") collaborator, the Georgia Bureau of Investigations ("GBI") conducted an extensive investigation into allegations that Mr. Andrews was engaged in election fraud. After a thorough investigation, the GBI cleared Mr.

Andrews and his family of any alleged wrongdoing. The GBI investigation report, presented to the public at a State Elections Board (SEB) meeting on May 17, 2022, confirmed that there were five voters registered at the Andrews residence—Mr. Andrews, his wife, and his three children—and that the state's internal ballot tracking system reflected that all five family members requested ballots by mail that were received in advance of election day.[1] The same day, the SEB dismissed the case without objection.[2]

Any assertion that Mr. Andrews engaged in fraudulent and illegal conduct is false. *2000 Mules* and its official trailer contain multiple defamatory statements against Mr. Andrews. Repeating such statements in the *2000 Mules* book would amount to defamation. *See, e.g.*, Ga. Code Ann. §§ 51-5-3, 51-5-10 (2020); *Diamond v. Am. Fam. Corp.*, 368 S.E.2d 350, 354 (Ga. Ct. App. 1988); *Smith v. Stewart*, 660 S.E.2d 822, 828 (Ga. Ct. App. 2008).

Publishing defamatory content with a disclaimer or statement claiming that it is fiction or that it is an opinion does not negate defamation liability. *See Harcrow v. Struhar*, 511 S.E.2d 545, 546 (Ga. Ct. App. 1999); *Smith v. Stewart*, 660 S.E.2d 822, 829-31 (Ga. Ct. App. 2008); *Milkovich v. Lorain J. Co*., 497 U.S. 1, 18-19 (1990).  Moreover, we note that, in many jurisdictions, a statement is defamatory *per se* where it imputes a crime or makes charges against another in reference to his trade, office, or profession.

You are now on notice that *2000 Mules* and its trailer are false and defamatory. Any republication of the defamatory content is not only defamation in itself but is substantial assistance of defamation by the producers behind and individuals quoted in the film. *See Peterson v. Aaron's, Inc.*, 108 F. Supp. 3d 1352, 1357 (N.D. Ga. 2015). For your awareness, on October 3, 2022, our firm sent Dinesh D'Souza, D'Souza Media LLC, True the Vote, Inc., Catherine Engelbrecht, Gregg Phillips, and Salem Media Group, Inc. a letter demanding that they retract, remove and correct the false and defamatory statements contained in the film, its trailer, and in related media appearances.

\* \* \*

For the reasons stated herein, repeating any false statements concerning Mr. Andrews in the *2000 Mules* book creates liability for defamation and related tort claims against you as the publisher. Mr. Andrews reserves all rights.

Sincerely,

Von A. DuBose

VAD/kb

---

[1]    Mark Niesse, *Georgia investigation dispels allegations highlighted in '2000 Mules,'* Atlanta Journal (May 17, 2022), https://www.ajc.com/politics/georgia-investigation-dispels-allegations-highlighted-in-2000-mules/DREWO27XXBF7PB4DGTBXWGQYV4/; State of Georgia, Agenda State Election Board, Office of Secretary of State (May 17, 2022), https://sos.ga.gov/sites/default/files/forms/Agenda.May_.17th.2022.pdf.

[2]    Georgia House of Representatives, State Elections Board, Vimeo (May 17, 2022), https://vimeo.com/695911723.

## LITIGATION HOLD NOTICE &
## DOCUMENT PRESERVATION REQUEST

Litigation concerning the publication of *2,000 Mules: They Thought We'd Never Find Out. They Were Wrong* may be imminent, as these actions give rise to various legal claims that Mr. Andrews may assert. Accordingly, as set forth in detail below, you must preserve all documents related to the publication of and advertising of *2,000 Mules: They Thought We'd Never Find Out. They Were Wrong*; or relating to Mr. Andrews, any statements you have published or will publish about him, and the claims you make in these statements.

You must give this litigation hold letter to all of your agents, contractors, volunteers, or anyone else who is designated, retained, employed, or otherwise utilized by you who has possession or control of potentially relevant evidence. All such persons are likewise subject to this litigation hold letter.

In general, litigants have a duty to preserve documents and evidence that they know, or reasonably should know "is relevant to 'contemplated or pending litigation.'" *Phillips v. Harmon*, 774 S.E.2d 596, 603 (Ga. 2015) (citation omitted). This duty "is triggered not only when litigation is pending but when it is reasonably foreseeable to that party." *Id.* at 604. This includes evidence that is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

Please preserve and ensure that you and your agents and/or representatives preserve all such documents and evidence in their possession, custody, and/or control. This includes, but is not limited to the following:

1. All documents and evidence, whether paper or electronic, including, but not limited to, written records, photographs, video, audio, recordings, spreadsheets, calendars, contact lists and/or contact files, logs, data files, dictations, databases, images, texts, timelines, archive files, browsing histories and tangible evidence.

2. All communications and correspondence, whether paper or electronic, including but not limited to written correspondence, voice mails, e-mails, calendar invites, text messages, instant messages, third-party messaging systems/applications messages and data, chats/chat strings, video files, audio files, and social media posts and messages, whether designated as public or private. This includes but is not limited to any communications and/or correspondence on third-party messaging systems/applications such as WhatsApp, Snapchat, Telegram, and Signal.

3. All Social Media information, including but not limited to account information, posts, communications, photographs, images, videos, audio, invites, likes, tweets, comments, and messages. Social Media includes, but is not limited to, Facebook, Twitter, Instagram, Rumble, YouTube, TikTok, Reddit, Tumblr, Snapchat, Meetup, Parler, MeWe, Gab, and/or LinkedIn.

3

The above list is not exhaustive and is not intended to act as a substitute for careful review by you and your agents of all documents, files, and evidence to identify and preserve those documents and evidence that may relate to our client's claims against you and your agents.

Please keep in mind that the term "documents" is interpreted broadly to include paper, electronic, audio, and video recordings, computer-based records (i.e., databases), e-records/digital records, and any other recorded forms of information that may be related to your and your agents' actions described above. It is imperative that any documents that relate to the above allegations be (1) identified, (2) separated from other files, and (3) preserved and protected from destruction or alteration. All documents that may relate to the allegations should be maintained and preserved regardless of their date. This may include documents that were created prior to the alleged events in question, as well as after. All documents that are preserved must be maintained in their original state, without destruction or alteration, until our Office has notified you in writing that any dispute arising from the allegations has been fully resolved. This includes maintaining all in its original form all metadata.

A failure to preserve these materials could prove detrimental to the legal interests of our client. Precedent empowers trial courts to impose significant sanctions against parties who fail to preserve evidence. The body of case law includes the imposition of potentially significant sanctions for the willful destruction of evidence as well as non-willful and non-bad faith failure to preserve evidence. *See, e.g.*, *Cooper Tire & Rubber Co. v. Koch*, 812 S.E.2d 256, 263 (Ga. 2018); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

Our client reserves his rights to seek redress of his grievances and to be made whole in a court of law.

Please take steps immediately to preserve any and all documents and evidence that may be related to your and your agents' allegations about our client. If you should have any questions or need further information, please do not hesitate to contact us.