## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MARK ANDREWS,

        Plaintiff,

v.

DINESH D'SOUZA, TRUE THE VOTE,
INC., CATHERINE ENGLEBRECHT,
GREGG PHILLIPS, D'SOUZA MEDIA
LLC, SALEM MEDIA GROUP, INC.,
REGNERY PUBLISHING, INC., and
JOHN DOES,

        Defendants.

Case No. 1:22-CV-04259-SDG

## AMENDED BRIEF IN SUPPORT OF DEFENDANTS SALEM MEDIA GROUP, INC.'S AND REGNERY PUBLISHING, INC.'S MOTION TO DISMISS

S. DEREK BAUER
Georgia Bar No. 042537
IAN K. BYRNSIDE
Georgia Bar No. 167521
KRISTEN RASMUSSEN
Georgia Bar No. 135018
JACQUELINE T. MENK
Georgia Bar No. 728365
GEORGIA L. BENNETT
Georgia Bar No. 495910

BAKER & HOSTETLER LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676

*Attorneys for Defendants Salem Media Group, Inc. and Regnery Publishing, Inc.*

Defendants Salem Media Group, Inc. ("Salem") and Regnery Publishing, Inc. ("Regnery") hereby file this Brief in Support of their Motion to Dismiss Plaintiff's Complaint and respectfully submit that the First Amended Complaint (Doc. 27) (the "FAC") filed by Plaintiff Mark Andrews ("Plaintiff") should be dismissed for failure to state a claim upon which relief can be granted.[1]

## I.   **INTRODUCTION**

This case arises out of certain statements and images published in a film and a book, both of which are entitled *2000 Mules*, and both of which examine issues related to the integrity of elections in the United States, including the 2020 presidential election.   The film and book contain images of several individuals depositing ballots in public drop boxes who, based on surveillance video, geotracking, and other facts and data disclosed in the film and the book, are generally described by certain speakers in the film and the author of the book as ballot "mules."

None of the individuals is named, identified, or readily recognizable in the film or the book.   Indeed, Plaintiff's own allegations show that Defendants Salem and Regnery took steps to de-identify all individuals included in the film and the book and to avoid depicting them in any identifiable way, including by blurring their

---

[1] As noted in the Motion, Plaintiff incorrectly named "Regnery Publishing, Inc." as a defendant in his FAC.  All arguments set forth herein on behalf of Regnery apply equally to Salem Communications Holding Corporation d/b/a Regnery Publishing.

images when they appeared in the film or the book.  Nevertheless, Plaintiff contends that he is one of the individuals shown in the blurred images included in the film and the book, that his unblurred image and license plate were shown by *other* Defendants and third parties on *other*, non-Salem platforms which allowed him to be identified, and that all of the "Defendants" falsely accused him of illegally depositing ballots into drop boxes and engaging in criminal conduct.

The FAC is rooted in defamation and other derivative claims asserting reputational injury, but also asserts claims for conspiracy in violation of § 1985(3) of the Civil Rights Act and violation of § 11(b) of the Voting Rights Act.

Plaintiff's claims against Salem and Regnery for defamation, invasion of privacy by false light, and invasion of privacy by appropriation of likeness fail as a matter of law for one simple reason:  the FAC shows that neither Salem nor Regnery ever identified Plaintiff by name, showed his unblurred face or license plate, or otherwise published any characteristics from which he could be readily identified in the film or the book.  Thus, neither Salem nor Regnery made any statement "of and concerning" Plaintiff, depicted him in a false light, or appropriated his likeness.[2]

Plaintiff's claim under the Civil Rights Act fails as a matter of law because the FAC fails to allege virtually every element of the claim, including a qualifying

---

[2] As explained below, these claims also fail for other, independent reasons.

class, a discriminatory motive, an agreement between the defendants to deprive Plaintiff of his civil rights, and force, intimidation, or threat by Salem or Regnery. Moreover, because Plaintiff admits that he voted in every election, he necessarily was not deprived of his civil rights.

Similarly, Plaintiff's Voting Rights Act claims fails as a matter of law because the provision Plaintiff relies upon establishes no private cause of action, Plaintiff would lack standing to bring an action even if it did, and the FAC does not plausibly allege either of the offense's required elements.

Because all of Plaintiff's underlying tort claims against Salem and Regnery fail, his claims for civil conspiracy and punitive damages also fail as a matter of law. Accordingly, and as discussed further below, all of the claims asserted against Salem and Regnery in the FAC should be dismissed with prejudice.

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following relevant facts in support of his FAC:[3]

Defendant Dinesh D'Souza is a writer, filmmaker, podcaster, and media personality. (Doc. 27 at ¶ 18.)  Mr. D'Souza directed, produced, and narrated a

---

[3] Salem and Regnery recognize that on a motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). While Salem and Regnery therefore recite certain allegations of the FAC herein, they do not admit that any of those allegations are true.

documentary film regarding election integrity called *2000 Mules* and later authored a book by the same title. (*Id.*)   Defendant True the Vote, Inc. ("TTV") is an organization that works to ensure election integrity, and it provided much of the research that is included in the film and the book.  (*Id.* at ¶¶ 19-20.)  Defendants Catherine Engelbrecht and Gregg Phillips are associated with TTV, were executive producers and producers of the film, are quoted in the book, and made media appearances promoting the film and book.  (*Id.* at ¶¶ 20-22.)  Salem is a multi-media company, generating most of its revenue from owned and operated radio stations. (*Id.* at ¶ 25.)  Although Plaintiff alleges Salem is "responsible for" the film *2000 Mules*, he does not identify what role Salem had in the film or how Salem is "responsible" for the film, other than suggesting that Salem may have "provided the equity investment" for the film.  (*Id.* at ¶¶ 25, 76.)  Regnery is a publishing company that operates as a subsidiary of Salem and that published the book *2000 Mules*. (*Id.* at ¶ 26.)

The film and the book contain blurred images and video from surveillance footage of multiple individuals, including Plaintiff, depositing ballots at unidentified public drop boxes, as well as statements that the individuals are "mules" engaged in voter fraud or criminal activity.  (*Id.* at ¶¶ 6-7, 9, 36-37, 74.)  Plaintiff's face is obscured in all the images of him that are included in the film and the book, and he

is not identified by name or other personal information in either work.  (*Id*. at ¶¶ 38-39, 74, 150.)  Certain unblurred images and video of Plaintiff depositing ballots in a drop box were allegedly broadcast or published by Defendants other than Salem and Regnery and/or by other third parties during media appearances and on social media. (*Id*. at ¶¶ 50-52, 63, 90, 126, 147, 157, 244.)  Those unblurred images and video show Plaintiff's face and other identifying information, including his license plate and a location and timestamp, none of which was included in the book or film.  (*Id*.)

Plaintiff alleges that the images of him in the film and book show him legally dropping off ballots for himself and his family and that Defendants defamed and injured him by falsely accusing him of committing voter fraud.  (*Id.* at ¶¶ 2-3.)  The FAC asserts claims for conspiracy in violation of Section 1985(3) of the Civil Rights Act, violation of Section 11(b) of the Voting Rights Act, defamation, invasion of privacy by false light, invasion of privacy by appropriation of likeness, civil conspiracy, and punitive damages.  (*Id.* at ¶¶ 258-322.)  The FAC is the epitome of a "shotgun pleading" in which all counts are asserted against "all Defendants," with each count incorporating all previous paragraphs of the FAC. (*Id*.)

The FAC, while lengthy, is notable for what it does not allege.  Plaintiff does **<u>not</u>** allege that Salem or Regnery included his unredacted image or any other identifying characteristics in the film or book; to the contrary, he alleges the

-5-

opposite.  (*See generally* Doc. 27.)  Plaintiff does **not** allege that Salem or Regnery had any editorial control over the film or book or authored any specific defamatory statements.  (*Id.*)  And Plaintiff does **not** allege that Salem or Regnery even knew who Plaintiff was.  (*Id.*)  In fact, although the FAC spans 126 pages and 322 paragraphs, Salem is mentioned in only 12 paragraphs, over half of which simply describe who Salem is, its relationship with Regnery, its contacts with Georgia, its reports about viewership and revenue figures, and the fact that Plaintiff sent a retraction demand to Salem.  (*Id.* at ¶¶ 3, 25-26, 49, 70, 73, 76, 154, 158, 173, 227, 256.)  Similarly, Regnery is mentioned in only 10 paragraphs of the FAC, over half of which describe who Regnery is, its relationship to Salem, its contacts with Georgia, and the alleged retraction demand sent to Regnery.  (*Id.* at ¶¶ 3, 26, 70, 72-73, 76, 164, 227, 250, 257.)  None of those allegations states a claim for relief against either Salem or Regnery, and each of Plaintiff's claims in the FAC should be dismissed with prejudice as to Salem and Regnery.

### III.     ARGUMENT AND CITATION OF AUTHORITIES

#### A.     Legal Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) should be granted unless the complaint contains "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "[f]actual

allegations must be enough to raise a right to relief above the speculative level," and "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). While the Court must accept the factual allegations of the complaint as true, it "is not required to accept a plaintiff's legal conclusions." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Moreover, under Georgia law, "a claim sounding in libel is a traditionally disfavored cause of action and the courts tend to construe the complaint by a somewhat stricter standard." *Escort v. Verizon Commc'ns, Inc.*, No. 1:05-CV-1438-BBM, 2005 WL 8155369, at *3 (N.D. Ga. Sept. 27, 2005) (Martin, J.) (citation omitted). When faced with a shotgun pleading, the Court is not required "to sift through the facts presented and decide for itself which [are] material to the particular cause of action asserted." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed. Appx. 368, 372 (11th Cir. 2005)

## B.    The FAC Is an Impermissible Shotgun Pleading

As explained in Salem's and Regnery's contemporaneously-filed Motion for More Definite Statement, the FAC is an impermissible shotgun pleading that improperly lumps all "Defendants" together, fails to identify which statements are

defamatory and which statements were allegedly published by which Defendant, and incorporates all previous counts and allegations into each subsequent count.  For the reasons explained below, no amount of repleading can cure the deficiencies in Plaintiff's claims against Salem and Regnery, all of which fail as a matter of law and should be dismissed with prejudice.  To the extent any of Plaintiff's claims against Salem or Regnery survive this Motion, the FAC should be dismissed as an improper shotgun pleading, and Plaintiff should be required to replead his claims.

**C.     The FAC Fails to State a Civil Rights Conspiracy Claim (Count I)**

The FAC fails to establish practically every element required for a viable claim under 42 U.S.C. § 1985(3).

1.     Plaintiff Does Not Allege Invidiously Discriminatory Animus

Section 1985(3) does not "apply to all tortious, conspiratorial interferences with the rights of others," but only those where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  This "animus standard requires that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (citation omitted).  That, in turn, requires "two

-8-

distinct inquiries: (1) whether there is a 'qualifying class' and (2) whether the defendant was motivated by discriminatory animus against the class." *Id*. at 1258.

The FAC satisfies neither inquiry.  *First*, it identifies no class at all.  To the extent it could be read to contemplate a class consisting of potential voters, drop-box voters, or the like, that would not suffice: a class must be "more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993); *see also Dean*, 12 F.4th at 1258 ("[A] § 1985(3) plaintiff cannot simply defin[e] the aggrieved class as those seeking to engage in the activity the defendant has interfered with.") (quotation marks omitted).  *Second*, the FAC does not allege that Salem or Regnery was "'motivated by a purpose (malevolent or benign) directed specifically at [the qualifying class]' by reason of the essential characteristic of that class." *Dean*, 12 F. 4th at 1258-59 (citation omitted).  For these reasons alone, Plaintiff's Section 1985(3) claim must be dismissed.

### 2. Plaintiff Does Not Allege an Agreement to Deprive Him of His Civil Rights

To state a claim under Section 1985(3), a plaintiff must allege sufficient facts to show "an agreement between 'two or more persons *to deprive him of his civil rights*." *Dickerson v. Alachua Cty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (emphasis added).  It is not enough that a conspiracy "has an effect upon a protected

-9-

right;" instead, "its impairment must be a conscious objective of the enterprise." *Bray*, 506 U.S. at 275.  The FAC contains no such allegation.  It alleges only that the "Defendants" agreed to produce and promote a film and a book.  (*See* Doc. 27 at ¶ 264.)   And the FAC's only *factual* allegations that identify Salem or Regnery concern their participation in publishing activities alone.  (*Id*. at ¶¶ 25–26, 49, 70, 72–73, 76, 154, 164, 173, 227.)   Indeed, the FAC's only allegations that the "Defendants" agreed to engage in voter intimidation do not even apply to Plaintiff's Section 1985 claim, *see id.* at ¶¶ 316, 318, lack supporting factual allegations, and are "conclusory and not entitled to be assumed true."  *Ashcroft*, 556 U.S. at 681. What remains with respect to Salem and Regnery – *i.e.*, allegations that media companies participated in publishing media products – does not "plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful…behavior."  *Id*. at 680.

### 3.   Plaintiff Does Not Allege Any Force, Intimidation, or Threat

The FAC also fails to allege that any of the Defendants employed any "force, intimidation, or threat" to prevent the exercise of Plaintiff's voting rights.  42 U.S.C. § 1985(3).  All the alleged "threats" – which consist of hyperbolic quips on social media and calls for election integrity – are by third parties who are not alleged to have conspired with Salem or Regnery.  (Doc. 27 at ¶¶ 209-211.)  Because "there

-10-

are no allegations whatsoever of any direct participation" by Salem or Regnery in any force, intimidation, or threat, Plaintiff's Section 1985(3) claim necessarily fails. *Croy v. Skinner*, 410 F. Supp. 117, 125 (N.D. Ga. 1976).

### 4.   Plaintiff Was Not Deprived of Any Rights

Plaintiff's Section 1985(3) claim also fails because Plaintiff freely concedes that he has not been prevented from exercising his voting rights.  According to Plaintiff's own allegations, he voted in 2020, in the 2022 primaries, and in the 2022 general election.  (Doc. 27 at ¶¶ 81, 234, 239.) And he even helped his family members vote in *all* these elections.  (*Id*. at ¶¶ 82, 234, 236, 239.)  Plaintiff alleges only that he "is nervous about voting," *id*. ¶ 231, not that Salem or Regnery "prevent[ed]" him from voting, 42 U.S.C. § 1985(3).  But "an attempted deprivation of constitutional or statutory rights" – which is far beyond anything plausibly alleged here – "is not the same as an actual deprivation," which is what the statute demands. *Cook v. Randolph County, Ga*., 573 F.3d 1143, 1157 (11th Cir. 2009); *see also Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991) (affirming summary judgment on Section 1985(3) claim because plaintiffs "failed to produce a single person who claims to have been prevented from voting").

-11-

**D.     The FAC Fails to State a Claim Under Section 11(b) of the Voting
        Rights Act (Count II)**

Plaintiff's claim under Section 11(b) of the Voting Rights Act (the "VRA"),

is as poor a fit for his grievance as his Civil Rights Act claim, if not more so.

1.     <u>VRA Section 11(b) Does Not Create a Private Cause of Action</u>

Section 11(b) of the VRA authorizes enforcement only by the Attorney

General, not through a private cause of action. On its face, it does not expressly

authorize private enforcement. *See* 52 U.S.C. § 10307(b). Nor may a private right

of action be implied. "[P]rivate rights of action to enforce federal law must be

created by Congress," so "[t]he judicial task is to interpret the statute…to determine

whether it displays an intent to create not just a private right but also a private

remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *see also In re Wild*, 994

F.3d 1244, 1255 (11th Cir. 2021) (same and deeming *Sandoval* "our lodestar").

VRA § 11(b) does neither. Its "[n]o person…shall" language "is directed to the

regulated party, not the party to be protected" and, thus, "does not, under the

Supreme Court's precedents, confer any new right on voters." *Schilling v.

Washburne*, 592 F. Supp. 3d 492, 498 (W.D. Va. 2022) (addressing VRA § 11(b)).

"Statutes that focus on the person regulated rather than the individuals

protected create no implication of an intent to confer rights on a particular class of

persons." *Sandoval*, 532 U.S. at 289. "Nor do the methods that [it] goes on to

-12-

provide for enforcing its authorized regulations manifest an intent to create a private remedy; if anything, they suggest the opposite." *Id*. Specifically, "the statute expressly delegates enforcement authority to the Attorney General, *see* 52 U.S.C. § 10308(d)." *Schilling*, 592 F. Supp. 3d at 498. That is "the mechanism that Congress chose to provide for enforcing [this] provision[]," *Gonzaga U. v. Doe*, 536 U.S. 273, 289 (2002), to the exclusion of a private remedy. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1353 (11th Cir. 2002) ("If th[e] statutory structure provides a discernible enforcement mechanism, *Sandoval* teaches that we ought not imply a private right of action."). That was the conclusion in *Schilling*, and its straightforward application of *Sandoval* to VRA § 11(b) applies equally here.

In sum, controlling precedent "demand[s] clear evidence of congressional intent as a prerequisite to a private right of action," *Wild*, 994 F.3d at 1255, and the text and structure of VRA § 11(b) foreclose any claim that Congress intended to provide a private right of action.

### 2.   Plaintiff Lacks Standing to Pursue a Voter-Intimidation Claim

Even if VRA § 11(b) authorized a private right of action, Plaintiff lacks standing to pursue it. Standing requires that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  In addition, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly...trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court."  *Id*. (quotation marks omitted).

Plaintiff's VRA claim fails on both counts.  *First*, he has no concrete injury, having voted in 2020, continued voting in every election thereafter, and aiding family members in voting throughout.  (Doc. 27 at ¶¶ 81, 82, 239, 234, 236, 239.) "[T]his means...he was not personally injured by the [alleged] intimidation" and therefore lacks standing.  *Moore v. Cecil*, No. 19-cv-1855, 2021 WL 1208870, at *11 (N.D. Ala. Mar. 31, 2021) (Maze, J.).  Ultimately, the gravamen of Plaintiff's claim is not that he was injured, but that others might be and that he is "scared" and "upset."  (*See* Doc. 27 at ¶¶ 218-224, 240, 241, 262 (speculating about intimidation of other "reasonable voters").)  In that respect, Plaintiff "cannot explain how his interest...is different from that of any other person," and the injury he asserts is therefore "precisely the kind of undifferentiated, generalized grievance that the Supreme Court has warned must not be countenanced." *Wood v. Raffensperger*, 981 F.3d 1307, 1314–15 (11th Cir. 2020).  *Second*, as described above, the FAC alleges that any "threats" and "intimidation" were the independent actions of third parties,

-14-

not Salem or Regnery.  (*See, e.g.*, Doc. 27 at ¶¶ 198-211.)  Thus, there is no causal connection between Plaintiff's alleged injury and any action by Salem or Regnery.

3.    Plaintiff Fails to Plausibly Allege Either Element of His Claim

The FAC fails to plausibly allege either required element of a VRA § 11(b) claim.  "[I]n order to succeed on such a claim, a plaintiff must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985); *see also United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967) (recognizing same elements).  As described above, the FAC does not plausibly allege any act or attempt to intimidate Plaintiff by Salem or Regnery.  Nor does it allege that either "has any intent to prevent [Plaintiff's] vote." *Parson*, 157 F. Supp. 3d at 498.  Instead, the FAC's factual allegations convey only that these media companies participated in producing media products.  Those allegations do not make plausible any claim – and the FAC does not even allege it in conclusory fashion – that Salem or Regnery did so to intimidate Plaintiff from exercising his voting rights.

**E.    The FAC Fails to State a Claim Against Salem or Regnery for Defamation (Count III)**

Plaintiff's claim for defamation and defamation per se against Salem and Regnery fails as a matter of law for at least two reasons.

-15-

      1.      <u>Plaintiff's Allegations Show that Salem and Regnery Made No Statement "Of and Concerning" Plaintiff</u>

To establish the first element of a defamation claim under Georgia law – *i.e.,* a false and defamatory statement "of and concerning" the plaintiff – "the allegedly defamatory words or picture must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Collins v. Creating Loafing Savannah, Inc.*, 264 Ga. App. 675, 678 (2003) (quoting *Armscorp of Am. v. Daugherty*, 191 Ga. App. 19, 19 (1989)); *see also Mathis v. Cannon*, 276 Ga. 16, 20-21 (2002) (identifying elements of defamation). The plaintiff bears the burden of proof on this issue. *Smith v. Stewart*, 291 Ga. App. 86, 92 (2008). "Stated differently, the plaintiff has the burden of showing, inter alia, that the publication was about the plaintiff, that is, whether it was of and concerning [the plaintiff] as a matter of identity." *800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*, No. 3:06-CV-038 (CDL), 2008 WL 2777140, at *5 (M.D. Ga. July 14, 2008) (Land, J.) (quoting *Smith*, 291 Ga. App. at 92). "If the words or picture used really contain[] no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before." *Collins*, 264 Ga. App. at 678.

The only statements and images that could possibly be attributed to Salem or Regnery are those contained in the film and the book.[4]  Plaintiff does not (and cannot) allege that he is identified by name, that his face is shown, that the license plate of his vehicle is shown, or that he is otherwise identifiable in either the film or

---

[4] The FAC does not identify any statements outside of the film or book that were allegedly made by Salem or Regnery.  Moreover, the FAC identifies only one specific statement in the film and one statement in the book that Plaintiff contends are defamatory. (*See* Doc. 27 at ¶ 7, 74, 163.)  Although Plaintiff claims Defendants Engelbrecht and Phillips showed an unblurred image of him on *The Charlie Kirk Show* and vaguely alleges that Salem "produces" that show, it is not clear whether Plaintiff contends any of the statements made on that show are actionable in this case and, if so, who is responsible for them. (Doc. 27 at ¶ 49.)  To the extent Plaintiff intended to assert a claim against Salem based on any statements made by Defendants Engelbrecht and Phillips on *The Charlie Kirk Show*, that claim would fail as a matter of law because: (1) the FAC does not allege Plaintiff was, in fact, identifiable as a result of any such statements; (2) the FAC does not allege that Salem published any such statements (to the contrary, it alleges the episode was "published" on Rumble); (3) the FAC does not allege any actionable statements that are attributed to Salem; and (4) even if it did, any such statements are conditionally privileged and Plaintiff has not alleged, and cannot show, that they were published by Salem with actual malice. (*See infra* at § III.I.) Moreover, to the extent Plaintiff's defamation claim is based on any other allegedly defamatory statements, it necessarily fails as to Salem and Regnery because he has not identified any such statements made by Salem or Regnery.  *See, e.g.*, *Sarver v. Jackson*, 344 Fed. Appx. 526, 529 (11th Cir. 2009) (holding district court "correctly found [plaintiff] failed to state a claim [for slander, libel, or defamation], as her complaint failed to identify any specific written or verbal statements attributed to the defendants"); *Khadija v. Fannie Mae*, No. 1:12-CV-02519-WSD, 2012 WL 6681736, at *10 (N.D. Ga. Nov. 30, 2012) *report and recommendation adopted by* 2012 WL 6677990 (N.D. Ga. Dec. 21, 2012) (dismissing claim for libel and defamation where plaintiffs generally alleged defendants "reported false and inaccurate information" but failed to allege "the specific statements Defendants made or when they made them").

-17-

the book.  To the contrary, Plaintiff affirmatively alleges that ***every time*** his image was shown in the film or the book, ***his face was completely blurred***.  (*See* Doc. 27 at ¶¶ 38-39, 45, 74.)  Thus, any statements in the film or book were made solely in reference to an unidentified, anonymous, and obscured person.  The ***only*** instances in which Plaintiff alleges his face and license plate were shown without being blurred were by defendants other than Salem or Regnery in separate news appearances or on other platforms.  (*See id.* at ¶¶ 49-52, 56, 63, 85, 90, 126, 147, 156 n.151, 157, 244.)

In short, there is nothing in the film or the book from which any viewer could identify Plaintiff.  *See Escort*, 2005 WL 8155369, at *3 (referencing "the average reader" and "reasonable juror" as the test for whether statements concerned plaintiffs); *see also Southland Pub. Co. v. Sewell*, 111 Ga. App. 803, 807 (1965) (requiring alleged libel to be construed by "the average and reasonable reader").  Plaintiff does not even allege that anyone recognized him from the blurred images in the film or the book.  Accordingly, none of the statements in the film or the book "refer to some ascertained or ascertainable person," much less Plaintiff, and none of those statements were "of and concerning" Plaintiff as a matter of law.  *See, e.g.*, *Collins*, 264 Ga. App. at 678-679 (cartoon illustration loosely based on plaintiff's likeness was not "of and concerning" plaintiff and could not support a claim for defamation where article accompanying cartoon did not identify plaintiff, cartoon

-18-

was "not recognizable" as plaintiff absent additional evidence, and there was no evidence that anyone recognized cartoon as plaintiff by viewing it); *Fiske v. Stockton*, 171 Ga. App. 601, 602 (1984) (allegedly defamatory statements that did not name or identify plaintiffs and that, on their face, "really contain[ed] no reflection on any particular individual," were not actionable, despite the fact witnesses testified they knew the publication was about plaintiffs).

Like the illustration in *Collins*, the blurred image of Plaintiff in the film and book is not recognizable as Plaintiff without additional evidence.  *Collins*, 264 Ga. App. at 678-679; *see also Eakin v. Rosen*, No. 7:15-CV-224 (HL), 2017 WL 5709564, at *3 (M.D. Ga. Nov. 27, 2017) (recognizing "the defamed person must be able to be identified through the words contained in the defamatory statement," not through "extrinsic" evidence, and holding allegedly defamatory article was not "of and concerning" plaintiff where it contained only a "limited description" of her). And, like the statements in *Fiske*, none of the statements in the film or book names or otherwise identifies Plaintiff.  *Fiske*, 171 Ga. App. at 602; *see also Escort*, 2005 WL 8155369, at *6 (dismissing libel claims where plaintiffs did not, and could not, plead allegedly libelous directories "refer[] to them by name or that their names are immediately ascertainable to the average reader perusing these directories").

-19-

Where, as here, a speaker is "meticulous enough to preserve the anonymity of an individual about whom damaging information is given, the speaker should not be exposed to liability for defamation because someone else ferrets out the identity of the individual and couples it with the speaker's statement in a later publication. In that scenario, the *speaker's* words cannot be characterized as having been 'of and concerning' the plaintiffs." *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990); *see also Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1260 (S.D. Fla. 2021) (dismissing claim for defamation per se where allegedly defamatory tweets used generic terms that did not identify "Plaintiff, his business, or any other descriptive information that made Plaintiff's identity readily ascertainable," and recognizing "the law will not subject Defendant to liability where it was meticulous enough to preserve Plaintiff's anonymity").

According to Plaintiff's own allegations, Salem and Regnery purposefully *avoided* identifying Plaintiff or anyone else in the film or the book by blurring their images.  (*See* Doc. 27 at ¶¶ 38-39, 45, 74.)  Because Salem and Regnery were meticulous enough to preserve Plaintiff's anonymity, none of the statements or images in the film or book are "of and concerning" Plaintiff, and his defamation claim against Salem and Regnery fails as a matter of law.

-20-

2.    Plaintiff's Claim for Defamation Per Quod Should Be Dismissed
Because Plaintiff Failed to Plead Special Damages.

Under Georgia law, a "written defamatory statement may be actionable either as libel per se or libel per quod." *Eakin*, 2017 WL 5709564, at *3; *see Pospicil v. Buying Off., Inc.*, 71 F. Supp. 2d 1346, 1362 (N.D. Ga. 1999) (same for slander). The FAC appears to assert both.  (*See* Doc. 27 at p. 117 (labeling Count III as "Defamation/Defamation Per Se").)  Even if Plaintiff could show that any of the statements in the film or book are "of and concerning" him, the FAC fails to state a claim for defamation per quod because Plaintiff did not plead special damages.

"An essential element of an action for libel per quod is that the plaintiff be able to show special damages." *Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685, 689 (1998).  Those special damages "must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." *Id.* (citation omitted).  Moreover, a "heightened pleading standards applies to special damages, which must be specifically stated." *Eakin*, 2017 WL 5709564, at *5.

Plaintiff does not specifically allege any financial or economic damage he has suffered as a result of any allegedly defamatory statements in the film or the book. Accordingly, Plaintiff's claim for defamation per quod fails as a matter of law and should be dismissed.  *See Zarach*, 231 Ga. App. at 689.

-21-

**F.      The FAC Fails to State a Claim Against Salem or Regnery for Invasion of Privacy by False Light (Count IV)**

Under Georgia law, a false light claim cannot "survive as a separate cause of action" from defamation unless it "allege[s] a nondefamatory statement.  If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy."  *Smith*, 291 Ga. App. at 100 (*citing Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 556-557 n.1 (2005)).

Plaintiff's false light claim is based on the same allegedly defamatory statements as his defamation claim.  (*See* Doc. 27 at ¶¶ 295–306 (incorporating defamation claim into false light claim and citing the same statements and conduct as the basis of both his defamation and false light claims).)  Plaintiff's false light claim is thus subsumed by his defamation claim and fails as a matter of law.  *See Bollea*, 271 Ga. App. at 556-557 n.1 (recognizing false light claims was "subsumed in [] defamation claim" where plaintiff alleged statements made by defendant were defamatory); *Smith*, 291 Ga. App. at 100 (directing trial court to grant defendant's motion for summary judgment on false light claim because it "is encompassed by [plaintiff's] defamation claim, which is based upon the same allegations").

Plaintiff's false light claim also fails because Plaintiff cannot establish an essential element of his claim – *i.e.*, that Salem or Regnery disseminated false information to the public that "depicts [Plaintiff] as something or someone which

[he] is not." *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 633 (2001).  As explained above, Plaintiff was never named or identified in the film or book, and all possible identifying aspects of Plaintiff in the film and the book were redacted.  Thus, neither Salem nor Regnery could have "depict[ed]" Plaintiff in any way, much less in a false light.  *See, e.g. Collins,* 264 Ga. App. at 679 (holding false light claim failed because plaintiff was not readily identifiable in publication on which her claim was based); *Merz v. Prof. Health Control of Augusta, Inc.*, 175 Ga. App. 110, 111 (1985) (same).

### G.  The FAC Fails to State a Claim Against Salem or Regnery for Invasion of Privacy by Appropriation of Likeness (Count V)

The tort of appropriation of likeness "consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness." *Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 143 (1982) (citation omitted).  To prevail on an appropriation of likeness claim, a plaintiff must show, among other things, that: (1) the defendant intended to appropriate the plaintiff's likeness for the defendant's commercial benefit; and (2) the plaintiff's likeness was, readily recognizable in the publication upon which the plaintiff bases his claim.  *See Tana v. Dantanna's*, 611 F.3d 767, 782 (11th Cir. 2010) (applying Georgia law and holding "an appropriation of likeness without an intent to use the likeness for one's benefit fails to meet the very definition of the tort

itself"); *Collins*, 264 Ga. App. at 679 (holding appropriation of likeness claim failed where plaintiff was not readily identifiable in publication forming basis of claim).

Plaintiff's appropriation of likeness claim fails as a matter of law because the FAC shows that neither Salem nor Regnery ever used, much less intended to use, Plaintiff's likeness.  Again, Plaintiff does not allege that he was named or otherwise identified in the film or the book, and he admits that his image was blurred in both the film and book.  (*See* Doc. 27 at ¶¶ 38-39, 45, 74.)  Thus, Plaintiff's likeness was not readily recognizable in the film or book or otherwise shown or used by Salem or Regnery.  *See Collins*, 264 Ga. App. at 679; *see also Branson v. Fawcett Publications*, 124 F. Supp. 429, 431-433 (E.D. Ill. 1954) (holding claim for invasion of privacy by appropriation of likeness failed where picture at issue was "blurred" because, standing alone, the picture did not "identify the plaintiff" or any particular person).

Moreover, the very fact that Salem and Regnery blurred the images of Plaintiff in the book and film definitively shows that Salem and Regnery did ***not*** intend to appropriate his likeness for their own commercial benefit or otherwise.  Indeed, because obvious efforts were made by Salem and Regnery to ***avoid*** identifying Plaintiff, there could be no intentional appropriation of his likeness.

-24-

**H.     Plaintiff's Invasion of Privacy Claims (Counts IV and V) Fail Because the Statements at Issue Involve a Matter of Public Interest**

The Eleventh Circuit has recognized that the "right to privacy and corresponding right of publicity are necessarily in tension with the First Amendment's protection of freedom of speech and of the press." *Toffoloni v. LFP Publ'g Grp., LLC*, 572 F.3d 1201, 1207 (11th Cir. 2009). To accommodate these "competing constitutionally protected rights," Georgia courts "have adopted a 'newsworthiness' exception" to the right of privacy. *Id.* at 1208. Specifically, the Georgia Supreme Court has held that "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." *Id.* (quoting *Waters v. Fleetwood*, 212 Ga. 161, 166 (1956)).

The subject matter of the film and the book – *i.e.*, election integrity generally and the integrity of the 2020 election specifically – is unquestionably a matter of public interest and concern. Indeed, it has been the subject of countless national and local news reports, dozens of lawsuits across the country, and legislative changes and a special grand jury investigation in Georgia over the last two years. The blurred image of Plaintiff dropping off ballots at a public drop box was used in the film and the book in connection with reporting to the public on that matter of public interest and concern. The film and book – and the blurred image of Plaintiff contained

-25-

therein – are therefore newsworthy and cannot violate Plaintiff's right to privacy as a matter of law.  *See Waters*, 212 Ga. at 167 (affirming dismissal of claim for invasion of privacy by mother of a 14-year-old murder victim against newspaper that published and sold gruesome photographs of her daughter's decomposing body for pecuniary gain because the publication and reproduction of the photographs was related to a matter of public interest – *i.e.*, the murder of her daughter and related investigation).  Accordingly, Plaintiff's claims for invasion of privacy by false light and appropriation of likeness fail to state a claim and should be dismissed.

I. **Plaintiff's Claims for Defamation, False Light, and Appropriation of Likeness (Counts III to V) Also Fail Because the Statements at Issue Are Privileged and Plaintiff Has Not Alleged Actual Malice**

Georgia law deems certain categories of speech conditionally privileged, including:

> [s]tatements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of O.C.G.A. § 9-11-11.1.

O.C.G.A. § 51-5-7(4).[5]  If a statement is privileged, it cannot form the basis of a claim for defamation, false light, or invasion of privacy, unless the plaintiff proves

---

[5] O.C.G.A. § 9-11-11.1(c) broadly defines an act in furtherance of the right of free speech to include "[a]ny written or oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest or concern"

the statement was published with "actual malice." *Wertz v. Allen*, 313 Ga. App. 202, 207 (2011); *see Rabun v. McCoy*, 273 Ga. App. 311, 311 (2005) *overruled on other grounds by West v. City of Albany*, 300 Ga. 743 (2017) (same and recognizing the privileges in O.C.G.A. § 51-5-7 apply to claims for slander, libel, false light, and "any other tort based on communications").

As explained above, the statements and images in the film and book were published by Salem and Regnery in furtherance of their right of free speech on issues of significant public interest and concern – *i.e.*, election integrity and the integrity of the 2020 election. Accordingly, all of those statements are privileged, and none of them is actionable as a tort, unless Salem or Regnery acted with "actual malice."

To establish actual malice to defeat the privilege, Plaintiff must show that Salem and Regnery published the statements in the film and book with knowledge that they were false or with reckless disregard for whether they were false. *Rabun*, 273 Ga. App. at 316; *see also Hammer v. Slater*, 20 F.3d 1137, 1142 (11th Cir. 1994) (recognizing "[c]ountless" Georgia cases involving both private and public figure plaintiffs have interpreted actual malice for conditionally privileged statements using the actual malice standard set forth in *New York Times Co. v. Sullivan*, 376

---

and "[a]ny other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public concern."

U.S. 254 (1964)).  "Unsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice."  *Neff v. McGee*, 346 Ga. App. 522, 59 (2018).  Instead, the plaintiff must show "in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements."  *Id.*

The FAC contains ***no*** factual allegations suggesting Salem or Regnery knew that any of the statements in the film or book were false or acted with reckless disregard for their truth.  Indeed, Plaintiff's only allegations related to actual malice that identify a specific defendant exclusively concern the knowledge and conduct of other Defendants and third parties.  (*See, e.g.*, Doc. 27 at ¶¶ 115, 117, 119, 125-127, 129-132, 135-136.)  Moreover, the conclusory allegation that unspecified "Defendants knew of the falsity of their statements … and/or acted with reckless disregard as to the falsity of those statements. That is, they acted with actual malice[,]" *id.* at ¶ 99, fails to plead actual malice as a matter of law.  Such a "conclusory allegation – a mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected" and is "entirely insufficient." *Mayfield v. NASCAR*, 674 F.3d 369, 378 (4th Cir. 2012) (affirming dismissal of defamation claim where plaintiff made only conclusory allegations of malice).

In sum, the statements in the film and book are conditionally privileged, and Plaintiff failed to allege any facts suggesting that Salem or Regnery acted with actual

malice.  Accordingly, Plaintiff's claims for defamation, false light, and appropriation of likeness all fail as a matter of law and should be dismissed.

### J.     Plaintiff's Claim for Civil Conspiracy (Count VI) Fails

Because Plaintiff's underlying tort claims against Salem and Regnery fail, his claim that they conspired to commit those torts also fails. *See Mustaqeem–Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002) (absent underlying tort, there can be no liability for civil conspiracy).  Even if Plaintiff sufficiently alleged any of the other Defendants committed a tort by disseminating Plaintiff's unblurred image or other identifying information, he has not alleged that Salem or Regnery agreed to, took part in, or even had any knowledge that any of the other Defendants did so.  In other words, Plaintiff fails to allege that Salem and Regnery acted in concert with anyone else to commit a tort.  *Id.*  (to prove a conspiracy claim, "a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.") And, in fact, Salem and Regnery could not have conspired to defame Plaintiff, to portray him in a false light, or to misappropriate his likeness because, as Plaintiff admits, they took affirmative steps to ensure Plaintiff was never identified or identifiable in the film or the book.  (Doc. 27 at ¶¶ 38-39, 45, 74.)

4876-2453-2808.6

**K.      Plaintiff's Claim for Punitive Damages (Count VII) Fails**

Plaintiff cannot state a claim for punitive damages against Salem or Regnery because, as explained above, he failed to state a valid underlying claim against either of them.   *See Boeing Co. v. Blane Intl. Group,* 276 Ga. App. 672, 676 (2005) ("derivative claim" for punitive damages cannot survive in absence of compensatory damages on underlying claim).   Even if any of Plaintiff's claims survives this Motion, Plaintiff's own allegations show that Salem and Regnery did not act with willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care, as required to support a claim for punitive damages.   O.C.G.A. § 51-12.5.1.   Indeed, Plaintiff's allegations that Salem and Regnery took affirmative steps to ensure Plaintiff's identity was not disclosed, including by blurring his face and license plate, show the exact opposite of malice or willful misconduct.

Finally, Plaintiff's claim for punitive damages against Regnery independently fails because Plaintiff did not send a valid demand for retraction to Regnery under O.C.G.A. § 51-5-11 before filing suit. "The plain language" of Georgia's retraction statute "provides that as a precondition to the recovery of punitive damages, a libel plaintiff first must 'request a correction or retraction before filing their civil action against any person for publishing a false, defamatory statement.'"   *Bell v. Johnson Publ'g Co., LLC*, No. 7:16-CV-16 (HL), 2018 WL 357888, at *7 (M.D. Ga. Jan. 10,

2018) (quoting *Mathis*, 276 Ga. at 28).  While Plaintiff claims he sent a "retraction" letter to Regnery, his own allegations show that he could not have demanded a retraction because he sent the letter *before* the book was even published.  (Doc. 27 at ¶¶ 9, 70, 164.)  And, in fact, the letter does not demand a retraction of any kind.[6] Accordingly, Plaintiff is barred from recovering punitive damages from Regnery as a matter of law.  O.C.G.A. § 51–5–11; *Mathis*, 276 Ga. at 29.

### IV.   CONCLUSION

For the foregoing reasons, Salem and Regnery respectfully request that the Court dismiss the FAC against them in its entirety.

Respectfully submitted this 18th day of January, 2023.

> */s/ S. Derek Bauer*
> S. DEREK BAUER
> Georgia Bar No. 042537
> dbauer@bakerlaw.com
> IAN K. BYRNSIDE
> Georgia Bar No. 167521
> ibyrnside@bakerlaw.com
> KRISTEN RASMUSSEN
> Georgia Bar No. 135018
> krasmussen@bakerlaw.com

---

[6] A copy of the letter Plaintiff sent to Regnery is attached hereto as <u>Exhibit A</u>.  The Court may consider this document without converting this Motion into one for summary judgment because the document is "(1) central to the plaintiff's claim [for punitive damages] and (2) undisputed," meaning "the authenticity of the document is not challenged."  *Hammond v. Home Depot, USA*, No. 1:05-CV-02219-ODE, 2006 WL 8432819, at *3 (N.D. Ga. May 16, 2006) (citation omitted).

JACQUELINE T. MENK
Georgia Bar No. 728365
jmenk@bakerlaw.com
GEORGIA L. BENNETT
Georgia Bar No. 495910
gbennett@bakerlaw.com

BAKER & HOSTETLER LLP
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Defendants*
*Salem Media Group, Inc.*
*and Regnery Publishing, Inc.*

-32-

## **RULE 7.1(D) CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1.C.

This 18th day of January, 2023.

/s/ S. Derek Bauer
S. DEREK BAUER
Georgia Bar No. 042537

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within and foregoing **AMENDED BRIEF IN SUPPORT OF DEFENDANTS SALEM MEDIA GROUP INC.'S AND REGNERY PUBLISHING, INC.'S MOTION TO DISMISS** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record:

Von A. DuBose
DuBose Miller, LLC
75 14th Street NE, Suite 2110
Atlanta, GA 30309
dubose@dubosemiller.com

Sarah Chimene-Weiss
Protect Democracy Project
7000 N. 16th Street, Suite 120, #430
Phoenix, AZ 85020
Sara.chimene-weiss@protectdemocracy.org

Rachel F. Homer
Protect Democracy Project
2020 Pennsylvania Avenue NW, #163
Washington, DC 20006
Rachel.homer@protectdemocracy.org

Rachel E. Goodman
John Paredes
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Rachel.goodman@protectdemocracy.org

John.paredes@protectdemocracy.org

Jared Fletcher Davidson
Protect Democracy Project
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Jared.davidson@protectdemocracy.org

Lea Haber Kuck
One Manhattan West
New York, NY 10001-8602
Lea.kuck@probonolaw.com

Rajiv Madan
Paige Braddy
1440 New York Avenue NW
Washington, DC 20005
Raj.madan@probonolaw.com
Paige.braddy@probonolaw.com

Vernon Thomas
155 N. Wacker Drive
Chicago, IL 60606-1720
Vernon.thomas@probonolaw.com

Amanda Hyland
Taylor English Duma LLP
Suite 200, 1600 Parkwood Circle
Atlanta, GA 30339
ahyland@taylorenglish.com

This 18th day of January, 2023.

/s/ S. Derek Bauer
S. DEREK BAUER
Georgia Bar No. 042537

-35-