IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARK ANDREWS,<br><br>   Plaintiff,<br><br>v.<br><br>DINESH D'SOUZA, TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, GREGG PHILLIPS, D'SOUZA MEDIA LLC, SALEM MEDIA GROUP, INC., REGNERY PUBLISHING, INC., and JOHN DOES,<br><br>   Defendants. | Case No. 1:22-CV-04259-SDG |

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS SALEM MEDIA GROUP, INC.'S AND REGNERY PUBLISHING, INC.'S MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff's Opposition to Defendants Salem Media Group, Inc.'s ("Salem") and Regnery Publishing, Inc.'s ("Regnery") Motion for a More Definite Statement is long on conclusions, but short on facts. Plaintiff repeatedly states that the First Amended Complaint ("FAC") "specifically identifies which Defendants made which false and defamatory statements" (or something similar), but the portions of the FAC he cites do not actually identify any statements or acts by Salem or Regnery. (Doc. 71 at 4; *id.* at 2-3, 5-7.) Indeed, almost all of those allegations relate to other Defendants or refer generally to "Defendants." Plaintiff's Opposition, particularly

when read in conjunction with his response to Salem's and Regnery's motion to dismiss – which similarly argues that "Defendants" made certain statements or published certain images – merely highlights the "shotgun" nature of the FAC and the many ways in which it prevents Salem and Regnery from fully and reasonably responding to Plaintiff's claims against them.

If the Court does not grant Salem's and Regnery's motion to dismiss (Docs. 48, 54), it should require Plaintiff to re-plead his FAC to include a more definite statement of his claims and allegations against Salem and Regnery.

### A. The FAC Fails to Specify Which Defendants Are Responsible for Which Purportedly Unlawful Conduct

Plaintiff contends that the FAC "methodically sets forth the specific acts by each Defendant," "goes to great lengths to identify the role of each Defendant and which of their specific acts and omissions are unlawful," "specifically identifies which Defendants made which false and defamatory statements," "describes in detail each Defendants' unlawful and tortious actions," and "identifies with specificity the defamatory statements made by each Defendants." (Doc. 71 at 2-7.) But the factual allegations he cites to support those conclusions say precious little about Salem or Regnery.

For example, Plaintiff contends that the FAC "provides a verbatim transcript of several of the false and defamatory statement that *each Defendant* makes in the

2

film," but he fails to cite ***any*** statements made by Salem or Regnery. (Doc. 71 at 4 (emphasis added) (citing "D'Souza's statements" and "Defendant Engelbrecht's statements").) Similarly, Plaintiff contends that the FAC "specifically identifies which Defendants made which false and defamatory statements" and "which specific statements . . . each Defendants published," but he only cites "Defendants D'Souza and Phillips' statements," "Phillips and Engelbrecht's statements," "D'Souza's promotional appearances," "promotional appearances [by] TTV Defendants," "publications by D'Souza," and "publications by TTV." (*Id.* at 4-5.) Plaintiff's other citations to the "specific defamatory statements made by each Defendant" are similarly focused on Defendants other than Salem and Regnery. (*See id.* at 7-8 (citing "allegations that Defendants Engelbrecht and Phillips showed an unblurred video of Mr. Andrews," describing statements made by "Defendant D'Souza" on various news programs, and referencing "a music video trailer published by Defendants Engelbrecht, Phillips, and True the Vote").)

The closest Plaintiff gets to identifying any statements allegedly made by Salem is his assertion that certain statements were made "on Salem Media shows." (*Id.* at 4.) But the portions of the FAC he cites do not actually allege that these are "Salem Media shows," that they feature a "Salem host," or that Salem made any of the statements at issue or is otherwise responsible for them. (*Id.*; *see* Doc. 27 at

¶¶ 49-52, 112, 129-130.)  Likewise, virtually all of the citations Plaintiff provides to support his argument that the FAC "identifies which specific Defendants publish and distribute the film" generally refer to "Defendants" or Defendants other than Salem and Regnery.  (Doc. 27 at ¶¶ 32, 172, 174.)  The only paragraph that specifically refers to Salem simply alleges that Salem reported the film's viewership and revenue numbers on its quarterly earnings call, none of which Plaintiff contends is false, defamatory, or unlawful.  (*Id.* at ¶ 173.)

Plaintiff's allegations related to Regnery are even more sparse. Regnery is only specifically identified one time in Plaintiff's Opposition, which contends only that Regnery (along with several other Defendants) "republished Mr. Andrews' image in their book, alongside [allegedly] defamatory statements."  (Doc. 71 at 7.)[1]

---

[1] The only other times Plaintiff arguably references Regnery is when he mentions the "Salem Defendants." (Doc. 71 at 4, 8.) Even then, his allegations fail to provide any clarity about Regnery's alleged role.  For example, Plaintiff asserts that the FAC "describes the role of each Defendant in creating the *2000 Mules* film" and contends that paragraphs 25-26 of the FAC "describ[e] Salem Defendants' role."  But neither those paragraphs nor any other paragraphs in the FAC allege that Regnery had ***any*** role in "creating the *2000 Mules* film."  Nevertheless, Plaintiff appears to suggest that Regnery is responsible for the film and the statements in it. The same problem permeates Plaintiff's response to the motions to dismiss, where Plaintiff repeatedly refers to the "Salem Defendants" and seeks to hold them equally liable for all statements in the film, the book, and elsewhere, despite the fact that the FAC alleges only that Regnery published the book. (*See* Doc. 69 at 6-9, 23, 33, 36-37, 40-46, 48-53, 55-60.)

4

Plaintiff's consolidated response to Salem's and Regnery's motion to dismiss and Defendants D'Souza's and D'Souza Media LLC's motion to dismiss further underscores the deficiencies in the FAC and the problems created by his "shotgun" complaint. Like the FAC, Plaintiff's response to the motions to dismiss overwhelmingly argues his claims by referring to acts and conduct of "Defendants" and "all Defendants' publications," without distinguishing between them. (*See* Doc. 69 at 22, 25, 29, 32-33, 43, 45, 47, 49, 54, 57, 59.) Plaintiff's response also seeks to hold Salem and Regnery liable for conduct of other individuals and Defendants, none of which is made clear in the FAC. For example, nothing in the FAC alleges that Salem published or is otherwise responsible for the unblurred images of Plaintiff that were shown on *The Charlie Kirk Show* or the statements made by other Defendants and non-parties on that show. To the contrary, the FAC alleges that "Defendants Engelbrecht and Phillips twice showed" the unblurred image of Plaintiff and made false statements about him, and only vaguely alleges in passing that Salem "produces" that show. (Doc. 27 at ¶¶ 49-52; *see also* Doc. 71 at 7.) Nevertheless, Plaintiff's response to the motions to dismiss now argues that Salem is responsible for all of the statements and images published on that show, in addition to all other statements made by all Defendants. (*See* Doc. 69 at 45-47.)

Similarly, despite clearly and affirmatively alleging in the FAC that Salem and Regnery blurred his face every time it appears in the film or the book, *see* Doc. 27 at ¶¶ 38-39, 45, 74, Plaintiff's response to the motions to dismiss now argues that the "Salem Defendants" only "(sometimes) blurred" his face. (Doc. 69 at 42-43, 56-57, 59.)  In addition, Plaintiff argues in support of his Civil Rights Act claim that "Defendants and their agents" used Plaintiff's image to promote the book and film, so "the natural, foreseeable and probably consequences of Defendants' widely distributed defamation" were intimidation and injury to Plaintiff.  (*Id.* at 32.)  But none of the cited paragraphs of the FAC mentions Salem or Regnery or purports to hold Salem and Regnery liable for acts of the other Defendants.  (*See* Doc. 27 at ¶¶ 171-79, 188, 191-92.)

In short, the FAC comes nowhere close to providing a methodical or detailed recitation of the "specific acts and omissions" by Salem and Regnery that Plaintiff contends are unlawful.  (Doc. 71 at 3.)  And Plaintiff's responses to this motion and the motions to dismiss confirm that repleading is necessary to provide Salem and Regnery clear notice of the claims against them.

### B. The FAC Is a "Shotgun Complaint" that Does Not Satisfy Rule 8

Plaintiff contends that Federal Rule of Civil Procedure 8(a) is satisfied if the complaint "provide[s] defendant[s] fair notice regarding plaintiff's claims and the

grounds upon which the claim rests," and he suggests that the FAC easily satisfies that requirement because it "spans more than 125 pages and contains 322 paragraphs." (Doc. 71 at 1-2; *id.* at 6.) Not so. The fact that a complaint contains hundreds of pages and paragraphs in no way shows that it satisfies Rule 8. In fact, this Court has suggested the opposite. *See, e.g.*, *Clifford v. Federman*, No. 1:18-CV-10953-JPB, 2020 WL 377026, at *2 (N.D. Ga. Jan. 7, 2020) *aff'd* 855, Fed. Appx. 525 (11th Cir. 2021) (dismissing complaint that incorporated more than 200 paragraphs into each claim for relief as "a quintessential shotgun pleading," stating "[a]t 258 pages, it is in no sense a 'short and plain statement of the claim' required by the Federal Rules of Civil Procedure").

The cases Plaintiff cites in his Opposition do not support his argument. For example, in *Anderson v. District Board of Trustees of Central Florida Community College*, (Doc. 71 at 3), the Eleventh Circuit held the complaint was "a perfect example of 'shotgun' pleading" where it contained six counts and more than 60 paragraphs, all of the factual allegations were "adopted in full by all six counts," and each count "also adopt[ed] the allegations of all preceding counts." 77 F.3d 354, 365-366 (11th Cir. 1996). That is exactly what the FAC does here, albeit on a much larger scale. (*See* Doc. 27 at ¶¶ 258, 269, 276, 295, 307, 315, 320.) The final claim

for relief in the FAC incorporates all previous 319 paragraphs and all six counts of the FAC. (*Id.* at ¶ 320.)

Plaintiff's reliance on *Kyle K. v. Chapman*, 208 F.3d 940 (11th Cir. 2000), is similarly misplaced. (Doc. 71 at 5.) While that case cited two other cases involving shotgun pleadings and found that "[n]o such problem exists here," that was not the issue before the Court. *Kyle K.*, 208 F. 3d at 944. Indeed, that case did not involve a motion under Rule 12(e), and defendants did not challenge the complaint as a shotgun pleading, but instead argued that the complaint failed to state a claim under Rule 12(b)(6) because it "[did] not meet the heightened pleading requirement applicable to section 1983 actions against individual government officials." *Id.* Likewise, *Mancha v. Immigration and Customs Enforcement*, 2009 WL 900800 (N.D. Ga. Mar. 31, 2009), cited on page 5 of Plaintiff's Opposition, did not involve a Rule 12(e) motion and does not even mention shotgun pleadings.

Plaintiff's attempt to cherry-pick and distinguish the cases cited in Salem's and Regnery's motion is equally meritless. For example, Plaintiff contends that *Khadija v. Fannie Mae*, 2012 WL 6681736 at *10 (N.D. Ga. Nov. 30, 2012), is distinguishable because, in that case, the plaintiffs failed to allege "the specific statements Defendants made or when they made them," whereas here the FAC "identifies with specificity the defamatory statements made by each Defendant [and]

8

when those statements were made[.]" (Doc. 71 at 7.) Plaintiff makes a similar argument in attempting to distinguish *Collins v. BSI Financial Services*, 2017 WL 1045062 (M.D. Ala. Mar. 17, 2017). (*Id.*) Both arguments fail. As discussed above, Plaintiff's conclusory assertion that he has specifically identified the statements and acts of each Defendant is not supported by the allegations in the FAC, at least not as to Salem and Regnery. (*See supra* § A.) Indeed, the whole point of this motion is that Salem and Regnery cannot ascertain from the allegations in the FAC the specific statements for which Plaintiff seeks to hold them liable. Nothing in Plaintiff's Opposition provides any clarity on that point and, in fact, his response to the motions to dismiss only makes things murkier.

Finally, Plaintiff's discussion of *Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.*, 917 F.3d 1249 (11th Cir. 2019), and *Automotive Alignment & Body Service, Inc. v. State Farm Mutual Automobile Insurance Co.*, 953 F.3d 707 (11th Cir. 2020), further highlights the deficiencies in the FAC. (*See* Doc. 71. at 9-10.) The FAC, with only a handful of references to Salem and Regnery in its 322 paragraphs, is much more like the complaint in *Automotive Alignment*, which the court held was a prohibited shotgun pleading because it generally alleged that "the Defendants" steered customers away from plaintiffs and "[t]he specific instances of steering that the [plaintiff] body shops describe in their complaint

9

provide reason to doubt that each of the [defendant] insurance companies has harmed each of the body shops through steering." *Automotive Alignment & Body Service, Inc.*, 953 F.3d at 732-733.  Similarly, the FAC generally alleges that "Defendants" committed certain acts and specifically alleges that Defendants other than Salem and Regnery published certain statements and images.  Those specific allegations about other Defendants, combined with the absence of virtually any allegations specific to Salem or Regnery, "provide reason to doubt" that Salem and Regnery are responsible for all statements and publications identified in the FAC.  *Id.* at 733.  Plaintiff cannot cure that fatal flaw simply by alleging all claims are asserted against "all Defendants."

### C. The FAC Impermissibly Incorporates All Preceding Allegations into Each Cause of Action

Plaintiff admits that each count in the FAC incorporates all preceding paragraphs and counts.  (Doc. 71 at 10.)  And it is undisputed that this type of pleading is disfavored by courts in this Circuit.  *See, e.g., Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n. 39 (11th Cir. 2014) ("The complaint, through its incorporation into successive counts all preceding allegations and counts, is a quintessential 'shotgun' pleading—the sort of pleading we have been roundly condemning for 30 years."); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir.

10

2006) (remanding with instruction to replead complaint that incorporated every allegation by reference into each subsequent claim for relief).

Plaintiff nevertheless contends that such incorporation alone does not render his FAC a prohibited shotgun pleading, and he cites several cases that he contends support that argument. (Doc. 71 at 10.) But the cases cited by Plaintiff involved complaints that look nothing like the FAC. For example, in *Perricone v. Carnival Corp.*, the complaint did not replead each claim in every count, but instead incorporated only 29 factual paragraphs that were "key to each count of negligence, and any allegations that [were] relevant only to [a] specific count [were] subsequently detailed in their respective counts." 2016 WL 1161214, at *3 (S.D. Fla. Mar. 24, 2016). Similarly, the complaint in *Jelks v. Equitable Acceptance Corp.* contained "a mere 40 paragraphs, only 8 of which [were] used to detail the underlying facts," and asserted only "four counts, two against each defendant." 2020 WL 9597786, at *1, *4 (N.D. Ga. July 21, 2020). And, in that case, this Court expressly distinguished that type of complaint from those involving "excessive factual allegations" and "numerous defendants." *Id*. at *4 n. 3 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (complaint with 146 paragraphs of factual allegations was shotgun pleading where each count incorporated all of those allegations and the allegations of all counts preceding it), and *Moore v. Am. Fed. of*

11

*Tele. & Radio Artists*, 216 F.3d 1236, 1240-41 (11th Cir. 2000) (describing a complaint that was 96 pages long with 232 numbered paragraphs as a shotgun pleading)). Plaintiff's 300+ paragraph FAC, with each count incorporating every preceding paragraph and count, bears no resemblance to the short, focused complaints in *Perricone* and *Jelks*.

Plaintiff's assertion that the FAC "lays out in clear detail the facts giving rise to the seven counts" is belied by his supporting citation to more than two hundred paragraphs of the FAC, many of which contain only vague allegations about all "Defendants." (Doc. 71 at 11 (citing FAC at ¶¶ 32-257).) Salem and Regnery are specifically identified in precious few of those hundreds of paragraphs: paragraph 49, which generally alleges that Salem "produces" *The Charlie Kirk Show* (whatever that means); a few times through paragraphs 70-76, which allege that Regnery published the *2000 Mules* book and that Salem owns Regnery; and a handful of paragraphs discussing background details, such as the fact that Plaintiff sent demand letters to Salem and Regnery and the places where Salem and Regnery are registered to do business. (Doc. 27 at ¶¶ 158, 164, 173, 227, 250, 256-57.)

In sum, the FAC falls far short of identifying the allegations and claims asserted against Salem and Regnery, as opposed to the other Defendants, and thus prevents Salem and Regnery from fully or reasonably responding to it.

12

D. **Conclusion**

For the reasons discussed above and in Salem's and Regnery's initial brief, if the FAC is not dismissed outright, Plaintiff should be required to replead his complaint to provide a more definite statement of his claims and allegations against Salem and Regnery.

Respectfully submitted this 8th day of May, 2023.

                                                  */s/ S. Derek Bauer*
S. DEREK BAUER
Georgia Bar No. 042537
dbauer@bakerlaw.com
IAN K. BYRNSIDE
Georgia Bar No. 167521
ibyrnside@bakerlaw.com
KRISTEN RASMUSSEN
Georgia Bar No. 135018
krasmussen@bakerlaw.com
JACQUELINE T. MENK
Georgia Bar No. 728365
jmenk@bakerlaw.com
GEORGIA L. BENNETT
Georgia Bar No. 495910
gbennett@bakerlaw.com

**BAKER & HOSTETLER LLP**
1170 Peachtree Street, NE, Suite 2400
Atlanta, Georgia 30309-7676
Telephone: (404) 459-0050
Facsimile: (404) 459-5734

*Attorneys for Defendants*
*Salem Media Group, Inc.*
*and Regnery Publishing, Inc.*

13

## **RULE 7.1(D) CERTIFICATE**

The undersigned counsel certifies that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.

This 8th day of May, 2023.

*/s/ S. Derek Bauer*
S. DEREK BAUER
Georgia Bar No. 042537

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within and foregoing **REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS SALEM MEDIA GROUP INC.'S AND REGNERY PUBLISHING, INC.'S MOTION FOR A MORE DEFINITE STATEMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record:

>Von A. DuBose
>DuBose Miller, LLC
>75 14th Street NE, Suite 2110
>Atlanta, GA 30309
>dubose@dubosemiller.com
>
>Sarah Chimene-Weiss
>Protect Democracy Project
>7000 N. 16th Street, Suite 120, #430
>Phoenix, AZ 85020
>Sara.chimene-weiss@protectdemocracy.org
>
>Rachel F. Homer
>Protect Democracy Project
>2020 Pennsylvania Avenue NW, #163
>Washington, DC 20006
>Rachel.homer@protectdemocracy.org
>
>Rachel E. Goodman
>John Paredes
>Protect Democracy Project
>82 Nassau Street, #601
>New York, NY 10038
>Rachel.goodman@protectdemocracy.org

15

4875-2478-4735.3

John.paredes@protectdemocracy.org

Jared Fletcher Davidson
Protect Democracy Project
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Jared.davidson@protectdemocracy.org

Lea Haber Kuck
One Manhattan West
New York, NY 10001-8602
Lea.kuck@probonolaw.com

Rajiv Madan
Paige Braddy
1440 New York Avenue NW
Washington, DC 20005
Raj.madan@probonolaw.com
Paige.braddy@probonolaw.com

Vernon Thomas
155 N. Wacker Drive
Chicago, IL 60606-1720
Vernon.thomas@probonolaw.com

Amanda Hyland
Taylor English Duma LLP
Suite 200, 1600 Parkwood Circle
Atlanta, GA 30339
ahyland@taylorenglish.com

Joseph R. Larsen
Michael John Wynne
Gregor Wynee Arney, PLLC
909 Fannin Street, Suite 3800
Houston, TX 77010
jlarsen@grfirm.com

16

4875-2478-4735.3

mwynne@gwafirm.com

Molly Hiland Parmer
Parmer Law
1201 West Peachtree St. Suite 2300
Atlanta, GA 30309
Molly@Parmer.Law

Cameron Powell
Gregor Wynne Arney, PLLC
301 Massachusetts Ave. NW, Suite 1203
Washington, DC 20002
cpowell@gwafirm.com

This 8th day of May, 2023.

/s/ S. Derek Bauer
S. DEREK BAUER
Georgia Bar No. 042537

4875-2478-4735.3