## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## GEORGIA ATLANTA DIVISION

| | |
|---|---|
| MARK ANDREWS,<br><br>              Plaintiff,<br><br>v.<br><br>DINESH D'SOUZA, TRUE THE VOTE, INC., CATHERINE ENGLEBRECHT, GREGG PHILLIPS, D'SOUZA MEDIA LLC, SALEM MEDIA GROUP, INC., REGNERY PUBLISHING, INC., and JOHN DOES,<br><br>              Defendants. | Case No. 1:22-CV-04259-SDG<br><br>TTV DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS |

### Introduction

The TTV Defendants submit this Reply in support of their Motion to Dismiss to address Plaintiff's failure to state a claim for defamation, his failure to allege the requisite intent under the KKK Act, his failure to allege a conspiratorial agreement among Defendants under the KKK Act to pursue an unlawful objective, and his attempt to broaden the term "intimidation" to include stochastic or random events.

### I.      In His Response, Plaintiff Only Reaffirms His Failure to State a Claim Against the True the Vote Defendants for Defamation (Count III).

Plaintiff's Response makes abundantly clear he is not seeking redress for a claimed defamation but attempting to use the courts to keep the TTV Defendants from exercising their constitutional right to set forth their opinions and perspectives

and to contribute to the marketplace of ideas. In short, Plaintiff's claim of defamation amounts to a SLAPP suit, and it should be dismissed.

### A. Plaintiff Acknowledges He Failed to Plead Special Damages – and Fails to Respond to the Argument He Is Not Entitled to Presumed Damages.

Plaintiff's Response is remarkably dismissive of his obligation to plead facts supporting the element of damages. It certainly does not address his failure to plead special damages as required to state a claim for libel *per quod* (as opposed to libel *per se*). *Zarach v. Atlanta Claims Ass'n*, 500 S.E.2d 1, 4-5 (Ga. Ct. App. 1998). Special damages "must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." *Id.* Plaintiff's Response on this issue consists of a single paragraph:

> Because Mr. Andrews has pleaded defamation *per se*, he need not plead special damages. *See Melton v. Bow*, 247 S.E.2d 100, 101 (Ga. 1978); Compl. ¶ 284. Regardless, he alleges special damages. Compl. ¶¶ 217, 294; *see Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 114 (D.D.C. 2011) (plaintiff's request of "special damages" in complaint is sufficient under Georgia law).

But *Katz* does not stand for the proposition that the mere "request" for special damages "is sufficient". The *Katz* opinion includes a fleeting reference, in a general description of defamation under Georgia law, that "Mar–Jac has pleaded special damages." *Id*. at 114. The comment is not even *dicta*. The *Katz* court dismissed the plaintiff's case, finding the speech was protected opinion, without a speck of analysis as to the sufficiency of the pleading. Indeed, why would the *Katz* court perform such an analysis if was dismissing the case anyway on other grounds?

Plaintiff's Response does not even attempt to show how his pleading articulates any sort of defamatory injury proximately caused by the Defendants. This falls far short of the pleading requirements set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which holds the *opposite* of what Plaintiff says *Katz* held – that mere conclusions are insufficient to meet federal pleading requirements.

Plaintiff's real argument is that he doesn't have to plead special damages because he has pleaded defamation *per se*. However, Plaintiff failed to mention much less respond to the TTV Defendants' argument that Plaintiff is not, as a matter of law, entitled to presumed damages because of the unquestioned public interest in the subject matter of the book and film. As put by the Georgia Supreme Court in *Mathis v. Cannon*, 573 S.E.2d 376 (Ga. 2002) (emphases added):

> At common law, libel was a strict liability tort that did not require proof of falsity, fault, or actual damages. Since . . . *New York Times Co. v. Sullivan*, the law of defamation has undergone substantial changes. The Restatement now lists four elements in a cause of action for defamation: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the "actionability of the statement irrespective of special harm." *When, as here, a libel action involves a speech of public concern*, a plaintiff must show that the defendant published a defamatory statement about the plaintiff, the defamatory statement was false, the defendant was at fault in publishing it, and the plaintiff suffered *actual injury from the statements*.

That is, defamation *per se* is unavailable here because the libel action involves speech of public concern. Where Plaintiff fails to establish special damages and

where the alleged defamatory communication does not otherwise constitute defamation *per se*, the claim fails as a matter of law. *See, e.g., Latson v. Boaz*, 278 Ga. 113, 115, 598 S.E.2d 485, 487 (2004).

The remedy for any injury actually incurred does not appear to be the goal of this lawsuit, but rather to attempt to discredit Defendants, cause them expense in having to answer in litigation, and to serve as a threat to those who would consider raising such issues as are explored in the film and book. In short, it is a SLAPP suit. Because Plaintiff has not pleaded special damages *per quod* and is not entitled to damages *per se*, his defamation claims must be dismissed as a matter of law.

## B. Defendants' Statements Amount to Protected Opinion Speech.

Defendants' statements are not actionable because they are protected as expressions of opinion under both the First Amendment and Georgia law. Plaintiff's Response misses the boat on this issue. The requirement that, to be actionable, a statement of opinion must imply an assertion of objective facts about the plaintiff

> unquestionably excludes from defamation liability not only statements of rhetorical hyperbole ... *but also statements clearly recognizable as pure opinion because their factual premises are revealed* ... Both types of assertions have an identical impact on readers—neither reasonably appearing factual—and hence are protected equally under the principles espoused in *Milkovich*.

*Jaillett v. Georgia Television Co*., 238 Ga. App. 885, 890, 520 S.E.2d 721 (1999) (citation omitted) (emphasis added). If the facts underlying the speaker's statement are not unknown, but disclosed to the reader, then the statement reflects only on the

speaker's interpretation of the facts. *Hoffman-Pugh v. Ramsey*, 193 F.Supp.2d 1295, 1302 (N.D. Ga. 2002). If the facts upon which the opinion is based are defamatory, then the Plaintiff might be positioned to overcome a motion to dismiss and proceed with his defamation suit. But that is not the case here.

The issue here is not whether Andrews committed a crime, but whether what is observed in the video could be construed to constitute a crime. Plaintiff does not allege the video was altered in any way other than to obscure Plaintiff's face, and it otherwise looks exactly as produced in response to a public records request. That is, the underlying facts are not at all defamatory in and of themselves, but simply an accurate record of a public event. That the GBI found sufficient grounds to open an investigation, based on the video, of Plaintiff dropping off ballots, demonstrates the reasonableness of Defendants' opinion that the actions depicted constitute a crime – and opinions may be unreasonable without being actionable.

Plaintiff cites the public statement of a GBI investigator who "unequivocally refuted the allegations that Mr. Andrews had engaged in illegal 'ballot harvesting' and instead had legally deposited the ballots of his wife and three adult children." But this would not be the first time a citizen disagreed with the finding of an official body. One may still be entitled to believe and say aloud that, on the facts presented, a person acquitted of murder is still actually guilty of murder. And Plaintiff argues the film is defamatory because it does not include a statement Plaintiff was "cleared"

by authorities. But Georgia does not recognize "libel by omission." *Comer v. National Bank of Ga.*, 363 S.E.2d 153, 154-55 (Ga. Ct. App. 1987) ("Appellant has cited no case and we are unfamiliar with any which provide that the failure to make a written statement has been upheld as the basis for a libel action.").

Plaintiff himself has amply shown that the film, and its interpretation of the facts researched and shown therein, is a matter of fierce debate and conflicting opinions. He wants the Court to stifle this debate and formulate an official opinion, essentially a prior restraint on discussion generated by the film. Yet it is the video of the Plaintiff, not the entire film, that is at issue in Plaintiff's defamation claim. The Defendants' opinion on the fully disclosed fact of the video is protected speech and Plaintiff's defamation claims must be dismissed as a matter of law.

## II. The Court Must Reject Plaintiff's Attempt to Write Stochastic Intimidation Into Caselaw.

Citing no supporting caselaw, Plaintiff urges this Court to create precedent holding a party may be held liable for – and forced to endure discovery regarding – the acts of others who are not agents of the party, not in privity with the party, and not even known by the party. Plaintiff's argument amounts to *stochastic intimidation*, where, if a person engages in speech in any way that becomes published, his or her liability may be *randomly determined by whether unknown, unrelated members of the general public allow themselves to be influenced by the speech and take action,* so that liability has "a random probability distribution or

pattern that may be analyzed statistically but may not be predicted precisely".[1] The argument Plaintiff advances is that given a random distribution of third parties throughout the world the TTV Defendants knew or should have known some number of these strangers would hear of the TTV Defendants' speech and take various actions for which the TTV Defendants are liable. Plaintiff's citation to *Morin v. Moore*, 309 F.3d 316, 327 (5th Cir. 2002) confirms the danger of his approach: that court held that for a defendant to be assigned liability for *proximately causing* a third party's actions, the defendant had to *know* the third party, and not just glancingly, but well enough to know the third party's age, experience, and "otherwise".

As Plaintiff's argument against stochastic speech is untethered from principles of duty, awareness, or foreseeability, it is a working definition of a violation of the First Amendment, not to mention principles of notice and due process. And *Wohl*[2] and other cases Plaintiff cites do not support his view. More recently, the court in

---

[1] *See* https://www.google.com/search?q=stochastic+definition&oq=stochastic+&aqs=chrome.1.69i57j0i131i433i512l5j0i512j0i433i512j0i131i433i512j0i433i512.7236j1j7&sourceid=chrome&ie=UTF-8 (accessed March 28, 2023).

[2] In its analogous analysis of standing, *Wohl* required showing "a causal connection between the injury and the conduct complained of [that is] fairly traceable to the challenged action of the defendant, *and not the result of the independent action of some third party not before the court*." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 470 (S.D.N.Y. 2020). Furthermore, the *Wohl* court held the defendants there liable for the actions of the third party because he, unlike any third parties in Plaintiff's FAC, *was hired by the defendants*.

*Fair Fight v. True the Vote*, No. 2:20-CV-00302-SCJ at 24 (March 9, 2023 N.D.Ga),

chose to establish some guardrails to the plaintiff's demand there that the defendants'

free speech and due process rights be ignored in favor of vague phrases like "the

natural consequences of their actions", holding "Defendants' actions must have

*some connection* to the voters' alleged intimidation." (emphasis added). The court

laid out a test for "directing" third party action that Plaintiff has failed to pass:

> for Plaintiffs to succeed in their Section 11(b) claims against Defendants, they must show that (1) Defendants' actions directly or through means of *a third-party in which they directed*, (2) caused, or could have caused, (3) any person to be reasonably [] intimidated ... from voting or attempting to vote.

*Id.* at 16-17 (emphasis added). This Court should similarly hold that liability may

not accrue to persons sued under either the VRA or KKK Act for the acts of third

parties (*see* allegations collected in TTV Defs' Mot. to Dismiss at 13-14) where:

- The plaintiff fails to allege he was ***aware*** of those third parties' actions – at least until being informed of them by his lawyers, after they had billed time to search the Internet for intimidating "context".
- The third party is not plausibly alleged to be an ***agent of or in any kind of privity with*** the defendant.
- The third party is not alleged even to be ***known*** to the defendant.

**III.    Plaintiff Alleges Only a Lawful Agreement to Engage in Parallel Acts Without an Intent, Agreement, or Overt Acts to Intimidate Plaintiff.**

Plaintiff's Response continues to push the legally meritless narrative that intent to harm[3], conspiratorial agreement toward an unlawful objective, and overt acts furthering a "conspiracy" may all be pled all by pointing to *the same grab-bag of parallel actions of lawful production and promotion[4] activities with obvious alternative explanations:*

- The production of a film and book, and their promotion
- The appearance of the plaintiff's image in that media
- The defendants' narration about the images in that media

## A. Because Plaintiff's "Conspiracy" Is Only a Conclusory Label, He Is Simply Unable to Plead the Necessary How, When, Where, or Why

Plaintiff's argument mirrors *Reynolds v. Calhoun,* 2022 WL 4349312, at *8 (M.D. Ala. Sept. 19, 2022), where the plaintiff pursuing a § 1985(3) conspiracy claim pleaded "*no facts describing how, when, where, or for what purpose* these Defendants formed this alleged conspiracy. At best, Reynolds" – exactly like

---

[3] Lacking facts or law to support its KKK Act claim, Plaintiff uses circular logic and appeals to cases involving criminal intent, *see U.S. v. Myers*, 972 F.2d 1566, 1573 (11th Cir. 1992), saying, "because the natural and foreseeable consequence of falsely accusing Mr. Andrews of voter fraud was to injure and intimidate him, that is sufficient to infer Defendants' intent." In other words, whenever someone has allegedly been injured by a tort, Plaintiff believes that no *plausible intent to injure* must be pleaded; rather, the alleged injury alone may allow courts to "infer" the requisite intent. Plaintiff, clearly urging nothing less than strict liability, would thus demolish all guardrails in the pleading of *mens rea.*

[4] *See* Plf. Resp. at 14, 23; FAC ¶¶261, 262, 264 (KKK Act conspiracy), 316-18 (civil conspiracy).

Plaintiff – "[1] alleges actions undertaken by the Defendants collectively and then [2] asserts a conspiracy, without [3] specifying *when Defendants had time to conspire or reach an understanding to deny Reynolds' rights*." (emphasis added) (quoting *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013)).

## B. Plaintiff's Formulaic and Conclusory Allegations Are Insufficient.

The Eleventh Circuit, in *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010) (internal citations omitted; emphases added), has explained *Iqbal* mandates as follows:

> our first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions. Plaintiffs offer **conclusory statements** such as "[d]efendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy," and "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy . . ." These are the kinds of "***formulaic recitations***" of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient.

Here, once we remove the "conclusory elements" and the "formulaic recitations" of Plaintiff's conspiracy claims, nothing but the "parallel action" of their independent practices of narrating, producing, and promoting films and books remains. What remains is merely the "wide swath of [the Defendants'] rational and competitive business strategy unilaterally prompted by common perceptions of the market" for their media. *See Twombly*, 550 U.S. at 554. "Alleged parallel practices, without more, cannot create an inference or a conspiracy . . . where, as here, the practices"

are in the Defendants' "economic self-interest. ***The practices are as consistent with independent as with concerted actions***." *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1268 (11th Cir. 2019) (quoting *Proctor v. State Farm Mutual Automobile Insurance Co.,* 675 F.2d 308 (D.C. Cir. 1982) (emphasis added)).

That film and book media, once assembled by editors, happen to feature images of dozens of people does not magically create a *conspiracy* to feature the images, let alone plausible allegations of a conspiratorial intent to harm a single *plaintiff*. "On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact." *Almanza*, 851 F.3d at 1071. Conspiracy requires something more. It requires some "factual enhancement" beyond mere parallel action. *See Powell v. United States*, 800 F. App'x 687, 701 (11th Cir. 2020). And the Eleventh Circuit has rejected Plaintiff's argument that, essentially, "if Defendants have engaged in parallel conduct that is unlawful [like intimidating him], the unlawfulness of the parallel conduct provides the further factual enhancement needed to support a plausible inference of an agreement." *Almanza*, 851 at 1069. It does not. Though Defendants' acts are alleged to be unlawful, they "*are still just allegations of parallel conduct.*" *Id*. (concluding "there was an 'obvious alternative explanation' for each of the collective actions alleged that suggested lawful, independent conduct"). Even "*conscious* parallelism and interdependence" – the

most Plaintiff alleges – are insufficient to plead conspiracy. *Id*. "To cross the line from a possible to a plausible existence of an agreement, plaintiffs must allege a further circumstance pointing toward a meeting of the minds." *Id*. at 1068. In short, defendants may independently violate the same rights without making plausible a *conspiracy* to have done so.

Plaintiff does not and cannot "rule out", or "contradict", the FAC's obvious alternative explanations that the defendants were producing and promoting *a book and film about ballot-stuffing* – not embarking on a campaign to harm Mark Andrews – and that the film and book could have easily come to feature images and narration of people (like Plaintiff and dozens of others) putting those ballots in ballot boxes *without any conscious agreement by all the Defendants* to try to harm any of the people in those images.[5] Even Plaintiff's "circumstantial evidence *must reasonably tend to exclude the possibility that the alleged conspirators acted independently*." *Seagood Trading Corp. v. Jerrico, Inc*., 924 F.2d 1555, 1574 (11th Cir. 1991) (emphasis added) (cleaned up). That's why Plaintiff is reduced to making

---

[5] *Compare Shaffer v. Cook*, 634 F.2d 1259 (10th Cir.1980), *cert. denied* 451 U.S. 984 (1980) (where there were no facts to indicate that the judge and attorneys acted outside the obvious alternative explanation of a judicial process, plaintiff's claim he'd seen his defense attorneys speaking to the judge could raise no factual question of conspiracy) *with Faith Enterp. Grp. Inc. v. Avis Budget Grp, Inc*., 2012 WL 1409403 at 2-3 (N.D. Ga. Apr. 20, 2012) (holding plaintiff supported "plausible inference" of unlawful activity that *contradicted* defendants' alternative explanation where plaintiff alleged specific details of defendant's *illegitimate* reasons for falsely listing rental cars as "sold out").

the circular argument that there *must* have been an unlawful *conspiracy* to harm him because he was harmed. *See* Plf. Resp. at 24 ("what makes this an unlawful conspiracy … is the unlawful purpose—namely, to injure and defame Mr. Andrews.").

Even a "vow to seek revenge", which is already a more affirmative expression of intent to harm than Plaintiff alleges in his entire FAC, does not "allege[] any facts showing an *agreement* to violate" a plaintiff's rights. *Clement v. Floyd Cnty. Police Dep't*, 2014 WL 12774725, at *3 (N.D. Ga. May 15, 2014), report and recommendation adopted, 2014 WL 12774862 (N.D. Ga. May 29, 2014) (emphasis added). Merely "stringing together adverse acts of individuals," as Plaintiff does, is also "insufficient to demonstrate the existence of a conspiracy." *Hein v. Kimbrough*, 942 F. Supp. 2d 1308, 1313 (N.D. Ga.), *aff'd,* 545 F. App'x 926 (11th Cir. 2013); *see Harvey v. Harvey,* 949 F.2d 1127, 1133 (11th Cir. 1992) (holding allegations of plaintiff merely "str[u]ng together the discrete steps of the committed process," without showing contacts between the defendants that could prove they had "reached an understanding" to violate her rights).

Plaintiff argues "the pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" Plf. Resp. at 22 (citing *Twombly*). But the *Twombly* Court rejected Plaintiff's hope for the "prospect of unearthing direct evidence of conspiracy [in discovery] . . . *even*

*though the complaint does not set forth a single fact in a context that suggests an agreement.*" *Id.* at 561–62 (emphasis added). Plaintiff's allegations have also failed *Twombly*'s requirement to plead *context* suggesting a preceding agreement.

### C. Plaintiff Failed to Plausibly Plead the TTV Defendants Agreed to the Specific Unlawful Objective of Harming Mr. Andrews.

Equally conclusory is Plaintiff's allegation that because the book and film featured his image, Defendants *somehow* must have gotten together and agreed specifically to harm him. In *Frazier,* 349 Ga. App. 507, 510, 826 S.E.2d 361, 364, the Court of Appeals held the conspiracy alleged there could not *plausibly* consist of some general intention to do something wrong, or other "natural and foreseeable consequences" of one's actions, but must have had the goal of doing something specific, like *shooting an officer*: "the State failed to show an agreement [among the defendants], tacit or otherwise, to *commit aggravated assault on the officer*, because there is no evidence showing a mutual understanding between [them] to pursue *the common criminal objective of shooting the officer*." *Id*. (emphasis added). That's why the Court must reject Plaintiff's attempt to argue that Defendants agreed on the general "conspiracy" to produce a book and film while failing to plead nonconclusory facts plausibly alleging either that Defendants consciously had an unlawful objective (1) in general – such as to intimidate voters – or (2) a particularized goal to intimidate Mark Andrews.

Again and again, Plaintiff merely restates the facts of his intimidation case, and then tacks on a conclusory coda saying, in essence, ". . . and Defendants *conspired* to intimidate him." *See, e.g.,* Plf. Resp. at 33 (citing Complaint). Plaintiff's Section 11(b) allegations simply cannot be repurposed to its KKK Act claims, because (1) the latter's conspiracy requirement mandates a particularized *intent* lacking here and (2) Plaintiff failed to allege any details of how Defendants came to talk about *Mark Andrews* or even what to say about him or why.

Respectfully submitted this 8th day of May 2023.

*/s/ Molly Parmer*
MOLLY PARMER (GA Bar No. 942501)
1201 W. Peachtree Street, NW, Suite 2300
Atlanta, Georgia 30309
Telephone: (404) 795-5060
Facsimile: (404) 795-5117
molly@parmer.law

MICHAEL J. WYNNE* (TX Bar No. 00785289)
CAMERON POWELL* (DC Bar No 00459020)
JOSEPH R. LARSEN* (TX Bar No. 11955425)
GREGOR WYNNE ARNEY PLLC
909 Fannin Street, Suite 3800
Houston, Texas 77010
(281) 450-7403
mwynne@gwafirm.com
cpowell@gwafirm.com
jlarsen@gwafirm.com

*Attorneys for Defendants True the Vote,*
*Catherine Englebrecht and Gregg Phillips.*

**Admitted Pro Hac Vice*

15

## RULE 7.1(D) CERTIFICATE

The undersigned counsel certifies that this document has been prepared with Times New Roman 14-point font in accordance with Local Rule 5.1.C.

This 8th day of May 2023.

/s/ *Molly Parmer*
MOLLY PARMER
Georgia Bar No. 942501

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing TTV DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record via the CM/ECF system.

This 8th day of May 2023.

/s/ *Molly Parmer*
MOLLY PARMER
Georgia Bar No. 942501