IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| **MARK ANDREWS,**<br><br>Plaintiff,<br><br>v.<br><br>**DINESH D'SOUZA,** *et al.***,**<br><br>Defendants. | Case No. 1:22-cv-04259-SDG |

**PLAINTIFF'S RESPONSE TO TRUE THE VOTE DEFENDANTS'
SUPPLEMENTAL BRIEF ON FIRST AMENDMENT ISSUES**

On the eve of oral argument, the True the Vote Defendants (hereinafter "TTV Defendants") attempt to fundamentally recast the issues presented by arguing—erroneously—that the Supreme Court's decision in *Counterman* gives them license under the First Amendment to peddle the false accusation that Plaintiff committed election crimes as part of a vast conspiracy to steal the 2020 election. This argument mischaracterizes not only the holding of *Counterman* but also the very essence of what this case is about.

1

As detailed below, the Court's decision in *Counterman* has no bearing on this case, because Plaintiff alleges that Defendants engaged in unlawful voter intimidation by defaming him—*not* by issuing true threats of violence, which was the sole and narrow focus of that decision. And defamation—as the *Counterman* court explicitly held—is not protected speech. Undeterred, Defendants ignore *Counterman*'s narrow holding that exclusively concerns the *mens rea* required in criminal cases involving true threats of violence and instead contend that *Counterman* altogether rewrites federal anti-intimidation law by limiting actionable intimidation to *only* true threats of violence. But that specious claim has no basis whatsoever in First Amendment jurisprudence or the *Counterman* decision.

Defendants very well may wish to live in a country where defaming and harassing voters constitutes protected speech—where they can skirt liability for voter intimidation so long as they stop just short of threatening violence. Fortunately, however, the First Amendment does not demand that we live in such a society, and *Counterman* did nothing to change that.

> **I. *Counterman*'s Holding Is Irrelevant to Plaintiff's Voter Intimidation Claims.**
>
> **A. Defendants' Statements About Plaintiff Are Defamatory and Therefore Unprotected by the First Amendment.**

In *Counterman*, the Supreme Court addressed the narrow question of what *mens rea* is required in criminal cases involving "true threats" of violence in order to comply with the First Amendment. *Counterman v. Colorado*, 143 S. Ct. 2106, 2111 (2023) ("The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements."). The Court held that, in cases seeking to criminalize true threats of violence, the government must show that a defendant acted recklessly—that is, "that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id*. at 2112.

This narrow holding, however, has no relevance to this particular case because Plaintiff does not allege that Defendants' speech at issue constituted a true threat. *See* Pl.'s TTV Opp'n at 16-21, Dkt. 70. Rather, Plaintiff alleges that Defendants committed unlawful voter intimidation in violation of both the support-or-advocacy clauses of the Klan Act and Section 11(b) of the Voting Rights Act ("VRA") by widely circulating *defamatory* statements about his voting practices in their film, book, and promotional activities. *Id*. As the Court in *Counterman* explicitly acknowledged, it is black-letter law that defamation enjoys *no* First

Amendment protection. 143 S. Ct. at 2115 ("False and defamatory statements of fact, we have held, have 'no constitutional value.'").

Because Plaintiff has plausibly alleged that Defendants defamed him and because their speech is therefore unprotected by the First Amendment, Plaintiff need not *additionally* show that Defendants' speech constitutes a "true threat" or qualifies under any other categorical exemption to the First Amendment.[1] Indeed, as the Supreme Court has made clear, there is no need to show that speech is

---

[1] In addition to being defamatory, Defendants' statements are not entitled to First Amendment protection because they are (1) "messages intended to mislead voters about voting requirements and procedures," *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1889 n.4 (2018), and because it is speech integral to illegal conduct, *see Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen., Fla. Dep't of Health*, 50 F.4th 1126, 1135 (11th Cir. 2022); Pl.'s TTV Opp'n at 17-19, Dkt. 70. And even if none of these additional exceptions applied, Section 11(b) and the Klan Act would still be constitutional as applied to nonviolent, nonreckless intimidating speech because they should survive even strict scrutiny. To survive strict scrutiny, a statute must be "narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). It is well-established that voter intimidation is a compelling state interest. *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 206 (1992). Both Section 11(b) and the Klan Act also satisfy the narrow tailoring requirement. *See* Hearing on the Voting Rights Act of 1965 before the H. Comm. on the Judiciary, 89th Cong. 12 (1965) (statement of Nicholas Katzenbach, Att'y Gen. of the United States) (describing the "inadequacy" of pre-Voting Rights Act anti-voter intimidation statutes, which included a subjective intent requirement); *McCord v. Bailey*, 636 F.2d 606, 615-17 (D.C. Cir. 1980) (describing how the Klan Act was narrowly tailored to balance the need for greater federal jurisdiction to stop the Klan with the need to avoid impinging on state prerogatives). However, because Plaintiff has adequately alleged that Defendants' statements are defamatory, the Court need not additionally address at this stage these other reasons that Defendants' speech is unprotected by the First Amendment.

"doubly excluded from the First Amendment." *See United States v. Williams*, 553 U.S. 285, 299 (2008). Accordingly, the limitations *Counterman* placed on prosecutions based on the "true threat" exception to the First Amendment simply have no bearing in this case.

### B. Inserting a Violence Requirement Into All Voter Intimidation Claims Would Disrupt Decades of Intimidation Law.

Defendants cite no actual authority for their argument that Plaintiff must establish a true threat *of violence* to state a claim for voter intimidation under the Klan Act or Section 11(b). Nor could they. The plain text of both statutes makes clear that Congress intended to protect voters from more than just threats of violence. *See* Pl.'s TTV Opp'n at 21, Dkt 70 (detailing why if "threats" were required to show "intimidation" under 11(b) and the Klan Act, then that would render the word "threat" redundant with the word "intimidate" in both statutes); *accord United States v. Original Knights of the KKK*, 250 F. Supp. 330, 342 (E.D. La. 1965) (Wisdom, J.) (noting of the Ku Klux Klan's intimidation tactics in the 1960s, "sometimes the attempted intimidation is by threat of violence, sometimes by character assassination"). For that reason, courts have long recognized that voter intimidation under these statutes is *not* limited to threats of violence.[2] *See,*

---

[2] The TTV Defendants also erroneously contend that *Counterman* holds that "for speech to lose First Amendment protection on grounds it is a true threat, that threat

*e.g.*, *United States v. McLeod*, 385 F.2d 734, 747 (5th Cir. 1967) (threats of unwarranted criminal prosecution are unlawful voter intimidation under VRA § 11(b)). More recently, courts have held that defamation—along with other "actions or communications that inspire fear of economic harm, legal repercussions, privacy violations, and even surveillance," *National Coalition on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) ("*Wohl II*")—is a well-recognized form of voter intimidation. *League of United Latin Am. Citizens v. Pub. Int. Legal Found.*, 2018 WL 3848404, at *4 (E.D. Va. Aug. 13, 2018) ("*LULAC*"); *see also Fair Fight*, slip op. at 20-21 (nonviolent conduct, including defamation,

---

must involve violence." TTV Suppl. Br. at 2, Dkt. 100-1. Not so. The Supreme Court has never held—in *Counterman* or otherwise—that true threats are limited to threats of violence. Rather, the Supreme Court has held only that true threats "*encompass*" threats of violence and therefore does not exclude other non-violent threats. *See Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added). Indeed, in *Black*, the Supreme Court observed that "a prohibition on true threats protects individuals from the fear of violence *and the disruption that fear engenders*," *id*. at 344 (emphasis added), meaning that true threats encompass threats beyond just threats of violence. Accordingly, many courts have recognized that "[t]hreats of nonviolent harm may be exempted from First Amendment's speech protections as true threats." *Fair Fight, Inc. v. True The Vote*, No. 2:20-cv-00302, slip op. at 75 (N.D. Ga. Mar. 9, 2023); *see also Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) ("*Wohl I*") (concluding that true threats are *not* limited to threats of violence because "[t]he threat of severe nonbodily harm can engender as much fear and disruption as the threat of violence"). However, this Court need not even wade into this issue at all because, as explained above, Plaintiff has adequately alleged that Defendants' speech is unprotected as *defamation* (and therefore need not also show it is a true threat–of violence or otherwise).

may constitute intimidation under Section 11(b)). That is entirely consistent with the First Amendment, which affords no special protection for defamatory speech made with actual malice, as challenged here. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-83 (1964).[3]

Moreover, if accepted as true, Defendants' position would constitute a dramatic sea change for numerous other federal laws that protect citizens from intimidation beyond just threats of violence. For example, 42 U.S.C. § 1985(2),

---

[3] In addition to being unsupported by case law, Defendants' argument also defies basic logic. Defendants concede, as they must, that defamatory speech is *not* protected by the First Amendment, *see* TTV Suppl. Br. at 21, Dkt. 100-1 (conceding that defamation is unprotected by the First Amendment), but nevertheless argue that the First Amendment protects defamatory speech so long as it is intimidation, *see id.* at 18 (arguing "there is no defamation-as-intimidation exception to protected speech"). That simply makes no sense. Defendants' chosen case in support, *Brewington v. State*, 7 N.E.3d 946 (Ind. 2014), is in fact entirely consistent with Plaintiff's claims. In reviewing a state criminal statute that defined defamation as a form of intimidation, the Indiana Supreme Court held only that ordinary First Amendment limitations on defamation liability apply when defamation is the basis for an intimidation charge. That is to say, when the First Amendment would require a defamation plaintiff to prove actual malice—when, for example, the alleged defamation concerned a public figure or a matter of public concern—then actual malice is also necessary to support an intimidation charge based on the same defamatory speech. *Id.* at 959, 962. Here, as explained in detail in Plaintiff's Opposition to the Salem Defendants' Motion to Dismiss, Dkt. 69, Plaintiff has alleged that he was intimidated by Defendants' defamatory assertions that he committed election crimes, *id.* at 26-30 and 40-41, *and* that Defendants acted with actual malice in making those assertions, *id.* at 47-52. Thus, the First Amendment does not protect Defendants here.

7

prohibits conspiracies to intimidate parties or witnesses in connection with legal proceedings, and courts have long recognized that prohibited intimidation covers more than just threats of violence. *See, e.g.*, *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1034 (11th Cir. 2000); *Silverman v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, No. 97 Civ. 0040 (RLE), 1999 WL 893398, at *4 (S.D.N.Y. Oct. 18, 1999). Likewise, 42 U.S.C. § 3617 makes it unlawful to "intimidate, threaten, or interfere with" a person for enjoying or exercising fair housing rights. In cases involving this statute, courts have held that plaintiffs stated claims for intimidation even where the defendants' conduct did not include physical violence or threats of violence. *See, e.g.*, *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004) (scrawling of a racial slur on plaintiffs' property); *People Helpers, Inc. v. City of Richmond*, 789 F. Supp. 725, 733 (E.D. Va. 1992) (excessive investigations by the city of a rental property). Similarly, in evaluating intimidation claims under Section 131(b) of the Civil Rights Act of 1957 (52 U.S.C. § 10101(b)), courts have likewise held that the statute reaches intimidation beyond just threats of physical violence. *See United States v. Bruce*, 353 F.2d 474 (5th Cir. 1965) (voter intimidation claim arose when white landowners ordered black defendant, an insurance collector active in encouraging voter registrations, to stay off their property, preventing him from

reaching business clients); *United States v. Beaty*, 288 F.2d 653, 656 (6th Cir. 1961) (white landowners evicted and refused to deal in good faith with black tenant farmers for the purpose of interfering with their voting rights, which gave rise to a voter intimidation claim); *United States v. Deal*, 6 Race Rel. L. Rep. 474 (W.D. La. 1961) (voter intimidation arose when white business owners refused to engage in business transactions with black farmers who attempted to register to vote). *See also* Ben Cady & Tom Glazer, *Voters Strike Back: Litigating Against Modern Voter Intimidation*, 39 N.Y.U. Rev. L. & Soc. Change 173, 193-202 (2015) (summarizing several cases where courts interpreted the term "intimidate" or "intimidation" with respect to civil rights).

If Defendants' arguments were accepted, then these anti-intimidation statutes could never be applied to the many forms of intimidation that do not involve violence. If the Court in *Counterman* intended its holding to have such far-reaching consequences on federal and state anti-intimidation laws, then it certainly would have said so. It did not.

### C. Plaintiff Has Adequately Alleged That Defendants Acted Recklessly Because They Have Adequately Alleged Actual Malice

Even assuming *arguendo* the Court in *Counterman* intended its holding to impose a recklessness requirement on all intimidation statutes (it did not), Defendants arguments still fail because Plaintiff has adequately alleged that

9

Defendants acted with actual malice and has therefore alleged that Defendants acted recklessly.[4] *See* Pl.'s Salem Opp'n at 47-54, Dkt. 69. Indeed, in imposing a recklessness requirement for cases involving true threats of violence, the Court in *Counterman* expressly observed that this was consistent with the "actual malice" standard in defamation law. *Counterman*, 143 S. Ct. at 2118 ("Using a recklessness standard also fits with the analysis in our defamation decisions."). In other words, contrary to Defendants' contention that Plaintiff "has failed to plausibly allege [they] were reckless," TTV Suppl. Br. at 21, Dkt. 100-1, Plaintiff *has* done just that by plausibly alleging that Defendants acted with actual malice when they falsely accused Plaintiff of committing election crimes as part of a scheme to steal the 2020 election. Accordingly, even if a recklessness standard applied, Defendants' arguments fail because Defendants have adequately pled it.

## II.   TTV Defendants' Remaining Arguments are Unavailing

Perhaps recognizing that their *Counterman* arguments are insufficient to evade liability, Defendants deploy a grab-bag of additional arguments as to why Plaintiff's federal voter intimidation claims are improperly pled. All are meritless.

---

[4] Plaintiff does not concede that he is required to prove actual malice to prevail on his defamation claim; nonetheless, he has adequately alleged that Defendants acted with actual malice in making their statements about him. *See* Pl.'s Salem Opp'n at 47-54, Dkt. 69.

### A. Defendants Misrepresent the Relevance of the Third-Party Threats against Plaintiff.

TTV Defendants misconstrue the relevance of the third-party threats Plaintiff received and misleadingly argue that the only intimidating conduct challenged here are those third-party threats. Not so.

As an initial matter, the Court could entirely disregard the third-party threats and nonetheless hold that Plaintiff has stated a claim for voter intimidation under Section 11(b) and the Klan Act. As detailed above and in Plaintiff's briefs, courts have repeatedly recognized that defaming voters or threatening them with negative consequences for voting is a textbook example of voter intimidation. *See* Pl.'s Salem Opp'n at 26-30, Dkt. 69; Pl.'s TTV Opp'n at 19-21, Dkt. 70. Likewise, surveilling voters and publicizing their identities, particularly in connection with allegations of illegal voting, are classic forms of unlawful intimidation. *See, e.g.*, *Fair Fight*, slip op. at 59 ("non-governmental parties publishing the names of challenged voters to the public can constitute reasonable intimidation"); *Ariz. All. for Retired Ams. v. Clean Elections USA*, No. CV-22-01823-PHX-MTL, 2022 WL 17088041, at *1-2 (D. Ariz. Nov. 1, 2022) (enjoining publishing or threatening to publish images of voters along with accusations of being "mules"); *see also* Pl.'s Salem Opp'n at 26-30, Dkt. 69 (collecting cases). As alleged in the Complaint, Defendants' *own* conduct—publication of surveillance video and still images

11

depicting Mr. Andrews voting, along with false and defamatory accusations that he voted illegally—fits squarely within this well-established category of unlawful voter intimidation under both the Klan Act and 11(b). First Amended Complaint, Dkt. 27 ("Compl."). And the Complaint satisfactorily alleges that conduct was reckless and made with actual malice. *See* Pl.'s Salem Opp'n at 47-53, Dkt 69. In sum, even disregarding the third-party threats against Plaintiff, Defendants' *own* conduct constitutes unlawful voter intimidation, and the Court should disregard Defendants' attempt to deflect attention from their own misconduct and to focus only on third-party threats against Plaintiff.

Nevertheless, the third-party threats are relevant (even if not necessary to impose liability) to Plaintiff's claims. *First*, they illustrate the objective reasonableness of Plaintiff's fears. As another court in this district recently observed, in determining whether conduct is intimidating, courts should consider "the totality of the circumstances." *Fair Fight*, slip op. at 16. Here, Plaintiff became afraid for his safety, the safety of his family, and of professional and legal consequences as soon as he learned that the film made false accusations that he committed election crimes. Compl. ¶ 90. The fact that many of Defendants' followers have subsequently issued violent threats against Plaintiff and his family confirms the reasonableness of those fears. To the extent Defendants dispute the

objective reasonableness of Plaintiff's fears, that is a fact dispute inappropriate for resolution at this juncture. *See Fair Fight*, slip op. at 81.

*Second*, the third-party threats are in fact part and parcel of the intimidation Defendants caused and for which they are legally liable under standard causation analysis. As another court in this district recently recognized, liability under Section 11(b) requires only a "causal link" between Defendants' actions and the intimidation of Plaintiff. *Fair Fight*, slip op. at 23. Defendants speciously suggest that the *only* intimidation that Plaintiff suffered came at the hands of third-parties, but that's simply not the case: as noted above, Defendants' decision to falsely accuse Plaintiff of election crimes is *itself* intimidation under well-established voter intimidation law. In addition, however, courts routinely find defendants liable for voter intimidation when their actions also lead third-parties to threaten and harass voters. *See, e.g.*, Pl.'s Salem Opp'n at 25-26, Dkt. 69 (collecting cases where courts have held defendants liable for voter intimidation where defendants' conduct leads to the natural and foreseeable consequence of threats by third-parties against voters); *see also Fair Fight*, slip op. at 16 ("[N]othing about intimidation suggests that it must be violent *or made personally by the intimidator*. Accordingly, the Court will consider non-violent conduct *and third-party actions that have been directed by the Defendants*." (emphasis added)). Here, in addition to

13

alleging that Defendants' *own* statements directly intimidated Plaintiff, the Complaint also alleges that Defendants' defamatory statements about Plaintiff foreseeably caused many of their followers to threaten Plaintiff as a result of his voting activities, Compl. ¶¶ 199-228, and those threats exacerbated Plaintiff's feelings of fear and anxiety caused by Defendants' own statements, Compl. ¶¶ 212-17. Accordingly, under standard causation analysis, Defendants can likewise be held responsible for causing the harm committed by third-parties that stems directly from their defamation campaign against Plaintiff. *See* Pl.'s TTV Opp'n at 20-21, Dkt. 70. To the extent Defendants disagree that they can be held accountable for causing these particular injuries by third-parties, then that is a factual dispute improper for resolution at this juncture.

### B. Defendants' Liability Does Not Rest on a Finding of Incitement

Perhaps because Plaintiff has in fact properly pleaded defamation, TTV Defendants make a last-ditch attempt to recast Plaintiff's voter intimidation claims as based on the incitement of third-parties rather than Defendants' own defamatory and intimidating statements. TTV Suppl. Br. at 20-21, Dkt. 100-1. This misconstrues Plaintiff's Complaint, which alleges that TTV Defendants' liability flows directly from defamatory and intimidating statements in the *2000 Mules* book, film and related promotional appearances. As stated above, the subsequent

threats made to Plaintiff by third-parties are relevant (1) as evidence of how an objectively reasonable person would view the threats in the movie and book and (2) as evidence that Plaintiff's additional injuries from third-parties were caused by Defendants' intimidating statements. But while the TTV Defendants may wish the Court focus *only* on third-parties' actions toward Plaintiff, that is not the sole focus of Plaintiff's Complaint: instead, Plaintiff alleges that Defendants engaged in unlawful voter intimidation by publishing lies about him in their film, book and promotional activities—and, as noted above, they are liable *regardless* of whether third-parties also later took up their cause (as Defendants surely foresaw they would).

Dated: August 22, 2023               Respectfully submitted,

                                     /s/ *Jared Fletcher Davidson*
                                     Jared Fletcher Davidson*
                                     PROTECT DEMOCRACY PROJECT
                                     3014 Dauphine Street, Suite J
                                     New Orleans, LA 70117
                                     Tel: (202) 579-4582
                                     jared.davidson@protectdemocracy.org

/s/ *Von A. DuBose*
Von A. DuBose
DUBOSE MILLER
Georgia Bar No. 231451
75 14th Street NE, Suite 2110
Atlanta, GA 30309
Tel: (404) 720-8111
dubose@dubosemiller.com

Sara Chimene-Weiss*
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #430
Phoenix, AZ 85020
Tel: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Rachel E. Goodman*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
rachel.goodman@protectdemocracy.org

Lea Haber Kuck*
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
lea.kuck@probonolaw.com

Rajiv Madan*
Paige Braddy*
1440 New York Avenue NW
Washington, DC 20005
Tel: (202) 371-7000
raj.madan@probonolaw.com
paige.braddy@probonolaw.com

Vernon Thomas*
155 N. Wacker Drive
Chicago, IL 60606-1720
Tel: (312) 407-0648
vernon.thomas@probonolaw.com

*Counsel for Plaintiff Mark Andrews*
*\*Admitted Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

Dated: August 22, 2023                    /s/ *Jared Fletcher Davidson*
                                          Jared Fletcher Davidson*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing was electronically filed with the Clerk of Court using CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: August 22, 2023                    /s/ *Jared Fletcher Davidson*
                                          Jared Fletcher Davidson*