UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARK ANDREWS,<br><br>        Plaintiff,<br><br>v.<br><br>DINESH D'SOUZA, TRUE THE VOTE, INC., CATHERINE ENGLEBRECHT, GREGG PHILLIPS, D'SOUZA MEDIA LLC, SALEM MEDIA GROUP, INC., REGNERY PUBLISHING, INC., and JOHN DOES,<br><br>        Defendants. | Case No. 1:22-CV-04259-SDG<br><br><br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS DINESH D'SOUZA AND D'SOUZA MEDIA LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND SUPPLEMENTAL COMPLAINT**

Defendants Dinesh D'Souza and D'Souza Media LLC (collectively "D'Souza Parties"), by and through their undersigned counsel, answer the First Amended and Supplemental Complaint of Plaintiff Mark Andrews ("Plaintiff") as follows.

The D'Souza Parties note that Mr. Andrews uses 230 footnotes in his Amended Complaint. These footnotes contain references, citations, and website links, which do not require a response. The D'Souza Parties therefore have not responded to the footnotes, but to the extent a response is required, they deny the assertions set forth in the footnotes.

## ANSWER TO FIRST AMENDED COMPLAINT

## INTRODUCTION

1.    The D'Souza Parties state that Paragraph 1 is the plaintiff's opinion about national politics to which no response is required. To the extent Paragraph 1 contains allegations that must be admitted or denied, the D'Souza Parties deny Paragraph 1.

2.    The D'Souza Parties admit that this is a lawsuit brought by Mark Andrews.   The D'Souza Parties deny the remaining allegations in Paragraph 2.

3.    To the extent Paragraph 3 is directed at the D'Souza Parties, the D'Souza Parties deny the allegations of Paragraph 3. To the extent Paragraph 3 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

4.    To the extent Paragraph 4 is directed at the D'Souza Parties, the D'Souza Parties deny the allegations of Paragraph 4. To the extent Paragraph 4 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

5.    To the extent Paragraph 5 is directed at the D'Souza Parties, the

D'Souza Parties admit the allegations of Paragraph 5. To the extent Paragraph 5 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

6.    The D'Souza Parties admit that the 2000 Mules film prominently features footage of voters depositing ballots in ballot drop boxes and identifies them as "mules" illegally "trafficking" ballots, and that images of some voters are included in the book. The D'Souza Parties specifically deny that such evidence was "baseless" and deny any remaining allegations in Paragraph 6.

7.    The D'Souza Parties admit that Defendant D'Souza's voiceover states: "What you are seeing is a crime. These are fraudulent votes" at approximately 48 minutes into the 2000 Mules film. The D'Souza Parties are without knowledge as to whether the individual appearing in the film at that time was Mr. Andrews and further state that they had no knowledge of the identity of the person in the film. The D'Souza Parties expressly deny that the person shown at the 48-minute marker is identifiable in any manner, or that Mr. Andrews is identifiable in the trailer or the book. The D'Souza Parties deny that they made any false statements. To the extent any remaining

allegations in Paragraph 7 are directed at the D'Souza Parties, the D'Souza Parties deny those allegations. To the extent Paragraph 7 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

8.     The D'Souza Parties admit that Georgia law authorized the use of drop boxes and that a law enforcement investigation concluded that Mr. Andrews had not broken the law. The D'Souza Parties expressly deny that the investigation was sufficiently thorough to arrive at a reliable conclusion. To the extent Paragraph 8 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 8. To the extent Paragraph 8 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

9.     The D'Souza Parties admit that film was screened and distributed online and via DVD sales.  The D'Souza Parties admit the *2000 Mules* book was published on October 25, 2022.  The D'Souza Parties lack personal knowledge as to the accuracy of whether the film was shown in 415 theaters, and therefore deny same. The D'Souza Parties deny that the documentary made more than $1.4 million from the box office. The D'Souza Parties expressly deny that they made any false

statements in the documentary or the book. The D'Souza Parties admit that Mr. Andrews sent a retraction demand, but they expressly deny that Mr. Andrews was identifiable in the documentary or the book, or that he had any basis to demand the retraction of the documentary or the book. To the extent Paragraph 9 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 9. To the extent Paragraph 9 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

10. The D'Souza Parties admit that they promoted the 2000 Mules film on television, radio, and online. They expressly deny that Mr. Andrews was identifiable in the documentary or the book, or that they "repeatedly showed images of Mr. Andrews as an exemplar 'mule.'" To the extent Paragraph 10 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 10. To the extent Paragraph 10 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

11. To the extent Paragraph 11 is directed at the D'Souza Parties, the D'Souza Parties deny the allegations of Paragraph 11. To the extent

Paragraph 11 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

12. The D'Souza Parties admit that former President Donald Trump hosted a screening of *2000 Mules* at Mar-a-Lago. The D'Souza Parties lack personal knowledge as to the allegations of third-party dissemination of the film, and those allegations therefore are denied. To the extent Paragraph 12 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 12. To the extent Paragraph 12 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

13. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 13, and those allegations therefore are denied.

14. The D'Souza Parties deny that they were involved in any conspiracy with the other defendants, and deny that they defamed Mr. Andrews. The D'Souza Parties state that they did not know who Mr. Andrews was and therefore could not conspire to do anything relating to him. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 14, and those allegations therefore are

denied.   To the extent Paragraph 14 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

15.   To the extent Paragraph 15 is directed at the D'Souza Parties, the D'Souza Parties deny the allegations of Paragraph 15. To the extent Paragraph 15 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

16.   The D'Souza Parties deny that they have engaged in a campaign of defamation, threats, or intimidation, and deny that they have injured Mr. Andrews or attacked democracy. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 16, and those allegations therefore are denied.  To the extent Paragraph 16 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## PARTIES

17.   The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 17, and those allegations therefore are denied.

18.    The D'Souza Parties deny that Dinesh D'Souza's work has been "widely recognized as unreliable," and deny that he has made

"spurious claims." The D'Souza Parties admit the remaining allegations in Paragraph 18.

19.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 19, and those allegations therefore are denied.

20.    The D'Souza Parties admit Paragraph 20.

21.    The D'Souza Parties admit that Catherine Engelbrecht is an Executive Producer and Producer of *2000 Mules*, that she appears throughout the film, that she has made media appearances promoting the film, and that she is quoted extensively in the 2000 Mules book. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 21, and those allegations therefore are denied.

22.    The D'Souza Parties admit that Gregg Phillips is an Executive Producer and Producer of *2000 Mules*, that he appears throughout the film, that he has made media appearances promoting the film, and that he is quoted extensively in the 2000 Mules book. The D'Souza Parties further admit that Mr. Phillips states in the film that he worked with TTV to develop the research and methodology used to identify mules. The D'Souza Parties deny that the film made spurious claims. The D'Souza Parties lack personal knowledge as to the remaining

allegations in Paragraph 22, and those allegations therefore are denied.

23.  Paragraph 23 does not assert any facts and requires no response.

24.  The D'Souza Parties admit Paragraph 24.

25.  The D'Souza Parties admit that Salem Media Group, Inc. ("Salem Media") produced the 2000 Mules film. The D'Souza Parties further admit that a Salem Media affiliate distributes The Dinesh D'Souza podcast, and that Mr. D'Souza promoted the 2000 Mules film on that podcast. The D'Souza Parties admit Salem Media-affiliated hosts are featured in portions of the film in which Mr. D'Souza shares his findings and gathers their reactions. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 25, and those allegations therefore are denied.

26.  The D'Souza Parties admit that Regnery Publishing, Inc. ("Regnery") published *2000 Mules: They Thought We'd Never Find Out. They Were Wrong* by Dinesh D'Souza. The D'Souza Parties admit that the book also contains many lines of dialogue quoted verbatim from the *2000 Mules* film. The D'Souza Parties deny that Mr. Andrews is portrayed in the book and state that, to the extent his image appears in the book, he is unrecognizable. The D'Souza Parties deny that any

caption in associated with any particular surveillance image in the book. The D'Souza Parties deny that the book advances a false narrative. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 26, and those allegations therefore are denied.

27. The D'Souza Parties deny Paragraph 27.

## JURISDICTION AND VENUE

28. Paragraph 28 contains legal conclusions to which no response is required. To the extent a response is required, the D'Souza Parties admit that this Court has subject-matter jurisdiction over this action, but deny that those claims have merit.

29. Paragraph 29 contains legal conclusions to which no response is required. To the extent a response is required, the D'Souza Parties admit that this Court has subject-matter jurisdiction over this action, but deny that those claims have merit. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 29, and those allegations therefore are denied.

30. Paragraph 30 of the Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required,

The D'Souza Parties deny Paragraph 30 but do not contest jurisdiction.

31.    Paragraph 31 contains legal conclusions to which no response is required.  To the extent a response is required, The D'Souza Parties deny Paragraph 31 but do not contest venue.

## FACTS

32.    The D'Souza Parties admit that the 2000 Mules film outlines evidence that a network of professional operatives delivered fraudulent and illegal votes to mail-in drop boxes in the five key states where the election was decided. The D'Souza Parties deny that they promoted a baseless narrative, and state that the film's evidence and research is evident from the film itself. To the extent Paragraph 32 is directed at the D'Souza Parties, they deny the remaining allegations in Paragraph 32. To the extent Paragraph 32 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

33.    The D'Souza Parties admit that they worked with the other defendants to create, release, and promote the *2000 Mules* film. The D'Souza Parties deny that they promoted a false narrative, and state that the film's evidence and research is evident from the film itself. To the

11

extent Paragraph 33 is directed at the D'Souza Parties, they deny the remaining allegations in Paragraph 33. To the extent Paragraph 33 is directed generally at all defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

34.   The D'Souza Parties admit Paragraph 34.

35.   The D'Souza Parties deny that *2000 Mules* mischaracterizes data or misconstrues any images. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 35, and those allegations therefore are denied.

36.   The D'Souza Parties deny that the *2000 Mules* film makes false claims. To the extent Paragraph 36 quotes or characterizes the film, the film speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

37.   The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable. To the extent Paragraph 37 quotes or characterizes the film or the trailer, those works speak for themselves and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 37 is directed at the D'Souza Parties, they deny the remaining allegations in Paragraph 37. To the extent

Paragraph 37 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

38.    The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable, and to the extent his car appears in the film, the tag is blurred. The D'Souza Parties admit that the image Mr. Andrews has identified to be of himself is blurred. To the extent Paragraph 38 characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny any remaining allegations in Paragraph 38.

39.    The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable, and to the extent his car appears in the film, the tag is blurred. The D'Souza Parties admit that the image Mr. Andrews has identified to be of himself is blurred. To the extent Paragraph 39 quotes or characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith.

40.    The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable. To the extent Paragraph 40 characterizes the

film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith.

41.    The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable. The D'Souza Parties further deny that they made "false explanations" in the film. To the extent Paragraph 41 characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 41 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

42.    The D'Souza Parties state that Paragraph 42 attempts to characterize the film. The film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 42 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

43.    The D'Souza Parties state that Paragraph 43 attempts to characterize the film. The film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 43 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

44.   The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film, he is unrecognizable. To the extent Paragraph 44 characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 44 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

45.   The D'Souza Parties deny that Mr. Andrews is portrayed in the trailer and state that, to the extent his image appears in the trailer, he is unrecognizable. The D'Souza Parties admit that the image Mr. Andrews has identified to be of himself is blurred. To the extent Paragraph 45 characterizes the trailer, the trailer speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 45 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

46.   The D'Souza Parties deny that Mr. Andrews is portrayed in the trailer and state that, to the extent his image appears in the trailer, he is unrecognizable. To the extent Paragraph 46 characterizes the trailer, the trailer speaks for itself, and The D'Souza Parties deny any

allegations inconsistent therewith. To the extent Paragraph 46 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

47. To the extent Paragraph 47 is directed to the D'Souza Parties, they admit Paragraph 47. The D'Souza Parties lack personal knowledge as to the allegations regarding TTV's actions, and those allegations therefore are denied.

48. The D'Souza Parties deny that they showed Mr. Andrews' image "in various media outlets" and deny that they spread false claims. To the extent Paragraph 48 refers to media appearances made specifically by Mr. D'Souza, those appearances speak for themselves, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 48 refers to media appearances by other defendants, the D'Souza Parties lack personal knowledge as to those allegations, and those allegations therefore are denied.

49. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 49, and those allegations therefore are denied.

50. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 50, and those allegations therefore are denied.

51.     To the extent Paragraph 51 is a legal conclusion, no response is required. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 51, and those allegations therefore are denied.

52.     The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 52, and those allegations therefore are denied.

53.     The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 53, and those allegations therefore are denied.

54.     The D'Souza Parties deny that Mr. D'Souza made false claims. To the extent Paragraph 54 refers to a media appearance on *NTD News,* Mr. D'Souza admits that he appeared on the program, and states that his appearance speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

55.     The D'Souza Parties state that Paragraph 55 attempts to quote and characterize Mr. D'Souza's media appearance on *NTD News*. The interview speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

56.     The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 56, and those allegations therefore are denied.

57.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 57, and those allegations therefore are denied.

58.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 58, and those allegations therefore are denied.

59.    The D'Souza Parties admit that Mr. D'Souza appeared on the Epoch Times *Crossroads* show. The D'Souza Parties admit that only blurred images were used on the show, and state that, to the extent Mr. Andrews' image appears on the show, he is unrecognizable. To the extent Paragraph 59 quotes and attempts to characterize the show, the show speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith.

60.    The D'Souza Parties deny making false claims. The D'Souza Parties further state that Paragraph 60 attempts to quote and characterize Mr. D'Souza's media appearance on *Crossroads*. The show speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith.

61.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 61, and those allegations therefore are denied.

62.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 62, and those allegations therefore are denied.

63. The D'Souza Parties admit that Mr. D'Souza shared a clip from *Tucker Carlson Tonight* on Rumble. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 63, and those allegations therefore are denied.

64. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 64, and those allegations therefore are denied.

65. The D'Souza Parties admit that Mr. D'Souza appeared on the *Tipping Point with Kara McKinney* show. The D'Souza Parties admit that only blurred images were used on the show, and state that, to the extent Mr. Andrews' image appears on the show, he is unrecognizable. To the extent Paragraph 65 quotes and attempts to characterize the show, the show speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith.

66. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 66, and those allegations therefore are denied.

67. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 67, and those allegations therefore are denied.

68. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 68, and those allegations therefore are denied.

69.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 69, and those allegations therefore are denied.

70.    The D'Souza Parties admit that Mr. D'Souza was an author of *2000 Mules: They Thought We'd Never Find Out. They Were Wrong*, which was released on October 25, 2022. The D'Souza Parties deny that the book contained any false or defamatory statements, and deny that it contained images of Mr. Andrews. and state that, to the extent Mr. Andrews' image appears in the book, he is unrecognizable. To the extent Paragraph 70 attempts to characterize the book, it speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 70 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

71.    The D'Souza Parties admit that Mr. Andrews sent a retraction demand, but they expressly deny that Mr. Andrews was identifiable in the documentary or the book, or that he had any basis to demand the retraction of the documentary or the book. The D'Souza Parties deny that the book contained any false or defamatory statements, they and deny that it contained images of Mr. Andrews. and state that, to the extent Mr. Andrews' image appears in the book, he is unrecognizable.

To the extent Paragraph 71 attempts to characterize the book, it speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 71 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

72. The D'Souza Parties admit Paragraph 72.

73. To the extent Paragraph 73 attempts to characterize the book, it speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 73, and those allegations therefore are denied.

74. The D'Souza Parties deny that Mr. Andrews is portrayed in the book and state that, to the extent his image appears in the book, he is unrecognizable, and to the extent his car appears in the book, the tag is blurred. The D'Souza Parties admit that the image Mr. Andrews has identified to be of himself is blurred. To the extent Paragraph 74 attempts to quote or characterize the book, it speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

75. The D'Souza Parties deny that the book contains false or defamatory statements, deny that Mr. Andrews is portrayed in the book, and state

that, to the extent his image appears in the book, he is unrecognizable, and to the extent his car appears in the book, the tag is blurred. The D'Souza Parties admit that the image Mr. Andrews has identified to be of himself is blurred. To the extent Paragraph 75 attempts to quote or characterize the book or promotional materials for the book, those works speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith.

76.    The D'Souza Parties state that Paragraph 76 attempts to quote and characterize the *2000 Mules* book. The book speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

77.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 77, and those allegations therefore are denied.

78.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 78, and those allegations therefore are denied.

79.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 79, and those allegations therefore are denied.

80.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 80, and those allegations therefore are denied.

81.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 81, and those allegations therefore are denied.

82.   The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 82, and those allegations therefore are denied.

83.   The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 83, and those allegations therefore are denied.

84.   The D'Souza Parties admit that they are aware of document purporting to show that David Cross filed a complaint with the Georgia Bureau of Investigations ("GBI"). The complaint speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny that they had any knowledge of this complaint at the time it was filed, and deny that they knew or know Mr. Cross. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 84, and those allegations therefore are denied.

85.   The D'Souza Parties admit that David Cross filed a complaint with the GBI. The complaint speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza parties note that the David Cross Complaint relied on video that was not obtained from the D'Souza Parties. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 85, and those allegations therefore are denied.

86.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 86, and those allegations therefore are denied. To the extent Paragraph 86 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

87.    The D'Souza Parties admit that David Cross filed a complaint with the GBI. The complaint speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 87, and those allegations therefore are denied.

88.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 88, and those allegations therefore are denied.

89.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 89, and those allegations therefore are denied.

90.    The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 90, and those allegations therefore are denied.

91.    The D'Souza Parties admit that the Georgia State Elections Board ("SEB") held a public hearing during which David Cross's complaint was addressed. The hearing speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

92.   Paragraph 92 attempts to characterize the SEB hearing. The hearing speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

93.   Paragraph 93 attempts to quote and characterize the SEB hearing. The hearing speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

94.   The D'Souza Parties deny Paragraph 94.

95.   The D'Souza Parties admit that government records reflect that the SEB dismissed the case. All documents related to the SEB hearing speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties lack personal knowledge as to the remaining allegations in Paragraph 95, and those allegations therefore are denied.

96.   The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 96, and those allegations therefore are denied.

97.   The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 97, and those allegations therefore are denied.

98.   The D'Souza Parties deny the allegations in Paragraph 98. To the extent Paragraph 98 is directed to other defendants, the D'Souza

Parties cannot answer for other defendants and no response is required.

99. The D'Souza Parties deny the allegations in Paragraph 99. To the extent Paragraph 99 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

100. The D'Souza Parties deny the allegations in Paragraph 100. To the extent Paragraph 100 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

101. The D'Souza Parties admit that judges and other officials have rejected various claims of voter fraud in Paragraph 101. The D'Souza Parties state that the *2000 Mules* film acknowledges this and acknowledges that prior claims of fraud were largely unsubstantiated. The D'Souza Parties further state that the *2000 Mules* film drew its conclusions of research and evidence.

102. The D'Souza Parties deny the allegations in Paragraph 102. To the extent Paragraph 102 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

103.   The D'Souza Parties have no personal knowledge of the quoted "experts" and articles cited in Paragraph 103, and note that they appear to be opinions, not facts, such that a response is not required. To the extent a response is required, the D'Souza Parties deny the truth of those quotations, as well as Mr. Andrews' characterization of those articles, on the basis of lack of personal knowledge. The D'Souza Parties further state that they are not experts in geolocating data, nor have they ever proffered to be. Rather, they reasonably relied upon the expertise of others, who asserted that geolocation data has been relied upon by law enforcement and proven reliable. The D'Souza Parties deny any assertion of actual malice or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 103. To the extent Paragraph 103 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

104.   The D'Souza Parties have no personal knowledge of the quoted "experts" cited in Paragraph 104, and note that they appear to be opinions, not facts, such that a response is not required. To the extent a response is required, the D'Souza Parties deny the truth of those quotations, as well as Mr. Andrews' characterization of those articles,

on the basis of lack of personal knowledge. The D'Souza Parties further state that they are not experts in geolocating data, nor have they ever proffered to be. Rather, they reasonably relied upon the expertise of others, who asserted that geolocation data has been relied upon by law enforcement and proven reliable. The D'Souza Parties deny any assertion of actual malice or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 104. To the extent Paragraph 104 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

105. The D'Souza Parties deny Paragraph 105. To the extent Paragraph 105 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

106. Paragraph 106 attempts to quote and characterizes the *2000 Mules* film. The film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 106 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

107. The D'Souza Parties have no personal knowledge of the *NPR* story or quotes cited in Paragraph 107. The D'Souza Parties deny the truth of

those quotations, as well as Mr. Andrews' characterization of that story, on the basis of lack of personal knowledge. The D'Souza Parties further state that they are not experts in geolocating data, nor have they ever proffered to be. Rather, they reasonably relied upon the expertise of others, who asserted that geolocation data has been relied upon by law enforcement and proven reliable. The D'Souza Parties deny any assertion of actual malice or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 107. To the extent Paragraph 107 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

108. The D'Souza Parties have no personal knowledge of the quotes attributed to Defendants Phillips and Engelbrecht in Paragraph 108, and therefore deny those allegations. The D'Souza Parties also have no personal knowledge of the precise computers used, or the location where geotracking research was done, and therefore deny those allegations. The D'Souza Parties further state that they are not experts in geolocating data, nor have they ever proffered to be. Rather, they reasonably relied upon the research and expertise of others, who asserted that geolocation data has been relied upon by law

enforcement and proven reliable. The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 108. To the extent Paragraph 108 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

109. The D'Souza Parties have no personal knowledge of the *NPR* investigation, story or quotes cited in Paragraph 109, and therefore deny the allegations. The D'Souza Parties state that they are not experts in geolocating data, nor have they ever proffered to be. The D'Souza Parties further state that they did not perform the geotracking data investigation, as is evident from the documentary. Rather, the D'Souza Parties reasonably relied upon the research and expertise of others. The D'Souza Parties deny any inferred assertion of actual malice or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 109. To the extent Paragraph 109 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

110. The D'Souza Parties deny that Mr. Andrews is portrayed in the documentary and state that, to the extent his image appears in the film,

he is unrecognizable. The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties further state that they did not perform the geotracking data investigation, acquire surveillance video, or link them together, as such activities were performed by other defendants, as is evident from the documentary. To the extent Paragraph 110 quotes or characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 110 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

111.   The D'Souza Parties lack personal knowledge as to the surveillance video footage. The D'Souza Parties state that they did not perform the geotracking data investigation, acquire surveillance video, or link them together, as such activities were performed by other defendants, as is evident from the film. To the extent Paragraph 111 characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 111 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

112.   The D'Souza Parties admit that Mr. D'Souza has a podcast, that he
discussed the film in a May episode, and that he has not released
additional surveillance footage. To the extent Paragraph 112
characterizes or quotes the podcast, the podcast speaks for itself, and
The D'Souza Parties deny any allegations inconsistent therewith. To
the extent Paragraph 112 is directed to other defendants, the D'Souza
Parties cannot answer for other defendants and no response is
required.

113.   The D'Souza Parties lack personal knowledge as to the allegations in
Paragraph 113, and those allegations therefore are denied. To the
extent Paragraph 113 is directed to other defendants, the D'Souza
Parties cannot answer for other defendants and no response is
required.

114.   The D'Souza Parties admit that a website existed to promote the *2000
Mules* film. The website spoke for itself, and the D'Souza Parties deny
any allegations inconsistent therewith. The D'Souza Parties deny they
own the domain and deny that they have acknowledged that their
"assertions are baseless" and deny the remaining allegations in
Paragraph 114. To the extent Paragraph 114 is directed to other

defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

115. The D'Souza Parties admit that Mr. D'Souza published a "tweet" on May 13, 2002. The tweet speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny that Mr. D'Souza "recognized" that the reliability of geolocation data had been "debunked." The D'Souza Parties deny the remaining allegations in Paragraph 115.

116. The D'Souza Parties note that the assertions in Paragraph 116 appear to be the unsupported opinion of Mr. Andrews or his counsel, such that a response is not required. To the extent a response is required, the D'Souza Parties deny the truth of the allegations in Paragraph 116, and state that the CDC has used geolocation data, as widely reported in the press and stated by the CDC itself. The D'Souza Parties deny any assertion of actual malice or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 116.

117. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 117, and those allegations therefore are denied. The D'Souza Parties further state that they were not involved in any

requests to the GBI to investigate ballot fraud. To the extent Paragraph 117 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

118. The D'Souza Parties deny that no credible basis existed for the *2000 Mules* film. The D'Souza Parties further deny that they have received any of the referenced requests from law enforcement, or that they have failed to provide information in response to any requests. The D'Souza Parties deny the remaining allegations in Paragraph 118. To the extent Paragraph 118 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

119. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 119, and those allegations therefore are denied. The D'Souza Parties further state that they were not involved in any requests to the GBI to investigate ballot fraud. To the extent Paragraph 119 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

120. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 120, and those allegations therefore are denied. The D'Souza Parties further state that they were not involved in any

proceedings with the Arizona Attorney General's Office. To the extent Paragraph 120 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

121. The D'Souza Parties note that the assertions in Paragraph 121 appear to be the opinion of William Barr, such that a response is not required. To the extent a response is required, the D'Souza Parties lack personal knowledge as to the allegations in Paragraph 121, and those allegations therefore are denied. To the extent Paragraph 121 characterizes or quotes Mr. Barr's testimony, Mr. Barr's testimony speaks for itself and the D'Souza Parties deny any allegations inconsistent therewith.. To the extent Paragraph 121 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

122. The D'Souza Parties note that the assertions in Paragraph 122 appear to be the unsupported opinion of Ann Coulter, such that a response is not required. To the extent a response is required, the D'Souza Parties lack personal knowledge as to the allegations in Paragraph 122, and those allegations therefore are denied. To the extent Paragraph 122 characterizes or quotes Ann Coulter's blog, the blog speaks for itself

and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 122 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

123. The D'Souza Parties note that the assertions in Paragraph 123 appear to be the unsupported opinion of Ben Shapiro, such that a response is not required. To the extent a response is required, the D'Souza Parties lack personal knowledge as to the allegations in Paragraph 123, and those allegations therefore are denied. To the extent Paragraph 123 characterizes or quotes Ben Shapiro, his statements speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 123 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

124. The D'Souza Parties deny Paragraph 124. To the extent Paragraph 124 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

125. The D'Souza Parties admit that Mr. D'Souza published a "tweet" on June 13, 2022. The tweet speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny

any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties lack personal knowledge as the allegations in Paragraph 125 that concern statements made by Ms. Engelbrecht and therefore deny those allegations. To the extent Ms. Engelbrecht has made statements, her statements speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 125 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

126.   The D'Souza Parties admit that Mr. D'Souza published "tweets" on June 30 and May 9, 2022. The tweets speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties lack personal knowledge as the allegations in Paragraph 126 that concern statements made by Ms. Engelbrecht and therefore deny those allegations. To the extent Ms. Engelbrecht has made statements, her statements speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 126 that concern Fox News and Newsmax

and the decisions and motivations of those companies, and the D'Souza Parties therefore deny those allegations, and further state that they are not required to respond to the speculation of Mr. Andrews or his counsel. To the extent Paragraph 126 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

127.  The D'Souza Parties deny Paragraph 127.

128.  The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth and deny that their allegations were "baseless." The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive. The D'Souza Parties deny the remaining allegations in Paragraph 128. To the extent Paragraph 128 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

129.  The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth and deny that their allegations were "baseless." The D'Souza Parties admit that they were informed of the

GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever "aware that Mr. Andrews had acted legally." The D'Souza Parties admit that Mr. D'Souza published an episode of his podcast titled *Unlawful Conduct*. The podcast speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that the *Washington Post* published an article about the SEB investigation into Mr. Andrews. The article speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 129.

130. The D'Souza Parties deny Mr. D'Souza "misconstrued the GBI investigation" and they further deny any assertion of misrepresentation, "false portrayal," actual malice, or disregard for the truth. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state they such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever "aware that Mr. Andrews had acted

legally." The D'Souza Parties admit that Mr. D'Souza published an episode of his podcast titled *Unlawful Conduct.* The podcast speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that Mr. D'Souza published an article on Truth Social. The article speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that the *Atlanta Journal Constitution* published an article about the SEB investigation into Mr. Andrews. The article speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 130.

131. The D'Souza Parties lack personal knowledge as the allegations in Paragraph 131 that concern that state of mind of TTV and statements made by Mr. Phillips, and those allegations are therefore denied. To the extent Mr. Phillips made statements, his statements speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that the *Washington Post* published an article about the SEB investigation into Mr. Andrews. The article speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the

remaining allegations in Paragraph 131. To the extent Paragraph 131 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

132.  The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 132 that concern statements made by Mr. Phillips and other defendants, and those allegations are therefore denied.  The D'Souza Parties deny Mr. D'Souza "advanced" any "false claims," and they further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally. The D'Souza Parties deny the remaining allegations in Paragraph 132. To the extent Paragraph 132 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

133.  The D'Souza Parties lack personal knowledge as to the allegations in Paragraph 132 that concern statements and conduct of other defendants, and those allegations are therefore denied.  The D'Souza

Parties deny the remaining allegations in Paragraph 133. To the extent Paragraph 133 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

134.  The D'Souza Parties deny the allegations in Paragraph 134. To the extent Paragraph 134 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

135.  The D'Souza Parties lack personal knowledge as the allegations in Paragraph 135, as they concern statements made by other defendants, and those allegations are therefore denied.  To the extent Paragraph 135 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

136.  The D'Souza Parties deny that Mr. D'Souza has ever "acknowledged" that Mr. Andrews voted lawfully. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever "aware that Mr. Andrews had acted legally" and deny that they promoted the book or the film with knowledge that Mr. Andrews

voted lawfully. The D'Souza Parties further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza published an episode of his podcast titled *Unlawful Conduct.* The podcast speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 136.

137. The D'Souza Parties admit that *2000 Mules*' public box office premiere was the weekend of May 20, 2022. The D'Souza Parties lack personal knowledge as to the accuracy of whether the film was shown in 415 theaters, and therefore deny same. The D'Souza Parties deny that the documentary made more than $1.4 million from the box office, and state that they lack personal knowledge of the accuracy of the "Box Office Mojo" assessments regarding the revenue generated from the film, and those allegations are therefore denied.  To the extent Paragraph 137 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

138. The D'Souza Parties deny the allegations in Paragraph 138. To the extent Paragraph 138 is directed to other defendants, the D'Souza

Parties cannot answer for other defendants and no response is required.

139. The D'Souza Parties deny Mr. D'Souza "reiterated" a "false narrative" and they further deny any inferred assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza appeared on OANN's "Weekly Briefing with Chanel Rion" show. To the extent Paragraph 139 attempts to characterize or quote the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 139.

140. The D'Souza Parties deny Mr. D'Souza made "false statements" and they further deny any inferred assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza appeared on OANN's "Weekly Briefing with Chanel Rion" show. To the extent Paragraph 140 attempts to characterize or quote the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 140.

141. The D'Souza Parties lack personal knowledge of the allegations in

Paragraph 141, and those allegations are therefore denied.

142.    The D'Souza Parties admit that Mr. D'Souza appeared on OANN's *Real America with Dan Ball.* To the extent Paragraph 142 attempts to characterize and summarize the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties further state that they did not provide any footage from the documentary to OANN, and they deny that Mr. Andrews is portrayed in the trailer for the film and state that, to the extent his image appears in the trailer, he is unrecognizable.

143.    The D'Souza Parties admit that Mr. D'Souza appeared on OANN's *Real America with Dan Ball.* To the extent Paragraph 143 attempts to characterize, quote, or summarize the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny that Mr. Andrews is portrayed in the trailer for the film and state that, to the extent his image appears in the trailer, he is unrecognizable.

144.    The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and

therefore they deny that were ever aware that Mr. Andrews had acted legally and deny that they promoted the book or the film with knowledge that Mr. Andrews voted lawfully. The D'Souza Parties further deny that Mr. D'Souza made false statements, and deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza appeared on OANN's *Real America with Dan Ball.* To the extent Paragraph 143 attempts to characterize, quote, or summarize the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. Notably, the D'Souza Parties deny that Mr. D'Souza referenced Mr. Andrews on the show, or otherwise identified him in any way. The D'Souza Parties lack personal knowledge of the allegations in Paragraph 144 regarding Mr. Andrews' allegations of legal voting, and therefore deny those allegations. The D'Souza Parties deny the remaining allegations in Paragraph 144.

145. The D'Souza Parties deny any inference that Mr. D'Souza made false statements, and deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza appeared on KUSI News. To the extent Paragraph 145 attempts to characterize, quote, or summarize the show, the show

speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. Notably, the D'Souza Parties deny that Mr. D'Souza referenced Mr. Andrews on the show, or otherwise identified him in any way. The D'Souza Parties deny the remaining allegations in Paragraph 145.

146.    The D'Souza Parties deny that Mr. D'Souza "continued to lie," any further deny inference that Mr. D'Souza made false statements, and deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza appeared on KUSI News. To the extent Paragraph 146 attempts to characterize, quote, or summarize the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. Notably, the D'Souza Parties deny that Mr. D'Souza referenced Mr. Andrews on the show, or otherwise identified him in any way. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally and deny that they promoted the book or the film with

knowledge that Mr. Andrews voted lawfully. The D'Souza Parties

deny the remaining allegations in Paragraph 145.

147.    The D'Souza Parties deny any implied assertion of misrepresentation,

actual malice, or disregard for the truth. The D'Souza Parties admit

that Mr. D'Souza has posted on Truth Social. Those posts speak for

themselves, and the D'Souza Parties deny any allegations inconsistent

therewith. Notably, the D'Souza Parties deny that Mr. D'Souza

"embedded" or had ever otherwise published a video featuring an

unblurred image of Mr. Andrews. The D'Souza Parties deny the

remaining allegations in Paragraph 147.

148.    The D'Souza Parties admit that on June 18, 2022, a Twitter user

retweeted a video of the SEB presentation. To the extent Paragraph

148 attempts to characterize the tweet, it speaks for itself and the

D'Souza Parties deny any allegations inconsistent therewith. The

D'Souza Parties admit that Mr. D'Souza responded in his own tweet.

To the extent Paragraph 148 attempts to characterize the tweet, it

speaks for itself and the D'Souza Parties deny any allegations

inconsistent therewith. The D'Souza Parties admit that they were

informed of the GBI's investigation and clearing of Mr. Andrews. The

D'Souza Parties state that such investigation appeared to be based

primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally and deny that they promoted the book or the film with knowledge that Mr. Andrews voted lawfully, and further deny that Mr. D'Souza made "baseless" accusations. The D'Souza Parties deny the remaining allegations in Paragraph 148.

149. The D'Souza Parties lack personal knowledge as the allegations in Paragraph 149, as they concern statements made by Ms. Engelbrecht and Mr. Phillips, and those allegations are therefore denied. To the extent other defendants made statements in the media, their statements speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 149 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

150. The D'Souza Parties admit that Mr. D'Souza published an episode of his podcast on June 29, 2022. The podcast speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties further deny any characterization that he is "exposed to liability" or that he published unblurred images of Mr. Andrews. The D'Souza Parties deny the remaining allegations in Paragraph 150.

To the extent Paragraph 150 refers to conduct of other defendants, the D'Souza Parties lack personal knowledge as the allegations, and those allegations are therefore denied. To the extent Paragraph 150 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

151.   The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally and deny that they promoted the book or the film with knowledge that Mr. Andrews voted lawfully. The D'Souza Parties deny the remaining allegations in Paragraph 151. To the extent Paragraph 151 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

152.   The D'Souza Parties lack personal knowledge of the allegations in Paragraph 152, and therefore those allegations are denied.

153.   To the extent Paragraph 153 concerns the conduct of other defendants, the D'Souza Parties lack personal knowledge of the allegations, and therefore those allegations are denied. To the extent Paragraph 153

concerns the number of times various media appearances have been viewed, the D'Souza Parties lack personal knowledge of the allegations, and therefore those allegations are denied. The D'Souza Parties deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny that they ever published a video featuring an unblurred image of Mr. Andrews or that they ever personally accused him of misconduct. The D'Souza Parties deny the remaining allegations in Paragraph 153. To the extent Paragraph 153 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

154.    The D'Souza Parties lack personal knowledge of the allegations in Paragraph 154, and therefore those allegations are denied.

155.    To the extent Paragraph 155 concerns the conduct of other defendants, including what they have published on their websites, the D'Souza Parties lack personal knowledge of the allegations, and therefore those allegations are denied. The D'Souza Parties deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny that they ever published a video featuring an unblurred image of Mr. Andrews or that they ever personally accused him of misconduct. The D'Souza Parties deny the

remaining allegations in Paragraph 155. To the extent Paragraph 155 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

156. The D'Souza Parties lack personal knowledge of the allegations in Paragraph 156, and therefore those allegations are denied.

157. The D'Souza Parties lack personal knowledge of the allegations in Paragraph 157, and therefore those allegations are denied.

158. The D'Souza Parties admit receiving a demand letter from Mr. Andrews' attorneys. The letter speaks for itself and the D'Souza Parties deny allegations inconsistent therewith. The D'Souza Parties deny that the letter had any basis, or that they were required to comply with it. The D'Souza Parties deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 158. To the extent Paragraph 158 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

159. The D'Souza Parties deny that they have published any "defamatory material" and deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny that Mr.

Andrews' demand had any basis, or that they were required to comply with it. The D'Souza Parties admit they have not retracted the documentary or the book. The D'Souza Parties deny the remaining allegations in Paragraph 159. To the extent Paragraph 159 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

160. The D'Souza Parties deny that they have made false or defamatory statements and further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny that they have made any statements "about Mr. Andrews." To the extent Paragraph 60 asserts that the D'Souza Parties engaged in promotion of the film and book, such promotion speaks for itself. The D'Souza Parties deny the remaining allegations in Paragraph 160. To the extent Paragraph 160 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

161. The D'Souza Parties deny the allegations in Paragraph 161. To the extent Paragraph 161 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

162.   Paragraph 162 concerns the conduct of other defendants. The D'Souza
       Parties lack personal knowledge of the allegations, and therefore those
       allegations are denied. To the extent Paragraph 162 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

163.   The D'Souza Parties state that Paragraph 163 attempts to quote and
       characterize the *2000 Mules* book. The book speaks for itself, and the
       D'Souza Parties deny any allegations inconsistent therewith. The
       D'Souza Parties further deny that they have made false or defamatory
       statements   and   further   deny   any   implied   assertion   of
       misrepresentation, actual malice, or disregard for the truth.   The
       D'Souza Parties deny that Mr. Andrews is portrayed in the book, and
       state that, to the extent his image appears in the book, he is
       unrecognizable. The D'Souza Parties deny the remaining allegations
       in Paragraph 163. To the extent Paragraph 163 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

164.   Paragraph 164 concerns the knowledge of other defendants. The
       D'Souza Parties lack personal knowledge of the allegations, and
       therefore those allegations are denied. To the extent Paragraph 164 is

directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

165.    The D'Souza Parties admit that the book remains available for sale. The book speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties further deny that they have made false or defamatory statements and further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth.   The D'Souza Parties deny that Mr. Andrews is portrayed in the book, and state that, to the extent his image appears in the book, he is unrecognizable. The D'Souza Parties deny the remaining allegations in Paragraph 165.

166.    The D'Souza Parties admit receiving a demand letter from Mr. Andrews' attorneys. The letter speaks for itself and the D'Souza Parties deny allegations inconsistent therewith. The D'Souza Parties deny that the letter had any basis, or that they were required to comply with it. The D'Souza Parties deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties admit that Mr. D'Souza has posted on Twitter and Truth Social. Those posts speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza

Parties deny the remaining allegations in Paragraph 166.

167.   The D'Souza Parties admit that Mr. D'Souza has posted a video on Rumble and appeared on the *Charlie Kirk Show.* Those videos speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith.

168.   The D'Souza Parties admit that Mr. D'Souza appeared on OANN's *Real America with Dan Ball.* To the extent Paragraph 168 attempts to characterize and summarize the show, the show speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that Mr. D'Souza has a podcast, that he discussed the film in a November episode. To the extent Paragraph 168 characterizes or quotes the podcast, the podcast speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that Mr. D'Souza posted a video on Rumble. The post speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny that Mr. D'Souza "repeated" a "false narrative," and further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 168.

169.   The D'Souza Parties deny the allegations in Paragraph 169. To the extent Paragraph 169 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

170.    The D'Souza Parties deny the allegations in Paragraph 170. To the extent Paragraph 170 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

171.   The D'Souza Parties deny the allegations in Paragraph 171. To the extent Paragraph 171 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

172.   The D'Souza Parties deny that they rented out any theaters or that they have sold or are selling DVDs of the film. To the extent that Paragraph 172 asserts or infers that Mr. Andrews was in the film, the D'Souza Parties deny that Mr. Andrews is portrayed in the film, and state that, to the extent his image appears in the film, he is unrecognizable. The D'Souza Parties deny that they told "lies" about Mr. Andrews, and further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. The

D'Souza Parties admit that the documentary was released on May 20, 2022, and admit that Mr. D'Souza offered streaming of the film through his subscription-based account on locals.com. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews. The D'Souza Parties state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally and deny that they released or promoted the book or the film with knowledge that Mr. Andrews voted lawfully. The D'Souza Parties deny the remaining allegations in Paragraph 172. To the extent Paragraph 172 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

173. To the extent Paragraph 173 concerns the knowledge of other defendants, the D'Souza Parties lack personal knowledge of the allegations, and therefore those allegations are denied. To the extent Paragraph 173 concerns articles printed by non-parties, the D'Souza Parties lack personal knowledge of those articles, and therefore those allegations are denied. To the extent Paragraph 173 characterizes or quotes those articles, they speak for themselves, and The D'Souza

Parties deny any allegations inconsistent therewith. To the extent Paragraph 173 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

174. Paragraph 174 attempts to characterize and quote the 2000mules.com website. The website speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith.

175. Paragraph 175 attempts to characterize and quote the 2000mules.com website. The website speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny that Mr. D'Souza or D'Souza Media has sold the book, but admit that it is available through Barnes & Noble and Amazon. The D'Souza Parties do not know what "substantial revenue" means and therefore deny they have received "substantial revenue" from the book. The D'Souza Parties lack personal knowledge as to exactly what price the book has been listed and therefore deny those allegations. To the extent Paragraph 175 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

176. Paragraph 176 conflates the defendants in this case. The D'Souza Parties admit that Mr. D'Souza receives income from D'Souza Media. The D'Souza Parties deny that Mr. D'Souza receives income from

TTV. To the extent Paragraph 176 concerns the relationship between TTV, Ms. Engelbrecht, and Mr. Phillips, the D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 176 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

177. Paragraph 177 concerns the relationship between TTV, Ms. Engelbrecht, and Mr. Phillips. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 177 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

178. Paragraph 178 concerns the relationship between TTV, Ms. Engelbrecht, Mr. Phillips, and non-party OPSEC Group, LLC. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 178 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

179. Paragraph 179 concerns allegations against Mr. Phillips. The D'Souza Parties lack personal knowledge of the allegations, and therefore they

are denied. To the extent Paragraph 179 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

180.   Paragraph 180 concerns allegations against TTV and Ms. Engelbrecht. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. The D'Souza Parties further state that Paragraph 180 appears to consist of nothing more than the opinions of politically-motivated authors, to which no response is required. To the extent Paragraph 180 contains allegations that must be admitted or denied, the D'Souza Parties deny Paragraph 180. To the extent Paragraph 180 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

181.   The D'Souza Parties admit that the book and the film remain available. To the extent Paragraph 181 infers that the D'Souza Parties were obligated to retract the book or the film, they expressly deny that Mr. Andrews was identifiable in the documentary or the book, that the documentary or the book were defamatory, or that Mr. Andrews had any basis to demand the retraction of the documentary or the book. To the extent Paragraph 181 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 181. To

the extent Paragraph 181 makes allegations against other defendants, the D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 181 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

182.  To the extent Paragraph 182 is directed at the D'Souza Parties, the D'Souza Parties deny the allegations of Paragraph 182. To the extent Paragraph 182 makes allegations against other defendants, the D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 182 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

183.  To the extent Paragraph 183 attempts to characterize the *2000 Mules* film, the film speaks for itself, and the D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties deny that they told "lies" about Mr. Andrews, and further deny any implied assertion of misrepresentation, actual malice, or disregard for the truth. To the extent Paragraph 183 is directed at the D'Souza Parties, the D'Souza Parties deny the remaining allegations of Paragraph 183. To the extent Paragraph 183 makes allegations against other defendants, the

D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 183 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

184. Paragraph 184 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. The D'Souza Parties further state that Paragraph 184 appears to rely on court documents, which speak for themselves, and the D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 184 contains allegations that must be admitted or denied, the D'Souza Parties deny Paragraph 184. To the extent Paragraph 184 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

185. Paragraph 185 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. The D'Souza Parties further state that Paragraph 185 appears to rely on the politically-motivated opinions of third-parties, to which no response is required. To the extent Paragraph 185 contains allegations that must be admitted or denied,

the D'Souza Parties deny Paragraph 185. To the extent Paragraph 185 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

186.   Paragraph 186 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. The D'Souza Parties further state that Paragraph 186 appears to consist of the politically-motivated opinions of third-parties, to which no response is required. To the extent Paragraph 186 contains allegations that must be admitted or denied, the D'Souza Parties deny Paragraph 186. To the extent Paragraph 186 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

187.   Paragraph 187 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 187 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

188.   The D'Souza Defendants admit Paragraph 188, but they note that the 2000Mules.com website is no longer active.

189.   The D'Souza Parties deny Paragraph 189. The D'Souza Parties further

state that, to the extent that Paragraph 189 appears to consist of the opinion of Mr. Andrews or his counsel, and the politically-motivated opinions of third-parties, no response is required.

190.   To the extent Paragraph 190 attempts to characterize Mr. D'Souza's tweet, the D'Souza Parties admit that Mr. D'Souza made a tweet in September 2016. The tweet speaks for itself, and Mr. D'Souza denies any allegations inconsistent therewith. The D'Souza Parties further state that, to the extent that Paragraph 190 appears to consist of the opinion of Mr. Andrews or his counsel, and the politically-motivated opinions of third-parties, no response is required. The D'Souza Parties further state that the allegations in Paragraph 190 bear no relationship to the dispute in this case. The D'Souza Parties deny the remaining allegations in Paragraph 190.

191.   The D'Souza Parties admit that Mr. D'Souza received an advance to write the book, but they deny that he "continues to profit from it" and deny that D'Souza Media has received any income in any manner from the book. To the extent Paragraph 191 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

192.   The D'Souza Parties deny that the film and book have been

"discredited" and deny that the inference that the primary motivation of releasing the film and book was an "attempt to profit." The D'Souza Parties deny the remaining allegations in Paragraph 192. To the extent Paragraph 192 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

193.   The D'Souza Parties deny the allegations in Paragraph 193. To the extent Paragraph 193 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

194.   Paragraph 194 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 194 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

195.   Paragraph 195 makes allegations against other defendants. The D'Souza Parties lack personal knowledge of the allegations, and therefore they are denied. To the extent Paragraph 195 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

196.   The D'Souza Parties admit that the *2000 Mules* film and various promotional materials are still available. The D'Souza Parties lack personal knowledge as to the purported conduct of other defendants and regarding the allegations regarding the asserted number of aggregate views of "programs" as asserted by Mr. Andrews, and they therefore deny those allegations. To the extent Paragraph 196 is directed at the D'Souza Parties, they deny the remaining allegations in Paragraph 196 and expressly deny any allegations of "misconduct" and "false claims."  To the extent Paragraph 196 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

197.   The D'Souza Parties deny the allegations in Paragraph 197. The D'Souza Parties expressly deny any inference that Mr. Andrews is portrayed in the documentary or the book, and the D'Souza Parties deny that they made and "false accusations" or placed Mr. Andrews in a "false light." To the extent Paragraph 197 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

198.   The D'Souza Parties deny the allegations in Paragraph 198. The D'Souza Parties expressly deny any inference that Mr. Andrews is

portrayed in the documentary or the book, or that the D'Souza Defendants are responsible for Mr. Andrews' identification or the actions of any third parties. To the extent Paragraph 198 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

199.   To the extent Paragraph 199 concerns the statements of Arizona lawmakers or any responses thereto, The D'Souza Parties lack personal knowledge, and they therefore deny those allegations. To the extent Paragraph 199 attempts to characterize Mr. D'Souza's tweet, the D'Souza Parties admit that Mr. D'Souza made a tweet in November 2022. The tweet speaks for itself, and Mr. D'Souza denies any allegations inconsistent therewith. The D'Souza Parties deny the remaining allegations in Paragraph 199, and expressly deny any inference that they "spurred" or otherwise encouraged anyone to harm Mr. Andrews or anyone else. The D'Souza Parties expressly deny that they are responsible for Mr. Andrews' identification or the actions of any third parties. To the extent Paragraph 199 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

200.   To the extent Paragraph 200 attempts to characterize Mr. D'Souza's

tweet, the D'Souza Parties admit that Mr. D'Souza made a tweet in August 2022. The tweet speaks for itself, and Mr. D'Souza denies any allegations inconsistent therewith, including any inference that he promoted any threats against Mr. Andrews. To the extent Paragraph 200 makes allegations concerning former President Trump or TTV, the D'Souza Parties lack personal knowledge and therefore deny those allegations. The D'Souza Parties expressly deny that they are responsible for Mr. Andrews' identification or the actions of any third parties. The D'Souza Parties deny the remaining allegations in Paragraph 200. To the extent Paragraph 200 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

201.  Paragraph 201 makes allegations concerning "numerous social media users." The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they are responsible for Mr. Andrews' identification or the actions of any third parties, and expressly deny any inference that Mr. D'Souza promoted any threats against Mr. Andrews. The D'Souza Parties deny the remaining allegations in Paragraph 201.

202. Paragraph 202 makes allegations concerning the posts of "numerous social media users." The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they are responsible for Mr. Andrews' identification or the actions of any third parties, and expressly deny any inference that Mr. D'Souza promoted any threats against Mr. Andrews. The D'Souza Parties deny the remaining allegations in Paragraph 202.

203. Paragraph 203 makes allegations concerning the posts of a third-party social media user. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they are responsible for Mr. Andrews' identification or the actions of any third parties, and expressly deny any inference that Mr. D'Souza promoted any threats against Mr. Andrews. The D'Souza Parties deny the remaining allegations in Paragraph 203.

204. Paragraph 204 makes allegations concerning purported statistics on the frequency of use of the term "ballot mules." The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.

205. Paragraph 205 makes allegations concerning the posts of a nonparty social media user. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.

206. Paragraph 206 makes allegations concerning the posts of a nonparty social media users. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.

207. Paragraph 207 makes allegations concerning a website operated by a nonparty. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.

208. Paragraph 208 makes allegations concerning the posts of nonparty social media users. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. The D'Souza Parties deny the remaining allegations in Paragraph 208.

209. Paragraph 209 makes allegations concerning the posts and comments of nonparty social media users. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. The D'Souza Parties deny the remaining allegations in Paragraph 209.

210. Paragraph 210 makes allegations concerning the posts and comments of nonparty social media users. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret

that any individuals choose to engage in such behavior. The D'Souza Parties deny the remaining allegations in Paragraph 210.

211. Paragraph 211 makes allegations concerning the posts and comments of nonparty social media users. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. The D'Souza Parties deny the remaining allegations in Paragraph 211.

212. The D'Souza Parties lack personal knowledge of the allegations in Paragraph 212 and therefore deny those allegations. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of

violence or any actual violence, and regret that any individuals choose to engage in such behavior.

213.   To the extent Paragraph 213 is directed the D'Souza Parties, they deny Paragraph 213. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. To the extent Paragraph 213 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

214.   To the extent Paragraph 214 is directed the D'Souza Parties, they deny Paragraph 214. The D'Souza Parties expressly deny that they have published any "false and defamatory accusations," expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against

anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. To the extent Paragraph 214 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

215. To the extent Paragraph 215 is directed the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. To the extent Paragraph 215 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

216. To the extent Paragraph 216 is directed the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties expressly deny that they ever identified

Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. To the extent Paragraph 216 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

217.   To the extent Paragraph 217 is directed at the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties condemn any threats of violence or any actual violence, and regret that any individuals choose to engage in such behavior. To the extent Paragraph 217 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

218.   To the extent Paragraph 218 is directed at the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 218 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

219.   To the extent Paragraph 219 is directed at the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties further note that Paragraph 219 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. The D'Souza Parties expressly deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, they expressly deny

that they are responsible for Mr. Andrews' identification, and they expressly deny any inference that Mr. D'Souza promoted any threats against anyone, including Mr. Andrews. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 219 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

220.   To the extent Paragraph 220 is directed at the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties further note that Paragraph 220 consists largely of the politically-motivated opinions in an opinion/editorial piece, to which no response is required. The D'Souza Parties further expressly deny any intent to intimidate any legitimate voters, including those who legally drop off multiple ballots. To the extent Paragraph 220 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

221.   To the extent Paragraph 221 attempts to characterize the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 221 concerns Mr. Andrews' feelings, the D'Souza Parties lack any personal knowledge

of the allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to use "racist stereotypes" in the film, and regret that Mr. Andrews perceives (or asserts to perceive) the use of such stereotypes. To the extent Paragraph 221 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

222. To the extent Paragraph 222 attempts to characterize the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. To the extent Paragraph 222 concerns Mr. Andrews' feelings, the D'Souza Parties lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to use "racist stereotypes" in the film, and regret that Mr. Andrews perceives (or asserts to perceive) the use of such stereotypes. To the extent Paragraph 222 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

223. Paragraph 223 concerns Mr. Andrews' feelings and state of mind, and the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his

right to vote. To the extent Paragraph 223 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

224.  The D'Souza Parties deny Paragraph 224, and expressly deny that they have engaged in a "defamation campaign" or a "method of voter intimidation." The D'Souza Parties further note that Paragraph 224 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 224 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

225.  Paragraph 225 makes allegations concerning the posts and comments of Defendant TTV. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.  To the extent Paragraph 225 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

226.  The D'Souza Parties admit Paragraph 226.

227.  To the extent Paragraph 227 is directed at the D'Souza Parties, they admit that the 2000 Mules book was released. They deny engaging in

a "false and defamatory narrative" in the book or elsewhere. The D'Souza Parties deny any remaining allegations in Paragraph 227. To the extent Paragraph 227 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

228.   To the extent Paragraph 228 is directed at the D'Souza Parties, they lack any personal knowledge of the allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate anyone attempting to lawfully vote. To the extent Paragraph 228 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

229.   To the extent Paragraph 229 is directed at the D'Souza Parties, they deny the allegations. The D'Souza Parties further note that Paragraph 229 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 229 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

230.   Paragraph 230 concerns Mr. Andrews' feelings and state of mind, and

the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 230 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

231.   Paragraph 231 concerns Mr. Andrews' feelings and state of mind, as well as characterizations of nonparty social media posts, and the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 231 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

232.   Paragraph 232 concerns Mr. Andrews' feelings and state of mind, and the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 232 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

233. Paragraph 233 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family. The D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 233 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

234. To the extent Paragraph 234 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties deny that they engage in any "narrative" that would or should reasonably result in the alleged fear described by Mr. Andrews. The D'Souza Parties further expressly deny calling for Mr. Andrews' arrest, and deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 234 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

235. To the extent Paragraph 235 concerns the alleged actions, feelings and state of mind of Mr. Andrews' son, the D'Souza Parties lack any

personal knowledge of these allegations, which are therefore denied. The D'Souza Parties deny that they engage in any "narrative" that would or should reasonably result in the alleged fear described by Mr. Andrews or his son. To the extent Paragraph 235 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

236. Paragraph 236 concerns the alleged actions, feelings and state of mind of Mr. Andrews. The D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote, and deny that they engage in any narrative or speech that would or should reasonably result in the alleged fear described by Mr. Andrews or his son. To the extent Paragraph 236 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

237. Paragraph 237 concerns the alleged actions, feelings and state of mind of Mr. Andrews' wife. The D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or his wife, or to interfere with their right to vote, and deny

that they engage in any narrative or speech that would or should reasonably result in the alleged fear described by Mr. Andrews or his wife. To the extent Paragraph 237 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

238.   To the extent Paragraph 238 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny that they ever identified Mr. Andrews or published his unblurred, they expressly deny that they are responsible for Mr. Andrews' identification. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or his family, or to interfere with their right to vote, and deny that they engage in any narrative or speech that would or should reasonably result in the alleged fear described by Mr. Andrews or his family.  To the extent Paragraph 238 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

239.   To the extent Paragraph 239 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack

any personal knowledge of these allegations, which are therefore denied. The D'Souza Parties further expressly deny that they ever identified Mr. Andrews or published his unblurred, they expressly deny that they are responsible for Mr. Andrews' identification. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or his family, or to interfere with their right to vote, and deny that they engage in any narrative or speech that would or should reasonably result in the alleged fear described by Mr. Andrews or his family.  To the extent Paragraph 239 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

240. To the extent Paragraph 240 is directed at the D'Souza Parties, they deny the allegations. The D'Souza Parties further note that Paragraph 240 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or to interfere with his right to vote. To the extent Paragraph 240 concerns allegations against TTV or Ms. Engelbrecht regarding their statements, the D'Souza Parties lack personal knowledge of these allegations and therefore deny the allegations. To the extent Paragraph

240 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

241.    To the extent Paragraph 241 is directed at the D'Souza Parties, they deny the allegations. The D'Souza Parties further note that Paragraph 241 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. To the extent Paragraph 241 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

242.    To the extent Paragraph 242 is directed at the D'Souza Parties, they deny the allegations. They expressly deny purporting a "false" theory, expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification. The D'Souza Parties further expressly deny any intent to intimidate Mr. Andrews or his family, or to interfere with their right to vote, and deny that they engage in any narrative or speech that would or should reasonably result in the alleged fear described by Mr. Andrews or his family.  The D'Souza Parties further note that Paragraph 242 consists largely of the conjecture and speculation of Mr. Andrews or his counsel, to which no response is required. To the extent Paragraph 242 concerns the alleged actions,

feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 242 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

243. To the extent Paragraph 243 is directed at the D'Souza Parties, they deny the allegations. They expressly deny invading Mr. Andrews' privacy, expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are responsible for Mr. Andrews' identification. To the extent Paragraph 243 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 243 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

244. To the extent Paragraph 244 is directed at the D'Souza Parties, they deny the allegations. They expressly deny invading Mr. Andrews' privacy, expressly deny that they ever identified Mr. Andrews or published his unblurred image, they expressly deny that they are

responsible for Mr. Andrews' identification. To the extent Paragraph 244 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, and to the extent Paragraph 244 concerns the interactions between Mr. Andrews and reporters, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 244 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

245. To the extent Paragraph 245 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 245 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

246. To the extent Paragraph 246 is directed at the D'Souza Parties, they deny the allegations. They expressly deny invading Mr. Andrews' privacy, expressly deny placing Mr. Andrews in a false light, expressly deny that they ever identified Mr. Andrews or published his unblurred image anywhere, and expressly deny that they are responsible for Mr. Andrews' identification. To the extent Paragraph

246 concerns the alleged actions, feelings and state of mind of Mr. Andrews and his family, and to the extent Paragraph 246 concerns the interactions between Mr. Andrews and reporters, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 246 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

247.   To the extent Paragraph 247 is directed at the D'Souza Parties, they deny the allegations. They expressly deny tarnishing Mr. Andrews' reputation or accusing him of criminal conduct or election fraud. They expressly deny that they ever identified Mr. Andrews or published his unblurred image anywhere, and expressly deny that they are responsible for Mr. Andrews' identification. To the extent Paragraph 247 concerns the alleged employment, actions, feelings and state of mind of Mr. Andrews, the D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 247 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

248.   Paragraph 248 concerns the alleged feelings and state of mind of Mr.

Andrews and his wife. The D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 248 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

249. Paragraph 249 concerns the alleged feelings and state of mind of Mr. Andrews and his wife. The D'Souza Parties lack any personal knowledge of these allegations, which are therefore denied. To the extent Paragraph 249 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

250. To the extent Paragraph 250 is directed at the D'Souza Parties, they deny the allegations. They expressly deny tarnishing Mr. Andrews' reputation or accusing him of criminal conduct or election fraud. They expressly deny that they ever identified Mr. Andrews or published his unblurred image anywhere, and expressly deny that they are responsible for Mr. Andrews' identification. The D'Souza Parties admit to the inference that Mr. Andrews sent a retraction demand, but they expressly deny that Mr. Andrews had any basis to demand the retraction of the documentary or the book. The D'Souza Parties deny

the remaining allegations in Paragraph 250. To the extent Paragraph 250 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

251. To the extent Paragraph 251 is directed at the D'Souza Parties, they deny the allegations, but state that they are not contesting personal jurisdiction in this case.

252. The D'Souza Parties admit that Mr. D'Souza made an appearance to promote *2000 Mules* in Georgia, that he has occasionally visited the state, and that a local radio station plays some of his podcasts. The D'Souza Parties deny that they have sufficient contacts with the state for the exercise of general jurisdiction, and they deny the remaining allegations in Paragraph 252. Nonetheless, the D'Souza Parties state that they are not contesting personal jurisdiction in this case.

253. Paragraph 253 makes allegations concerning a different defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 253 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

254. Paragraph 254 makes allegations concerning a different defendant. The D'Souza Parties lack personal knowledge of those allegations and

therefore deny those allegations. To the extent Paragraph 254 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

255. Paragraph 255 makes allegations concerning a different defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 255 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

256. Paragraph 256 makes allegations concerning a different defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 256 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

257. Paragraph 257 makes allegations concerning a different defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 257 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## CLAIMS FOR RELIEF

## COUNT I: CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(3)

258.   Paragraph 258 does not require a response. The D'Souza Parties incorporate their prior responses herein.

259.   Paragraph 259 recites a statute, to which no response is required.

260.   To the extent Paragraph 260 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 260 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

261.   To the extent Paragraph 261 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 261 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

262.   To the extent Paragraph 262 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 262 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

263.   To the extent Paragraph 263 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 263 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

Case 1:22-cv-04259-SDG   Document 111   Filed 10/23/23   Page 95 of 120

and no response is required.

264. To the extent Paragraph 264 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 264 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

265. To the extent Paragraph 265 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 265 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

266. To the extent Paragraph 266 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 266 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

267. To the extent Paragraph 267 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 267 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

268. To the extent Paragraph 268 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 268 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

## COUNT II: VIOLATION OF 52 U.S.C. § 10307(B)

269.    Paragraph 269 does not require a response. The D'Souza Parties incorporate their prior responses herein.

270.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.  To the extent any allegations require a response, the D'Souza Parties deny the allegations.

271.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.  To the extent any allegations require a response, the D'Souza Parties deny the allegations.

272.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.  To the extent any allegations require a response, the D'Souza Parties deny the allegations.

273.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.  To the extent any allegations require a response, the D'Souza Parties deny the allegations.

274.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.   To the extent any allegations require a response, the D'Souza Parties deny the allegations.

275.    The Court's September 30, 2023, Opinion and Order (Dkt. No. 106) dismissed Count II of the Amended Complaint as to the D'Souza Parties.   To the extent any allegations require a response, the D'Souza Parties deny the allegations.

## COUNT III: DEFAMATION/DEFAMATION PER SE

276.    Paragraph 276 does not require a response. The D'Souza Parties incorporate their prior responses herein.

277.    Paragraph 277 is a legal conclusion to which no response is required. To the extent a response is required, the D'Souza Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 277 of the Amended Complaint, and the allegations therefore stand denied pursuant to Fed. R. Civ. P. 8(b)(5).

278.    To the extent Paragraph 278 is directed the D'Souza Parties, they deny the allegations. To the extent Paragraph 278 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

279.   To the extent Paragraph 279 is directed the D'Souza Parties, they
       deny the allegations. To the extent Paragraph 279 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

280.   To the extent Paragraph 280 is directed at the D'Souza Parties, they
       deny the allegations. To the extent Paragraph 280 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

281.   To the extent Paragraph 281 is directed at the D'Souza Parties, they
       deny the allegations. To the extent Paragraph 281 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

282.   To the extent Paragraph 282 is directed at the D'Souza Parties, they
       deny the allegations. To the extent Paragraph 282 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

283.   To the extent Paragraph 283 is directed at the D'Souza Parties, they
       deny the allegations. To the extent Paragraph 283 is directed to other
       defendants, the D'Souza Parties cannot answer for other defendants
       and no response is required.

284.    Paragraph 284 is a legal conclusion to which no response is required. To the extent a response is required, the D'Souza Parties deny the allegations. To the extent Paragraph 284 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

285.    To the extent Paragraph 285 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 285 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

286.    To the extent Paragraph 286 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 286 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

287.    To the extent Paragraph 287 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 287 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

288.    To the extent Paragraph 288 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 288 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

289.   To the extent Paragraph 289 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 289 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

290.   To the extent Paragraph 290 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 290 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

291.   To the extent Paragraph 291 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 291 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

292.   To the extent Paragraph 292 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 292 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

293.   To the extent Paragraph 293 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 293 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

294.  To the extent Paragraph 294 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 294 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## COUNT IV: INVASION OF PRIVACY BY FALSE LIGHT

295.  Paragraph 295 does not require a response. The D'Souza Parties incorporate their prior responses herein.

296.  Paragraph 296 is a legal conclusion to which no response is required. To the extent a response is required, the D'Souza Parties lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296 of the Amended Complaint, and the allegations therefore stand denied pursuant to Fed. R. Civ. P. 8(b)(5).

297.  To the extent Paragraph 297 is directed the D'Souza Parties, they deny the allegations. To the extent Paragraph 297 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

298.  To the extent Paragraph 298 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 298 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

299.   To the extent Paragraph 299 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 299 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

300.   To the extent Paragraph 300 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 300 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

301.   To the extent Paragraph 301 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 301 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

302.   To the extent Paragraph 302 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 302 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

303.   To the extent Paragraph 303 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 303 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

304. To the extent Paragraph 304 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 304 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

305. To the extent Paragraph 305 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 305 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

306. To the extent Paragraph 306 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 306 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## COUNT V: INVASION OF PRIVACY BY APPROPRIATION OF LIKENESS

307. Paragraph 307 does not require a response. The D'Souza Parties incorporate their prior responses herein.

308. Paragraph 308 is a legal conclusion to which no response is required. To the extent a response is required, the D'Souza Parties lack knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 308 of the Amended Complaint, and the allegations therefore stand denied pursuant to Fed. R. Civ. P. 8(b)(5).

309. To the extent Paragraph 309 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 309 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

310. To the extent Paragraph 310 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 310 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

311. To the extent Paragraph 311 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 311 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

312. To the extent Paragraph 312 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 312 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

313. To the extent Paragraph 313 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 313 is directed to other

defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

314. To the extent Paragraph 314 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 314 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## COUNT VI: CIVIL CONSPRIACY

315. Paragraph 315 does not require a response. The D'Souza Parties incorporate their prior responses herein.

316. To the extent Paragraph 316 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 316 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

317. To the extent Paragraph 317 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 317 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

318. To the extent Paragraph 318 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 318 is directed to other defendants, the D'Souza Parties cannot answer for other defendants

and no response is required.

319. To the extent Paragraph 319 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 319 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## COUNT VII: PUNITIVE DAMAGES

320. Paragraph 320 does not require a response. The D'Souza Parties incorporate their prior responses herein.

321. To the extent Paragraph 321 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 321 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

322. To the extent Paragraph 322 is directed at the D'Souza Parties, they deny the allegations. To the extent Paragraph 322 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

## ANSWER TO SUPPLEMENTAL COMPLAINT

## INTRODUCTION

1.  The D'Souza Parties deny that Mr. Andrews is portrayed in the film, the book, or in any promotion appearances in which the D'Souza Parties were involved, and state that, to the extent his image appears in the documentary or the book, he is unrecognizable. The D'Souza Parties further deny that they "falsely accused" Mr. Andrews. To the extent Paragraph 1 characterizes the film, the film speaks for itself, and The D'Souza Parties deny any allegations inconsistent therewith. The D'Souza Parties admit that the film grossed more than $1 million, and deny the remaining allegations in Paragraph 1. To the extent Paragraph 1 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

2.  To the extent Paragraph 2 is directed at the D'Souza Parties, they deny the allegations. The D'Souza Parties expressly deny that they "circulated a false narrative," deny that they ever identified Mr. Andrews or published his unblurred image or an unblurred image of his tag, deny that they are responsible for Mr. Andrews' identification, and deny that they have harmed Mr. Andrews. The D'Souza Parties deny the remaining allegations in Paragraph 2. To the extent

Paragraph 2 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

3.      No response is required in response to Paragraph 3.

4.      To the extent Paragraph 4 is directed at the D'Souza Parties, they expressly deny that they engaged in a "lie" or circulated a false "narrative," deny that Mr. Andrews was identified in the documentary or the book, deny they ever published his unblurred image, deny that they are responsible for Mr. Andrews' identification, and deny that they have harmed Mr. Andrews. The D'Souza Parties admit that Mr. Andrews sent a retraction demand, but they expressly deny that Mr. Andrews was identifiable in the documentary or the book, or that he had any basis to demand the retraction of the documentary or the book. The D'Souza Parties admit that they were informed of the GBI's investigation and clearing of Mr. Andrews, but state that such investigation appeared to be based primarily on an interview with Mr. Andrews and therefore was not truly conclusive, and therefore they deny that were ever aware that Mr. Andrews had acted legally. The D'Souza Parties deny any assertion of misrepresentation, actual malice, or disregard for the truth. The D'Souza Parties deny the remaining allegations in Paragraph 4. To the extent Paragraph 4 is

directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

5.      The D'Souza Parties deny the allegations in Paragraph 5. To the extent Paragraph 5 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

6.      Paragraph 6 makes allegations concerning the posts, comments, and statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 6 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

7.      Paragraph 7 makes allegations concerning the posts, comments, and statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 7 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

8.      No response is required in response to Paragraph 8. The D'Souza Parties incorporate their prior statements herein.

9.      No response is required in response to Paragraph 9. The D'Souza Parties incorporate their prior statements herein.

10.     Paragraph 10 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations.  To the extent Paragraph 7 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

11.     Paragraph 11 makes allegations concerning the posts, comments, and statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 11 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

12.     Paragraph 12 makes allegations concerning the statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 12 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

13.     Paragraph 13 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those

allegations and therefore deny those allegations. To the extent Paragraph 13 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

14. Paragraph 14 makes allegations concerning the statements of another defendant and media coverage of those statements. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 14 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

15. Paragraph 15 makes allegations concerning the statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 15 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

16. The D'Souza Parties deny the allegations in Paragraph 16, and state that the referenced website is not owned, controlled or authored by them. To the extent Paragraph 16 makes allegations concerning the statements of other defendants, the D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 16 is directed to other defendants, the

D'Souza Parties cannot answer for other defendants and no response is required.

17.     Paragraph 17 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 17 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

18.     Paragraph 18 makes allegations concerning the statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 18 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

19.     Paragraph 19 makes allegations concerning the statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 19 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

20.     Paragraph 20 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent

Paragraph 20 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

21. Paragraph 21 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 21 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

22. The D'Souza Parties deny the allegations in Paragraph 22, and state that the referenced website is not owned, controlled or authored by them. To the extent Paragraph 22 makes allegations concerning the statements of other defendants, the D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 22 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

23. No response is required to Paragraph 23.

24. Paragraph 24 makes allegations concerning the statements of another defendant. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 24 is directed to other defendants, the D'Souza Parties

cannot answer for other defendants and no response is required.

25.     Paragraph 25 makes allegations concerning the statements of other defendants. The D'Souza Parties lack personal knowledge of those allegations and therefore deny those allegations. To the extent Paragraph 25 is directed to other defendants, the D'Souza Parties cannot answer for other defendants and no response is required.

26.     No response is required in response to Paragraph 26. The D'Souza Parties incorporate their prior statements herein.

27.     No response is required in response to Paragraph 26. The D'Souza Parties state that the Supplemental Complaint contains no additional facts against them.

## AFFIRMATIVE DEFENSES

The D'Souza Parties assert the following defenses without assuming the burden of proof or any other burden, if such burden would otherwise be on Plaintiff. The defenses asserted below are based on information that is currently known to D'Souza Parties. D'Souza Parties hereby give notice that they intend to rely upon such other and further defenses as may become known or available during this litigation, and they reserve the right to amend their Answer to assert any such defense(s).

**FIRST DEFENSE**

Plaintiff's claims against D'Souza Parties are barred, in whole or in part, because the Amended Complaint and Supplemental Complaint fail to state a claim against D'Souza Parties upon which relief can be granted.

**SECOND DEFENSE**

Plaintiff's claims against D'Souza Parties are barred by all applicable privileges, including, but not limited to, the privileges set forth in O.C.G.A. § 51-5-7, the privilege to inform the public, and constitutional privileges of freedom of speech and freedom of the press.

**THIRD DEFENSE**

Plaintiff's claims against D'Souza Parties are barred because the statements at issue that were published by D'Souza Parties were privileged, and neither of the D'Souza Parties published any such statements with actual malice.

**FOURTH DEFENSE**

Plaintiff's invasion of privacy claims against D'Souza Parties are barred because any statements published by D'Souza Parties were made as part of a report to the public on a matter of public interest and concern.

**FIFTH DEFENSE**

Plaintiff's claims against D'Souza Parties are barred, in whole or in part, because Plaintiff cannot prove one or more essential elements of his claims against

D'Souza Parties and cannot prove his alleged damages to a reasonable degree of certainty.

## SIXTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred, in whole or in part, because they did not publish or broadcast many of the statements that are referenced in the Amended Complaint and Supplemental Complaint and upon which Plaintiff's claims are based.

## SEVENTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred, in whole or in part, by O.C.G.A. § 51-5-10.

## EIGHTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred, in whole or in part, because neither of the D'Souza Parties authored, edited, or published certain of the statements at issue or directed or authorized others to make those statements.

## NINTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred because D'Souza Parties at all times acted reasonably and in good faith, and without malice or ill will.

## TENTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred because D'Souza Parties at all times exercised due care and did not act with the requisite degree of fault.

## ELEVENTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred because Plaintiff's damages, if any, were not proximately caused by the actions or omissions of D'Souza Parties, but were instead caused by the actions or omissions of persons or entities other than D'Souza Parties.

## TWELFTH DEFENSE

Plaintiff's claims against D'Souza Parties are barred because Plaintiff has suffered no actual damages, his alleged damages cannot be proven at law, and/or he suffered no injury or damages as a result of any acts or omissions by D'Souza Parties.

## THIRTEENTH DEFENSE

Plaintiff's claim for punitive damages against D'Souza Parties is barred because D'Souza Parties took no action with respect to Plaintiff that was malicious, willful, wanton, reckless, or with a conscious disregard for the rights of Plaintiff.

## FOURTEENTH DEFENSE

Plaintiff's claim for punitive damages against D'Souza Parties is barred because, under the circumstances of the case, an award of punitive damages would violate the United States Constitution and the Georgia Constitution.

## FIFTEENTH DEFENSE

Plaintiff's claim for punitive damages against the D'Souza Parties is barred because Plaintiff did not send a valid demand for retraction under O.C.G.A. § 51-5-11 before filing suit.

## SIXTEENTH DEFENSE

The D'Souza Parties assert all defenses under Rule 8(c) and Rule 12(b) of the Federal Rules of Civil Procedure that may be proven by the evidence.

## PRAYER FOR RELIEF

The D'Souza Parties deny each and every allegation not expressly admitted herein, including but not limited to, all claims for relief appearing in the paragraphs labeled as "PRAYER FOR RELIEF" in the Amended and Supplemental Complaints.  In addition, the Complaints contain headings which do not require a response.  To the extent such headings are deemed to contain any allegations to which a response is required, the D'Souza Parties deny all such allegations.

**WHEREFORE**, having fully answered Plaintiff's First Amended and Supplemental Complaint, D'Souza Parties respectfully request that the Court dismiss Plaintiff's First Amended and Supplemental Complaint with prejudice; assess all costs against Plaintiff, including Defendant's reasonable attorney's fees; and grant any and all such further relief as the Court deems appropriate.

Respectfully submitted this 23rd day of October, 2023.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
ahyland@taylorenglish.com
Georgia Bar No. 325115

**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Phone: (770) 434-6868
Facsimile: (770) 434-7376

*Attorney for Defendants Dinesh
D'Souza and D'Souza Media LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel certifies that the foregoing was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

*/s/ Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115

*Attorney for Defendants Dinesh D'Souza and D'Souza Media LLC*