# Danielle Brye

| | |
|---|---|
| **From:** | Von DuBose <dubose@dubosetriallaw.com> |
| **Sent:** | Friday, August 9, 2024 4:11 PM |
| **To:** | Danielle Brye |
| **Cc:** | Jake.Evans@gtlaw.com; Philip.George@gtlaw.com; avining@buchalter.com; ahyland@buchalter.com; avining@taylorenglish.com; ahyland@taylorenglish.com; lea.kuck@probonolaw.com; Lee, Gail E; vernon.thomas@skadden.com; paige.braddy@probonolaw.com |
| **Subject:** | Andrews v. D'Souza et al., CV 1:22-cv-04259 (N.D. Ga.): Discovery Dispute |
| **Attachments:** | WASSR01A-#1719543-v9-Grimberg_Letter_Re__TTV_Discovery_Dispute_.pdf |

**CAUTION - EXTERNAL:**


Ms. Brye – per the Court's Standing Order, attached is a letter from Plaintiff regarding a few ongoing discovery disputes.

Thank you, Von A. DuBose

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# DuBose Miller
### Attorneys at Law
75 14th Street N.E., Suite 2110 • Atlanta, Georgia 30309
Telephone 404.720.8111 • Facsimile 404.921.9557 • www.dubosemiller.com

---

August 9, 2024

BY EMAIL
Hon. Steven D. Grimberg
1701 Richard B. Russell Federal Building
and United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

RE:   *Andrews v. D'Souza et al.*, CV 1:22-cv-04259 (N.D. Ga.): Discovery Dispute

Dear Judge Grimberg:

Pursuant to Section III.f of the Court's Standing Order Regarding Civil Litigation, Plaintiff Mark Andrews respectfully submits this letter in the above-referenced action to request a conference concerning a discovery dispute with Defendants Catherine Engelbrecht, Gregg Phillips, and True the Vote Inc. (the "TTV Defendants").

**Background**

This action arises out of the film *2000 Mules*, of which the TTV Defendants are executive producers, and the accompanying book of the same name. In the film, the book, and subsequent media appearances promoting the film, the TTV Defendants falsely portrayed Mr. Andrews as a so-called ballot mule involved in a criminal plot to "steal" the 2020 presidential election. *See, e.g.*, Am. Compl. ¶¶ 37-50, 56-58, 63, 66-68.

In response to the TTV Defendants' false portrayals, Mr. Andrews has asserted statutory and common law claims for defamation, invasion of privacy, violation of the Klan Act, conspiracy, and punitive damages which have survived Defendants' motions to dismiss. Discovery is ongoing and the parties have exchanged requests for production of documents and interrogatories. While counsel for all parties continue to meet and confer regarding a number of issues, it has become clear that Plaintiff and the TTV Defendants have reached an impasse as to the issues (the "Disputed Issues") outlined below. Counsel have conferred on several occasions in an effort to resolve the Disputed Issues, but have been unable to do so.

**Outline of Disputed Issues**

**Documents Produced by other Defendants:** TTV Defendants have refused to produce any documents that they believe were or will be produced by other defendants, on the grounds that "such a request for duplicative documents is unnecessary and solely aimed at improperly burdening the TTV Defendants." July 1, 2024 Letter from TTV Defendants' counsel (the "July 1 Letter"). Nothing in Fed. R. Civ. P. 34 permits a party to omit from its production non-privileged documents in its custody, possession, or control that it believes may be produced

August 9, 2024
Page 2

by another party. *See, e.g., Fogarty v. Gallegos*, No. CIV 05-26 WJ/LFG, 2005 WL 8163657, at *8 (D.N.M. Sept. 27, 2005) (rejecting similar objection and directing defendant to produce all responsive documents).

In addition to lacking any legal basis, TTV Defendants' position is nonsensical. If permitted, all defendants could take this position and then documents in the possession of multiple defendants would not be produced by any defendant.

**Analysts Involved in TTV's Purported Geotrafficking Project:** TTV Defendants have refused to respond to Plaintiff's interrogatory asking them to "[i]dentify the twelve people involved in the geotracking project referred to by Defendant Phillips in the interview quoted . . . in the *2000 Mules book*." Plaintiff's First Set of Interrogatories ("Inter."), No. 15. In the referenced interview, Mr. Phillips describes the collection and review of the geotracking data as "a major effort conducted by twelve of the best people in America, and even in the world in this work." TTV's purported geotracking research is at the heart of the ballot mules narrative. Incredibly, however, TTV Defendants assert that the identity of the individuals who conducted the research is somehow irrelevant.

**Names of Organizations From Whom Ballots Were Allegedly Collected:** TTV Defendants have also refused to respond to "[i]dentify the eight organizations in Atlanta where You allege ballots were collected by mules (*see 2000 Mules* book, p. 61)." Inter. No. 16. The passage cited includes the following colloquy:

> **Gregg**: [. . .] we identified in Atlanta 242 people that went to an average of 24 drop boxes **and 8 organizations during a 2-week period.**
>
> **Dinesh**: The organizations—is that where they get the ballots?
>
> **Catherine**: Yes, and then they go on routes. Which is also significant, because one of the questions that comes up in the work we've done is, well, how do you know that this wasn't just somebody that's got a big family and they just deposited a bunch of ballots at once? Or how do you know that this person didn't just work at a location that is near a drop box so they're constantly going by a drop box? And so the elements that are additive here—the going to the non-profits, the ability to identify the pattern of approach to a drop box, and that's not going past a drop box but directly to a drop box and then back to another point, and then to another point. (emphasis added)

TTV Defendants once again object on the grounds of relevance and also that it seeks information for the "improper purpose [of allowing] third-party organization[s] to consider filing legal claims against the TTV Defendants." *See* Defendants Amended Responses to Plaintiff's First Set of Interrogatories ("Resp. to Inter.") No. 16.

As one of the purported ballot mules depicted by TTV Defendants, Mr. Andrews is entitled to know which organizations were allegedly providing the ballots allegedly deposited by mules.

August 9, 2024
Page 3

The identity of the organizations is directly relevant to his claims that he was falsely portrayed as a ballot mule and that TTV Defendants knew the narrative in the film was fictitious.

**Identity of the Sources of Ballot Trafficking Allegations**. TTV Defendants also object on the grounds of relevance to producing documents regarding or evidencing agreements with any source of the ballot trafficking allegations included in *2000 Mules*. Defendants' Amended Responses to Plaintiff's First Set of Requests for Production of Documents ("Resp. to RFP") No. 23. However, information about the source of the ballot trafficking is directly related to Plaintiff's claim that TTV Defendants lack any credible basis for their ballot mule theory.

Relatedly, evidence shows that TTV Defendants engaged Red Metrics LLC or Red Fusion Technologies LLC to collect and analyze the geolocation or geospatial data relied upon in the film. However, to date, TTV Defendants have not produced any documents or communications with Red Metrics, Red Fusion or other sources of the geolocation or geospatial information allegedly undergirding their ballot mules theory.

**Communications with Arizona Attorney General.** TTV Defendants also refuse to produce TTV's communications with the Arizona Attorney General regarding the *2000 Mules* narrative or allegations of misconduct in the 2020 Election. (RFP No. 30), once again on the grounds of relevance. However, the communications are directly relevant to Plaintiff's contention that the TTV Defendants lack evidence supporting the *2000 Mules* narrative, and even after challenged by governmental authorities, nevertheless continued to advance their false claims. *See* Am. Compl. ¶ 120.

**Information Provided by TTV Defendants to Obtain Equity Investment in 2000 Mules**: Plaintiff has also requested documents presented to former defendant Salem Media and other potential equity investors by TTV. As set forth in the First Amended Complaint, the *2000 Mules* book contains a photograph from the film with the caption: "This is a movie recreation of our fateful summit with Catherine and Gregg. We took their evidence to Salem Media to see if Salem would provide the equity investment to make the 2000 Mules documentary." *See* Am. Compl. ¶ 76 (emphasis added). Plaintiff is entitled to know what "evidence" was presented by TTV Defendants, but TTV Defendants contend that with respect to Salem Media, such documents should be sought from the former defendant (*see* July 1 Letter), and with respect to other investors, there are no responsive documents.

<u>Conclusion</u>

For all of the reasons set forth above, Plaintiff requests that the Court order TTV Defendants to comply with Plaintiff's requests as discussed above or to schedule a conference in order to resolve the Disputed Issues.

Respectfully submitted,

*Von A. DuBose*

Von DuBose