Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 1 of 53
HIGLY CONF/AEO Brian Beasley                    November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION
 3     MARK ANDREWS,                )
                                    )
 4        Plaintiff,                )
                                    )
 5     vs.                          )    CASE NO.
                                    )
 6     DINESH D'SOUZA; TRUE THE     )    1:22-CV-04259-SDG
       VOTE, INC.; CATHERINE        )
 7     ENGLEBRECHT; GREGG           )
       PHILLIPS; D'SOUZA MEDIA      )
 8     LLC; and JOHN DOES,          )
                                    )
 9        Defendants.               )
10
11
12       THIS DEPOSITION CONTAINS INFORMATION DESIGNATED
                    HIGHLY CONFIDENTIAL
13                  ATTORNEYS' EYES ONLY
               SUBJECT TO PROTECTIVE ORDER
14
15          VIDEOTAPED DEPOSITION OF BRIAN BEASLEY
16                 (Taken by Defendants)
17                   November 1, 2024
18                1:00 p.m. Eastern time
19
20
21
22
23
24
25       Reported by:  Debra M. Druzisky, CCR-B-1848
```

Case 1:22-cv-04259-SDG   Document 247   Filed 12/20/24   Page 2 of 53
HIGLY CONF/AEO Brian Beasley                 November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 2

1                    APPEARANCES OF COUNSEL
2     On behalf of the Plaintiff:
3          CATHERINE CHEN, Esq.
           JARED DAVIDSON, Esq.
4          United to Protect Democracy, Inc.
           2020 Pennsylvania Avenue, Suite 163
5          Washington, D.C.  20006
           (202) 579-4582
6          catherine.chen@protectdemocracy.org
7
      On behalf of the Defendants Dinesh D'Souza and
8     D'Souza Media:
9          AUSTIN VINING, Esq.
           Buchalter
10         790 Stratforde Drive
           Alpharetta, Georgia  30004
11         (318) 225-0678
           avining@buchalter.com
12
13    On behalf of the Defendants True the Vote,
      Catherine Englebrecht and Gregg Phillips:
14
           PHILIP GEORGE, Esq.
15         Greenberg Traurig
           3333 Piedmont Road, Suite 2500
16         Atlanta, Georgia  30305
           (678) 553-2285
17         philip.george@gtlaw.com
18
      Also Present:
19
           Jonathan Miller, videographer
20
                        --oOo--
21
22
23
24
25

HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 3

1                    INDEX TO EXAMINATION

2     Witness Name:                                    Page

3     BRIAN BEASLEY

4          By Mr. Vining                                   5

5          By Ms. Chen                                    34

6          By Mr. George                                  35

7

8

9

10               INDEX TO DEFENDANT'S EXHIBITS

11       No.                Description              Page

12    Exhibit 1    10-28-24, Defendants Dinesh           7

                   D'Souza and D'Souza Media LLC's

13                 Amended Notice of Deposition and

                   Subpoena Duces Tecum to

14                 Non-Party Brian Beasley re: The

                   above-captioned action.

15
                            - - -

16

17

18

19

20

21

22

23

24

25

HIGLY CONF/AEO Brian Beasley                    November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

                                                    Page 4

1            THE VIDEOGRAPHER:  We are on the

2       record November 1st, 2024, approximately

3       1:01 p.m. Eastern time.

4            This will be the videotaped

5       deposition of Brian Beasley.

6            Would counsel please identify

7       themselves and who they represent for the

8       record?

9            MR. VINING:  Austin Vining from the

10      law firm Buchalter.  And I represent

11      defendants Dinesh D'Souza and D'Souza

12      Media, L.L.C.

13           MR. GEORGE:  Philip George from the

14      law firm Greenberg Traurig.  I represent

15      the defendants True the Vote, Inc.,

16      Catherine Englebrecht and Gregg Phillips.

17           MS. CHEN:  Catherine Chen from

18      Protect Democracy.  I represent the

19      plaintiff Mark Andrews.

20           MR. DAVIDSON:  And this is Jared

21      Davidson, also from Protect Democracy,

22      also on behalf of plaintiff Mark Andrews.

23           THE VIDEOGRAPHER:  Will the court

24      reporter please swear in the witness?

25   ///

Page 5

1                    BRIAN BEASLEY,

2    having been first duly sworn, was examined and

3    testified as follows:

4                    EXAMINATION

5    BY MR. VINING:

6        Q.    Good afternoon, Mr. Beasley.  My name is

7    Austin Vining.  Will you please state your name for

8    the record?

9        A.    Good afternoon, Austin.  Brian Beasley.

10       Q.    Have you ever been deposed before?

11       A.    First time.

12       Q.    Okay.  This shouldn't take too long.  And

13   we really appreciate your time this afternoon.

14              To go over a couple of ground rules,

15   whenever I'm asking a question, please let me

16   finish my question, and I'll let you finish your

17   answer.  If we talk over each other, it makes it

18   hard for the court reporter to take down an

19   accurate transcript.

20              And if you think I'm interrupting you,

21   please let me know.  It's not my intent.

22              And when you're answering questions,

23   please give verbal answers, so a "yes" or a "no"

24   instead of shaking your head.  It's fine right now

25   because it's not an important question, but.  And

Page 6

1    no -- try not to say "uh-huh" or "huh-uh," because

2    it's really hard for the court reporter to make a

3    clean transcript with those.

4              And if you don't understand a question

5    that I'm asking, please let me know, and I'll try

6    to rephrase it and make sure that we're clear and

7    both on the same page about what's being asked.

8              If you need a break, again, I don't expect

9    this deposition to go on for too long, but if you

10   need a break at any point, please let me know.

11   I'll ask that you answer whatever pending question

12   there is.  But other than that, you know, you're

13   free to take a break.

14             Is there any reason you can't provide

15   truthful and accurate testimony today?

16        A.   No.

17        Q.   You don't have any medical conditions or

18   you're not on any medications or drugs that would

19   impact your ability to testify and -- or affect

20   your memory today?

21        A.   No.  I did want to add, though, my son is

22   in the other room.  So he may, I hope he doesn't,

23   but if he does, I may have to pause and step away

24   briefly.

25        Q.   I understand.  Thank you for letting us

                                                    Page 7

 1    know.

 2            Okay.  Mr. Beasley, I'm going to show you

 3    what has been marked as Exhibit DDBB 0001.

 4                        (Whereupon, Defendant's

 5                         Exhibit 1 was marked for

 6                         identification.)

 7    BY MR. VINING:

 8        Q.   Okay.  It's been introduced in Exhibit

 9    Share.  So you may need to refresh your page, but

10    you should be able to see that exhibit.

11        A.   Yes, I can see it.

12        Q.   Do you recognize this document?

13        A.   Yes.

14        Q.   And what is it?

15        A.   I believe it's a subpoena.

16        Q.   Okay.  The subpoena served to you by

17    defendants Dinesh D'Souza and D'Souza Media,

18    L.L.C.; is that correct?

19        A.   Yes.  Via E-mail.

20        Q.   Okay.  And you were served with this

21    document?

22        A.   By E-mail?  Yes.

23        Q.   And is that why you're here today?

24        A.   Yes.

25        Q.   Thank you.

Case 1:22-cv-04259-SDG     Document 247     Filed 12/20/24     Page 8 of 53
HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 8

1          And do you -- if you'll scroll down with

2     me to Page 8, continuing on to Pages 10 and 11, is

3     this a portion of the subpoena requesting that you

4     provide certain documents?

5          A.   (Whereupon, there was no audible response

6     by the deponent.)

7          Q.   And did you look for documents responsive

8     to these requests?

9          A.   I tried, but I could not produce any

10    because I didn't have any.

11         Q.   Okay.  Have you ever exchanged anything in

12    writing with Mr. Andrews?

13         A.   Do you mind rephrasing?

14         Q.   Yeah.  Do you -- do you know who Mark

15    Andrews is?

16         A.   Yes.

17         Q.   Is it your understanding that he's the

18    plaintiff in this case?

19         A.   Yes.

20         Q.   Okay.  Have you ever exchanged anything in

21    writing with Mr. Andrews relating to --

22         A.   As to --

23         Q.   -- any of these document requests?

24         A.   Okay.  No.

25         Q.   Okay.

HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 9

1      A.    Yeah.

2      Q.    I appreciate it.

3            Mr. Beasley, where do you currently work?

4      A.    The employer is Fannie Mae.

5      Q.    Okay.  And how long have you worked there?

6      A.    Six months.

7      Q.    And what's your position there?

8      A.    SOX lead.

9      Q.    Can you repeat that?  I'm sorry.

10     A.    SOX, S-O-X, Sarbanes-Oxley lead.

11     Q.    Okay.  Thanks.

12           Was there a point in time when you worked

13   for N.C.R. Corporation?

14     A.    Yes.

15     Q.    And what years did you work for N.C.R.

16   Corporation?

17     A.    I do not recall specifically.  I've kind

18   of bounced around, but.  I can't recall the exact

19   year.

20     Q.    Okay.  Do you recall if you worked there

21   in 2022?

22     A.    I don't think so, no.

23     Q.    Okay.

24     A.    Before Fannie Mae, I worked for Lowe's.

25   Before for Lowe's, I worked for Delta.  And then

Page 10

1    before Delta, I worked for N.C.R.  So it's been a

2    few years.

3         Q.   Do you remember any approximate dates that

4    you would have been there, or when you started or

5    when you may have ended?

6         A.   I would have to honestly look at my

7    résumé, which --

8         Q.   Okay.

9         A.   -- I didn't prepare for it.

10        Q.   That's okay.

11        A.   Yeah.

12        Q.   What was the last position that you held

13   at N.C.R.?

14        A.   Senior I.T. auditor.

15        Q.   Okay.  And which office did you work in?

16        A.   Midtown.

17        Q.   Midtown Atlanta?

18        A.   Yes.  Sorry.  Midtown Atlanta.

19        Q.   Okay.  And what were your job

20   responsibilities?

21        A.   As an auditor, just ensuring day-to-day

22   and the enterprise complied with enterprise

23   standards and best policies and procedures.  It was

24   kind of like a --

25        Q.   Okay.

Page 11

1          A.   -- G.R.C., governance, risk and

2     compliance, just ensuring they adhered to it from

3     a -- from a security standpoint.

4          Q.   When you worked at N.C.R., did you know

5     Mr. Andrews?

6          A.   Yes.  He hired me.

7          Q.   Okay.  So was he your supervisor?

8          A.   Yes.

9          Q.   Okay.  Did you interact with him on a

10    daily basis?

11         A.   Yes.

12         Q.   When did you first meet Mr. Andrews?

13         A.   In my interview.

14         Q.   And you don't recall when that was?

15         A.   I worked for N.C.R. for almost five years,

16    so that's -- that's some time away.  So no, I don't

17    recall the exact year.

18         Q.   Okay.  And how well would you say you knew

19    Mr. Andrews?

20         A.   Over the course of time?  Pretty well.

21         Q.   How often did you speak with him?

22         A.   Daily, if not every other day.

23         Q.   And so daily, if not every other day, for

24    the course of approximately five years; is that

25    correct?

Page 12

1        A.    Yeah.   During the workweek, yes.

2        Q.    Okay.   Have you heard of the film 2000

3   Mules?

4        A.    I have, yes.

5        Q.    And what is that film?

6        A.    I honestly don't know.  I've heard of it

7   but don't really know how to explain it.

8        Q.    Is there anything you know about it?

9        A.    Not really.

10        Q.    Have you seen it?

11        A.    Not specifically.  I've only seen YouTube

12   clips.   YouTube clips.

13        Q.    Have you -- are you aware of a book titled

14   2000 Mules?

15        A.    Yes.

16        Q.    Have you read it?

17        A.    No.

18        Q.    Do you know what it's about?

19        A.    I don't, no.

20        Q.    Okay.   Do you recall discussing 2000 Mules

21   with Mr. Andrews?

22        A.    Can you -- I guess I could say -- I could

23   say it this way.  I don't think I discussed it with

24   him, but we have mentioned it, if that makes sense.

25        Q.    When you say "we," do you mean in a

Page 13

```
 1   conversation with you --

 2        A.   Yes.

 3        Q.   -- and Mr. Andrews?

 4        A.   Yes.

 5        Q.   I just want to make sure we're clear here

 6   what the distinction is between discussing and

 7   mentioning.

 8        A.   Sure.  Is that a question?

 9        Q.   Yeah, can you, I guess --

10        A.   So discussions --

11        Q.   -- in the --

12        A.   Okay.

13        Q.   -- in the conversation that you had with

14   Mr. Andrews where it was mentioned, can you tell me

15   about that conversation?

16        A.   Sure.  I have to add a little context, so

17   forgive me --

18        Q.   Yeah.

19        A.   -- for all the extra details, but.  So I

20   basically had a conversation post-N.C.R. with Mark.

21   And we usually have, like, quarterly check-ins,

22   because he's sort of my mentor.

23             And this one occasion when I worked for

24   Lowe's in New York, he didn't seem like himself, so

25   I asked is everything okay, what's going on.
```

Page 14

1              And he kind of mentioned, you know,

2     he's -- you know, he's not doing his best, he feels

3     like a lot of people are following him, his family

4     is being watched.

5              And I was kind of taken aback.  And I was

6     like, what do you mean?  And then he just asked,

7     have you ever seen the movie or heard of the book

8     2000 Mules?

9              And I said, I've heard of it.  And I --

10    that was all.  And he said, well, yeah, you

11    probably wouldn't understand, and then he left it

12    at that.

13             And so afterwards -- that's how I, I

14    guess, define mention and not discuss, because we

15    didn't go at lengths in, because I didn't really

16    know the meaning or what he meant by it.  I just

17    kind of heard it from maybe social media or friends

18    in passing, but I didn't truly understand what it

19    is.

20        Q.   So you learned about this after you no

21    longer were an employee of N.C.R.; is that correct?

22        A.   Yes.

23        Q.   Do you recall when that conversation

24    occurred?

25        A.   I was in New York for Lowe's, so it had to

Page 15

1    be two years.

2        Q.   And do you --

3        A.   Or maybe a year and a half.  Maybe a year

4    and a half.  Sorry.  Because I just moved here,

5    Fannie Mae, six months, so early part of last year.

6    About a year.

7        Q.   So you think this occurred in the early

8    part of 2023?

9        A.   I believe so.  I'm not --

10       Q.   Okay.

11       A.   -- sure.  Yeah, I get confused with dates

12   sometimes.

13       Q.   Do you remember what platform that

14   conversation took place on?

15       A.   I'm not sure I'm following.

16       Q.   Was it a phone call or was it a Teams

17   meeting or a Zoom?

18       A.   Phone call.

19       Q.   And do you recall discussing anything with

20   Mr. Andrews about his voting in 2022?

21       A.   No.

22       Q.   Anything regarding his voting in 2020?

23       A.   No.

24       Q.   Is this the only conversation you had with

25   Mr. Andrews about 2000 Mules?

Page 16

1        A.    Yes -- no.  I take that back.  It was not.

2        Q.    How many conversations do you remember

3   having with Mr. Andrews about 2000 Mules?

4        A.    Two.

5        Q.    And can you tell me about the other

6   conversation that we haven't discussed?

7        A.    Sure.  The second one was another

8   check-in.  As again, he's my mentor, so I check in

9   with him quarterly almost.

10             And so the next one I basically told him,

11   like, hey, I checked out the -- a clip of 2000

12   Mules, and I was just taken aback.

13             And he was like, understood, it's just, it

14   is what it is, and we just kept the conversation

15   moving on about work-related items.  But that

16   was --

17        Q.    Do you --

18        A.    -- a second time.

19        Q.    Do you recall when that conversation took

20   place?

21        A.    It was before I accepted the position I'm

22   currently in, so it had to be early part of this

23   year.

24        Q.    Okay.  And was that also a phone call that

25   you had with Mr. Andrews?

Page 17

1      A.    Yes.

2      Q.    Did Mr. Andrews mention in any of these

3   conversations if he had discussed this matter with

4   anyone else?

5      A.    No.

6      Q.    Did you make any recommendations to him

7   about security or anything like that?

8      A.    I want to say no.  I mean, generally

9   speaking, I tend to just say, stay safe.  But other

10  than that, no.

11     Q.    And you mentioned in the first

12  conversation that you had with him that you

13  mentioned that you had heard of 2000 Mules; is that

14  correct?

15     A.    Yes.

16     Q.    Do you remember in what context you heard

17  about 2000 Mules?

18     A.    No.  I have a wide range of friends and

19  family, so I cannot honestly say where I heard it

20  from, no.

21     Q.    Okay.  In the converse -- in either

22  conversation you had with Mr. Andrews, did he

23  mention Dinesh D'Souza?

24     A.    I don't think so.

25     Q.    Do you know --

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 18 of 53
HIGLY CONF/AEO Brian Beasley                    November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 18

1      A.   I can't --

2      Q.   Oh, sorry.

3      A.   I can't really recall, like, accurately,

4   though, like, the conversation.  But I don't think

5   so, no.

6      Q.   Do you know who Dinesh D'Souza is?

7      A.   I do now.  I had to -- I looked him up,

8   yeah.

9      Q.   Okay.  But at the time you didn't?

10     A.   No.  Huh-uh.

11     Q.   In the conversation did Mr. Andrews

12   mention D'Souza Media, L.L.C.?

13     A.   No.

14     Q.   Do you know what D'Souza Media, L.L.C. is?

15     A.   I believe it's the company that created

16   the movie or the book.  I'm not sure which one.

17   But I think it's basically the company behind.

18     Q.   And this is something that you learned

19   after your conversations with Mr. Andrews?

20     A.   Yes.

21     Q.   In your conversations with Mr. Andrews,

22   did he mention True the Vote?

23     A.   No.

24     Q.   Do you know what True the Vote is?

25     A.   I do not.

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 19 of 53
HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 19

1      Q.    In your conversation with Mr. Andrews, did

2    he mention Catherine Englebrecht?

3      A.    No.

4      Q.    Do you know who she is?

5      A.    I do not.

6      Q.    In your conversation with Mr. Andrews, did

7    he mention Gregg Phillips?

8      A.    No.

9      Q.    Do you know who he is?

10     A.    I do not.

11     Q.    After your conversation with Mr. Andrews,

12   after either conversation, did you conduct any

13   discovery or investigation into 2000 Mules or what

14   he told you?

15     A.    Only what I said, like, it piqued my

16   curiosity, so I went on YouTube just to see what it

17   was about.  So I'm not sure if that's considered

18   discovery, but I definitely did my research just to

19   have a better understanding.

20     Q.    And did you take any other action other

21   than looking at --

22     A.    No.

23     Q.    -- the topic?

24     A.    No.

25     Q.    Anything else you remember about the

Page 20

```
 1    conversations with Mr. Andrews?

 2         A.   I mean, outside of how, like, he seemed

 3    different and a little distraught, no.  Like, that

 4    was the reason I kind of asked him what was going

 5    on.

 6         Q.   Did you discuss Mr. Andrews or 2000 Mules

 7    with anyone else who worked at N.C.R.?

 8         A.   No.

 9         Q.   Are you aware of Mr. Andrews ever being

10    harassed in relation to 2000 Mules?

11         A.   Yes.

12         Q.   And can you tell me about that?

13         A.   It was a -- the same conversation I had

14    where I asked what was going on, he seemed a little

15    distraught.  He just said his -- him and his family

16    just seemed to be followed and it seemed like he

17    was being harassed.

18              And I was just kind of taken aback, just

19    said, stay safe and, like, kind of left it at that,

20    like, didn't want to get too much and pry too much

21    into his business.

22         Q.   So no specific --

23         A.   No.

24         Q.   I mean --

25         A.   He mentioned he was being followed.  That
```

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 21 of 53
HIGLY CONF/AEO Brian Beasley        November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 21

1    was the only mention he did say to me.

2        Q.    Any specificity around that or just

3    generally that he was being followed?

4        A.    Just generally.

5        Q.    Are you aware of anything negative

6    happening to Mr. Andrews at work as a result of

7    what he discussed with you?

8        A.    Not to my knowledge, no.

9        Q.    Are you aware of him being demoted?

10       A.    No.

11       Q.    I'm not -- just to be clear --

12       A.    Oh.

13       Q.    -- I'm not --

14       A.    Oh.

15       Q.    -- making a representation that he was --

16       A.    Okay.

17       Q.    -- demoted.

18       A.    Okay.  Okay.  No.  No, I didn't.  I don't.

19       Q.    Are you aware of him receiving any lower

20   pay?

21       A.    No.

22       Q.    Are you aware of him not being promoted?

23       A.    No.

24       Q.    Are you aware of 2000 Mules affecting his

25   work in any way?

Page 22

1        A.    I'm unsure.

2        Q.    Are you aware of 2000 Mules affecting

3   Mr. Andrews's standing within the company N.C.R.?

4        A.    No, I'm not aware.

5        Q.    Other than what you described with him

6   being followed or his -- him telling you that he

7   was being followed, are you aware of his life being

8   affected in any other way as a result of 2000

9   Mules?

10        A.    Outside of that, no.

11        Q.    Are you aware of Mr. Andrews raising

12   issues related to 2000 Mules with anyone else at

13   N.C.R.?

14        A.    No.

15        Q.    Did you, after your employment at N.C.R.,

16   did you exchange any E-mails with Mr. Andrews?

17        A.    In general or relating to this case?

18        Q.    First generally have you?

19        A.    Yes.  Because he reviewed my résumé, and I

20   had to send him my résumé.

21        Q.    And have you exchanged any E-mails with

22   him related to 2000 Mules?

23        A.    No.

24        Q.    Have you exchanged any text messages with

25   Mr. Andrews related to 2000 Mules?

HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 23

1       A.    No.

2       Q.    Did you exchange any Instant Message,

3   Skype or other related messenging platform messages

4   with Mr. Andrews related to 2000 Mules?

5       A.    No.

6       Q.    Did you ever exchange any other forms of

7   written communication with Mr. Andrews relating to

8   2000 Mules?

9       A.    No.

10      Q.    Have you ever seen Mr. Andrews mentioned

11  in the news?

12      A.    I believe so.  I believe there was an

13  article I came across, but I can't remember what it

14  was tied to.

15      Q.    Do you remember anything about the

16  article?

17      A.    No.  I don't, honestly.  It's been so

18  long.  I cannot recall.

19      Q.    Do you recall if you've ever seen

20  Mr. Andrews mentioned in any social media?

21      A.    Do I recall him being mentioned in social

22  media?  No.

23      Q.    Do you know if 2000 Mules or any of the

24  issues we've discussed today affected Mr. Andrews's

25  reputation at N.C.R.?

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 24 of 53
HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 24

1      A.    I'm unsure.

2      Q.    Do you know if it affected him personally?

3      A.    Yes.

4      Q.    Oh, I'm sorry.  Thank you.

5            Do you know if 2000 Mules affected

6   Mr. Andrews professionally?

7      A.    I'm unsure.

8      Q.    Do you know if Mr. Andrews made any

9   complaints to N.C.R. related to 2000 Mules?

10      A.    Unaware.  I'm unaware.

11      Q.    Do you know if Mr. Andrews submitted or

12   filed any written statements to N.C.R. related to

13   2000 Mules?

14      A.    Not to my knowledge.

15      Q.    When was the last time you spoke to

16   Mr. Andrews?

17      A.    I think the beginning of this year.  We

18   talked about the potential employer where I was

19   trying to decide who I should go with for my job.

20      Q.    Was that the second conversation that you

21   mentioned earlier that you also discussed 2000

22   Mules and you told him that you had seen?

23      A.    No.  That was after, yeah.  So this call

24   was initiated by me because I needed some advice on

25   which direction to go with my career path.  So this

HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 25

1    wouldn't -- didn't even speak about anything other

2    than my résumé and in -- you know, other attributes

3    to consider.

4         Q.   Have you spoken with Mr. Andrews about

5    this lawsuit?

6         A.   No.

7         Q.   Okay.  To be sure, have you spoken to

8    Mr. Andrews after you received the subpoena that

9    was sent to you?

10        A.   No.

11        Q.   Have you spoken with Mr. Andrews's

12   attorneys?

13        A.   Yes.

14        Q.   And what did you speak about Mr. -- with

15   Mr. Andrews's attorneys?

16        A.   Well, one, they said that I was supposed

17   to be subpoenaed and you all couldn't find me.  And

18   then two, just making me aware of the potentiality

19   of being subpoenaed.

20        Q.   Anything else that you recall?

21        A.   Yeah.  And that if I wanted

22   representation, they couldn't.  But I could also do

23   my own research to maybe try to find representation

24   if, you know, I wanted more information on

25   deposition and how it is handled.  But no, nothing

HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 26

1    other than that.

2        Q.    Have you spoken with anyone at N.C.R.

3    after receiving the subpoena?

4        A.    No.

5        Q.    After you received the subpoena in this

6    case, have you talked to anyone else about it?

7        A.    Generally.  Because I needed to explain

8    why I was going to be out of pocket for two hours

9    to my mother so she could watch my son.  I didn't

10   give any details.

11       Q.    Anyone else?

12       A.    No.  You mean just in general?  Or

13   specific to 2000 Mules?  No.

14       Q.    About the subpoena or about the case?

15       A.    Generally speaking, yes.

16       Q.    Who else did you speak with?

17       A.    I went to find maybe pro bono work to see

18   if, you know, I could get some more information on

19   a deposition.  And I had to acknowledge that I was

20   being subpoenaed in their, I guess, intake

21   questions.

22       Q.    I'm sorry.  Other than seeking --

23       A.    Oh.

24       Q.    -- legal --

25       A.    No.

HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 27

1    Q.   -- advice?

2    A.   No.

3    Q.   Okay.  What's your current residential

4    address?

5    A.   I'm not comfortable giving the specific

6    address.  Can I give you the city and county I'm

7    in?

8    Q.   We can agree to -- or you can request that

9    this portion of the transcript be marked as

10   confidential so that --

11   A.   Okay.

12   Q.   I mean, this -- it's covered by protective

13   order in this case, confidential -- things marked

14   as confidential can be seen by a limited amount of

15   people.

16   A.   Yeah.  I just don't want my address to be

17   made public.

18   Q.   Right.

19   A.   Yeah.  So you said I have to make mention

20   of it being confidential?

21   Q.   Yeah, you can request it on the record.

22   A.   Okay.  I request on the record to make

23   this confidential.

24        MR. VINING:  And Jared?

25        MR. DAVIDSON:  Austin?

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 28 of 53
HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 28

1          MR. VINING:  Yeah, and Jared?

2          MR. DAVIDSON:  Just Mr. Beasley,

3      there's two kinds of designations we have

4      in this case.

5          Austin, cut me off if you --

6          MR. VINING:  No, you're -- feel free.

7          MR. DAVIDSON:  But we have a

8      confidential designation, which is very

9      protective.  It just means that, like, the

10     attorneys and the parties are the only

11     ones that can access it.

12         We have a higher level of

13     confidentiality that we can designate

14     called attorneys' eyes only.  And that

15     means that only the attorneys in the

16     matters, as opposed to the parties, could

17     access the information.

18         So if you wanted the most protective

19     form --

20         THE WITNESS:  Yes.

21         MR. DAVIDSON:  -- of confidentiality,

22     we should mark it as attorneys' eyes on --

23     or you should ask for it to be marked

24     attorneys' eyes only.

25         Alternatively, you can mark it as

Page 29

```
 1        confidential.  So.
 2               THE WITNESS:  Yes.  I request to mark
 3        it attorneys' eyes only.
 4               MR. VINING:  Okay.
 5               THE WITNESS:  Thank you.
 6               MR. VINING:  That's fine.
 7               MR. DAVIDSON:  And we have no --
 8               MR. VINING:  Thank you.
 9               MR. DAVIDSON:  Plaintiff has
10        no objection to that.
11               MR. VINING:  Yeah.
12               THE WITNESS:  Okay.
13               MR. GEORGE:  Yeah, no objection.
14               MR. VINING:  No objections from the
15        D'Souza defendants as well.
16    BY MR. VINING:
17        Q.    Okay.
18        A.    So go ahead and give it?
19        Q.    Yeah.  What is your residential address?
20        A.    REDACTED
21    REDACTED      .
22        Q.    And what is your cell phone number?
23        A.    May I ask why it's needed?
24        Q.    One, in case we need to contact you.  Two,
25    when we're reviewing records, if there's a cell
```

HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 30

1    phone number that doesn't have a name on it, we may

2    use it to verify who -- if that number belongs to

3    you or someone else.  There could be other reasons,

4    but we just like to have it in the record.

5          A.    Okay.  Do I have to, each time I give this

6    information, say I'm -- okay.  So --

7          Q.    We'll --

8          A.    -- all this information --

9          Q.    I'll --

10         A.    -- will be marked ago --

11         Q.    I'll --

12         A.    Okay.

13         Q.    I'll stipulate that this portion of the

14   transcript --

15         A.    Okay.

16         Q.    -- with regards to your contact

17   information, we understand that you would like that

18   to be marked as highly confidential, attorneys'

19   eyes only.

20         A.    Thank you.

21               REDACTED .

22         Q.    Thank you.

23               And how long have you had your current

24   cell phone?

25         A.    A long time.  20 plus years.

Page 31

1      Q.    Okay.  And that's your actual cell phone

2    or your cell phone number?

3      A.    I'm not following.

4      Q.    The device or the phone number?

5      A.    Oh, can you repeat the question?  I'm

6    sorry.

7      Q.    How long have you had your current cell

8    phone?

9      A.    Maybe a year and some change, year and a

10   half maybe.

11     Q.    Okay.  Do you have a personal E-mail

12   address?

13     A.    Yes.

14     Q.    And what is that E-mail address?

15     A.    May I ask why?  I thought you already have

16   an E-mail from me.

17     Q.    Just for the transcript, for the record.

18     A.    Can you use the same one that you

19   subpoenaed me on?

20     Q.    Yeah.  Can you -- can you state it for the

21   record?

22     A.    I don't recall it off the top.  It has my

23   initial and then a lot of numbers.

24     Q.    Okay.

25     A.    I can get it if you need it, though.

Page 32

1      Q.   That's okay.

2           Do you have any other personal E-mail

3      addresses that you use?

4      A.   Yes.

5      Q.   And can you tell me what those are?

6      A.   I don't feel comfortable giving all of my

7      E-mail addresses out.

8      Q.   Even under the protective order for

9      attorneys' eyes only?

10     A.   I don't understand why when you already

11     have an E-mail address.

12     Q.   Okay.

13          MR. VINING:  I'll object as

14     non-responsive.

15          THE WITNESS:  What does that mean?

16     BY MR. VINING:

17     Q.   Just stating on the record that you didn't

18     provide an answer to the question.

19     A.   But I did, I thought.

20     Q.   I mean, you didn't answer the question

21     with a response that gave --

22     A.   (Inaudible due to cross-talk).

23     Q.   -- the answer to the question.

24          MR. VINING:  I think I'm almost done

25     here.  Let's take a quick break.  We'll

Page 33

1          come back at 1:40, if that works for

2          everyone.

3                  THE VIDEOGRAPHER:  The time is 1:32.

4          We are off the record.

5                  (Whereupon, a discussion ensued

6           off the record.)

7                  (Whereupon, there was a brief

8           recess.)

9                  THE VIDEOGRAPHER:  The time is 1:39.

10         We are back on the record.

11     BY MR. VINING:

12         Q.   Mr. Beasley, I just have one other point

13     of clarification.  You said you'd heard of the film

14     2000 Mules before Mr. Andrews told you about it; is

15     that correct?

16         A.   I heard of it, yes.

17         Q.   Before Mr. Andrews contacted you, were you

18     aware that he was depicted in the film?

19         A.   I've never seen the film.

20         Q.   I just want to make sure we're clear on

21     the record.  So before he mentioned to you that he

22     was in -- or did he tell you that he was in the

23     film?

24         A.   Yes.

25         Q.   And before he told you that, did you have

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 34 of 53
HIGLY CONF/AEO Brian Beasley          November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 34

1    any awareness that he was in the film?

2         A.    No awareness.

3              MR. VINING:  Okay.  That's all the

4         questions that I have.

5              MR. GEORGE:  I don't have any

6         questions.

7              MS. CHEN:  I have just a couple short

8         questions.

9                        EXAMINATION

10   BY MS. CHEN:

11        Q.    Thank you for your time, Mr. Beasley.

12             You testified that, after you spoke with

13   Mr. Andrews about 2000 Mules, you went on YouTube

14   to see what it was about; is that correct?

15        A.    Yes.

16        Q.    Did you see a clip that included

17   Mr. Andrews?

18        A.    Yes.

19        Q.    Did you recognize Mr. Andrews?

20        A.    Yes.

21             MS. CHEN:  No further questions.

22        Thank you very much for your time.

23             THE VIDEOGRAPHER:  Anyone else or any

24        other statements on the record before we

25        conclude, Counsel?

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 35 of 53
HIGLY CONF/AEO Brian Beasley
Andrews, Mark vs D'Souza, Dinesh et al.                November 1, 2024

Page 35

1           MR. GEORGE:  I just have one

2      question.

3                    EXAMINATION

4    BY MR. GEORGE:

5        Q.   Mr. Beasley, so you went on YouTube to see

6    the videos after you had discussed it with

7    Mark Andrews and Mark Andrews had told you he was

8    in the film; is that right?

9        A.   Again, I personally wouldn't use the word

10   "discussed."  He made mention of it.  And really my

11   curiosity was piqued, and I went on YouTube on my

12   own discretion to see.

13           Hopefully that answered the question.

14       Q.   Yeah.  I just want to get at the timing.

15   So you saw the YouTube --

16       A.   Oh.

17       Q.   -- video --

18       A.   Oh, okay.

19       Q.   -- after you discussed it with him?

20       A.   Yeah.  I searched after the discussion,

21   yes.

22           MR. GEORGE:  Okay.  Thank you.

23      That's all I have.

24           MR. DAVIDSON:  Should we all go to

25      lunch?

Page 36

1          MR. VINING:  I have no further

2     questions.

3          THE VIDEOGRAPHER:  All right.  This

4     concludes the videotaped deposition.  The

5     time is 1:43 p.m. Eastern time.  We are

6     off the record.

7          (Whereupon, a discussion ensued

8      off the record.)

9                         - - -

10          (Witness excused.)

11                         - - -

12          (Whereupon, the deposition

13     concluded at 1:45 p.m. Eastern time.)

14                    --oOo--

15

16

17

18

19

20

21

22

23

24

25

Page 37

1                    VERITEXT LEGAL SOLUTIONS
2               FIRM CERTIFICATE AND DISCLOSURE
3
4          Veritext represents that the foregoing
   transcript as produced by our Production
5  Coordinators, Georgia Certified Notaries, is a
   true, correct and complete transcript of the
6  colloquies, questions and answers as submitted by
   the certified court reporter in this case.
7
8          Veritext further represents that the
   attached exhibits, if any, are a true, correct and
   complete copy as submitted by the certified
9  reporter, attorneys or witness in this case;
10         And that the exhibits were handled and
   produced exclusively through our Production
11 Coordinators, Georgia Certified Notaries.  Copies
   of notarized production certificates related to
12 this proceeding are available upon request to
   litsup-ga@veritext.com.
13
14         Veritext is not taking this deposition
   under any relationship that is prohibited by OCGA
   15-14-37(a) and (b).  Case-specific discounts are
15 automatically applied to all parties at such time
   as any party receives a discount.  Ancillary
16 services such as calendar and financial reports are
   available to all parties upon request.
17
18
19
20
21
22
23
24
25

Case 1:22-cv-04259-SDG    Document 247    Filed 12/20/24    Page 38 of 53
HIGLY CONF/AEO Brian Beasley                November 1, 2024
Andrews, Mark vs D'Souza, Dinesh et al.

Page 38

1          R E P O R T E R     C E R T I F I C A T E
2      STATE OF GEORGIA )
       COBB COUNTY        )
3
4           I, Debra M. Druzisky, a Certified Court
       Reporter in and for the State of Georgia, do hereby
5      certify:
            That prior to being examined, the witness
6      named in the foregoing deposition was by me duly
       sworn to testify to the truth, the whole truth, and
7      nothing but the truth;
            That said deposition was taken before me
8      at the time and place set forth and was taken down
       by me in shorthand and thereafter reduced to
9      computerized transcription under my direction and
       supervision.  And I hereby certify the foregoing
10     deposition is a full, true and correct transcript
       of my shorthand notes so taken.
11          Review of the transcript was not
       requested.  If requested, any changes made by the
12     deponent and provided to the reporter during the
       period allowed are appended hereto.
13          I further certify that I am not of kin or
       counsel to the parties in the case, and I am not in
14     the regular employ of counsel for any of the said
       parties, nor am I in any way financially interested
15     in the result of said case.
            IN WITNESS WHEREOF, I have hereunto
16     subscribed my name this 15th day of November, 2024.
17
18
19
20     _____
                    Debra M. Druzisky
21                  Georgia CCR-B-1848
22
23
24
25

HIGLY CONF/AEO Brian Beasley
Andrews, Mark vs D'Souza, Dinesh et al.

Page 39

```
 1          R E P O R T E R   D I S C L O S U R E
 2    DISTRICT COURT   )   DEPOSITION OF
      NORTHERN DISTRICT)   BRIAN BEASLEY
 3    ATLANTA DIVISION )
 4            Pursuant to Article 10.B of the Rules and
      Regulations of the Board of Court Reporting of the
 5    Judicial Council of Georgia, I make the following
      disclosure:
 6            I am a Georgia Certified Court Reporter.
      I am here as a representative of Veritext Legal
 7    Solutions.
              Veritext Legal Solutions was contacted by
 8    the offices of Buchalter to provide court reporting
      services for this deposition.  Veritext Legal
 9    Solutions will not be taking this deposition under
      any contract that is prohibited by O.C.G.A. 9-11-28
10    (c).
              Veritext Legal Solutions has no contract
11    or agreement to provide court reporting services
      with any party to the case, or any reporter or
12    reporting agency from whom a referral might have
      been made to cover the deposition.
13            Veritext Legal Solutions will charge its
      usual and customary rates to all parties in the
14    case, and a financial discount will not be given to
      any party in this litigation.
15
16
17                          Debra M. Druzisky
                            Georgia CCR-B-1848
18
19
20
21
22
23
24
25
```

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MARK ANDREWS,

        Plaintiff,

v.

DINESH D'SOUZA, TRUE THE VOTE, INC., CATHERINE ENGLEBRECHT, GREGG PHILLIPS, D'SOUZA MEDIA LLC, and JOHN DOES,

        Defendants.

Case No. 1:22-CV-04259-SDG

---

## DEFENDANTS DINESH D'SOUZA AND D'SOUZA MEDIA LLC'S AMENDED NOTICE OF DEPOSITION AND SUBPOENA DUCES TECUM TO NON-PARTY BRIAN BEASLEY

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), Defendants Dinesh D'Souza and D'Souza Media, LLC (collectively "D'Souza Defendants"), by and through their undersigned counsel, will take the deposition upon oral examination of Brian Beasley with respect to the above-captioned litigation. The deposition will take place on <u>November 1, 2024 at 1:00 p.m. EST</u>. The deposition will be conducted remotely by videoconference. The D'Souza Defendants, by and through their undersigned counsel, will provide access credentials for the remote deposition ahead of the deposition. The deposition will be recorded by stenographic means and videotaped. D'Souza Defendants reserve the right to utilize this videotaped deposition at trial in lieu of live testimony, or in

1



Exhibit
DDBB 0001

addition to live testimony, and/or for any purpose permitted under the FRCP and Federal Rules of Evidence.

PLEASE TAKE FURTHER NOTICE that D'Souza Defendants reserve the right to conduct this deposition utilizing secure web-based deposition options afforded by the court reporter, or in the alternative, video teleconferencing services or telephonically only to provide remote/virtual access for those parties wishing to participate in the deposition via the internet and/or telephone.

PLEASE TAKE FURTHER NOTICE that D'Souza Defendants will serve the subpoena attached hereto, pursuant to which Brian Beasley is requested to produce documents, communications, electronically stored information, and objects at the offices of Greenberg Traurig, LLP, 3333 Piedmont Rd. NE, Suite 2500, Terminus 200, Atlanta, GA 30305, or via email to Amanda G. Hyland (ahyland@buchalter.com), on or before Novmeber 1, 2024, 2024 at 1:00 p.m. Eastern Time.

PLEASE TAKE FURTHER NOTICE that D'Souza Defendants intend to serve the subpoena attached hereto on Brian Beasley, pursuant to Rule 45 of the FRCP.

This 28th day of October, 2024.

**BUCHALTER APC**

/s/ *Amanda G. Hyland*
Amanda G. Hyland

2

Georgia Bar No. 325115
Austin C. Vining
Georgia Bar No. 362473
3350 Riverwood Pkwy SE, Ste. 1900
Atlanta, GA 30339
(404) 832-7530 Telephone
ahyland@buchalter.com
avining@buchalter.com

*Attorneys for Defendants Dinesh D'Souza
and D'Souza Media LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MARK ANDREWS,

        Plaintiff,

v.

DINESH D'SOUZA, TRUE THE VOTE,
INC., CATHERINE ENGLEBRECHT,
GREGG PHILLIPS, D'SOUZA MEDIA
LLC, SALEM MEDIA GROUP, INC.,
REGNERY PUBLISHING, INC., and
JOHN DOES,

        Defendants.

Case No. 1:22-CV-04259-SDG

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2024, the foregoing Amended Notice of Deposition and Subpoena Duces Tecum of Brian Beasley was served upon all counsel of record by email.

/s/ *Amanda G. Hyland*
Amanda G. Hyland
Georgia Bar No. 325115
ahyland@taylorenglish.com

4

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Georgia

| | |
|---|---|
| Mark Andrews, | ) |
| _Plaintiff_ | ) |
| v. | )    Civil Action No.    1:22-CV-04259-SDG |
| Dinesh D'Souza, et al. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Brian Beasley

_(Name of person to whom this subpoena is directed)_

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:    VIA ZOOM | Date and Time: <br>      11/01/2024 1:00 pm |
|---|---|

The deposition will be recorded by this method:    Videographic and stenographic means

☑ _Production:_  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

       See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/25/2024

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| | | /s/ Amanda G. Hyland |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ Dinesh D'Souza and D'Souza Media LLC
, who issues or requests this subpoena, are:

Amanda G. Hyland/Buchalter/ahyland@buchalter.com/3350 Riverside Pkwy, Ste. 1900, Atlanta, GA 30339
404-832-7500

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  1:22-CV-04259-SDG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Print    Save As...    Add Attachment    Reset

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
    **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>EXHIBIT A TO SUBPOENA DUCES TECUM</u>

## <u>DEFINITIONS</u>

1.     Unless otherwise indicated, these Requests refer to the time, place, and circumstances of the subject matter mentioned or complained of in the pleadings filed in this action.

2.     Any capitalized term not herein defined shall have the same definition as the definition contained in the pleadings in this action.

3.     Any capitalized term not herein defined shall have the same definition as the definition contained in the pleadings in this action.

4.     For purposes of this subpoena, the terms used herein shall have the following meanings unless the context requires otherwise.

5.      "Action" shall mean the above-captioned litigation.

6.     "Complaint" shall refer to the First Amended Complaint filed by Mark Andrews in this Action.

7.     "Plaintiff" or "Mr. Andrews" shall mean Plaintiff, Mark Andrews, and each of his agents, attorneys, accountants, and any other individual or entity associated or affiliated with him or purporting to act on his behalf.

8.     "You" shall mean Brian Beasley and all agents, attorneys, accountants, and any other individual or entity associated or affiliated with Brian Beasley or purporting to act on his behalf.

9.     "Supplemental Complaint" shall refer to the Supplemental Complaint filed by Mark Andrews in this Action.

10.     Unless specified otherwise, the time period for these requests is from 2014 to present.

## INSTRUCTIONS

1.     You shall produce to Buchalter APC all documents that fall within the scope of each and every Request. Please bring the documents with you to your deposition or deliver the documents in an electronic format to Amanda G. Hyland by e-mail at ahyland@buchalter.com before the date of your deposition.

2.     If you object to a Request on the grounds that it seeks information or documents that are beyond the scope of discovery, then, for each and every Request to which you object, please state the ground for objection and specifically explain why the Request exceeds the scope of permissible discovery or is privileged.

3.     If you withhold any responsive document on the grounds that it is privileged, please identify the information or document, describe its subject matter, and specify the basis for the claimed privilege or other grounds of exclusion.

4.     If any responsive document is no longer in existence, cannot be located, or is not in your possession, custody, or control, please identify it, describe its subject matter, describe its disposition, and identify the person having knowledge of the document's disposition. Please specifically state in your response that you are

aware of its existence or former existence but do not have any such responsive document in your possession, custody, or control.

5.      If any responsive document exists but is not in your possession, custody, or control, and you are reasonably certain as to the whereabouts of the document, please provide the name and contact information of the custodian of the document.

6.      These Requests are continuing in nature and therefore require you to reasonably file supplementary responses as you obtain additional responsive information up to, including, and after the time of trial.

7.      Objection will be made at the time of trial to any attempt to introduce evidence which is directly sought by these Requests and to which no disclosure has been made.

## **DOCUMENTS TO BE PRODUCED**

1.      All documents, records, and communications in your possession, custody, or control concerning Mark Andrews.

2.      All communications in your possession, custody, or control with Mark Andrews and any members of his immediate family.

3.      Any documents Mark Andrews has showed you, gave you, sent you, or discussed with you regarding the allegations in this lawsuit.

4.     All documents, records, and communications related to 2000 Mules, the book and/or film involving Mark Andrews.

5.     All documents, records, and communications related to Plaintiff's security or privacy, or concerns Plaintiff raised related to his security or privacy.