**In the Matter Of:**

ANDREWS V. D'SOUZA

1:22-cv-04259-SDG

---

**DAVID FLORES**

*August 09, 2024*

---



800.211.DEPO (3376)
EsquireSolutions.com

1      IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

2                       DISTRICT OF GEORGIA

3                        ATLANTA DIVISION

4

5                                    )
   MARK ANDREWS,                     )
6            Plaintiff,              )  Case No.:
                                     )
7   vs.                              )  1:22-cv-04259-SDG
                                     )
8   DINESH D'SOUZA, et al.           )
             Defendant.              )
9   _____)

10

11           Zoom Video-Conference and stenographic deposition of

12   DAVID FLORES taken on behalf of the Defendant, pursuant to the

13   stipulations set forth below, before Ariel Walcott, Certified

14   Court Reporter, commencing at the hour of 10:37 a.m. Friday,

15   August 9, 2024.

16

17

18

19

20

21

22                    Ariel Walcott, CVR, CCR

23              Esquire Deposition Solutions
                   2700 Centennial Tower
24                    101 Marietta Street
                   Atlanta, Georgia 30303
25                       (404)495-0777



```
 1                      APPEARANCES PAGE

 2    FOR THE DEFENDANT:

 3            Phillip George
              Greenberg Traurig, LLP
 4            3333 Piedmont Road NE, Suite 2500
              Atlanta, Georgia 30305
 5            Office: (678)553-2100
              Fax: (678)553-2212
 6            E-mail: Philip.George@gtlaw.com

 7            Austin Vining
              Buchalter APC
 8            124 Peachtree Memorial Drive NW, Unit 1
              Atlanta, Georgia 30309
 9            Office: 318-225-0678
              E-mail: avining@buchalter.com

10

11    FOR THE PLAINTIFF:

12            Jane Bentrott, Catherin Chen
              Protect Democracy
13            2020 Pennsylvania Ave NW, Suite 163
              Washington D.C. 20006
14            Office: (202)843-3092
              E-mail: jane.bentrott@protectdemocracy.com;
15                    catherine.chen@protectdemocracy.com

16    FOR THE WITNESS:

17            Christopher Murphy
              NCR VOYIX
18            864 Spring Street NW
              Atlanta, Georgia 30309
19            Office: 1(800)225-5627
              E-mail: christopher.murphy@ncrvoyix.com
20

21

22

23

24

25
```



DAVID FLORES                                          August 09, 2024
ANDREWS V. D'SOUZA                                                  3

```
 1              I N D E X   T O   E X A M I N A T I O N S

 2    EXAMINATION                                      PAGE

 3    DIRECT EXAMINATION BY: Philip George              5

 4    CROSS EXAMINATION BY: Austin Vining             24, 25

 5    CROSS EXAMINATION BY: Jane Bentrott               25

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22    (In the following transcript, dashes [--] are used to indicate

23    an intentional or purposeful interruption of a sentence, and

24    ellipsis [...] is used to indicate halting speech or an

25    unfinished sentence in dialogue, written material.)
```



```
 1               P R O C E E D I N G S

 2       VIDEOGRAPHER:  We are now on the record.  The time is

 3   10:37 a.m. eastern time.  Today is August the 9th of 2024.

 4   This begins the 30B6 deposition of David Flores.  The case

 5   is Mark Andrews versus Danesha D'Souza et al. Filed at the

 6   United States District Court for the Northern District of

 7   Georgia Atlanta Division.  The case number is

 8   122-CV-04259.  My name is Don Savoy.  I am your remote

 9   videographer today.  The court order is Ariel Walcott.  We

10   are representing Esquire Deposition Solutions.  Counsel,

11   please state your name and who you represent.  After

12   which, the court reporter will swear in the witness.

13       MR. GEORGE:  This is Phil George from the law firm

14   Greenberg Traurig representing the (unintelligible),

15   Captain Engelbrecht and Greg Phillips.

16       MR. VININGS:  This is Austin Vining from the firm

17   Buchalter representing defendants Dinesha D'Souza, Media

18   LLC.

19       MS. BENTROTT:  This is Jane Bentrott from Protect

20   Democracy representing Plaintiff, Mark Andrews.

21       MS. CHEN:  This is Catherine Chen, Council for

22   Plaintiff from Protect Democracy.

23       MR. MURPHY:  This is Chris Murphy, Council for NCR

24   Voyix and the witness, Mr. Flores.  Just to be clear, it's

25   my understanding this is a 30B6 deposition of NCR Voyix,
```



```
 1        and Mr. Flores is our designee.
 2                      David Flores,
 3   having been first duly sworn, testified under oath as follows:
 4                   DIRECT EXAMINATION
 5   BY MR. GEORGE:
 6        Q.   Good morning, Mr. Flores.  My name's Phil George, as
 7   I said.  Have you ever given a deposition before?
 8        A.   Yes.
 9        Q.   Just quickly go over some ground rules just to make
10   sure everyone's on the same page.  Please just let me finish my
11   question.  I'll let you finish your answer.  That sound okay?
12        A.   Yes.
13        Q.   If you think I'm interrupting you for any reason,
14   just let me know, and I'll stop doing that.  Please try to
15   give verbal answers so the court reporter can record them.  Is
16   that okay?
17        A.   Yes.
18        Q.   If you don't understand a question I asked, please
19   let me know.  Otherwise, I'll assume that you understand what
20   I'm asking.  Is that okay?
21        A.   Yes.
22        Q.   If you need a break for any reason, just let me know
23   after you do that as long as it's not in the middle of the
24   question, okay?
25        A.   Yes.
```



DAVID FLORES                                              August 09, 2024
ANDREWS V. D'SOUZA                                                     6

1        Q.    Is there any reason you can not provide truthful and

2    accurate testimony for that?

3        A.    No.

4        Q.    Mr. Flores, where do you currently work?

5        A.    I work for NCR Voyix Corporation.

6        Q.    What's your job title?

7        A.    HR Business Partner.

8        Q.    What are your general job responsibilities?

9        A.    I support our US operations or leadership team

10   organization.  Support managers as well as employees within our

11   US operations group.  I also handle any employee relations type

12   complaints that might come in from that group.

13       Q.    What's your business address?

14       A.    It's 864 Spring Street, Northwest Atlanta.  I don't

15   recall the zip code.

16       Q.    How long have you worked at NCR?

17       A.    I have been with NCR 14 and a half years.

18       Q.    Am I right, you were previously at NCR Corporation.

19   And then when it switched over, you're now at NCR Voyix?

20       A.    Correct.

21       Q.    Do you understand that you've been designated by NCR

22   Voyix to testify on its behalf in this lawsuit?

23       A.    Yes.

24       Q.    What do you know about this lawsuit?

25       A.    Just what I was given from counsel.



1     Q.   What is Mark Andrews' current job at NCR Voyix?

2     A.   He is the ███████████████████.

3     Q.   What does that role entail?

4     A.   I couldn't give you specifics.  I know that, that was

5   part of what we provided in the documentation.

6     Q.   You recall how long Mr. Andrews has been in that role

7   for?

8     A.   He's been in that role seven years.

9     Q.   What did you do to prepare for this deposition today?

10     A.   I met with counsel and was able to review the

11   documents that were sent.

12     Q.   And by that, you mean the documents that NCR Voyix

13   produced in this case?

14     A.   That's correct.

15     Q.   Did you review any other documents outside of the

16   documents that NCR Voyix produced?

17     A.   Just his record in our workday system.

18     Q.   Other than with counsel, did you have any discussions

19   with any other current NCR employees preparing for today's

20   deposition?

21     A.   Not that I recall.

22     Q.   Did you have any discussion with any former NCR

23   employees in preparing for today's deposition?

24     A.   No.

25     Q.   Did you personally know Mark Andrews?



DAVID FLORES                                                                August 09, 2024
ANDREWS V. D'SOUZA                                                          8

1      A.   No.

2      Q.   I will share a document on my screen which is, then

3  pre-marked as TTV Exhibit 1.  You see that document on your

4  screen?

5      A.   I do.

6      Q.   Yeah.  I'll just briefly scroll through it.  Is it

7  one of the subpoenas that NCR Voyix received in Google's case?

8      A.   I have not seen any subpoenas.

9      Q.   Okay.  You haven't seen any subpoenas?

10      A.   I'm sorry, you broke up.

11      Q.   Sorry, I just wanted to ask.  So you haven't seen any

12  subpoenas in preparing for today's deposition?

13      A.   No.

14      Q.   Okay.  Really important, the end of this document

15  just provides certain deposition topics.  Have you seen these

16  before?

17      A.   No.

18      Q.   Are you prepared to discuss these deposition topics?

19  Let me scroll through it a little bit, and we'll be

20  (inaudible).

21      A.   I'm sorry, the last, what you said was kind of

22  garbled.

23      Q.   Are you prepared to discuss these deposition topics

24  today?

25      A.   Yes.



1     Q.    And towards the end of this, there are three

2   categories of additional documents to be produced.  Did NCR

3   diligently look for documents responsive to these categories?

4     A.    I have no way to answer that.

5     Q.    What I am showing you is pre-marked as TTV Exhibit 2.

6   This is another subpoena dated August 1, 2020 or -- I think

7   you've never seen this document as well?

8     A.    I have not.

9     Q.    Do you know what steps NCR took to look for documents

10  that were requested in these subpoenas.

11    A.    I have no knowledge of that.

12    Q.    Now I am sharing with you which is pre-marked as TTV

13  Exhibit 3.  First of all, the 1st page here is a letter from

14  NCR Voyix; do you recognize this letter?

15    A.    Can you scroll down to the bottom?

16    Q.    It's just a one-page letter.

17    A.    I may have as part of what we produced to you, but --

18    Q.    And what follows is the entirety of the NCR Voyix

19  production, the Blue Case Light Loan, NCRV 13116,

20  (unintelligible); you know if you've seen all of these

21  documents?

22    A.    I have looked at what we produced, yes.

23    Q.    Okay.  I'm going to show you a series of documents.

24  And just for your reference point, these are all part of that

25  financial end, broke them out, we'll move to smaller accounts,



```
 1   okay?  I'm going to show you what's been marked as TTV Exhibit
 2   4, which is NCRV 43 to 47.  Is this the annual performance
 3   review for 2021 for Mr. Mark Andrews?
 4        A.   Yes.
 5        Q.   Is this the typical format of an annual performance
 6   review for NCR employees?
 7        A.   Yes.
 8        Q.   But part of it is filled out by the employee, and
 9   part of it is filled out by employee supervisor?
10        A.   That's correct.
11        Q.   These annual performance evaluations are represented
12   or kept in the regular course of business of NCR?
13        A.   I'm sorry, can you restate that question?
14        Q.   Yes.  These kinds of annual performance reviews, are
15   records like this kept in the regular course of NCR business?
16        A.   Yes.
17        Q.   And it reflects regularly conducted activity in NCR?
18        A.   Yes.
19        Q.   I'm highlighting in the first page, "the rating meets
20   expectations."  Are these ratings typically performed by
21   managers?
22        A.   Yes.
23        Q.   Does NCR have guidance as to how managers should be
24   evaluating reportings?
25        A.   Yes.
```



DAVID FLORES                                              August 09, 2024
ANDREWS V. D'SOUZA                                                    11

1      Q.   What is the general rating scale?

2      A.   Ratings go from a one through five.

3      Q.   Is there guidance about how often managers get a four

4   to five versus a four versus a three, et cetera?

5      A.   Ratings are given based on performance.

6      Q.   Does NCR have a policy where roughly fifty percent of

7   employees receive a three, less receive a four, less receive a

8   two, something like that?

9      A.   No.

10     Q.   Is three the most common rating for managers?

11     A.   Yes.

12     Q.   Is it the most common rating by far?

13     A.   I'm sorry, it wasn't real clear.

14     Q.   Is it the most common rating by far?

15     A.   Yes.

16     Q.   Do you know roughly what percentage of employees are

17  given the rating of three in expectation?

18     A.   I don't have that information.

19     Q.   Sharing on my screen which has been marked as TTV

20  Exhibit 5, NCRV 48 to 50.  Is this the annual performance

21  review for Mark Andrews for 2022?

22     A.   Yes.

23     Q.   And this is another document that NCR Voyix produced

24  in this case; right?

25     A.   Correct.



DAVID FLORES                                      August 09, 2024
ANDREWS V. D'SOUZA                                            12

1      Q.   Again, this record is type that's kept in the regular
2   course of business for NCR?
3      A.   Yes.
4      Q.   And it reflects a regularly conducted activity
5   policy?
6      A.   Yes.
7      Q.   Was there any significant differences in the
8   evaluation process at NCR in 2022 versus 2021?
9      A.   Not aware of any.
10     Q.   And Kelly Moyer would have been the manager
11  evaluating Mr. Andrews in 2022?
12     A.   Yes.  I believe that's correct.
13     Q.   And in this 2022 evaluation, Mr. Andrews received the
14  same score as in 2021, meets expectations, three; right?
15     A.   Yes.
16     Q.   Is NCR aware of any change in Mr. Andrews'
17  performance at work in 2022 versus 2021?
18     A.   I wouldn't be able to comment on that.  I wouldn't
19  know.
20     Q.   I'm reading on the screen.  What's been marked as TTV
21  Exhibit 6.  This is NCRV 58 to 59.  Can you see that on the
22  screen?
23     A.   Yes.
24     Q.   Well, again, this is the subset of the documents
25  produced by NCR Voyix in this case; right?



1    A.    Correct.

2    Q.    NCR keeps records like this in the regular course of

3  the business; right?

4    A.    Yes.

5    Q.    In 2023, Mr. Andrews had the new manager,

6  (unintelligible); right?

7    A.    Correct.

8    Q.    Why did Mr. Andrews have a new manager in 2023?

9    A.    I don't have that information.

10    Q.    Does that have something to do with the NCR splitting

11  into (inaudible)?

12    A.    I don't know.

13    Q.    Mr. Andrews, again, given a rating of meets

14  expectations three in this 2023 evaluation; correct?

15    A.    Yes, that's correct.

16    Q.    Thank you.  Now, I am sharing with you what's been

17  marked as TTV Exhibit 7, NCRV 61.  Can you see that on the

18  screen?

19    A.    Yes.

20    Q.    This is another document that's produced by NCR in

21  this case; correct?

22    A.    Correct.

23    Q.    Does this kind of document have a name in NCR?

24    A.    Other than what's on the screen there, it says

25  compensation history, but I'm not aware of any other name.



1    Q.   Does this document show Mr. Andrews' compensation

2 history for the whole amount of time that he's been at NCR?

3    A.   Yes.  It appears so, yes.

4    Q.   Are records like this kept in the regular course of

5 NCR business?

6    A.   Yes.

7    Q.   Is this a report that's generated?

8    A.   Yes.

9    Q.   Where is it generated from?

10    A.   We use the Workday HRIS system here at NCR Voyix.

11    Q.   Looking into the business process column here,

12 there's a couple of different categories.  Can you explain to

13 me what ad hoc compensation (inaudible) means?

14    A.   From time to time, there may be requests for

15 additional salary, an increase.  It could be for promotion

16 purposes.

17    Q.   Any difference in promotion compensation flow?

18    A.   Well, typically, you're going to have either merit

19 increase, promotion, or ad hoc which means it could be any time

20 during the year for a reason of, could be a one-time payment

21 bonus of some sort.  That's really it.

22    Q.   Can you explain to me what merit compensation

23 increase means?

24    A.   The merit increase.  What most people would consider

25 a raise.



1    Q.   So the merit increase is (unintelligible)?

2    A.   I'm sorry, you were garbled there.

3    Q.   Are merit increases given to every single employee at

4    NCR?

5    A.   No.

6    Q.   So the compensation increase is based on merit?

7    A.   That's correct.

8    Q.   Who determines when the merit compensation will be

9    made?

10   A.   The merit compensation changes are made annually as

11   part of the performance appraisal process.

12   Q.   So is it the employee supervisor that decides that

13   there should be merit compensation changed or someone else that

14   does it?

15   A.   The manager will assign what they feel a merit

16   increase should be for that individual.

17   Q.   Beyond that, is there any sort of approval process

18   for that?

19   A.   Yes.

20   Q.   What is that process?

21   A.   So the process begins with the manager assigning a

22   performance appraisal rating.  And then based on that rating,

23   there guidelines for what the merit increase could be.  But

24   once the manager makes their recommendation in the system, it

25   does have to go up through our upper-level management all the



DAVID FLORES                                               August 09, 2024
ANDREWS V. D'SOUZA                                                      16

 1  way up to the CEO level who does the final approval for all
 2  merit increases.
 3       Q.   Roughly what percentage of employees receive merit
 4  compensation increase?
 5       A.   You're garbled again, sorry.
 6       Q.   Roughly what percentage of employees receive merit
 7  compensation increase?
 8       A.   I don't have that number.
 9       Q.   Do you have an estimate?
10       A.   I can't even take a guess.
11       Q.   Am I correct that, starting in 2015, Mr. Andrews is
12  receiving salary increases up until 2020, when he receives an
13  increase from ████████ to (unintelligible)?
14       A.   That's correct.
15       Q.   Was that increase related to COVID in any way?
16       A.   Yes.
17       Q.   Were all employees given a temporary salary increase
18  at that time?
19       A.   Not all.
20       Q.   Were most?
21       A.   Yes.
22       Q.   And the next figure we see there later in 2020 is Mr.
23  Andrews' salary goes back up to the level it was at the
24  beginning; right?
25       A.   Right.



1    Q.   And then in 2022, Mr. Andrews received a merit

2    increase from ████████ to ████████; right?

3    A.   Yes.  That appears to be the case from the document,

4    yes.

5    Q.   The farthest right column says, "proposed", and then

6    it has a different number.  Than the column on the left of

7    that, it says, "compensation change is current."  Is the

8    proposed figure that was proposed by the manager? (SIC)

9    A.   Yes.

10   Q.   But the compensation change is current column, that's

11   what the actual compensation is?

12   A.   That's the current compensation.

13   Q.   But after Mr. Andrews received a merit increase to

14   ████████ in 2023, Mr. Andrews received a merit increase to

15   ████████; right?

16   A.   Yes.

17   Q.   Do you know if this chart includes any data from

18   2024?

19   A.   No.  It looks only up until April 1st of 2023 is

20   what's on the screen.

21   Q.   Mr. Andrews is currently the ████████████████████

22   ████████; right?

23   A.   Yes.  That's the general position.

24   Q.   Is that a senior role within NCR?

25   A.   Yes.



1    Q.   What would be the position above that?

2    A.   I don't know what the wording would be, but he is an

3    E1.  So E2 would be the next highest position.

4    Q.   Can you explain what E1 means?

5    A.   Executive level 1.

6    Q.   Below an E1, what would that be called?

7    A.   That would a Grade 14.

8    Q.   Is there some significance moving from a Grade 14 to

9    an E1 level?

10   A.   Just the overall level of responsibility.

11   Q.   Was Mr. Andrews ever passed over for any promotions?

12   A.   I'm not aware of any.

13   Q.   Mr. Andrews ever demoted?

14   A.   No.

15   Q.   Other than the temporary blip due to COVID that we

16   discussed, has Mr. Andrews' salary kept increasing since he has

17   been in NCR?

18   A.   Yes.

19   Q.   Going up on my screen, which is pre marked as TTV

20   Exhibit 8, this is NCRV 66.  Can you see that document on your

21   screen?

22   A.   Yes.

23   Q.   Another document that NCR produced; right?

24   A.   That's correct.

25   Q.   Can you explain what's going on in this letter?



1     A.    So the company went through a split in October of

2  2023, moving from NCR Corporation to two separate corporations,

3  NCR Atleos and then NCR Voyix corporations.  This is a bonus, a

4  retention bonus, a special bonus that was paid out to employees

5  as a result of their work in completing the split.

6     Q.    Was this special bonus awarded to all NCR employees?

7     A.    As far as I'm aware, yes.

8     Q.    Do employees typically receive a yearly bonus in

9  addition?

10    A.    Yes.  You can be eligible for bonus based on your

11 grade and the business that you're in.  So there could be a

12 payout.  Again, that's going to be based on whether or not the

13 company makes a certain number that they've determined as to

14 whether those bonuses are paid out.  And if so, what percentage

15 is paid out.

16    Q.    And the previous exhibit that we looked at, was there

17 any information related to Mr. Andrews' bonus on there?   I can

18 pull it up if you'd rather see it again.

19    A.    I would need to look at it again.

20    Q.    Sharing the TTV Exhibit 7 again.  The same question,

21 in this document about the bonus of Mr. Andrew's.

22    A.    I don't see that captured here.  Although -- well, go

23 back.  So there is where it says, ███, 2015 ad hoc

24 compensation change bonus RFR corporate core."  So this is the

25 additional bonus that he could be eligible for based on the



DAVID FLORES                                              August 09, 2024
ANDREWS V. D'SOUZA                                                     20

 1  company's performance.  It shows there that he would be

 2  eligible for up to 15 percent of his annual salary.

 3      Q.   What I am showing has been marked as TTV Exhibit 9,

 4  NCRV 67 to 113.  You see that on your screen?

 5      A.   Yes, I do.

 6      Q.   I will briefly scroll through all of it, but does

 7  this look like a collection of days off that Mr. Andrews took

 8  since he has been an NCR employee?  I guess since 2019.

 9      A.   Yes.

10      Q.   And this is the kind of document that NCR keeps in

11  the regular portion of business?

12      A.   Yes.

13      Q.   How many days off a year does Mr. Andrews have?

14      A.   Vacation eligibility is determined based on the grade

15  of your position as well as how many years of tenure you have

16  with the company.  I couldn't tell offhand what he's eligible

17  for, but that's how it's determined.

18      Q.   Do you recall anything in the NCR documents that

19  would be used in this case that indicated how many days off Mr.

20  Andrews was eligible for?

21      A.   I don't recall anything with eligibility, just what

22  you're showing here is the actual requests.

23      Q.   Is NCR aware of any discussion Mr. Andrews has with

24  any other NCR employees regarding 2,000 Mules, the movie?

25      A.   Restate the question.  I don't quite understand.



1      Q.   Sure.  Is NCR aware of any discussions Mr. Andrews

2  had with any other NCR employees regarding 2,000 Mules movie?

3      A.   I'm not aware of any.

4      Q.   Is NCR aware of any discussions Mr. Andrews had with

5  any other NCR employees regarding him voting?

6      A.   I'm not aware of any.

7      Q.   Is NCR aware of any discussions Mr. Andrews had with

8  any other NCR employees about him being in the news?

9      A.   I'm not aware.

10     Q.   Is NCR aware of 2,000 Mules movie affecting Mr.

11  Andrews' work performance in any way?

12     A.   I'm not aware of anything like that.

13     Q.   What, if any, communications did NCR have with the

14  Plaintiffs' Council in this case?

15     A.   I'm not aware of any of those meetings or any of that

16  information.

17     Q.   Has Mr. Andrews had any communications with NCR

18  related to this lawsuit?

19     A.   I'm not aware of any.

20     Q.   Did Mr. Andrews inform anyone at NCR when he filed

21  this lawsuit?

22     A.   I am not aware of anything like that.

23     Q.   Is NCR aware of any communications between Mr.

24  Andrews and any NCR employees regarding this lawsuit?

25     A.   I'm not aware of anything like that.



1     Q.   Is NCR aware of anything negative happening to Mr.

2    Andrews as a result of 2,000 Mules movie?

3     A.   I'm not aware of anything negative.

4     Q.   Is NCR aware of Mr. Andrews ever applying for and not

5    receiving a position at NCR?

6     A.   I am not aware of anything like that.

7     Q.   Is NCR aware of Mr. Andrews ever being harassed?

8     A.   No.  No knowledge of that happening.

9     Q.   Is NCR aware of Mr. Andrews pursuing any new

10   employment opportunities?

11    A.   Within the company or without?

12    Q.   We'll start with within.

13    A.   I'm not aware if he is or not.

14    Q.   Is NCR aware of Mr. Andrews pursuing any new

15   employment opportunities outside the company?

16    A.   No.

17    Q.   Is NCR aware of Mr. Andrews avoiding pursuing any new

18   employment opportunities within NCR?

19    A.   I'm not aware of anything like that.

20    Q.   Is NCR aware of Mr. Andrews avoiding pursuing any new

21   employment opportunities outside of NCR?

22    A.   I have no knowledge of that.

23    Q.   Is NCR aware of Mr. Andrews avoiding pursuing any

24   other opportunities?

25    A.   Not aware.



DAVID FLORES                                                    August 09, 2024
ANDREWS V. D'SOUZA                                                          23

1        Q.   Is NCR aware of Mr. Andrews professional reputation
2   being harmed in any way as a result of 2,000 Mules?
3        A.   Not aware of any damage.
4        Q.   Is NCR aware of Mr. Andrews reputation for integrity
5   being harmed in any way as a result of 2,000 Mules?
6        A.   Not aware of anything like that.
7        Q.   Is NCR aware of plaintiff's professional reputation
8   being harmed in any way by (unintelligible)?
9        A.   I have no knowledge of that.
10       Q.   Is NCR aware of Plaintiff's professional reputation
11  being harmed in any way by Captain Engelbrecht?
12       A.   Not aware of that.
13       Q.   Is NCR aware of Plaintiff's professional reputation
14  being harmed in any way by Greg Phillips?
15       A.   Not aware of that.
16       Q.   Is NCR aware of Mr. Andrews life being affected in
17  any way as a result of 2,000 Mules?
18       A.   Not aware.
19       Q.   I will briefly pull up Exhibit 5.  And see Mr.
20  Andrews' annual performance review for 2022 again on your
21  screen?
22       A.   Yes.
23       Q.   At the bottom of the first page, Mr. Andrews says,
24  "this was a very challenging year considering staff rebuilding
25  underway and relying on EY to provide resources to complete



1  2020 student product plan.  IA also implemented a new work

2  paper tool that required the implementation of new IA

3  processes.  A successful recruiting and adoption of new IA

4  processes will further enhance the IT audit function within

5  NCR."  Do you know what IA stands for?

6       A.   No, I do not.

7       Q.   In this response, Mr. Andrews doesn't mention 2,000

8  Mules, does he?

9       A.   No, he does not.

10      Q.   Scrolling to the bottom of NCRV 49, the top of 50,

11 Mr. Andrews again has written an employee evaluation here

12 noting that 2022 was a challenging year.  Does he mention

13 anything in this evaluation about 2,000 Mules?

14      A.   No.

15      Q.   He doesn't mention anything about to (unintelligible)

16 vote?

17      A.   No.

18      Q.   He doesn't mention anything about Captain

19 Engelbrecht?

20      A.   No.

21      Q.   He doesn't mention anything about Gregg Phillips?

22      A.   No.

23           MR. GEORGE:  That may be all the questions I have,

24      but I think the counsel may have few more.

25                          CROSS-EXAMINATION



DAVID FLORES                                                    August 09, 2024
ANDREWS V. D'SOUZA                                                          25

```
 1   BY MR. VINING:
 2       Q.   Good morning, Mr. Flores.  My name is Austin Vining.
 3   I have just a couple of quick questions for you.  Is NCR voice
 4   aware of Mr. Andrews' professional reputation being harmed as a
 5   result of Dinesh D'Souza?
 6       A.   We're not aware of anything like that.
 7       Q.   And is NCR Voyix aware of Mr. Andrews' professional
 8   reputation being harmed as a result of D'Souza Media, LLC?
 9       A.   We're not aware of anything like that.
10            MR. VININGS:  That's all the questions I have.
11                        CROSS-EXAMINATION
12   BY MS. BENTROTT:
13       Q.   Good morning.  My name is Jane Bentrott.  I just have
14   a couple of questions.  I believe you testified earlier that
15   you're not aware of 2,000 Mules affecting Mr. Andrews in any
16   way.  Do you recall that testimony?
17       A.   Yes.
18       Q.   Does that mean that you have no knowledge either way
19   whether 2,000 Mules affected Mr. Andrews in either direction?
20       A.   That's correct.
21            MS. BENTROTT:  Thank you.  No further questions.
22            COURT REPORTER:  Would you all like to read and sign?
23            MR. MURPHY:  We're going to waive signature.
24            VIDEOGRAPHER:  Would anyone like to order a copy of
25        the transcript and/or video at this time?
```



1          MR. GEORGE:  I'd like to order a version of the

2    transcript.

3          MR. VININGS:  Same for us as well.

4          MS. BENTROTT:  And I would like to order a copy of

5    the transcript as well.

6          VIDEOGRAPHER:  This concludes the deposition of David

7    Flores.  We're going off the record at 11:27 a.m. eastern

8    time.

9          COURT REPORTER:  Mr. Murphy, did you not want a copy

10   of the transcript?

11         MR. MURPHY:  Not at this time.

12              (Deposition concludes at 11:27 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25



1             D I S C L O S U R E

2    STATE OF GEORGIA
     COUNTY OF FULTON
3

4            Pursuant to Article 10.B of the rules and

5    regulations of the Board of Court Reporting of the

6    Judicial Council of Georgia, I make the following

7    disclosure:

8            I am a Georgia Certified Court Reporter.  I am here

9    as an independent contractor for Esquire.  Esquire was

10   contacted by Greenberg Traurig, LLP office to provide court

11   reporting services for this deposition.  Esquire will not be

12   taking this deposition under any contract that is prohibited by

13   O.C.G.A. 15-14-37(a) and (b).  Esquire has no

14   contract/agreement to provide court reporting services with any

15   party to the case, any counsel in the case, or any reporter or

16   reporting agency from whom a referral might have been made to

17   cover this deposition.  Esquire will charge its usual and

18   customary rates to all parties in the case, and a financial

19   discount will not be given to any party to this litigation on

20   this 9th day of August 2024.

21

22

23                                  
                                    _____

24                                       Ariel Walcott

25

DAVID FLORES                                      August 09, 2024
ANDREWS V. D'SOUZA                                          28

```
1              C E R T I F I C A T E

2    STATE OF GEORGIA
     COUNTY OF FULTON
3

4         I hereby certify that the foregoing transcript was

5    stenographically recorded by me, as stated in the caption;

6    the colloquies, statements, questions, and answers

7    thereto were reduced to typewriting under my direction

8    and supervision; and the transcript is a true and correct

9    record of the testimony/evidence given to the best of my

10   ability.

11        I further certify that I am not a relative or

12   employee or attorney or counsel of any of the parties,

13   nor am I a relative or employee of such attorney or

14   counsel, nor am I financially interested in the action on this

15   9th day of August 2024.

16

17

18

19

20

21   _____

22                        Ariel Walcott

23                   Certified Court Reporter

24                    6652-7927-8035-7632

25
```

