# EXHIBIT 143

# SETTLEMENT AND RELEASE OF CLAIMS AGREEMENT

This Settlement and Release ("**Agreement**") is entered into by and between Salem Media Group, Inc., a Delaware corporation with offices at 6400 N. Belt Line Road Irving, TX 75063 ("**Salem**"), and the Armed Conflict Location & Event Data Project ("**ACLED**"), as of October 19, 2022 (the "**Execution Date**").

## Background

WHEREAS, Salem's subsidiary, Salem Communications Holding Corp., d/b/a Regnery Publishing (the "**Publisher**"), has published a book entitled *2000 Mules* (the "**Book**"), which in a pre-release, non-public, advance copy of the Book contained references to ACLED and data compiled, created and published by ACLED (collectively, the "**Offending Content**"), which ACLED has asserted was used by the Publisher in a misleading or false manner and in violation of the Terms of Use & Attribution Policy pursuant to which they are made available for license, which the Publisher denies (the "**Dispute**").

Without admitting any wrongdoing or liability, the parties to this Agreement desire to resolve and settle the Dispute, in its entirety, including the claims asserted by ACLED, or that could have been asserted by ACLED, relating to the Publisher's inclusion of the Offending Content in the pre-release copies of the Book, subject to the terms of this Agreement;

## Agreement

In consideration of the mutual promises and obligations set forth in this Agreement, Salem and ACLED agree as follows:

1.  <u>Release and Waiver of Claims</u>.

1.1  <u>Pre-Conditions</u>. In exchange for the release to be granted by ACLED herein, Salem shall, and shall cause the Publisher and Salem's other affiliated entities, and its and their respective officers, directors, employees, insurers, and representatives to:

(i)  immediately cease all distribution and publication of any existing copies of the Book that contain the Offending Content;

(ii)  within five (5) business days after the Execution Date, destroy all existing copies of the Book in its possession or control that contain the Offending Content;

(iii)  within (5) days after the Execution Date, to the extent that Salem has not already done so, contact all prior recipients of the Book (via e-mail and postal mail) to request that they return or destroy the Book,

(iv)  permanently remove all references to ACLED and all data and graphics compiled, created or published by ACLED, as well as any and all data, graphics, statements and innuendo derived therefrom or relating thereto, from all versions and copies of the Book printed on or after the Execution Date;

    (v)    within five (5) business days after the Execution Date, permanently remove all references to ACLED and all data and graphics compiled, created or published by ACLED, as well as all data, graphics, statements and innuendo derived therefrom or relating thereto, from all existing marketing, advertising, promotion and publicity for, of or relating to the Book, whether formal or informal, written or oral, use commercially reasonable efforts to delete, recall or correct any such posts or materials, and refrain from any such use in the future; and

    (vi)    within five (5) business days after the Execution Date, prepare a statement of correction satisfactory to ACLED (the "**Correction**") that includes the following acknowledgments:

- after the advance copies of the Book were distributed, Salem was informed by the Armed Conflict Location & Event Data Project (ACLED) that (1) references to ACLED in the Book were erroneous, (2) ACLED does not collect or publish mobile device data, or any other form of data that would allow for the tracking of individual persons, (3) the purported analysis contained in the Book is therefore not the type of analysis that is capable of being conducted using ACLED data, and (4) no other data published by ACLED support any of the claims or conclusions attributed to ACLED;

- therefore, references to ACLED have been removed;

    (vii)    immediately upon ACLED's written approval of the Correction, distribute the Correction (via e-mail and postal mail) to all news outlets, influencers and other individuals to which prior copies of the Book were provided, which Correction ACLED may also distribute or publish as it deems appropriate;

    (viii)    within thirty (30) days after the Execution Date, submit to ACLED an affirmation by senior executives of Salem and the Publisher, to certify their compliance with the forgoing requirements; and

    (ix)    refrain from misrepresenting ACLED, its data or graphics, or its association with Salem, the Publisher or the Book in the future.

For the avoidance of doubt, nothing in this Agreement is intended to, or shall, prevent or limit ACLED's ability to respond, whether directly or indirectly, to any requests for comment or mentions of the Offending Content or otherwise relating to the subject matter of this Agreement, in any and all media, including on social media or in the press.

1.2    <u>Release</u>.  Subject to the foregoing, ACLED forever waives, releases, and discharges Salem and its affiliated entities, and its and their officers, directors, employees, insurers, and representatives from any and all claims, demands, actions, causes of actions, fees, damages, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, that ACLED has had or will have against Salem relating to its

CONFIDENTIAL

inclusion of the Offending Content in the pre-release, non-public, advance distribution of the Book as the facts are known to ACLED as of the Execution Date. For the avoidance of doubt, the waiver, release and discharge set forth herein are contingent on fulfillment of the conditions set forth in Section 1.1.

    1.3    <u>Section 1542 of the California Civil Code</u>.  This Agreement is intended to be effective as a general release of and bar to all claims as expressly stated in Section 1.2. To the extent expressly stated in Section 1.2, ACLED specifically waives the protections of California Civil Code Section 1542, which states: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY." ACLED acknowledges that ACLED may later discover claims in addition to or different from those which ACLED now knows or believes to exist with regards to the subject matter of this Agreement, and which if known or suspected at the time of executing this Agreement, may have materially affected its terms. Nevertheless, ACLED waives any and all claims that might arise as a result of such different or additional claims.

    2.    <u>Knowing and Voluntary Acknowledgment</u>.  ACLED specifically agrees and acknowledges that: (a) ACLED knowingly, freely, and voluntarily assents to all of the terms and conditions of this Agreement including, without limitation, the waiver, release, and covenants contained in it, and (b) ACLED is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which ACLED is otherwise entitled.

    3.    <u>Assignment of Rights</u>.  ACLED represents and warrants that ACLED has not assigned, conveyed, or transferred, or attempted or purported to assign, convey, or transfer, in any manner or degree whatsoever, to any person or entity, any rights, claims or remedies released in this Agreement.

    4.    <u>Use of this Agreement in Court</u>.  This Agreement may be pled as a full and complete defense to any subsequent action or other proceeding involving any party or person identified herein to the extent arising out of the claims released and discharged by this Agreement.

    5.    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of Salem and its successors and assigns.

    6.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to its conflict of laws principles.

    7.    <u>Attorneys' Fees</u>.  Should any action be brought by ACLED on any claim released and discharged by this Agreement or to enforce or interpret any provision of this Agreement,

ACLED will be entitled to recover, in addition to any other relief, reasonable attorneys' fees, costs and expenses of any litigation, settlement or other dispute resolution.

8. <u>Burden and Benefit</u>. The parties understand and agree that this Agreement binds and benefits their agents, employees, owners, shareholders, officers, directors, predecessors, successors, divisions, subsidiaries, affiliates, witnesses, attorneys, representatives, assigns, heirs and insurers.

9. <u>Entire Agreement; Modification</u>. Unless specifically provided herein, this Agreement contains all of the understandings and representations between Salem and ACLED relating to the subject matter in this Agreement/ and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, regarding such subject matter. No provision of this Agreement may be amended or modified unless the amendment or modification is agreed to in writing and signed by an Executive Director or other senior executive at ACLED and by Salem's General Counsel.

10. <u>No Admission of Liability</u>. It is understood and agreed that this is a compromise settlement of an existing or potential claim and that Salem's consideration for this Agreement shall not be deemed or construed in any way as an admission of liability or wrongdoing. The liability for any and all claims is expressly denied by Salem.

11. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart's signature page of this Agreement, by facsimile, electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, has the same effect as delivery of an executed original of this Agreement.

12. <u>Acknowledgment of Full Understanding</u>. ACLED ACKNOWLEDGES AND AGREES THAT ACLED HAS FULLY READ, UNDERSTANDS, AND VOLUNTARILY ENTERS INTO THIS AGREEMENT. ACLED ACKNOWLEDGES AND AGREES THAT ACLED HAS HAD AN OPPORTUNITY TO ASK QUESTIONS AND CONSULT WITH AN ATTORNEY OF ACLED'S CHOICE BEFORE SIGNING THIS AGREEMENT.

**IN WITNESS WHEREOF**, Salem and ACLED have executed this Agreement as of the Execution Date above.

SALEM MEDIA GROUP, INC.

By: *Christopher J. Henderson* (DocuSigned, 175A43B5F8AC469...)

Name: Christopher J. Henderson

Title: Executive VP & General Counsel

ARMED CONFLICT LOCATION & EVENT DATA PROJECT (ACLED)

By: *Olivia Russell* (DocuSigned, FD1DDD6C42DC48D...)

Name: Olivia Russell

Title: Executive Director

The Publisher has read the Agreement and, as an inducement to cause ACLED to sign, acknowledges and agrees to fulfill all conditions that pertain to the Publisher therein.

SALEM COMMUNICATIONS HOLDING CORP.

By: *Christopher J. Henderson* (DocuSigned, 175A43B5F8AC469...)

Name: Christopher J. Henderson

Title: Executive VP & General Counsel