# EXHIBIT 145



CONFIDENTIAL

Exhibit 0007
6/18/2024
ACLED 30(b)(6)

**Incorrect References to ACLED in "2,000 Mules"**

We have seen three main passages that make incorrect references to ACLED on pages 68, 69, 165, and 166 of the recalled version of the "2,000 Mules" book. The incorrect references in each of these three passages are explained in detail below. If these or similar references are currently included in the upcoming reprint of the book, we request that they be corrected or removed.

1. **Quotation:** "There's a nonprofit organization, the Armed Conflict Location and Event Data Project (ACLED), that operates worldwide. From Pakistan to Somalia to the United States, the group tracks the dates, times, locations, and characteristics of all violent protests around the world. The objective is to provide law enforcement with tools to compare these events and see if there are connections between the groups and individuals that participate in these violent activities. It's a valuable anti-terrorism database *(pages 68 and 69)*."

    **Explanation:** ACLED is not an "anti-terrorism database" and "terrorist" is not a classification we use to code violent events or actors. This point is addressed explicitly in the [ACLED Codebook](#), our core methodology document, which explains the type of data we collect:

    > "As ACLED codes a wide range of constituent events for periods and areas affected by political violence and disorder, the information collected is far more numerous than datasets that focus on specific forms of violence (e.g. civil war, terrorism as defined by targeting of civilians by non-state actors alone, or those with fatality thresholds for inclusion) or only campaigns of violence instead of events…In choosing to categorize actors as rebels, militias, communal organizations, protesters, etc., ACLED [methodology] does not allow for 'insurgents' or 'terrorists' as types of agents. Many violent organizations may use insurgency tactics or commit acts against civilians with intended high fatality levels as part of their violent repertoire. Instead, ACLED considers the goal and organization of each group to be the basis for their classification."

    A researcher could use ACLED data to explore types of actors and activity that they personally consider to be "terrorist/terrorism," but we specifically do not code or classify actors or activity this way, so it is incorrect to describe ACLED as an "anti-terrorism database." The correct description of ACLED from our [website](#) is as follows: "The Armed Conflict Location & Event Data Project (ACLED) is a disaggregated data collection, analysis, and crisis mapping project. ACLED collects information on the dates, actors, locations, fatalities, and types of all reported political violence and protest events around the world. The ACLED team conducts analysis to describe, explore, and test conflict scenarios, and makes both data and analysis open for free use by the public."

ACLED0008

Relatedly, while the ACLED database is a public resource that is used by a wide range of entities that includes government agencies, providing "law enforcement with tools to…see if there are connections between…individuals that participate in…violent activities" is not one of the organization's objectives, as this type of analysis is not possible based on our methodology and the kind of data we collect. ACLED is an event-based dataset that contains certain specific categories of information on incidents of political violence and protest; it is not a dataset that contains information about individual people or mobile devices *(explained in further detail below)*. ACLED data do not contain any personally identifiable information about individual people, with the exception of public figures, and the data cannot be used to track individual people *(explained in further detail below)*. It is therefore incorrect to ascribe this objective to ACLED, as it is not what the dataset is designed for and it is not something that can be done using the data.

Lastly, and most simply, ACLED does not track "the…times…of all violent protests around the world." As indicated in the Codebook and official description noted above, ACLED only collects information on "the dates, actors, locations, fatalities, and types of all reported political violence and protest events." We do not systematically track precise information about time of day in addition to date information *(explained in further detail below)*, so it is incorrect to include "time" in this reference to ACLED in the book. The author actually acknowledges this discrepancy later, on page 165, where he reintroduces ACLED and quotes the direct line from our official descriptions; again, there is no reference to collecting "time" information in these descriptions.[1]

2. **Quotation:** "Is it possible, Gregg Phillips wondered, to match the mules with these Antifa-BLM activists and criminals? Turns out it is possible *(page 68)*…Gregg decided to compare the cellphone IDs of his 242 mules in Atlanta with the cellphone IDs of the violent rioters in the ACLED database. 'Sure enough,' he told me, 'there are dozens and dozens of our mules in these databases. In fact, one-third of our Atlanta mules took part in the Antifa-BLM riots.' There are similar overlaps for the mules in the other states. Gregg estimates that between 10 and 23 percent of all mules identified in the five jurisdictions are also on the ACLED list *(page 69)*."

**Explanation:** The use of ACLED data described in this section is not possible. ACLED does not collect mobile device data or any other identifiable information on individual participants in events. There are no "cellphone IDs of…violent rioters in the ACLED

---

[1] The ACLED Codebook refers to "Event Time," but it clarifies that only three kinds of temporal information are included in the dataset: "1. the date of each event; 2. the year; and 3. the temporal precision." Temporal precision refers to a 1-3 scale of how precise the source was in reporting the date of an event, not the time of day, which is not systematically coded. "If sources include an actual date of an event, a time precision code of '1' is entered. If sources note that an event happened during a specific week or [on the] weekend, '2' is noted in the time precision field and the middle of that week (or of the weekend) is used as the reference date. If sources note only that an event took place within a particular month, without reference to the particular date, the month mid-point is chosen unless the beginning or end of the month is noted (in which case, the first and last date are used, respectively) and '3' is noted as the time precision level. ACLED does not include events with less temporal information."

database" because we do not collect "cellphone ID" data or track mobile devices in any way. The "ACLED list" referred to does not exist.

Later in the book, on page 166, the author acknowledges that this earlier description from page 69 is actually incorrect, writing "in other words, ACLED provided everything except the cellphone IDs, and True the Vote used its own cellphone database."

NPR asked True the Vote – the group Gregg Phillips represents – about this discrepancy in May 2022. The [article](#) states:

> "In an email to NPR, [Catherine] Engelbrecht [of True the Vote] said that [Gregg] Phillips was not actually referring to ACLED when he said, 'There's an organization that tracks the device IDs across all violent protests around the world' and then mentioned ACLED. She would not specify what organization Phillips was citing, and said Phillips relied on 'multiple databases' to reach the conclusion included in the film.
>
> When NPR pointed out that D'Souza had explicitly claimed that ACLED tracks cell phone data, Engelbrecht wrote 'If you have questions about Dinesh's comments, my suggestion would be to ask Dinesh.'
>
> As with the other claims NPR asked about, D'Souza did not respond to NPR's question."

Taken together, Engelbrecht's comments to NPR and the author's statement on page 166 indicate that all references to ACLED on page 69 are incorrect, even before taking ACLED's actual methodology and data collection ambit into account. We therefore ask that these references are wholly removed or replaced with correct references to the other organization(s) True the Vote purportedly used for this project.

3. **Quotation:** "In sum, ACLED provides highly precise and detailed information on riots and rioters. Catherine wrote, 'Gregg's team researched the politically relevant violent events in our areas of study, isolated project code data using ACLED, aggregated IMEIs that were within the location at the time identified by ACLED, reconfirmed coordinates with other data sources, then compared and matched with IMEIs identified in our broader ballot trafficking study.' In other words, ACLED provided everything except the cellphone IDs, and True the Vote used its own cellphone database–the database with the 10 trillion pings–to identify those and make the relevant comparison *(pages 165 and 166)*."

**Explanation:** On pages 165 and 166, the author presents a revised account of how True the Vote purportedly used ACLED data for the "2,000 Mules" project that contradicts the initial account provided on page 69. Nevertheless, this revised account repeats an earlier error from page 68 by incorrectly suggesting that ACLED collects precise time information, while

also introducing a new error by incorrectly suggesting that ACLED collects precise location information with geo-coordinates that are more specific than the city level.

Again, ACLED does not systematically code information on the specific "times" of day at which events take place as a variable. ACLED data are coded to the day level (e.g. June 6th, 2020), but not the exact time of day, often because precise time information for political violence and protest events is inconsistently reported or unavailable.

Similarly, this description also implies that ACLED systematically collects precise geographic information down to the street level, and codes geo-coordinates accordingly. This is incorrect. While ACLED does collect location information, data are coded only to the city/town/village level, not to the street level. In a case like this, all events recorded for Atlanta are coded to the same coordinates for the center of the city, not specific blocks or street corners. This means that True the Vote could not have "aggregated IMEIs that were within the location at the time identified by ACLED," because there is no specific time information coded by ACLED, and the date and location information is too broad for this type of analysis. Everyone with a cellphone near the center of Atlanta on the day of a given event could be considered to be a participant in said event within these parameters; due to such methodological limitations, there would be no way to accurately do what is being described in this passage using ACLED data.

Moreover, even if ACLED data could in fact be used for this purpose, the time range indicated in "2,000 Mules" does not match up with events coded in our dataset. In Georgia, True the Vote says that they purchased "cellphone ID" data for the period of "October 1st [2020] through January 6th [2021]" and then compared this information with ACLED data on "riots" in the state to identify "overlap." However, during this period, there are no "riot" events recorded in the ACLED dataset for Georgia.

Without precise time information and street-level geo-coordinates for each violent demonstration event – which ACLED does not have – as well as actual mobile device ID data for known "rioters" – which ACLED does not collect and which the book acknowledges was not obtained – the analysis described in the book does not appear possible. Additionally, it is unclear how the description on pages 165 and 166 squares with the comments True the Vote provided to NPR, quoted above, that indicate they did not use ACLED in the "2,000 Mules" project at all and actually meant to refer to another organization(s) instead of ACLED.

Without being able to review the actual methodology and data analysis that underlies this revised account on pages 165 and 166, which has not been provided to us and which – to our knowledge – has not been made public, we can only base our assessment on the description provided in the book, the public comments made by True the Vote, and our own methodology. Together, these factors all indicate that the references to ACLED on pages 165 and 166 are incorrect. The conclusions described could not be accurately arrived at using

CONFIDENTIAL

ACLED data. We therefore ask that these references are also removed or replaced with correct references to the actual organization(s) True the Vote purportedly used for this project.

ACLED0012