# EXHIBIT 187

```
 1                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3

 4   MARK ANDREWS              ) Docket Number
                              ) 1:22-CV-4259-SDG
 5                            )
                              )
 6         v.                 )
                              )
 7                            )  Atlanta, Georgia
                              )  October 21, 2024
 8   DINESH D'SOUZA, et al.    )
                              )
 9                            )

10

            TRANSCRIPT OF TELECONFERENCE (ZOOM)
11        BEFORE THE HONORABLE STEVEN D. GRIMBERG
              UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES OF COUNSEL:

14

     For the Plaintiff:          MS. JANE BENTROTT
15                               MS. CATHERINE CHEN
                                 MR. JARED DAVIDSON
16                               MS. RACHEL GOODMAN
                                 MR. VON DuBOSE
17                               MS. CECELIA VIEIRA

18

19   For Dinesh D'Souza and      MR. AUSTIN VINING
     D'Souza Media, LLC:
20

21   For True the Vote, Inc.;    MR. JAMES EVANS
     Catherine Engelbrect;       MS. JULIA MARTIN
22   and Gregg Phillips:

23

     Official Court Reporter:    ALICIA B. BAGLEY, RMR, CRR
24

25        Proceedings recorded by mechanical stenography,
              transcript produced by computer
```

```
 1                     P R O C E E D I N G S

 2        (Atlanta, Fulton County, Georgia; October 21, 2024,

 3                     all parties by Zoom)

 4              THE COURT:  Let me call the case.  This is

 5     the case of Andrews v. D'Souza, et al.  Case Number

 6     22-CV-4259.  Let's have appearances of counsel beginning

 7     with the plaintiff.

 8              MS. BENTROTT:  Good afternoon, Your Honor.

 9     This is Jane Bentrott on behalf of plaintiff.  With me

10     are my colleagues Von DuBose; Jared Davidson; Catherine

11     Chen; Rachel Goodman; and Cecelia Vierira.

12              THE COURT:  Good afternoon.

13              MR. EVANS:  Judge, good to see you again

14     this afternoon.  Jake Evans on behalf of defendants True

15     to Vote, Ms. Englebrecht, and Mr. Phillips.  And also

16     I'm joined by my colleague, Julie Martin today, as well.

17              THE COURT:  All right.  Good afternoon.

18              MR. VINING:  Good afternoon, Your Honor.  My

19     name is Austin Vining and I'm here today representing

20     Defendants Dinesh D'Souza and D'Souza Media, LLC.

21              THE COURT:  Good afternoon.

22           All right.  I think that's everyone.

23           We're here on a discovery dispute raised by the

24     plaintiff pursuant to my standing order.  I did review

25     the discovery statement prepared by plaintiff.  I don't
```

1    know -- unless you all have narrowed the issues, my

2    thought was just to take each of these one by one.

3        Ms. Bentrott, does that sound like a good plan?

4            MS. BENTROTT:  Yes, Your Honor.

5            THE COURT:  All right.  Well, let's do that,

6    then.

7        The first category is described, I guess starting

8    on Page 1, as analysts involved in TTVs purported

9    geotracking project.  So let me hear from counsel for

10   TTV on that.

11           MR. EVANS:  Sure, Judge.

12       Well, to begin, we appreciate the Court's time

13   today.  We'll try to be efficient.  We understand the

14   last thing Your Honor wants to deal with is a discovery

15   issue, and I really don't think there's an issue before

16   the Court on most of these.  I'm a little confused, to

17   be quite frank with you.

18       For this one -- this is one that the plaintiffs

19   are looking for an analyst -- and I believe this is

20   Interrogatory Number 15.  We answered that interrogatory

21   and also Mr. Phillips answered the question and

22   Ms. Englebrecht also answered the question, and I'll

23   also just direct the Court to our response where --

24       Very briefly, Judge, because I'm probably

25   assuming things that I know that you don't know because

1    I've been doing a lot of these depositions.  But all of

2    the geo trafficking and the geolocation -- which, again,

3    is not relevant to this case.  Mr. Andrews is not one of

4    the 242 people that were identified, but we understand

5    and respect the Court views discovery as broad.  But all

6    of that was outsourced from True the Vote to OpSec and

7    then OpSec, which is an outside entity, then hired an

8    independent vender which is called Red Metrics.

9        Red Metrics is the entity that actually did

10   almost all of the analysis and we identified Red

11   Metrics.  We identified Tim Gerwing.  We identified Ben

12   Matthews.  We identified Huy Nguyen and then Kristina

13   Spindel, all of which are individuals that we have

14   knowledge that worked on this.

15       What I believe the plaintiffs are fixated on is

16   there was an interview done years ago where Mr. Phillips

17   said that there were -- he believed there were 16

18   analysts that were working on the project.  Well, they

19   believe that Mr. Phillips then is going to know all 16

20   of the people and somehow we're withholding information

21   by not identifying all 16 of the people.

22       Judge, that's like me saying there's 16 people

23   working on building my house.  I'm not going to know all

24   16 of the peoples' names that are building my house.

25   I'm not going to know the guy that's doing the floor,

1   the guy that's doing the roof, the person that's doing

2   the electrical.  But what I do know is there's around 16

3   people working on the house.

4       I assume that's what's causing the confusion on

5   the plaintiffs is they believe that an interview done

6   two or three years ago where the 16 number was thrown

7   out there somehow means that Mr. Phillips still to this

8   day knows all 16.

9          THE COURT:  When you say "16," Interrogatory

10  15 asks for 12.  Do you mean 12?

11          MR. EVANS:  It may be 12, Judge.  I can't

12  even remember, to be honest with you, Your Honor.

13      But what matters for the Court's purpose is we're

14  not withholding any information.  I went back and I told

15  my clients give me everybody that you possibly can name.

16  They said we really don't recall, we outsourced it.  We

17  have Tim Gerwing.  We have Ben Matthews.  We have Huy

18  Nguyen and then we have Kristina Spindel.  We have named

19  those in the interrogatories.

20      The plaintiff has had an opportunity and have

21  deposed and asked our clients the question under oath.

22  I do not think any of this will come in at trial because

23  it's not relevant.  But if it did come in at trial and

24  the plaintiffs wanted to attack the credibility of the

25  answer that my clients have given under oath, they have

1    the opportunity to do that.

2         But nothing has been withheld.  All the

3    information has been put forward.  We're not trying to

4    be obstructionistic.  In fact, I have whole teams that

5    make sure we're fully compliant with the Court's order

6    and so this is really a moot issue and should be denied

7    on that basis.

8         THE COURT:  All right.  Ms. Bentrott, how do

9    you respond?

10        MS. BENTROTT:  Thank you, Your Honor.  I

11   have several responses.

12        First is this is definitely relevant and we would

13   love an order from the Court saying --

14        THE COURT:  Well, we're not going to discuss

15   relevance; right?  I've already ordered that it be

16   produced.  So the question is -- he's representing that

17   there's nothing more to produce.  Do you have

18   information to the contrary?

19        MS. BENTROTT:  Yes.

20        First, even Mr. Evans himself just said that

21   they've produced almost -- the names of almost all the

22   analysts.  Just now he indicated that there's more that

23   they're withholding.

24        Second, even in their answer they only disclose

25   the names of the analysts that plaintiff, through

1   extensive third-party discovery, discovered on his own,

2   but they admit in their depositions and their answers

3   themselves that there were other analysts involved in

4   this.

5        Mr. Evans talked about, you know, people working

6   on my house, you know, I wouldn't necessarily know all

7   their names.  Okay.  But would he have invoices with any

8   of those contractors with their names on them?  I bet he

9   would.

10       The defendants haven't produced a single document

11  reflecting the name of any contractor, including the one

12  they disclosed to us in the interrogatory that we have

13  found ourselves.

14       TTV defendants have in several places indicated

15  that they know the identities of these contractors.

16  They indicated as such to Defendant Mr. D'Souza who

17  testified as such in his deposition last week.  They

18  indicated as such in several public appearances in the

19  book.  Mr. Phillips has stated that he ran this

20  year-and-a-half-long project, that he supervised the

21  analysts.

22       And, you know, another thing is that TTV

23  defendants try to sort of hide behind the layers of

24  subcontracting.  It all comes back to TTV defendants.

25  Mr. Phillips is OpSec, they're one and the same.

```
1          You know, so for all of these reasons, including
2    documents that we have seen and testimony from, you
3    know, their counterpart on the D'Souza side, we have
4    every reason to believe that, at least in their records,
5    defendants would be able to discover the names, you
6    know, from OpSec, from Mr. Phillips, from TTV's own
7    records who else worked on this project.
8               THE COURT:  Have you requested those records
9    in a request for production?
10              MS. BENTROTT:  We have several.  We have not
11   received any documents reflecting these names.  No
12   invoices, no emails, no deliverables, no PowerPoint
13   production, nothing reflecting the work that was
14   actually done or who did the work.
15              THE COURT:  All right.  Well, what would you
16   suggest, Ms. Bentrott, because I imagine what Mr. Evans
17   is going to tell me, if I ask him, is, yes, they know
18   that there are other analysts, but they cannot identify
19   them?  I suspect that that's what he's going to say
20   based on what he just said.  So what do you suggest --
21   what are you asking for?
22              MS. BENTROTT:  Well, it's still not clear to
23   us if Mr. Evans is saying this because he's simply asked
24   Ms. Englebrecht and Mr. Phillips if they recall the
25   names of the analysts and they don't.  It's not clear
```

1   that TTV defendants have actually searched all of their

2   documents.  To be clear, in their possession, custody

3   and control which would include OpSec and the

4   contractors that they engaged and had control over to do

5   this work.

6               MR. EVANS:  Judge.

7               THE COURT:  Go ahead.

8               MR. EVANS:  Mr. Phillips and Ms. Englebrecht

9   were asked this question.  They were asked have you

10  searched your documents?  Have you determined -- is

11  there anything you can -- I mean, I can pull up the

12  testimony where they literally say is there anything you

13  can look at to determine.  And they say, no, we

14  outsourced it.  This is simply --

15        Listen, Judge, I feel like oftentimes in this

16  case -- I don't know if you've seen the movie 300 where

17  you've got the Spartans against the massive Persian

18  Army.  I've got a lean team.  I've got a team of maybe

19  three people.  I've got Ms. Martin here.  I've got Phil

20  George.  We're going against 17 people who are counsel

21  of record, 15 of which have been granted *pro hac vice*

22  motions.  While I'm sitting there defending the

23  deposition on Wednesday, I get this letter.  So

24  sometimes I feel like the plaintiffs may be overly

25  zealous in digging.

1          But to answer the Court's exact question, both

2     Mr. Phillips and Ms. Englebrecht were asked do you

3     remember these people?  No, I don't.

4          I then followed up, after the Court's rule and

5     said that we need to produce this, I said, listen, I

6     want you to dig through everything you've got.  I want

7     you to give me every possible name that you have.  They

8     gave us four additional names which we then produced.

9          They are deposing Red Metrics who is the outside

10    vendor who employed the analysts that commenced and did

11    this geolocation analysis.  Red Metrics may know.  What

12    I would suggest is that deposition should go forward and

13    they should ask Red Metrics who, based upon the

14    testimony today, is going to have better knowledge than

15    my clients about who these analysts are.

16         But my clients were asked under oath.  They gave

17    the answer that they gave.  We went through the

18    documents we did.  We produced the initial people.

19    There has been nothing that suggests that my clients are

20    not telling the truth and they are telling the truth and

21    that's the jury's determination.  Credibility is

22    determined by a jury.  It's not determined prematurely

23    on a discovery motion.  So there's nothing to compel.  I

24    don't think this is a good use of the Court or the

25    parties' time and we should move on.

1          THE COURT:  Ms. Bentrott, I'll let you have

2     the last word on this.

3          MS. BENTROTT:  Sure.

4          You know, plaintiffs would be perfectly satisfied

5     if we could resolve this by resolving it as a request

6     for production as well and if TTV defendants will

7     produce all documents in their possession, custody and

8     control reflecting their communications with and work

9     with their contractors and subcontractors, then that

10    moots this issue and we can identify their names

11    ourselves.

12          THE COURT:  All right.  That's one of the

13    other items we're going to get to, then?

14          MS. BENTROTT:  Yes.

15          THE COURT:  All right.  Well, let's just

16    table this, then.  Which one is that?  Let's tackle that

17    next.

18          MS. BENTROTT:  That would be Request for

19    Production 23 and Request for Production - I've got the

20    full list here - 12, 14, 22, and 24.

21          THE COURT:  All right.  I'm taking these

22    sort of categorically on your letter.  So turning to, I

23    guess, the second item on the next page which relates to

24    Request for Production Number 23, sources for ballot

25    trafficking allegations.  Mr. Evans.

```
 1            MR. EVANS:  Okay.  And this is Interrogatory
 2   Number 16, Judge?
 3            THE COURT:  No.  I skipped over that one for
 4   now.  This is for Request for Production 23.
 5            MR. EVANS:  23, okay.  Sources for ballot
 6   trafficking.  Okay.  Hold on.  I've got my outline in a
 7   different order.  Bear with me one moment.
 8         This one, Judge, is the agreements that I believe
 9   RFP 23 which relates to any agreements that OpSec would
10   have had with Red Metrics.  There was an agreement
11   between True the Vote and OpSec.  That agreement was
12   produced.  Counsel for plaintiff asked both Mr. Phillips
13   and Ms. Englebrecht significant amount of questions
14   about this agreement.
15         As far as there being an agreement between OpSec
16   and Red Metrics, we indicated that doesn't exist.
17   Mr. Phillips testified that it doesn't exist.
18   Ms. Englebrecht testified it doesn't exist.  There was
19   no agreement.
20         Red Metrics will soon be deposed.  I assume Red
21   Metrics will testify that no such agreement exists.
22   Again -- and this is just reading their letter.  In the
23   first part it says "It strains credibility that," and
24   then in this one it says "It's not credible that," there
25   are many things the plaintiff says that I believe,
```

1  Judge, are not credible, but it's not my determination

2  as to credibility.  It's not your determination as to

3  credibility.  It's the jury's determination.  What's

4  before the Court is has anything been withheld?  Is

5  there an objection?  Can the Court compel something

6  which is being refused to be compelled?  Here, there is

7  nothing to compel.

8           THE COURT:  So let me just make that crystal

9  clear, Mr. Evans.  So the Request for Production Number

10 23 is requesting all documents reflecting sources with

11 the ballot trafficking allegations.  So are you

12 representing that there are no documents responsive to

13 this request?

14           MR. EVANS:  Let me read my response, Judge,

15 because I want to make sure.

16      Yes.  Well, no.  23 I have is any document that

17 evidences any agreements, whether informal or formal,

18 with any person or entity who serve as a source for

19 ballot trafficking allegation.  So we have produced all

20 documents that relate to the geo trafficking, other than

21 the data, which the plaintiff has said they're not

22 attempting to get.  There are no agreements other than

23 what we've produced, that's correct, Judge.  We're not

24 withholding any agreements.

25           THE COURT:  All right.

1          MS. BENTROTT:  Your Honor, you may notice

2    that Mr. Evans said that they're not withholding any

3    agreements.  But the request is much broader than that.

4    It asks for all documents regarding or evidencing any

5    agreements, whether formal or informal, that reflects

6    the sources for the claims in 2000 Mules.  So that is

7    much broader than just any written contract between a

8    defendant and another party, and that was deliberate.

9    We phrased it this way because TTV defendants continue

10   to sort of hide behind layers of contracts and

11   subcontracts.

12          And so, you know, Mr. Evans said that TTV

13   contracted with OpSec.  Again, OpSec is Mr. Phillips.

14   Any work that reflects the results of that contract

15   would be responsive to this RFP and we have not seen

16   that work.

17          In addition, besides the geo trafficking data,

18   TTV defendants claim they have several sources and

19   whistleblowers as a source of their allegations in 2000

20   Mule claiming that 2000 mules stole the 2020

21   presidential election.  We've not seen any documents

22   reflecting those sources.

23          THE COURT:  I don't think I have the request

24   for productions which show -- I was relying on the

25   paraphrasing in your letter.

1           MS. BENTROTT:  I believe Footnote 4 will

2    reflect the actual request, Your Honor.

3           THE COURT:  I see.  Okay.

4           MS. BENTROTT:  My apologies.

5           THE COURT:  No, that's okay.

6       All right.  So, Mr. Evans, are you limiting your

7    response to agreements?

8           MR. EVANS:  No, Judge.  And I was reading

9    that very quickly.

10       We have not withheld any documents responsive to

11   RFP Number 23.  Documents regarding or evidencing any

12   agreements and if you look at -- and we actually

13   mentioned this in our letter to the plaintiffs in

14   response to their letter, which is both Mr.  Englebrecht

15   and Mr. Phillips testified that most of their -- I

16   assume this is mostly oriented to Red Metrics, that the

17   communications were oral, that the communications took

18   place primarily over the phone.

19       But, again, Judge, we have emphasized to them

20   time and time again after reviewing -- mind you, Judge,

21   we have been served with 207 requests for production.

22   This is one of 207.  Now, I understand that this is the

23   only one before the Court, but we have reviewed tens of

24   thousands of documents.  We have had more than 12 hours

25   of testimony from our clients.  They have testified they

```
 1    haven't withheld anything.  We're telling the Court now
 2    we haven't withheld anything.
 3         The plaintiffs may think it's not credible.  We
 4    think a lot of what they say's not credible.  That's a
 5    jury's determination.  There's nothing to compel.  It's
 6    not good use of the Court or the parties' time.
 7              THE COURT:  Okay.  Well, Mr. Evans is on
 8    record in response to that discovery request.  Let's
 9    move on to the next one.
10              MS. BENTROTT:  Your Honor, sorry.  If I may.
11    Mr. Evans seems to bake into that response an assumption
12    that this was about Red Metrics and said that --
13              THE COURT:  What I heard is that there is
14    not a single item in his clients' custody, possession or
15    control that's responsive to Request Number 23.  If you
16    find out otherwise, there will be serious sanctions that
17    will be in place on his clients.
18              MS. BENTROTT:  Thank you, Your Honor.
19              THE COURT:  The next item is additional
20    discovery relating to TTV defendant's geolocation study.
21    Mr. Evans.
22              MR. EVANS:  Yes.  I'm reading this.
23         So this is the final one, RFP 12, 14, 22, and
24    Interrogatory Number 11?
25              THE COURT:  Yes.
```

1                MR. EVANS:  Okay.  This one, Judge, most

2      of -- it looked like plaintiffs have made clear they no

3      longer seek the data so that takes the big issue off the

4      table.  The remaining ones look like relate to

5      methodology, formal and informal agreements, documents

6      related to acquisition of geolocation date, selection of

7      surveillance footage, and data supporting the search of

8      mules in a violent riot.

9          The methodology has been described in each of

10     our -- both Mr. Phillips', Ms. Englebrecht's and

11     Mr. D'Souza's deposition testimony which is that what

12     they did -- I'm going to be very brief.  I just want to

13     emphasize for the Court so the Court knows that this

14     question has been answered multiple times.  They got

15     geolocation data from cellphones.  They cross-referenced

16     that with surveillance video which came from official

17     government sources.  They time stamped whatever the

18     geolocation data is with what the timestamp is on the

19     video and they determined that there was some

20     individuals that went to certain drop boxes multiple

21     times.

22         Again, Mr. Andrews has not been identified as one

23     of those people.  None of that is relevant to any of the

24     accusations that Mr. Andrews makes in this case.

25     Nevertheless, discovery's broad and we respect the

1    Court's decision on that.  That question has been

2    answered.

3         The agreements -- we have no agreements other

4    than the ones that we have produced.  Those are the

5    agreements between OpSec and True the Vote.

6         Documents regarding the acquisition of the

7    geolocation data.  Mr. Phillips testified that all of

8    the geolocation data was purchased by Red Metrics.  Red

9    Metrics is going to be deposed.  We will find out what

10   they have to say about the purchase of geolocation data.

11        The selection of surveillance footage.  We have

12   produced the open records request that was served on

13   Gwinnett County to get all of the Dropbox video.  That

14   is, in fact, a core piece of our case and the Court will

15   be seeing much more of this document, but that has been

16   produced.  It was not a selective please give me these

17   dates, the surveillance on these times.  It was give me

18   pretty much everything you have and it took a decent

19   amount of time to get it.

20        Data supporting the assertion that mules were at

21   a violent riot.  The testimony, both by Mr. Englebrecht

22   and Mr. Phillips, was that there was no accusation made

23   about mules being at a violent riot, that Aclid was an

24   outside third party that said that you could determine

25   via geolocation if people were at a riot and that was

1  one of the reasons, according to some of the testimony,

2  they begin to investigate further geolocation.  All of

3  this is in the record.  All of this was questions that

4  were -- answers that were elicited based on questions of

5  plaintiff's counsel.  So I don't know what more that we

6  can provide.

7          THE COURT:  Is there anything that you're

8  withholding in response to Request for Productions 12,

9  14, 22, 24, or Interrogatory Number 11?

10          MR. EVANS:  To my knowledge, Judge, no.  The

11  only thing is the data.

12          THE COURT:  Not to your knowledge.  To your

13  clients' knowledge.

14          MR. EVANS:  Let me read them again because

15  it's a lot of requests.

16      Plaintiff seeks related to methodology used,

17  that's been provided.

18      Formal and informal agreements, that's been

19  provided.

20      Documents relating to acquisition of geolocation,

21  that's been provided by Mr. Phillips' testimony.

22      Selection of footage, that's been provided.

23      Data supporting assertion -- the only one I'm not

24  absolutely certain on, Judge, is Interrogatory Number

25  11.  But I do not believe we've withheld anything on

1  almost all of these, but that's the only one I'd want to

2  reserve the right on.

3            THE COURT:  How long do you need to verify

4  that?

5            MR. EVANS:  I can do that very quickly,

6  Judge.  Today.  I just want to be very precise in any

7  representation that I make to the Court.

8            THE COURT:  That would be a good idea.

9            MS. BENTROTT:  In the interest of

10  precision -- and perhaps we can cut through a lot of

11  confusion right now.

12        Mr. Evans, are you representing that there are --

13            THE COURT:  Address your question to me.

14            MS. BENTROTT:  Thank you, Your Honor.

15        It's still not clear to plaintiff whether

16  Mr. Evans is representing that there are no

17  documentsreflecting -- what he's saying is that

18  defendants took 4 million minutes of surveillance data

19  and a mass of data so big that it cost a fortunate to

20  house it overseas and somehow cross-referenced that and

21  turned it into a book and a movie and there are no

22  documents reflecting that work.

23            THE COURT:  Sounds like a great closing

24  argument.

25            MS. BENTROTT:  Okay.  Well, it's still not

1  clear to me if Mr. Evans is representing --

2          THE COURT:  That's what I heard.  That's

3  what I heard.

4          MR. EVANS:  Well, no, Judge.  To be clear,

5  there has been no request for surveillance video.

6  There's no RPD requested.  That has not been requested.

7  That can be requested via an Open Records Act.  Anybody

8  can request it.

9      As far as the data, Mr. Phillips testified the

10  data is in, based on his knowledge, Norway or Germany.

11  Plaintiff has indicated they don't seek the data.  What

12  they're asking for - I'm reading this - is the

13  methodology, the agreement, acquisition, selection of

14  surveillance footage, that's what these requests say.

15  Each of those have been asked about, each of those,

16  under oath answers have been provided.  I just want to

17  be very precise in what is before the Court and being

18  asked of me and my clients.  That's what's being asked.

19          MS. BENTROTT:  So Mr. Evans is being very

20  precise and what I just heard is that -- TTV defendants

21  were asked about these and they didn't recall.  They

22  didn't recall.  They didn't recall almost anything in

23  their depositions.  But what I didn't hear is that no

24  such documents exist.

25          MR. EVANS:  Well, I mean, Judge, again,

1    discovery has been going on for almost a year.  There

2    has been multiple meet and confers that have already

3    taken place.  Our initial written discovery responses

4    were provided 8 to 10 months ago.  Each of these have

5    been answered under oath.  I don't know what

6    "generalized documents" mean.  What I do know is based

7    upon --

8                THE COURT:  What I'm hearing is that there's

9    nothing for me to to resolve; right?  As you pointed

10   out, Mr. Evans, if you are withholding something that is

11   responsive to this request, then that would be something

12   for me to resolve.  What I'm hearing is that there's

13   nothing to resolve because, in your view, everything

14   that is responsive to these items, to these requests,

15   has been produced or does not exist; correct?

16               MR. EVANS:  Well, everything that's in my

17   clients' possession, custody and control to 15 -- let's

18   see, 23, yes, and then each --

19               THE COURT:  You said everything responsive

20   to 23, 12, 14, 22, and 24.  You need to check about

21   Interrogatory Number 11, that's what I heard.

22               MR. EVANS:  That's correct.  Well, let me

23   look at each of these.  There's nothing -- to be clear,

24   Judge, there's nothing -- the parties have agreed --

25   here's the reason why this is important.

1       All the data, the massive data that's being held

2   in Norway and Germany, that's not being sought, so

3   that's no longer on the table.  Outside of what we have

4   agreed to limit the discovery to with plaintiffs, we are

5   not withholding anything.  Yes, that's correct.

6               THE COURT:  Simple enough.

7               MR. EVANS:  Okay.  Is there any other ones,

8   Judge?

9               THE COURT:  I think that addresses that

10  category.

11       So, I guess, Ms. Bentrott, I guess that, then,

12  takes us back to the original Interrogatory 15 which,

13  again, Mr. Evans' response is that there's nothing being

14  withheld.

15              MS. BENTROTT:  So we raised -- oh, sorry.

16              THE COURT:  Go ahead.

17              MS. BENTROTT:  We raised this because last

18  week we deposed the D'Souza defendants and Mr. D'Souza

19  confirmed that the identification of the stash houses

20  where TTV and D'Souza defendants allege mules trafficked

21  in ballots from stash houses to drop boxes and back and

22  forth.  Mr. D'Souza testified that those were identified

23  by TTV through their geotracking analysis and, thus, TTV

24  was necessarily the source of the names of those stash

25  houses.  TTV would have had only from the cellphone data

1    the GPS coordinates of a location and then TTV,

2    according to Mr. D'Souza's testimony, linked those GPS

3    coordinates to addresses and then to names of nonprofits

4    and that TTV was so proprietary of the names of these

5    nonprofits that they refused to share the names of all

6    of them even with Mr. D'Souza.  In TTV's response to the

7    interrogatory, TTV only told us the names of the

8    nonprofits that Mr. D'Souza had included in the book,

9    but not the names of the nonprofits that TTV provided to

10   Mr. D'Souza in the course of making the film.

11            THE COURT:  Did you ask that question in the

12   deposition?

13            MS. BENTROTT:  Yes.  And Ms. Englebrecht

14   also confirmed on behalf of TTV defendants that TTV did

15   identify the names of some of those stash houses, but

16   they couldn't recall all of the names.

17            THE COURT:  Okay.  So what would you like me

18   to do?

19            MS. BENTROTT:  I would like you to order TTV

20   defendants to comply with your prior order and search

21   their records for any reference to those names and

22   identification of those alleged stash houses so they can

23   provide a response to our question that we asked which

24   was not about what Mr. D'Souza wrote in the book, but

25   what they provided to Mr. D'Souza.

```
 1              THE COURT:  Mr. Evans, has that been done?
 2              MR. EVANS:  First, Judge, to properly
 3   represent the testimony, the testimony was -- because I
 4   wrote it down.  Both Ms. Englebrecht and Mr. Phillips
 5   were focused on entities of interest and Geofence
 6   suspected ballot harvested organization.  There are
 7   countless emails where they say don't produce these,
 8   don't produce these.  Mr. D'Souza testified that the
 9   reason why he didn't produce any of the names in the
10   film was because he was told that he shouldn't.
11              We, nevertheless, identified these entities in
12   our interrogatories.  There's, I think, seven or eight
13   of them.  Asian Advancing Justice, New Georgia Project,
14   League of Women Voters, etcetera, etcetera.  My
15   understanding is those are the entities.  I will confirm
16   that with my client.  It was the same entities that were
17   produced in the book are the ones that were identified.
18   But my client said don't identify the entities, but they
19   were, nevertheless, identified in the book.  So we may
20   be splitting hairs a bit here, Judge, about what the
21   entities were, but they were identified in the book.
22   They weren't identified by my clients in any email, in
23   any correspondence.  But I will confirm that those are,
24   in fact, the same ones, but I believe that they are.
25              MS. BENTROTT:  If I may, Your Honor.
```

```
 1            They're not the same ones and we know that
 2    because there's an email from Ms. Englebrecht to
 3    Mrs. D'Souza referencing a list of 10 organizations and
 4    in the body of the email it lists three of them and one
 5    of them was not included on the list of eight that were
 6    in the book and that were provided in TTV's
 7    interrogatory response to Interrogatory 16.  So we
 8    already know there isn't a perfect overlap and that
 9    there was a list of 10 and only 8 were provided and that
10    one that's included internally in the email was not
11    included in the book or the response.  We can no longer
12    click the link in that email.  I don't think we ever had
13    access to it.  But at some point a document reflects
14    that there is a difference and a distinction here and
15    that that information came from Ms. Englebrecht to
16    Mrs. D'Souza.
17            MR. EVANS:  Judge, part of it --
18            THE COURT:  Look, to try to advance this,
19    Ms. Bentrott, do you think it might be helpful if you
20    were to draft a revised -- in light of the information
21    that you do now have and in light of Mr. Evans'
22    representations here today, if you would draft a more
23    refined interrogatory that gets to exactly what you
24    believe is missing; could you do that?
25            MS. BENTROTT:  I would be happy to do that,
```

1    Your Honor.

2              THE COURT:  All right.  So that, I think,

3    addresses that first category.

4         So now turning to the one that we had skipped

5    over earlier, the first on Page 2, which is

6    Interrogatory Number 16, purported ballot stash houses.

7    Have we addressed this now?

8              MR. EVANS:  I believe that's the one we just

9    did, Judge.

10             THE COURT:  Okay.

11             MS. BENTROTT:  I think the only one we have

12   not addressed is the last section, Request for

13   Productions 32, 35, 37, and 55, which are documents

14   related to the TTV defendants use of plaintiff's

15   un-blurred image in public appearances.

16             THE COURT:  Okay.  But just to be clear

17   before we do that, the refined interrogatory, is that

18   addressing both Interrogatories 15 and 16?

19             MR. EVANS:  I believe it was just 16.

20             MS. BENTROTT:  I'm happy to revise the

21   Interrogatories 15 and 16.  I think Your Honor was only

22   referring to 16, but I'm happy to do both.

23             THE COURT:  Well, I guess I'm asking do you

24   feel that you are still missing something relating to

25   15, which was the first category we discussed?

1              MS. BENTROTT:  Yes.  We do feel that way,

2    Your Honor.

3              THE COURT:  All right.  Let's table that for

4    now and discuss that last category relating to the

5    un-blurred images.  Mr. Evans.

6              MR. EVANS:  Yes.  Judge, this is about any

7    documents or communications regarding Mr. Phillips and

8    Ms. Englebrecht's appearance on the Charlie Kirk Show or

9    the Tucker Carlson Show.  We have said -- and I'll

10   follow up.  I talked to my client about this last week,

11   whether there are any.  Both of them have assured me

12   there's not.  That's consistent with my experience with

13   any type of media performance or appearance.  You don't

14   have a bunch of email correspondence back and forth.

15        I'm happy to confirm with them again.  We have

16   said we're happy to produce any responsive documents

17   that we find.  So far we haven't.  We have done --

18   gotten all of their email boxes and done the massive

19   search of all the search terms and done this in

20   accordance with all the standard practices of ESI and we

21   did not identify any.  But we will do so again and see

22   if we can find any.  But to date, we haven't identified

23   any and we're not withholding anything.

24             THE COURT:  Well, how long would it take you

25   to confirm this?

1              MR. EVANS:  Within a day.  I mean, we've

2    already done this multiple times, Judge, and I'm just

3    saying for the purpose of the Court and the parties

4    based upon everything that all of the robust searches

5    there are none.  I mean, they testified under oath there

6    are none and they testified under oath they searched and

7    there were none.  I don't know what additional layers we

8    can do.  I frankly don't think there's anything else to

9    do.  I think that we are three weeks out from discovery

10   still dealing with, you know, document productions after

11   the deponents have testified under oath.  So I feel

12   fairly comfortable in saying there are none, but I'll

13   make a call and find out again and do additional

14   diligence on it.

15              THE COURT:  Ms. Bentrott, anything you want

16   to respond to on that?

17              MS. BENTROTT:  I mean, Mr. D'Souza testified

18   last week that these videos could not have come from him

19   and his team.  We have documents reflecting that as

20   well.  But, you know, if Mr. Evans is prepared to make

21   the same representation that no such documents exist,

22   then I think at this point that's all we can ask for.

23              THE COURT:  How long, Ms. Bentrott, would it

24   take for you to craft this sort of revised interrogatory

25   for 15 and 16?

```
1                MS. BENTROTT:  Well, we can do that within a
2      day or two, Your Honor.
3                THE COURT:  We're going to put all of this
4      on the schedule.
5                MS. BENTROTT:  We can do it by Wednesday
6      the 23rd.
7                THE COURT:  So I'll order you to serve that
8      revised interrogatory, either one or two questions, by
9      October 23rd; all right?
10               MS. BENTROTT:  Yes, Your Honor.
11               THE COURT:  And when is the deposition of
12     Red Metrics?
13               MR. EVANS:  I don't believe that it's been
14     set yet, Judge, but it will be in the next two to three
15     weeks.
16               THE COURT:  Okay.  All right.  And so then,
17     Mr. Evans, I'm going to give you a week, October 30th,
18     to not only respond to those two interrogatories, but
19     also in that same response confirm in writing that there
20     is no other discovery in the possession, custody or
21     control of your clients responsive to any of the items
22     identified in plaintiff's letter to me dated
23     October 16th.
24               MR. EVANS:  Other than the items that
25     plaintiff and defendant have agreed are not to be
```

1    produced?

2                    THE COURT:  Correct.

3                    MR. EVANS:  Okay.  Thank you.

4                    THE COURT:  Ms. Bentrott, that's all we can

5    ask Mr. Evans to do is confirm with his clients that

6    there are no items responsive.  If that turns out not to

7    be true, there will be problems.

8                    MS. BENTROTT:  Sounds good.  Thank you, Your

9    Honor.

10                   THE COURT:  Mr. Evans, I appreciate you

11   having those responses ready for today.

12                   MR. EVANS:  Absolutely, Judge.  Thank you

13   for your time today.

14                   THE COURT:  Anything more, Ms. Bentrott?

15                   MS. BENTROTT:  No.  Thank you so much.  I

16   appreciate your time.

17                   THE COURT:  Okay.  All right.  Good to see

18   you, Mr. DuBose.

19                   MR. DUBOSE:  Good to see you, Judge.

20                   THE COURT:  All right.  Okay.  We're in

21   recess.

22                   (Proceedings concluded at 2:47 p.m.)

23

24

25

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF GEORGIA

3    CERTIFICATE OF REPORTER

4

5    I do hereby certify that the foregoing pages are a true

6    and correct transcript of the proceedings taken down by

7    me in the case aforesaid.

8

9

10              This the 23rd day of October, 2024.

11

12

13                        /S/ Alicia B. Bagley _____
                          ALICIA B. BAGLEY, RMR, CRR
14                        OFFICIAL COURT REPORTER
                          (706) 378-4017
15

16

17

18

19

20

21

22

23

24

25