## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MARK ANDREWS**,<br><br>     Plaintiff,<br><br>v.<br><br>**DINESH D'SOUZA,** *et al.*,<br><br>     Defendants. | Case No. 1:22-cv-04259-SDG |

## DEFENDANTS TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, AND GREGG PHILLIPS'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

STATEMENT OF MATERIAL FACTS ...................................................4

LEGAL STANDARD............................................................................4

ARGUMENT ......................................................................................5

    A.    Summary Judgment Should Be Entered on Plaintiff's Count I for Conspiracy in Violation of the Ku Klux Klan Act. .......................5

        1.    There is No Evidence of Any Conspiracy. ................................ 6

            a.    There Was No Agreement to Commit an Unlawful Act. ............................................................................... 6

            b.    There Was No Knowing Engagement in Any Conspiracy Intending to Commit Offenses. ................... 8

        2.    There Was No Purpose to "Force, Intimidate, or Threaten." ................................................................ 9

    B.    Judgment is Due on Count III for Defamation/Defamation Per Se. ..................................................................................11

        1.    TTV Defendants Did Not "Publish" Almost All the Statements. ............................................................... 11

        2.    The Statements Do Not Refer to An Ascertainable Person. ..................................................................... 14

        3.    The Statements Fail to Satisfy the "Actual Malice" Standard. .................................................................. 16

            a.    Plaintiff Must Prove Actual Malice by Clear and Convincing Evidence for Two Independent Reasons. ......................................................... 16

            b.    There is No Evidence TTV Defendants Were Malicious. ..................................................... 20

4. Many Statements Are Not Defamatory Under Any Standard. ................................................................. 26

C. There is No Evidence for Count IV, False Light Invasion of Privacy. .............................................................................26

D. There is No Evidence Supporting Count V for Invasion of Privacy by Appropriation of Likeness. .................................29

E. Count VI for Civil Conspiracy Fails as a Matter of Law. ...................32

1. Defendants Did Not Act in Concert to Accomplish an Unlawful End or a Lawful End by Unlawful Means. .............. 35

2. There is No Evidence of Any Underlying Tort. ...................... 37

F. Count VII for Punitive Damages Fails. ................................................37

1. There is No Evidence Supporting Any Punitive Damages Award. ................................................................................ 37

2. There Was No "Specific Intent to Cause Harm." .................... 39

CONCLUSION ...................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*,
  2008 WL 2777140 (M.D. Ga. July 14, 2008).................................................15

*Am. C.L. Union, Inc. v. Zeh*,
  312 Ga. 647 (2021) .........................................................................................39

*Amin v. NBCUniversal Media, LLC*,
  2024 WL 3188768 (S.D. Ga. June 26, 2024) .............................................20, 21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................................4

*Artzner v. A & A Exterminators, Inc.*,
  242 Ga. App. 766 (2000) ................................................................................38

*Ass'n Servs., Inc. v. Smith*,
  249 Ga. App. 629 (2001) ................................................................................37

*Az. Alliance for Retired Americans v. Clean Elections USA*,
  638 F. Supp. 3d 1033 (D. Ariz. 2022) ..............................................................9

*Az. Democratic Party v. Az. Republican Party*,
  2016 WL 8669978 (D. Az. Nov. 4, 2016)....................................................6, 10

*Barnhart v. Paisano Pubs., LLC*,
  457 F. Supp. 2d 590 (D. Md. 2006)............................................................30, 31

*Basulto v. Netflix, Inc.*,
  2023 WL 7129970 (S.D. Fla. Sept. 20, 2023) .............................................11, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................33

*Blakey v. Victory Equip. Sales, Inc.*,
  259 Ga. App. 34 (2002) .................................................................................27

*Blankenship v. NBCUniversal, LLC,*
   60 F.4th 744 (4th Cir. 2023) ................................................................24

*Bollea v. World Championship Wrestling,*
   271 Ga. App. 555 (2005) .....................................................................27

*Branson v. Fawcett Pub'cns,*
   124 F. Supp. 429 (E.D. Ill. 1954) .......................................................31

*Bryant v. Dougherty Cty. Sch. Sys.,*
   382 F. App'x 914 (11th Cir. 2010) ........................................................4

*Catalfo v. Jensen,*
   628 F. Supp. 1453 (D.N.H. 1986)........................................................13

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...............................................................................4

*Chaney v. Harrison & Lynam, LLC,*
   308 Ga. App. 808 (Ga. Ct. App. 2011).................................21, 23, 32

*Collins v. Creative Loafing Savannah, Inc.,*
   264 Ga. App. 675 (2003) ....................................................14, 30, 31

*Combs v. Plantation Patterns,*
   106 F.3d 1519 (11th Cir. 1997) .............................................................4

*Connick v. Myers,*
   461 U.S. 138 (1983)..............................................................................17

*Coomer v. Donald J. Trump for President, Inc.,*
   552 P.3d 562 (Colo. Ct. App. 2024)....................................................33

*Cottrell v. Smith,*
   299 Ga. 517 (2016) ..............................................................................21

*Cox Enters., Inc. v. Bakin,*
   206 Ga. App. 813 (1992) .....................................................................15

*Dowd v. Calabrese,*
   589 F. Supp. 1206 (D.D.C. 1984).................................................33, 35

*Downey v. Coal. Against Rape & Abuse, Inc.*,
   2005 WL 984394 (D.N.J. Apr. 27, 2005) ............................................................33

*Dresbach v. Doubleday & Co.*,
   518 F. Supp. 1285 (D.D.C. 1981) ........................................................................19

*Elliott v. Savannah Int'l Motors, Inc.*,
   360 Ga. App. 281 (2021) .......................................................................32, 34, 37

*Evans v. Fed. Bureau of Prisons*,
   951 F.3d 578 (D.C. Cir. 2020) ............................................................................28

*Finch v. City of Vernon*,
   877 F.2d 1497 (11th Cir. 1989) ..........................................................................13

*Fine v. Communication Trends, Inc.*,
   305 Ga. App. 298 (2010) .....................................................................................23

*Flowers v. Carville*,
   266 F. Supp. 2d 1245 (D. Nev. 2003) ...........................................................13, 14

*Gaetz v. City of Riverside*,
   722 F. Supp. 3d 1054 (C.D. Cal. 2024) ............................................................6, 9

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020) .................................................................26

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) .......................................................................................21, 39

*Gray v. Royal*,
   181 F. Supp. 3d 1238 (S.D. Ga. 2016) ...............................................................31

*J.B. Hunt Transp., Inc. v. Bentley*,
   207 Ga. App. 250 (1992) .....................................................................................40

*Kennedy v. Meta Platforms, Inc.*,
   2024 WL 4031486 (N.D. Cal. Sept. 3, 2024) ....................................................5, 9

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ...............................................................................14

*Kisser v. Coal. for Religious Freedom*,
    1997 WL 83296 (N.D. Ill. Feb. 19, 1997) ............................................................34

*Klayman v. City Pages*,
    650 F. App'x 744 (11th Cir. 2016) ....................................................................22

*Kleen Corp. v. Smith*,
    203 Ga. App. 514 (1992) ...................................................................................37

*Krass v. Obstacle Racing Media, LLC*,
    667 F. Supp. 3d 1177 (N.D. Ga. 2023)............................................18, 19, 20, 21

*Ladner v. New World Commc'ns of Atlanta, Inc.*,
    343 Ga. App. 449 (2017) ...................................................................................17

*Lewis v. Meredith Corp.*,
    293 Ga. App. 747 (2008) ...................................................................................11

*Likes v. DHL Express (USA), Inc.*,
    787 F.3d 1096 (11th Cir. 2015) ...........................................................................4

*Little v. Breland*,
    93 F.3d 755 (11th Cir. 1996) .............................................................................18

*Lovingood v. Discovery Commns., Inc.*,
    800 F. App'x 840 (11th Cir. 2020)................................................................22, 23

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021) ..............................................................15

*Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*,
    250 Ga. 135 (1982) ...........................................................................................29

*Mathis v. Cannon*,
    276 Ga. 16 (2002) ........................................................................................11, 18

*Matthews v. Mills*,
    357 Ga. App. 214 (2020) ..............................................................................12, 35

*Matthews v. Oskouei*,
    369 Ga. App. 568 (2023) ...................................................................................16

*McAndrew v. Lockheed Martin Corp.*,
206 F.3d 1031 (11th Cir. 2000) ............................................................5

*Morton v. Gardner*,
155 Ga. App. 600 (1980) .................................................................34

*Mullinax v. Miller*,
242 Ga. App. 811 (2000) ............................................................11, 12

*Nat'l Coal. on Black Civic Participation v. Wohl*,
661 F. Supp. 3d 78 (S.D.N.Y. 2023) ...............................................6, 8

*Nat'l Coal. on Black Civil Participation v. Wohl*,
498 F. Supp. 3d 457 (S.D.N.Y. 2020) ................................................5

*Nayani v. Bhatia*,
371 Ga. App. 44 (2024) ...................................................................33

*Neff v. McGee*,
346 Ga. App. 522 (2018) .................................................................21

*Peoples v. Guthrie*,
199 Ga. App. 119 (1991) .................................................................39

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*,
867 F. Supp. 925 (D. Or. 1994) .......................................................25

*Pierce v. Warner Bros Ent., Inc.*,
237 F. Supp. 3d 1375 (M.D. Ga. 2017) ......................................30, 31

*Rabun v. McCoy*,
273 Ga. App. 311 (2005) .................................................................23

*Ramsey v. Ga. Gazette Pub. Co.*,
164 Ga. App. 693 (1982) .................................................................30

*Ramunno v. Cawley*,
705 A.2d 1029 (Del. 1998) ..............................................................34

*Roberts v. Lane*,
210 Ga. App. 10 (1993) ..............................................................32, 35

*Robertson v. McCloskey*,
   666 F. Supp. 241 (D.D.C. 1987) .......................................................................33

*San Diego v. Roe*,
   543 U.S. 77 (2004) ...........................................................................................18

*Saye v. Deloitte & Touche, LLP*,
   295 Ga. App. 128 (2008) ..........................................................................11, 16

*Schafer v. Time, Inc.*,
   142 F.3d 1361 (11th Cir. 1998) ................................................................38, 39

*Shook v. St. Bede Sch.*,
   74 F. Supp. 2d 1172 (M.D. Ala. 1999) ............................................................34

*Smith v. Henry*,
   276 Ga. App. 831 (2005) .................................................................................21

*Smith v. Stewart*,
   291 Ga. App. 86 (2008) .............................................................................15, 27

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) .........................................................................................38

*Straw v. Chase Revel, Inc.*,
   813 F.2d 356 (11th Cir. 1987) .........................................................................39

*Tana v. Dantanna's*,
   611 F.3d 767 (11th Cir. 2010) ...................................................................29, 31

*Toffoloni v. LFP Publ'g Grp., LLC*,
   572 F.3d 1201 (11th Cir. 2009) ...............................................28, 30, 31, 38, 39

*Tookes v. Murray*,
   297 Ga. App. 765 (2009) .................................................................................40

*Trump v. Cable News Network, Inc.*,
   684 F. Supp. 3d 1269 (S.D. Fla. July 28, 2023) ..............................................26

*Tucker v. News Pub'g Co.*,
   197 Ga. App. 85 (1990) ...................................................................................28

*Turnage v. Kasper*,
    307 Ga. App. 172 (2010) ...............................................................35, 36

*U.S. v. Miravalles*,
    280 F.3d 1328 (11th Cir. 2002) ........................................................30

*US Dominion, Inc. v. MyPillow, Inc.*,
    2022 WL 1597420 (D.D.C. May 19, 2022)........................................6

*Van-Go Transport Co. v. N.Y.C. Bd. of Educ.*,
    971 F. Supp. 90 (E.D.N.Y. 1997) ......................................................13

*Viau v. Fred Dean, Inc.*,
    203 Ga. App. 801 (1992) .................................................................40

*Waters v. Fleetwood*,
    212 Ga. 161 (1956) ....................................................................28, 29

*Watson v. NY Doe 1*,
    439 F. Supp. 3d 152 (S.D.N.Y. 2020) .....................................13, 14, 34

*Wells Fargo Bank v. Crowly*,
    2014 WL 11370437 (N.D. Ga. Feb. 20, 2014)..................................32

*Williams v. Cobb Cty. Farm Bureau, Inc.*,
    312 Ga. App. 350 (2011) .................................................................27

*Willis v. United Fam. Life Ins.*,
    226 Ga. App. 661 (1997) .................................................................15

*Wolf v. Ramsey*,
    253 F. Supp. 2d 1323 (N.D. Ga. 2003)......................... 12, 14, 17, 18, 20, 24, 25

*Zarach v. Atlanta Claims Ass'n*,
    231 Ga. App. 685 (1998) .................................................................27

## Statutes

42 U.S.C. § 1985(3) .........................................................................6, 9

O.C.G.A. § 9-11-11.1(c) ......................................................................17

O.C.G.A. § 9-11-11.1(c)(4) .................................................................16

O.C.G.A. § 21-2-385(a) (2019) ...................................................................24

O.C.G.A. § 21-2-385(b) (2019) ...................................................................24

O.C.G.A. § 51-5-1(b) ...................................................................................12

O.C.G.A. § 51-5-7(4) .............................................................................16, 17

O.C.G.A. § 51-12-5.1(b) ..............................................................................38

O.C.G.A. § 51-12-5.1(f) ...............................................................................40

O.C.G.A. § 51-12-5.1(g) ..............................................................................40

**Other Authorities**

Fed. R. Civ. P. 56 ......................................................................................1, 4

L.R. 56.1 .........................................................................................................1

Defendants True the Vote, Inc. ("TTV"), Catherine Engelbrecht, and Gregg Phillips (together, "TTV Defendants"), pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, hereby submit the following Motion for Summary Judgment.

## INTRODUCTION

Plaintiff, who has suffered no harm and is being used as a pawn by activist organizations, filed baseless claims to pursue a political agenda. Blinded by this agenda, Plaintiff fixates on topics that are irrelevant to this case (such as the accuracy of the film's geotracking research, which, although accurate, is unrelated to Plaintiff). Ultimately, Plaintiff tries to smush claims onto facts that do not fit. This is not a KKK Act, defamation, invasion of privacy, conspiracy, or a punitive damages case. It is a political case, plain and simple, that is devoid of any evidence to survive summary judgment.[1]

Summary judgment should be granted on **Count One** for Conspiracy in Violation of the Ku Klux Klan Act for several reasons. *First*, there is no evidence to show "a conspiracy to prevent advocacy through intimidation or to injure a person because of such advocacy." The film "2000 Mules" (the "Film") was produced by D'Souza Media, LLC and Dinesh D'Souza ("D'Souza Defendants"). TTV Defendants had no involvement with several of the alleged defamatory statements

---

[1] Plaintiff, with an army of 16 counsel of record, admitted that the greatest tangible harm that he suffered is a car stopping in his cul-de-sac for unknown reasons. Andrews Dep. at 135-36.

(the "Statements").[2] TTV Defendants had no editorial control of the contents of the Film and did not select the graphics or videos used in the Film. _Second_, there is no evidence that "the purpose" was to "force, intimidate, or threaten." The purpose of the Film was to raise awareness about election fraud, an issue of great public concern, not to conspire to intimidate Plaintiff from voting. TTV Defendants did not know who Plaintiff was, never spoke with him, never identified him by name, and Plaintiff is unaware of anyone threatening him not to vote.

**Count Three**[3] for defamation/defamation per se is also subject to summary judgment. _First_, TTV Defendants did not "publish" almost all the Statements. TTV Defendants had no involvement in many of the Statements which solely involved Dinesh D'Souza. Moreover, TTV Defendants had no editorial control over all Statements but the so-called "TTV Video," which is unactionable for other reasons. _Second_, all the Statements fail to satisfy the applicable "actual malice" standard. The Statements constitute privileged communications under Georgia law, and Plaintiff became a limited purpose public figure. There is no evidence TTV Defendants had any actual malice toward Plaintiff, especially because they reasonably believed individuals dropping off multiple ballots had to be assistors. _Third_, the Statements

---

[2] TTV Defendants attach as Appendix 1 to their Statement of Undisputed Material Facts a chart prepared by Plaintiff regarding the alleged at-issue defamatory statements.
[3] Count II has already been dismissed against TTV Defendants. ECF 106 at 3, 30-32.

do not refer to an ascertainable person, and most involve blurred clips of Plaintiff. *Finally*, many of the Statements are not conceivably defamatory.

Summary judgment is also due for **Count Four** for invasion of privacy by false light and **Count Five** for invasion of privacy by appropriation of likeness. The false light claim fails because it is subsumed by the defamation claim. TTV Defendants also did not depict Plaintiff as someone which he is not, because all the video clips involving him were obtained from publicly-available surveillance video of ballot drop boxes. Additionally, TTV Defendants never identified Plaintiff, and he is unrecognizable in all the Statements. The appropriation of likeness claim also fails because Plaintiff's images were "open to public observation," as they were publicly available, and he was unrecognizable. Additionally, because TTV Defendants lacked editorial control over almost all the Statements, they could not have intended to appropriate Plaintiff's likeness as required. Finally, both claims fail because the Film and Statements involve matters of public interest, and are covered by the newsworthiness exception to the right of privacy.

Finally, Plaintiff's **Count Six** for punitive damages fails. There is no evidence TTV Defendants' conduct reached that high bar, let alone the even higher standard for "specific intent to harm" necessary to overcome Georgia's statutory limit.

Summary judgment should be entered as to all of Plaintiff's remaining claims, and this case should be dismissed against TTV Defendants.

3

## STATEMENT OF MATERIAL FACTS

TTV Defendants incorporate by reference their Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment ("SMF").

## LEGAL STANDARD

Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are only "material" if they could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" only "if the evidence is such that a *reasonable* jury could return a verdict for the nonmoving party." *Id*. The moving party has no burden other than "pointing out to the district court…that there is an absence of evidence to support [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Plaintiff must come forward with "significantly probative" evidence, not "merely colorable" evidence, to demonstrate a triable issue of fact does exist. *Likes v. DHL Express (USA), Inc.*, 787 F.3d 1096, 1098 (11th Cir. 2015). More than a mere scintilla of evidence is necessary to survive a motion for summary judgment; "there must be a substantial conflict in evidence to support a jury question." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). The non-moving party cannot create a genuine issue of material fact through "speculation" or "conjecture." *Bryant v. Dougherty Cty. Sch. Sys.*, 382 F. App'x 914, 917 (11th Cir. 2010).

## **ARGUMENT**

**A.    Summary Judgment Should Be Entered on Plaintiff's Count I for Conspiracy in Violation of the Ku Klux Klan Act.**

This is not a KKK Act case. There was no conspiracy. And there was no purpose to intimidate or threaten Plaintiff from voting in federal elections. The KKK Act's "origin [was] a reaction against the 'murders, whippings, and beatings committed by rogues in white sheets in the postbellum South,'" and its intent is to stop "force, intimidation, or threat" against those voting. *Kennedy v. Meta Platforms, Inc.*, 2024 WL 4031486, at *13 (N.D. Cal. Sept. 3, 2024); *see also McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1041 (11th Cir. 2000) (Act passed "in response to a rising tide of Klan terrorism against blacks and Union sympathizers"). Plaintiff's KKK claim is a mere throwaway and there is no evidence to support it.

As this Court found, Andrews' claim is under Section 2, "alleging that Defendants conspired with one another to intimidate him for the purpose of deterring him from engaging in support or advocacy on behalf of his preferred candidates." ECF No. 106 at 16. To state a claim under the Support or Advocacy Clause, Plaintiff must show "(1) a conspiracy; (2) the purpose of which is to force, intimidate, or threaten; (3) an individual legally entitled to vote who is engaging in lawful activity related to voting in federal elections." ECF 106 at 19 (citing *Nat'l Coal. on Black Civil Participation v. Wohl*, 498 F. Supp. 3d 457, 486–87 (S.D.N.Y. 2020)). Here, there is no evidence to support elements (1) and (2).

5

### 1.    There is No Evidence of Any Conspiracy.

Plaintiff's claim first requires proof of a conspiracy. *See* 42 U.S.C. § 1985(3); ECF No. 106 at 19. A KKK Act conspiracy requires: "(1) an agreement between two or more persons to commit an unlawful act; (2) knowingly engaging in the conspiracy intending to commit those offenses that were the objects of the conspiracy; and (3) commission of an 'overt act' by one or more members of the conspiracy in furtherance of the conspiracy." *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F. Supp. 3d 78, 125 (S.D.N.Y. 2023). "[P]arallel conduct, without more, does not adequately allege a conspiratorial agreement." *US Dominion, Inc. v. MyPillow, Inc.*, 2022 WL 1597420, at *7 (D.D.C. May 19, 2022). Allegations such as those here are insufficient as a matter of law. *See US Dominion*, 2022 WL 1597420, at *7 (dismissing claim for failure to adequately allege an agreement); *Az. Democratic Party v. Az. Republican Party*, 2016 WL 8669978, at *9, *13 (D. Az. Nov. 4, 2016) (insufficient evidence of a conspiracy to suppress votes); *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1074-73 (C.D. Cal. 2024).

### a.    There Was No Agreement to Commit an Unlawful Act.

There is no evidence of any agreement to commit an unlawful act. As this Court recognized, there must be "a conspiracy to prevent advocacy through intimidation or to injure a person because of such advocacy." ECF 106 at 24.

The limited interactions between Defendants were related to the Film, and

there is no evidence of any conspiracy. D'Souza Defendants were planning on making a movie with Salem before ever meeting with TTV Defendants. SMF ¶ 18. Before the Film, TTV Defendants had begun performing research on their own, had never worked with Salem, and Phillips had never met Dinesh D'Souza and Engelbrecht had only met him once. SMF ¶¶ 3, 4, 11, 16, 21. The concept of the Film was "originated fully" by D'Souza, and Salem and D'Souza were "partners." SMF ¶¶ 78-79. TTV Defendants' primary role was to send video clips to D'Souza Defendants. SMF ¶ 31. TTV Defendants only met with Salem one time to discuss the possibility of making a film, and Salem and TTV Defendants only had "occasional contact" and "nothing on a regular basis" throughout the creation of the Film. SMF ¶¶ 80, 98. Similarly, communications between D'Souza Defendants and TTV Defendants was only "sporadic." SMF ¶ 97. TTV Defendants were very minimally involved with any marketing or promotion of the Film, did not coordinate any publicity for the Film, and never discussed marketing or promotion with Salem. SMF ¶¶ 93-96. TTV Defendants had little to no contact with D'Souza Defendants after the Film's premiere. SMF ¶¶ 5, 15. Perhaps most significantly, the overwhelming, undisputed evidence shows that TTV Defendants had ***no editorial control*** over the Film. SMF ¶¶ 81-87, 92.

TTV Defendants were also involved with some of the Statements. TTV Defendants had nothing to do with: (1) the 2,000 Mules Book (Statement 2); (2) the

Times Square Billboard (Statement 3); (3) Dinesh D'Souza's media appearances (Statements 7, 9-12, 20, 24-25, and 27); (4) Dinesh D'Souza's social media posts (Statements 35-39); or (5) Dinesh D'Souza's podcast appearances (Statements 40-44). SMF ¶¶ 153-74. TTV Defendants did not make any money off the Book. SMF ¶ 158. TTV Defendants had no editorial control over the Film, including the videos or graphics shown (SMF ¶¶ 81-87), or the Trailer (SMF ¶¶ 104-07). For the other Statements, there was no coordination. SMF ¶¶ 111, 119, 132, 143.[4]

Finally, the relationship between Engelbrecht and TTV, and Phillips, was that of a company hiring an independent contractor. Phillips has never been employed by TTV, has never received any direct compensation from TTV, and has not held any position with TTV since 2017. SMF ¶¶ 7-8. He is an independent contractor that performed some work for TTV. SMF ¶¶ 9-10, 12.

### b. There Was No Knowing Engagement in Any Conspiracy Intending to Commit Offenses.

Additionally, there is no evidence of a knowing engagement in a conspiracy intended to commit offenses that were the objects of a conspiracy. *Wohl*, 661 F. Supp. 3d at 125. Again, TTV Defendants were not involved whatsoever in Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44, so they could not have intended to commit any of those separate alleged offenses. The evidence also shows that TTV

---

[4] Phillips did not appear on The Tucker Carlson program and had no role in it. SMF ¶ 133.

Defendants, who worked with an attorney, reasonably believed that Georgia law required that for individuals depositing the ballots of others, the signature of an assistor was required, and that there were no assistor signatures in Gwinnett County. SMF ¶¶ 48-57. Thus, there could be no "knowing engagement" or "inten[t]" to commit offenses based on TTV's reasonable interpretation of a statute.

### 2.    There Was No Purpose to "Force, Intimidate, or Threaten."

Even if Plaintiff could demonstrate a legally relevant conspiracy (which he cannot), he must also show that "***the purpose***" of the conspiracy was to "force, intimidate, or threaten" Plaintiff. 42 U.S.C. § 1985(3); ECF No. 106 at 24; *Gaetz*, 2024 WL 1269311, at *11. *See Az. Alliance for Retired Americans v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1042 (D. Ariz. 2022) (plaintiffs must "show proof that the purpose or intent of Defendants' conspiracy was to intimidate or threaten voters from engaging in lawful activity related to voting in federal elections."), *vacated and appeal dismissed on other grounds by* 2023 WL 1097766 (9th Cir. Jan. 26, 2023).

Courts routinely find claims that lack this crucial evidence cannot be sustained. *See, e.g.*, *Az. Alliance*, 638 F. Supp. 3d at 1042 (plaintiffs failed to provide evidence defendants intended to prevent lawful voting; the evidence just showed defendants sought to prevent what they perceived to be widespread illegal voting and ballot harvesting); *Kennedy v. Meta Platforms, Inc.*, 2024 WL 4031486, at *8, *13 (N.D. Cal. Sept. 3, 2024) (plaintiffs did not show that they could be intimidated,

threatened, or coerced by a social media site for urging people not to vote); *Ariz. Democratic Party v. Ariz. Republican Party*, 2016 WL 8669978, at *6–10 (D. Ariz. Nov. 4, 2016) (plaintiffs did not establish voter intimidation where defendants trained hundreds of people to "follow voters out into the parking lot, ask them questions, take their pictures and photograph their vehicles and license plate").

Here, "the purpose" of the parties' interactions was clearly not to "force, intimidate, or threaten" Plaintiff. Rather, the purpose was to raise awareness about election integrity, which was an issue of great public concern. SMF ¶¶ 19-22. Plaintiff only appears in 1.8 seconds of the Film, along with many other surveillance video clips, and Plaintiff was blurred. SMF ¶ 77. TTV Defendants have never spoken with Plaintiff, did not know Plaintiff was in the Film until he filed this lawsuit, have no connection to him, and never identified him by name. SMF ¶¶ 6, 17, 175-76. It is impossible to purposely intimidate or threaten a person you do not know.

Moreover: (1) Plaintiff is not aware of anyone who identified him based solely on what they saw in the Film without being told or being otherwise aware that Plaintiff's image appears in the Film; (2) no one has ever put Plaintiff in harm's way because of the Film or any affiliated interviews; (3) Plaintiff is unaware of anyone recognizing him in public; (4) no one has ever threatened Plaintiff about voting; (5) no individuals have ever intimidated Plaintiff from voting; (6) the Film did not affect or stop Plaintiff from voting in any subsequent election; and (7) no one ever

told Plaintiff not to vote. SMF ¶¶ 180-88. Plaintiff is unaware of any reports published before his filing of this lawsuit that identified him by name. SMF ¶ 179.

The record is devoid of any evidence that "the purpose" of the conspiracy was to "force, intimidate, or threaten" Plaintiff.

## B.    Judgment is Due on Count III for Defamation/Defamation Per Se.

This is not a defamation case, and Plaintiff again is trying to force facts into elements he cannot satisfy. Under Georgia law, a libel plaintiff must establish: (1) a false statement of fact (2) of and concerning the plaintiff (3) that is defamatory and (4) published with the requisite degree of fault. *See, e.g.*, *Mathis v. Cannon*, 276 Ga. 16, 20-21 (2002); *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 748-49 (2008). Here, there is no evidence that: (1) TTV Defendants "published" almost all the Statements; (2) any of the Statements were "of and concerning" Plaintiff; and (3) any of the Statements were published with the requisite fault: "actual malice." Accordingly, summary judgment should be entered on Count III. *See Basulto v. Netflix, Inc.*, 2023 WL 7129970, at *19 (S.D. Fla. Sept. 20, 2023) ("In defamation cases, 'because of the importance of free speech, summary judgment is the rule, not the exception.'").

### 1.    TTV Defendants Did Not "Publish" Almost All the Statements.

Plaintiff must prove TTV Defendants published each of the Statements. *Mullinax v. Miller*, 242 Ga. App. 811, 814 (2000); *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 130 (2008) ("Publication of the statement is imperative and,

without it, the defamation claim fails."); O.C.G.A. § 51–5–1(b). "[P]ublication entails the ability to *control* the libel." *Mullinax*, 242 Ga. App. at 814 (no liability for campaign manager who provided information to a candidate who used it in a flyer because manager did not control the verbiage of the writing); *Wolf v. Ramsey*, 253 F. Supp. 2d 1323, 1364 (N.D. Ga. 2003) (granting summary judgment where defendant had no control over NBC's editing decisions); *Matthews v. Mills*, 357 Ga. App. 214, 216 (2020) (affirming summary judgment where no evidence defendant had any role in or control over the drafting or content of a report).

*Wolf v. Ramsey* is persuasive, if not controlling. As the defendant made a statement on a television program suggesting he believed an unnamed suspect might be a killer, NBC displayed a picture of the plaintiff on screen. 253 F. Supp. 2d at 1364. Plaintiff could not demonstrate defendant intended to refer to plaintiff when he made his statement. *Id.* The court found that "even though the photograph of plaintiff appeared on the screen when defendant made the statement, it is undisputed that defendant had no control over NBC's editing decisions." *Id.* Thus, the court granted defendant's motion for summary judgment on plaintiff's slander claim. *Id.*

TTV Defendants had no editorial control over the Film and almost all the Statements. Again, TTV Defendants had no involvement with Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44. SMF ¶¶ 153-74. There is no basis to hold TTV Defendants liable for the social media posts, podcasts, and other media appearances,

12

which were exclusively made by or featured Dinesh D'Souza. *See Finch v. City of Vernon*, 877 F.2d 1497, 1505 (11th Cir. 1989) (finding defendant not liable for damage to plaintiff's reputation caused by statements published by others); *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1252 (D. Nev. 2003) (dismissing defamation claim against individual where no allegations he made any statements); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 162, 165 (S.D.N.Y. 2020) (dismissing claim where defendant was not "personally involved" with and did not "actually ma[k]e" alleged defamatory statements); *Catalfo v. Jensen*, 628 F. Supp. 1453, 1456-57 (D.N.H. 1986) (plaintiff failed to show he was a responsible participant in the publication); *Van-Go Transport Co. v. N.Y.C. Bd. of Educ.*, 971 F. Supp. 90, 102 (E.D.N.Y. 1997) ("the defendant must induce or cause publication in some fashion.").

For the Statements in which TTV Defendants appeared, they lacked editorial control over all but two of them.[5] TTV Defendants had no editorial control over the Film and Trailer. SMF ¶¶ 78-87, 104-07. As Dinesh D'Souza admitted in an interview, TTV Defendants had "*[z]ero*" editorial control of the Film. SMF ¶ 84. For the remaining Statements, TTV Defendants had no editorial control regarding: (1) the May 13, 2022 Facts Matter with Roman Balmakov interview (Statements 6, 19, and 22-23); (2) the April 8, 2022 *The Charlie Kirk Show* interview (Statements 15-16); (3) the May 5, 2022 Tucker Carlson Tonight interview (Statements 8, 17-

---

[5] As discussed throughout, there is no claim for the "TTV Video" for other reasons.

18, 26, and 29); and (4) the April 20, 2022 Gateway Pundit interview (Statements 41-43). SMF ¶¶ 110-49. Although TTV Defendants appeared on the programs, they did not know what videos or images (if any) would be shown. *See id.* Using the Tucker Carlson interview as an example, Engelbrecht appeared remotely and could not even see what was shown on the screen when she commented (SMF ¶ 135), which cannot provide a basis for liability. *See Wolf*, 253 F. Supp. 2d at 1364.[6] *Wolf* alone shows that summary judgment is proper on Plaintiff's defamation claim.

### 2.    The Statements Do Not Refer to An Ascertainable Person.

An essential requirement of any defamation claim is the publication of a false and defamatory statement "of and concerning" the plaintiff. *Collins v. Creative Loafing Savannah, Inc.*, 264 Ga. App. 675, 678 (2003). "[T]he allegedly defamatory words or picture must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Id.* (affirming summary judgment where illustration was an unidentified cartoon character, and there was no evidence anyone recognized the cartoon face as that of the plaintiff); *Wolf*, 253 F. Supp. 2d at 1364 (granting summary judgment where there no evidence defendant intended to refer to plaintiff).

The "of and concerning" requirement "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." *Kirch v. Liberty Media Corp.*, 449

---

[6] Phillips did not appear in the Tucker Carlson interview, so there is no basis to hold him liable. *See, e.g.*, *Flowers*, 266 F. Supp. 2d at 1252; *Watson*, 439 F. Supp. 3d at 162, 165.

F.3d 388, 399-400 (2d Cir. 2006). The plaintiff must show "that the publication was about the plaintiff, that is, whether it was of and concerning [the plaintiff] as a matter of identity." *800 Mktg. Sols., Inc. v. GMAC Ins. Mgmt. Corp.*, 2008 WL 2777140, at *5 (M.D. Ga. July 14, 2008) (quoting *Smith v. Stewart*, 291 Ga. App. 86, 92 (2008)).

"Georgia law is abundantly clear that [the plaintiff] cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation." *Willis v. United Fam. Life Ins.*, 226 Ga. App. 661, 663 (1997); *see also Cox Enters., Inc. v. Bakin*, 206 Ga. App. 813, 816 (1992) (if the "words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory"); *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1260 (S.D. Fla. 2021) (plaintiff unidentifiable where statement identified certain information, but not Plaintiff or any other information that made his identity ascertainable; noting no liability where defendant is "meticulous enough" to preserve plaintiff's anonymity).

Here, the Statements fail to meet the "of and concerning" requirement. TTV Defendants have no connection to and have never identified Plaintiff by name. SMF ¶ 176. In fact, TTV Defendants did not know Andrews was an individual in the Film until he filed his lawsuit. SMF ¶ 175. TTV Defendants had no involvement with Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44. *Supra* at 12-13. Of the Statements in which TTV Defendants appear, the Film (Statement 1), Trailer (Statements 4-5, 13-14, and 28), Facts Matter program (Statements 6, 19, and 22-23), and TTV Video

(Statements 21 and 30) all contain blurred images of Plaintiff—a concept TTV Defendants advocated—making his identity unrecognizable. SMF ¶ 77, 91, 103, 110, 150. In the TTV Video, Plaintiff's image is completely unrecognizable because it only appears for a fraction of a second. SMF ¶ 150. And for the few unblurred images (Statements 8, 15-18, 26, 29, and 41-43), Plaintiff is wearing a face mask that covers most of his face and is also unrecognizable (SMF ¶¶ 118, 130, 142). Thus, there is no evidence for the "of and concerning" requirement.

### 3.    The Statements Fail to Satisfy the "Actual Malice" Standard.

#### a.    Plaintiff Must Prove Actual Malice by Clear and Convincing Evidence for Two Independent Reasons.

##### i.    The Statements Are Privileged Communications.

The Statements are privileged under Georgia law because they involve issues of public interest or concern. Privileged communications include "[s]tatements made in good faith as part of an act in furtherance of the person's or entity's right of petition or free speech . . . in connection with an issue of public interest or concern" (O.C.G.A. § 51-5-7(4)), which includes "[a]ny other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern" (O.C.G.A. § 9-11-11.1(c)(4)).

Whether statements are privileged turns on the issue of malice. *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 132 (2008); *see Matthews v. Oskouei*, 369 Ga. App. 568, 576 (2023) (reversing judgment, finding court erred in finding

there was a probability plaintiff would prevail on his defamation claim because the communication was privileged), *cert. granted* (Apr. 16, 2024). "[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

The Statements fall under O.C.G.A. § 51-5-7(4) and are privileged under Georgia law because they all revolve around the issue of election integrity, which was and remains one of the most discussed political issues. SMF ¶ 19-20 TTV is a nonprofit, nonpartisan organization whose mission is to empower voters and protect voters' rights through citizen engagement. SMF ¶ 2. The purpose of the Film and the Statements was to publicly discuss the issue of election integrity. SMF ¶ 20. It is undisputed that the issue of election fraud in the 2020 election was an issue of public concern and was discussed often on the news. SMF ¶ 19. The Film, and the Statements, all relate to free speech issues that are protected under Georgia law. *See* O.C.G.A. § 51-5-7(4); O.C.G.A. § 9-11-11.1(c). Accordingly, Plaintiff must show each Statement was made with actual malice.

### ii.    Plaintiff Became a Limited Purpose Public Figure.

Additionally, the actual malice standard applies because Plaintiff became a limited purpose public figure. *See Ladner v. New World Commc'ns of Atlanta, Inc.*, 343 Ga. App. 449, 457 (2017); *Wolf*, 253 F. Supp. 2d at 1352.

"A limited purpose public figure is 'an individual [who] voluntarily injects

himself *or is drawn into a particular public controversy* and thereby becomes a public figure for a limited range of issues.'" *Wolf*, 253 F. Supp. 2d at 1352 (emphasis added) (quoting *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996)). "Courts use a three part-test to determine whether an individual is a limited-purpose public figure: (1) 'isolate the public controversy,' (2) 'examine the plaintiff's involvement in the controversy' and (3) 'determine whether the alleged defamation was germane to the plaintiff's participation in the controversy.'" *Krass v. Obstacle Racing Media, LLC*, 667 F. Supp. 3d 1177, 1207 (N.D. Ga. 2023) (applying Georgia law).

Whether a person is a public figure is a question of law for the court. *Matthis v. Cannon*, 276 Ga. 16, 22 (2002) (reversing summary judgment to plaintiff, finding he became a limited-purpose public figure when he became involved in a public controversy, including by filing a lawsuit against a public authority). A public controversy exists where there is a "subject of legitimate news interest" or "a subject of general interest and of value and concern to the public." *San Diego v. Roe*, 543 U.S. 77, 83-84 (2004); *see also Matthis*, 276 Ga. at 25 (public controversy arises when an issue "generates discussion, debate, and dissent in the relevant community"; finding actual malice standard applied even though messages accused plaintiff of being a crook and a thief because they were made as part of a debate about a public issue). "Only in cases of flagrant breach of privacy which has not been waived or obvious exploitation of public curiosity where no legitimate public interest exists

18

should a court substitute its judgment for that of the publisher." *Dresbach v. Doubleday & Co.*, 518 F. Supp. 1285, 1290 (D.D.C. 1981). In other words, "if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Krass*, 667 F. Supp. 3d at 1207. "There is no requirement that the controversy affect the public at large." *Id.* at 1208 (public controversy about plaintiff's conduct toward women sufficient).

Here, Plaintiff became a limited-purpose public figure because he was drawn into a public controversy. *First*, the impetus for the Film and the at-issue interviews was to discuss election integrity, which clearly generated "discussion, debate, and dissent in the relevant community." SMF ¶¶ 19-21.

*Second*, Plaintiff was "sufficiently involved" in the controversy. David Cross filed a Complaint with the Georgia State Election Board ("SEB"), which was investigated. SMF ¶¶ 58-69. The SEB held a public hearing, and Plaintiff testified that his name became public "after the Georgia Board of Elections identified" him. SMF ¶ 69. A few hours after the case was dismissed, it received media coverage, including an article published by The Washington Post discussing the SEB investigation. SMF ¶¶ 70-72. A little while later, a reporter with The Associated Press reached out to Plaintiff's daughter "regarding an investigation by the Georgia secretary of state's office." SMF ¶ 74. Even at that point, Plaintiff's identity was not publicly known. Plaintiff admits that prior to him filing his lawsuit, there are no

known news reports that identified him by name. SMF ¶ 179. Despite being cleared and unidentified after the SEB hearing, Plaintiff voluntarily threw himself into the public spotlight by filing this action, and only then became publicly identified.

_Finally_, the alleged defamation was germane to Plaintiff's participation in the controversy. The only use of Plaintiff's image was from publicly available drop box surveillance video. SMF ¶¶ 23, 33-34, 44-47, 77, 103, 110, 118, 130, 142, 150. And the evidence shows TTV Defendants reasonably believed that under Georgia law, if multiple ballots were being delivered by a single individual, assistor signatures were required, and there were none in Gwinnett County. SMF ¶¶ 48-57. *See Krass*, 667 F. Supp. 3d at 1210 (for the final factor, "[t]his is a low bar: '[a]nything which might touch on the controversy is relevant.'"). Because Plaintiff was drawn into a public controversy and then injected himself into that public controversy, he became a limited purpose public figure, and the actual malice standard applies.

### b.    There is No Evidence TTV Defendants Were Malicious.

Because the Film and Statements involved privileged matters under Georgia law, and separately because Plaintiff became a limited purpose public figure, the actual malice standard applies. There is no evidence of actual malice here.

Actual malice is "knowledge that the defamatory matter was false or that it was published with reckless disregard for whether it was false or not." *Wolf*, 253 F. Supp. 2d at 1352-53; *see also Amin v. NBCUniversal Media, LLC*, 2024 WL

3188768, at *24 (S.D. Ga. June 26, 2024) ("Actual malice is not merely spite or ill will, or even outright hatred; it must constitute actual knowledge that a statement is false or a reckless disregard as to its truth or falsity.") (citing *Cottrell v. Smith*, 299 Ga. 517 (2016)). "[U]nsupported inferences or conjecture regarding a defendant's motivation do not suffice to show malice." *Smith v. Henry*, 276 Ga. App. 831, 833 (2005). "Rather, the evidence must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." *Neff v. McGee*, 346 Ga. App. 522, 529 (2018); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974) (plaintiff must show the publication was made with a "high degree of awareness of . . . . probable falsity.").

"Malice to avoid qualified privilege must be actual and with evil intent." *Chaney*, 308 Ga. App. at 81. As one court elaborated:

> [K]nowledge of falsity or reckless disregard of the truth may not be presumed nor derived solely from the language of the publication itself. Reckless disregard requires clear and convincing proof that a defendant was aware of the likelihood he was circulating false information. Thus, it is not sufficient to measure reckless disregard by what a reasonably prudent man would have done under similar circumstances nor whether a reasonably prudent man would have conducted further investigation. The evidence must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements.

*Amin*, 2024 WL 3188768, at *24; *see also Krass*, 667 F. Supp. 3d at 1213 ("Actual malice is not concerned with 'what a reasonably prudent man would have done under similar circumstances' or 'whether a reasonably prudent man would have conducted

further investigation'; the proper inquiry is whether the defendant held substantial doubt about the truth of the published statements.").

"Failure to investigate before publishing, even when a reasonably prudent person would have done so, is ***not sufficient*** to establish reckless disregard." *Lovingood v. Discovery Commns., Inc.*, 800 F. App'x 840, 850 (11th Cir. 2020) (emphasis added); *see also Klayman v. City Pages*, 650 F. App'x 744, 750-51 (11th Cir. 2016) (finding that failure to investigate and poor journalistic standards were insufficient to establish actual malice, and holding that district court did not err in granting summary judgment in favor of defendants); *Basulto*, 2023 WL 7129970, at *48 (even an "extreme departure from professional [publishing] standards" does not necessarily rise to the level of actual malice).

"Rather, to show reckless disregard that amounts to actual malice, a defamation plaintiff must point to evidence that the defendant had ***real, subjective suspicions*** about the veracity of the statement in question." *Lovingood*, 800 F. App'x at 850 (emphasis added); *see also Basulto*, 2023 WL 7129970, at *47-*48 (recommending granting summary judgment to Netflix where no evidence it doubted the accuracy of the film, noting "Netflix should be able to obtain a . . . summary judgment ruling when it had absolutely no involvement with the creative process of making the movie."). "There must be sufficient evidence to permit the conclusion that the defendant ***in fact entertained serious doubts*** as to the truth of his

publication,". . . or that he acted with a "high degree of awareness of ... probable falsity." *Lovingood*, 800 F. App'x at 850 (emphasis added).

"Whether a showing of actual malice has been made is an issue to be determined by the trial judge in the first instance, and thus is particularly appropriate for summary resolution." *Fine v. Communication Trends, Inc.*, 305 Ga. App. 298, 305 (2010) (cleaned up); *Rabun v. McCoy*, 273 Ga. App. 311, 320 (2005) (granting summary judgment to defendant on defense of privilege in slander action). A defendant need only show that "by reference to the affidavits, depositions and other documents in the record" that there is an absence of evidence to support [plaintiff's] claim of malice." *Chaney*, 308 Ga. App. at 81.

Here, there is no evidence TTV Defendants had ***any*** malice towards Plaintiff. Indeed, TTV Defendants have no connection to and have never identified Plaintiff by name, have never met or spoken with Plaintiff, and did not know Andrews was an individual in the Film until he filed his lawsuit. SMF ¶¶ 6, 17, 89, 108, 116, 124, 140, 148, 151, 175-76, 179. There was no reason for TTV Defendants to have any ill-will towards him, and they had none.

*First*, TTV Defendants had no involvement with Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44, and cannot be held liable for them. *Supra* at 12-13.

*Second*, for all the Statements in which TTV Defendants appeared, TTV Defendants reasonably believed that, under Georgia law, for an individual to deposit

multiple ballots, there needed to be a signature from an assistor. SMF ¶¶ 51-57. This belief is consistent with a facial reading of the pertinent statute. *See* O.C.G.A. § 21-2-385(a) (2019) ("the elector shall vote his or her absentee ballot, then fold the ballot and enclose and securely seal the same in the envelope on which is printed 'Official Absentee Ballot.' This envelope shall then be placed in the second one, on which is printed the form of the oath of the elector; the name and oath of the person assisting, if any; and other required identifying information."); O.C.G.A. § 21-2-385(b) (2019) ("The person rendering assistance to the elector in preparing the ballot shall sign the oath printed on the same envelope as the oath to be signed by the elector.").

That is why TTV requested from Gwinnett County "an accounting of Assistor Signatures on Absentee Ballot envelopes, by drop box location, during the entire absentee voting period for the November 2020 General Election," and Gwinnett County responded stating that it had no responsive documents. SMF ¶¶ 48-49. Thus, when TTV Defendants saw video of individuals depositing multiple ballots, they thought this violated Georgia law. SMF ¶¶ 56-57. Expression of honestly held opinions, such as these, preclude a defamation claim. *Wolf*, 253 F. Supp. 2d at 1352; *see also Blankenship v. NBCUniversal, LLC*, 60 F.4th 744 (4th Cir. 2023) (finding several on air remarks were not defamatory because defendants reasonably made a mistake in calling plaintiff a convicted felon). TTV Defendants also retained an attorney to assist with the drafting, reviewing, and providing feedback on its

complaints. SMF ¶¶ 51, 54. This further supports the conclusion that their comments were not malicious. *See Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n, Inc.*, 867 F. Supp. 925 (D. Or. 1994) (granting summary judgment on defamation counterclaim where company's statements were supported by legal opinion).

*Third*, for all Statements (except the TTV Video), TTV Defendants had no editorial control over what would be shown. *Supra* at 13-14. For the Film and Trailer, TTV Defendants did not have editorial control over the selection of videos or content. SMF ¶¶ 81-87, 104-07. Although they appeared in the Film at certain points, TTV Defendants did ***not*** make the offending statement: "What you are seeing is a crime. These are fraudulent votes." SMF ¶ 88. For programs such as the Tucker Carlson interview (Statements 8, 17-18, 26, 29, 33), Engelbrecht could not even see what was being shown on the screen while she spoke (SMF ¶ 135), so there can be no liability. *See Wolf*, 253 F. Supp. 2d at 1364. For the Charlie Kirk interview (Statements 15-16), Engelbrecht specifically qualified her answer—she left open the possibility that depositing multiple ballots could be legal if there were an assistor signature, but because Gwinnett County confirmed there were none, she believed individuals could not deposit multiple ballots. SMF ¶ 126. The evidence also reflects that there was no one definition of the term "mule"—when TTV used that term in the context of the interview, they did not mean Plaintiff was a "mule" within the definition provided in the Film. SMF ¶ 27-28, 177. In fact, they contemporaneously

stated that Plaintiff was ***not*** a mule in that context. SMF ¶ 177.

Because there is no malice, none of the Statements are actionable.

### 4. Many Statements Are Not Defamatory Under Any Standard.

For the "TTV Video," Plaintiff cites to language such as "all the easy choices are in the past," and "pull[ing] the ripcord." App'x 1. For the Tucker Carlson interview, Plaintiff identifies generalized language such as "a recipe for fraud," "I can tell you there was rampant abuse of those drop boxes, and the data that we have is immutable and proves it, now buttressed increasingly by video," and "the subversion was in fact real." None of these identify Plaintiff, and none are defamatory. *See, e.g.*, *Trump v. Cable News Network, Inc.*, 684 F. Supp. 3d 1269, 1275 (S.D. Fla. July 28, 2023) (no defamation where CNN used the phrase "the Big Lie" regarding his election challenges even though the phrase is attributed to the Hitler regime); *Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) (granting motion to dismiss where blogger made social media comments that journalist was "xenophobic" and "personally spread Russian bots" on a website because both were nonactionable opinions).

### C. There is No Evidence for Count IV, False Light Invasion of Privacy.

For a false light invasion of privacy claim, Plaintiff must show "the existence of false publicity that depicts the plaintiff as something or someone which he is not," and must "demonstrate that the false light in which he was placed would be highly

offensive to a reasonable person." *Williams v. Cobb Cty. Farm Bureau, Inc.*, 312 Ga. App. 350, 353 (2011); *see also Blakey v. Victory Equip. Sales, Inc.*, 259 Ga. App. 34, 37-38 (2002). "In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy." *Smith*, 291 Ga. App. at 100.

Plaintiff's false light claim fails because it is based on the same statements as his defamation claim. *Compare* ECF 27 at ¶¶ 295–306 (incorporating defamation claim into false light claim and citing the same statements and conduct as the basis for both) *with id.* ¶¶ 276-94. Plaintiff has not identified any "nondefamatory statement[s]." Plaintiff's false light claim is thus subsumed by his defamation claim and fails as a matter of law. *See Bollea v. World Championship Wrestling*, 271 Ga. App. 555, 557 n.1 (2005); *Smith*, 291 Ga. App. at 100.

Additionally, Count IV fails because TTV Defendants did not "depict[] the plaintiff as something or someone which he is not." *Cobb Cty. Farm Bureau, Inc.*, 312 Ga. App. at 353; *see also Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685, 690 (1998) (trial court erred in denying summary judgment where defendant negated this "essential element" of plaintiff's false light claim). TTV Defendants had nothing to do with Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44. *Supra* at 12-13. All the clips of Plaintiff were obtained from publicly available surveillance footage. *Supra*

at 20. Most of the clips involved blurred images of Plaintiff, making him unrecognizable. *See supra* at 16; *cf. Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020) (noting techniques such as "blurring out faces" "eliminate unwarranted invasions of privacy"). Even for the few Statements where Plaintiff was not blurred, his face was still covered by a face mask, rendering him unrecognizable. *Supra* at 16. TTV Defendants never identified Plaintiff and never named him, and did not know he was included in the Film. SMF ¶ 161. And significantly, TTV Defendants lacked editorial control over most of the Statements. *See supra* at 13-14.

Finally, summary judgment is due for Count IV because the Statements involved issues of public interest. The "right to privacy and corresponding right of publicity are necessarily in tension with the First Amendment's protection of freedom of speech and of the press." *Toffoloni v. LFP Publ'g Grp., LLC*, 572 F.3d 1201, 1207 (11th Cir. 2009). To accommodate these "competing constitutionally protected rights," Georgia courts "have adopted a 'newsworthiness' exception" to the right of privacy. *Id.* at 1208. Specifically, "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." *Id.* (quoting *Waters v. Fleetwood*, 212 Ga. 161, 166 (1956)); *Tucker v. News Pub'g Co.*, 197 Ga. App. 85 (1990) (victim of a sexual attack by fellow high school students became the object of public interest "through no fault of his own").

The subject matter of the Film and the Statements involves election integrity, which is undeniably a matter of public interest and concern, and was extremely newsworthy. *See supra* at 17. Therefore, there was no violation of Plaintiff's right to privacy as a matter of law. *See Waters*, 212 Ga. at 167 (affirming dismissal of invasion of privacy claim by mother of murder victim against newspaper that published and sold photos of her daughter's decomposing body for pecuniary gain because publication and photos was related to matter of public interest).

Accordingly, summary judgment should be entered on Count IV.

## D.   There is No Evidence Supporting Count V for Invasion of Privacy by Appropriation of Likeness.

Plaintiff's claim for invasion of privacy by appropriation of likeness fails. The tort "consists of the appropriation, for the defendant's benefit, use or advantage, of the plaintiff's name or likeness." *Martin Luther King, Jr. Ctr. for Soc. Change, Inc. v. Am. Heritage Prods., Inc.*, 250 Ga. 135, 143 (1982). To prevail, Plaintiff must show, among other things, that: (1) the defendant intended to appropriate the plaintiff's likeness; and (2) the plaintiff's likeness was readily recognizable in the publication upon which the plaintiff bases his claim. *See Tana v. Dantanna's*, 611 F.3d 767, 782 (11th Cir. 2010) (holding that "summary judgment is proper where a plaintiff fails to show an intentional or knowing appropriation of likeness," and that "an appropriation of likeness without an intent to use the likeness for one's benefit

fails to meet the very definition of the tort itself"); *Collins*, 264 Ga. App. at 679 (appropriation of likeness claim failed where plaintiff was not readily identifiable).

Significantly, that which is "open to public observation" cannot be appropriated. *Toffoloni*, 572 F.3d at 1207. To determine this, courts do not look to the "manner in which information has been obtained." *Id.* at n.1. Rather, the question is "whether the information disclosed was public rather than private—whether it was generally known and, if not, whether the disclosure [was made] to the public at large." *Pierce v. Warner Bros Ent., Inc.*, 237 F. Supp. 3d 1375, 1381 (M.D. Ga. 2017) (plaintiff's likeness, displayed on a real estate sign, was clearly "open to public observation"); *see also Ramsey v. Ga. Gazette Pub. Co.*, 164 Ga. App. 693, 695 (1982) (plaintiff "albeit unwittingly, bec[a]me an actor in a public drama. Dissemination of information pertaining to this drama is no violation of the plaintiff's right of privacy."); *Barnhart v. Paisano Pubs., LLC*, 457 F. Supp. 2d 590, 595-96 (D. Md. 2006) (granting summary judgment where plaintiff's picture was taken at a public place at a newsworthy event).

Here, TTV Defendants never invaded Plaintiff's privacy by appropriating his likeness. The footage of Plaintiff was all obtained by publicly available drop box surveillance footage, which TTV Defendants obtained via Open Records Request. SMF ¶ 21. Individuals do not have a reasonable expectation of privacy in such public places. *See U.S. v. Miravalles*, 280 F.3d 1328, 1330 (11th Cir. 2002) (common areas

30

of apartment building); *Gray v. Royal*, 181 F. Supp. 3d 1238, 1254 (S.D. Ga. 2016) (common area of government office). That alone renders this claim deficient. *See Barnhart*, 457 F. Supp. 2d at 595-96; *Pierce*, 237 F. Supp. 3d at 1381.

Moreover, Plaintiff was unrecognizable. Almost all the at-issue Statements contained blurred images of Plaintiff. *Supra* at 20. *See Branson v. Fawcett Pub'cns*, 124 F. Supp. 429, 431-433 (E.D. Ill. 1954) (holding claim for invasion of privacy by appropriation of likeness failed where picture was "blurred" because, standing alone, the picture did not "identify the plaintiff" or anyone specific). Plaintiff was never named in the Film, and TTV Defendants did not even know Plaintiff's identity until he filed this lawsuit. *Supra* at 10, 23. Plaintiff was not identifiable or recognizable in any of the Statements. *See Collins*, 264 Ga. App. at 679.

Moreover, for almost all the Statements, TTV Defendants lacked editorial control, and did not select the videos that were used. *Supra* at 13-14. Thus, they could not have "intended" to appropriate Plaintiff's likeness as required. *See Tana*, 611 F.3d at 783 ("An appropriation of likeness without an intent to use the likeness for one's benefit fails to meet the very definition of the tort itself. Furthermore, Georgia case law plainly establishes that summary judgment is proper where a plaintiff fails to show an intentional or knowing appropriation of likeness.").

Finally, Count V fails for the same reason as Count IV—the Statements involve a matter of public interest. *See supra* at 28-29; *Toffoloni*, 572 F.3d at 1207-

08 (recognizing Georgia's newsworthiness exception to the right of privacy, and that "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy."). Because the issues in the Statements concern matters of public interest, there was no invasion of privacy by appropriation of likeness.

## E.    Count VI for Civil Conspiracy Fails as a Matter of Law.

Under Georgia law, "[a] conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Elliott v. Savannah Int'l Motors, Inc.*, 360 Ga. App. 281, 286 (2021). Plaintiff must show that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Id.*; *see also Wells Fargo Bank v. Crowly*, 2014 WL 11370437, at *8 (N.D. Ga. Feb. 20, 2014) ("if insufficient factual allegations are made with regard to either (1) the underlying tort or (2) the agreement between conspirators (in furtherance of the tort or unlawful act) constituting the conspiracy," the claims are subject to dismissal). "[T]he mere fact that conspiracy has been alleged does not require submission of the question to a jury where there is no evidence of record that the alleged conspirators either positively or tacitly came to a mutual understanding to accomplish an unlawful end or to accomplish a lawful end by an unlawful means." *Roberts v. Lane*, 210 Ga. App. 10, 11–12 (1993); *see also Chaney*, 308 Ga. App. at 818 ("[c]onclusory allegations … of conspiracy, malice, and defamation are

insufficient in the absence of substantiating fact or circumstances … to raise a material issue for trial.").

The essential element of civil conspiracy is the common design—there must be a defined, intended fruit of the conspiracy which the members of the conspiracy agree upon. *See, e.g.*, *Nayani v. Bhatia*, 371 Ga. App. 44, 52 (2024) (affirming summary judgment where plaintiff did not identify a shared particular object of the conspiracy or mutual understanding between the defendants). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

Mere proof of a "joint purpose to publish" is insufficient—there must be "**specific evidence of a joint purpose to defame**." *Dowd v. Calabrese*, 589 F. Supp. 1206, 1214 (D.D.C. 1984) (emphasis added); *Downey v. Coal. Against Rape & Abuse, Inc.*, 2005 WL 984394, at *8 (D.N.J. Apr. 27, 2005) (same); *Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 602 (Colo. Ct. App. 2024) (granting summary judgment where individual provided information and another individual used that information for an article, noting plaintiff "cannot prevail by showing an agreement to undermine the legitimacy of the election generally. He must show an agreement to defame . . . upon him"); *Robertson v. McCloskey*, 666 F. Supp. 241, 253 (D.D.C. 1987) (summary judgment granted because there was

"nothing more than a collaborated or a joint purpose to publish, which is legally insufficient to support a conspiracy to defame claim."); *Kisser v. Coal. for Religious Freedom*, 1997 WL 83296, at *3 (N.D. Ill. Feb. 19, 1997) (evidence that "members of the alleged conspiracy knew one another, communicated with each other, worked together at times, shared information that was critical of her and [an organization] with each other, and had a common animus toward her and [the organization]," was "insufficient to infer from the various communications between the parties that there was an agreement to defame her."); *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998) (when First Amendment concerns are at issue, "proof of cooperation between . . . individuals who have a common purpose to produce a news story does not represent a sufficient basis for an actionable conspiracy.").

"[A]s in other types of actions, issues predicated upon a claim or defense of conspiracy may be summarily adjudicated where there is no genuine issue of material fact." *Morton v. Gardner*, 155 Ga. App. 600, 602 (1980) (affirming summary judgment on conspiracy to commit libel claims); *see also Elliott*, 360 Ga. App. at 286 (affirming summary judgment on civil conspiracy to commit fraud claim; *Shook v. St. Bede Sch.*, 74 F. Supp. 2d 1172, 1181 (M.D. Ala. 1999). "[T]he liability of each defendant under a conspiracy theory must be alleged ***separately as to each defamatory statement and as to each separate tort***." *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 167-68 (S.D.N.Y. 2020) (emphasis added) (dismissing

conspiracy claim where no allegations defendants provided "substantial encouragement" to other defendants who made defamatory statements, "entered into any agreement" to make the statements, had any prior knowledge that the other defendants would make those specific statements, or committed a specific overt act with respect to the defamatory statements).

For a conspiracy for slander claim, plaintiff must show that (1) both parties were present when the slanderous words were uttered, and (2) the slanderous words spoken by one party was done with the consent of the other party and in furtherance of a common design and purpose. *Turnage v. Kasper*, 307 Ga. App. 172, 185 (2010) (trial court erred in denying defendant's motion for directed verdict because he was not present when co-defendant made slanderous remarks and no evidence suggested defendant directed or consented to co-defendant's remarks or tacitly entered into an agreement to slander). Plaintiff must show defendant had the requisite degree of control over the offending publication. *See, e.g.*, *Matthews*, 357 Ga. App. at 216.

### 1.    Defendants Did Not Act in Concert to Accomplish an Unlawful End or a Lawful End by Unlawful Means.

There is no evidence of any "mutual understanding to accomplish an unlawful end or to accomplish a lawful end by an unlawful means," let alone any "specific evidence of a joint purpose to defame." *Roberts*, 210 Ga. App. at 11–12; *Dowd*, 589 F. Supp. at 1214; *supra* at 6-26. Rather, the evidence shows that, among other things: (1) D'Souza Defendants were planning on making a movie with Salem even before

meeting with TTV Defendants; (2) prior to the Film, TTV Defendants had never worked with Salem, and barely knew Dinesh D'Souza; (3) TTV Defendants have had little to no contact with the other Defendants since the Film; (4) the concept of the Film was originated by D'Souza; (5) TTV Defendants provided a very limited and defined role for the Film; (6) TTV Defendants only spoke sporadically with the other Defendants in the film-making process; (7) TTV Defendants were not actively involved in the marketing of the Film; (8) TTV Defendants had no editorial control over the Film; (9) TTV Defendants were only involved in a limited number of the at-issue Statements, and had nothing to do with numerous of the Dinesh D'Souza Statements; (10) TTV Defendants was not involved with the Book and did not make any money off the Book; (11) for the few Statements only related to TTV Defendants, the other Defendants were not involved; (12) TTV Defendants did not even mention the Film in some of the Statements; and (13) the relationship between Engelbrecht and TTV, on the one hand, and Phillips, on the other hand, was simply one of a company hiring an independent contractor. *Supra* at 6-8. These facts demonstrate that there was no conspiracy between the parties.

Moreover, there was no specific intent to commit any torts, including defamation. TTV Defendants were not present when Statements 2-3, 7, 9-12, 20, 24-25, 27, and 35-44 were uttered, which precludes them being held liable for those Statements. *See, e.g.*, *Turnage*, 307 Ga. App. at 185. None of the TTV Defendants

identified Plaintiff or knew Plaintiff was in the Film. SMF ¶¶ 175-76. The evidence shows TTV Defendants did not even consider Plaintiff a "mule" within the definition of the Film. SMF ¶ 177. For almost all the Statements, TTV Defendants had no editorial control, and had no idea what videos would be shown to them beforehand. *Supra* at 7-8. For the Tucker Carlson clip, Engelbrecht could not even see the video being shown on the screen while she spoke. SMF ¶¶ 133, 135. TTV Defendants only desired to raise awareness regarding the issue of election integrity.

None of the TTV Defendants had any plan with any other Defendant to accomplish any unlawful end or any lawful end by an unlawful means.

### 2.      There is No Evidence of Any Underlying Tort.

There can be no conspiracy claim because, as shown above there is no evidence of any underlying torts by TTV Defendants. "Absent the underlying tort, there can be no liability for civil conspiracy." *Elliott*, 360 Ga. App. at 286; *see also Kleen Corp. v. Smith*, 203 Ga. App. 514, 514-15 (1992) ("[T]he conspiracy of itself furnishes no cause of action."); *Ass'n Servs., Inc. v. Smith*, 249 Ga. App. 629, 634 (2001). Accordingly, summary judgment should be entered on the conspiracy claim.

### F.      Count VII for Punitive Damages Fails.

### 1.      There is No Evidence Supporting Any Punitive Damages Award.

There is no evidence coming close to meeting the high bar for punitive damages. "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the

defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Punitive damages may only be awarded "in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). TTV did not even know who Plaintiff was, negating any possibility that TTV acted with sufficient intent and reprehensibility to harm Plaintiff.

The bar for awarding punitive damages is high. "Mere negligence, although gross, will not alone authorize the recovery of punitive damages," and "[t]here must be circumstances of aggravation or outrage." *Artzner v. A & A Exterminators, Inc.*, 242 Ga. App. 766, 772 (2000). "[A] defendant operating under an innocent mistake cannot be held liable for punitive damages." *Toffoloni*, 483 F. App'x at 563 (vacating punitive damages where employees honestly and reasonably believed photographs fit under newsworthiness exception to the right of publicity). "Something more than the mere commission of a tort is always required for punitive damages." *Id.*

More specifically, for defamation claims, "the First Amendment to the United States Constitution prohibit[s] the award of punitive damages . . . absent a showing of 'actual malice.'" *Schafer v. Time, Inc.*, 142 F.3d 1361, 1366 (11th Cir. 1998); *see*

*also Straw v. Chase Revel, Inc.*, 813 F.2d 356, 363 (11th Cir. 1987) ("[o]nly actual malice will support an award of punitive damages"); *Am. C.L. Union, Inc. v. Zeh*, 312 Ga. 647, 652 n.5 (2021) ("even a private-figure plaintiff is required to prove actual malice in order to recover presumed or punitive damages if the defamatory statement was about a matter of public concern.") (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)); *Peoples v. Guthrie*, 199 Ga. App. 119 (1991) (affirming striking of punitive damages where defendant mistakenly accused employee of cheating on exam because no actual malice).

TTV Defendants did not know who Plaintiff was, none of the Statements identified Plaintiff, and he is completely unrecognizable in all the Statements. Plaintiff's image was blurred in almost all the Statements. *Supra* at 16. TTV Defendants had no editorial control over almost all the Statements and the Film. *Supra* at 7-8. For the interviews in which they participated, TTV Defendants did not know what videos would be shown. *Supra* at 8, 14, 25. TTV Defendants also held the reasonable belief that Georgia law required an assistor signature if an individual dropped multiple ballots into a drop box. *Supra* at 9, 20, 24; *Toffoloni*, 483 F. App'x at 563. An award of punitive damages here requires a showing of actual malice (*Schafer*, 142 F.3d at 1366), and there is no such evidence.

## 2.    There Was No "Specific Intent to Cause Harm."

Punitive damages are inappropriate, but there certainly is no evidence of the

even higher bar of a "specific intent to cause harm." If awarded, punitive damages are generally capped at $250,000.00 (O.C.G.A. § 51-12-5.1(g)), unless, as only potentially relevant here, "it is found that the defendant acted, or failed to act, with the specific intent to cause harm." O.C.G.A. § 51-12-5.1(f).

Courts routinely emphasize that even general conscious indifference to the consequences of one's actions, and mere knowledge and appreciation of a risk, are not sufficient to establish "intent." *See Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 804 (1992) (trial court erred in failing to grant summary judgment on defendant's liability above statutory cap even though he admitted to drinking and driving); *J.B. Hunt Transp., Inc. v. Bentley*, 207 Ga. App. 250, 255 (1992) (reducing punitive damages to statutory cap even though defendant continued driving for 10-20 miles with a serious mechanical/physical problem, veered off the road without braking, and struck plaintiff); *Tookes v. Murray*, 297 Ga. App. 765, 768 (2009). There is no evidence of any "specific intent to cause harm."

## **CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment in TTV Defendants' favor on all counts of Plaintiff's Complaint.

Filed this 20th day of December, 2024.

/s/ Jake Evans
JAKE EVANS
Georgia Bar No. 797018
PHILIP J. GEORGE
Georgia Bar No. 441996
JULIA MARTIN*
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
P: (678) 553-2100
F: (678) 553-2212
Jake.Evans@gtlaw.com
Philip.George@gtlaw.com
Julia.Martin@gtlaw.com

*Attorneys for Defendants True the Vote, Inc.,
Catherine Englebrecht and Gregg Phillips*

*\*Admitted Pro Hac Vice*

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times

New Roman, 14-point font, as approved by Local Rule 5.1.

/s/ Jake Evans
JAKE EVANS
Georgia Bar No. 797018

*Attorney for Defendants True The Vote, Inc.,
Catherine Engelbrecht, and Gregg Phillips*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within and foregoing **Defendants True the Vote, Inc., Catherine Engelbrecht, and Gregg Phillips' Motion for Summary Judgment and Memorandum of Law in Support Thereof** was electronically filed on the Court's ECF filing system, which will automatically serve a copy on all counsel of record.

This 20th day of December, 2024.

**GREENBERG TRAURIG, LLP**

*/s/ Jake Evans*
JAKE EVANS
Georgia Bar No. 797018

*Attorney for Defendants True The Vote, Inc., Catherine Engelbrecht, and Gregg Phillips*