# EXHIBIT I

# EXCLUSIVE LICENSE
# AND
# NONDISCLOSURE AGREEMENT

*TruetheVote.org*

This exclusive License and Nondisclosure Agreement ("Agreement") is entered into as of December 3, 2021, by and among TRUETHEVOTE.ORG ("TTV"), Salem Media Group, Inc. ("Salem") and D'Souza Media LLC ("D'Souza"), with reference to the following facts:

WHEREAS, TTV is the owner of highly confidential film footage containing evidence of voting irregularities that occurred during the 2020 U.S. Presidential election (the "TTV Film Footage");

WHEREAS, Salem and D'Souza have entered into an LLC Operating Agreement effective as of February 23, 2021 (the "Feature Film Agreement"), pursuant to which a feature documentary about the 2020 U.S. Presidential Election is being produced for distribution (the "Feature Film");

WHEREAS, in exchange for the compensation described herein, TTV desires to grant to Salem and D'Souza the right to include the TTV Film Footage in the Feature Film as set forth herein.

NOW, THEREFORE, in consideration of the amounts paid hereunder, the mutual promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

    **1.**    **Definitions.**  For purposes of this Agreement, the terms herein shall be defined as follows:

    (a)    *"Effective Date"* shall mean December 3, 2021;

    (b)    *"Intellectual Property"* shall mean all trademarks, trade names, copyrighted works, designs, logos, patents, images, likenesses, trade dress or other source identifying characteristics of a person, product or service provided by any party hereunder;

    (c)    *"Licensed Territory"* shall mean the world;

    (d)    *"Feature Film Proceeds"* shall mean all amounts actually received by Salem and D'Souza only, respectively, after all initial investments, capital contributions and returns are recouped by said parties pursuant to the Feature Film Agreement (and excluding amounts payable to any other person or entity as set forth in the Feature Film Agreement); and

(e)   *"Revenue"* shall mean all revenue calculated in accordance with generally accepted accounting principles pursuant to the Feature Film Agreement.

2.   **Grant of License to Salem and D'Souza.** TTV hereby grants to Salem, D'Souza, and their respective agents and affiliates made party to the Feature Film Agreement and associated with the Feature Film (collectively, the "Licensed Parties"), and the Licensed Parties hereby accept, the following rights; (a) an exclusive right and license in the Film Footage to incorporate the Film Footage within the Feature Film, and (b) a non-exclusive right to use the Film Footage in connection with the promotion of the Feature Film beginning on the effective date of this Agreement and continuing in perpetuity thereafter.

3.   **Term.**  The term of this Agreement shall commence on midnight, Central Time, on December 3, 2021, and shall expire at midnight, Central Daylight Time, seven days following the written notice from Salem or D'Souza to TTV that the Feature Film is no longer available for viewing anywhere in the United States (the "Term").

4.   **Revenue Share.**

(a)   *Feature Film Proceeds.* The parties hereby agree that TTV shall receive an amount equal to ten percent (10%) of the Feature Film Proceeds which shall be paid by Salem and D'Souza as follows: (1) 5% of the feature Film proceeds received by Salem under the Feature Film Agreement shall be paid to TTV, and (2) 5% of the Feature Film proceeds received by D'Souza under the Feature Film Agreement shall be paid to TTV.

(b)   *Statements.* Salem and D'Souza shall prepare monthly statements during the Term that shall list the Revenue, aggregate Feature Film Proceeds, and total amount payable to TTV hereunder for the immediately preceding month.

(c)   *Payments.* Amount to be paid to TTV herein shall be made in immediately available U.S. Funds on a monthly basis no later than forty-five (45) days following the end of each full or partial calendar month during the Term.

(d)   *Audit.* Not more often that once every twelve (12) months during the Term or the twelve (12) months thereafter, TTV may audit the books and records of Salem and D'Souza relating to Feature Film Proceeds. Such audit shall occur at the place where Salem and D'Souza, respectively, maintain such records during normal business hours on no less than two (2) weeks' prior written notice.

5.   **Confidentiality.** Except to the extent permitted by this Agreement herein, and continuing from the Effective Date of this Agreement until the date the feature Film is released by Salem, each party will keep the TTV Film Footage strictly confidential. Each party hereto agrees to be responsible for any breach of this Agreement by it or its representatives.

Confidential

DDR-00046932

      (a)    Until the Feature Film is released by Salem for public viewing, no party hereto shall disclose to any person or entity the contents of the TTV Film Footage.

      (b)    In the event that a party hereto or its representatives are required by interrogatories, requests for information or documents, subpoenas, civil investigative demand or similar process to disclose the TTV Film Footage or any other information the disclosure of which is restricted by the terms of this Agreement, the party required to make such disclosure shall provide the other parties with prompt prior written notice of such requirement so that such other parties may seek an appropriate protective order. If in the absence of a protective order, a party is nonetheless, in the written opinion of its counsel, required to disclose the TTV Film Footage, disclosure may be made only as to that portion of the TTV Film Footage that the party seeking to disclose is advised by counsel is legally required to be disclosed. The party required to make such disclosure will exercise best efforts to obtain assurance that confidential treatment will be accorded such TTV Film Footage; provided, however, that the foregoing shall not be construed to require party required to make such disclosure to incur expense or seek relief from a court.

      6.    **Intellectual Property Rights.** The use by any party hereunder of any Intellectual Property owned by another party hereunder shall inure to the benefit of the party owning such Intellectual Property. Each party hereto acknowledges the significant value of the goodwill and property rights associated with the Intellectual Property owned by the other parties hereto. Each party hereto represents and warrants that it will not: (a) challenge, cause or assist any other person or entity to contest the validity of the Intellectual Property; (b) use Intellectual Property owned by other parties hereto or any words or designs confusingly similar thereto, in any corporate name, trade name, or domain name; (c) apply for or register any copyright, trademark or any words or designs confusingly similar to any Intellectual Property not owned by such party, in connection with any corporate name, trade name or domain name; or (d) commit or permit the commission of any act that might prejudice or adversely affect the validity or ownership rights in and to the Intellectual Property owned by other parties hereunder.

      7.    **Indemnification.**

      (a) TTV agrees and acknowledges that it shall indemnify, defend and hold SCP, its parent corporation and affiliated entities, its shareholders, officers, directors, agents, employees, sponsors, successors and assigns harmless from and against any and all third party claims, debts, demands, obligations, costs and expenses arising out of or resulting from: (1) the making or enforcement by SCP of any right, privilege or option hereby granted to it, (2) any libel, slander, illegal competition or trade practice, violation of rights of privacy, infringement of copyrights (including without limitation mechanical or sync license rights) or other proprietary rights resulting from the Feature Film or included in any content provided in connection therewith, (3) any unauthorized act done by TTV or its representatives under this Agreement, or (4) the material breach of any representations, warranties or provisions of this Agreement, except to the extent that any such third party claims shall arise as a result of a breach by SCP of any of the covenants, conditions, representations or warranties made hereunder or as a result of the gross negligence or intentional acts of SCP. The expiration or termination of this Agreement

3

Confidential
DDR-00046933

shall not affect the continuing obligations of TTV as indemnitor. SCP shall notify TTV promptly of any litigation or claim to which any indemnity hereunder may apply.

(b) SCP shall defend, indemnify and hold TTV, its members, officers, agents, employees, heirs and executors harmless from and against any and all third party claims debts, demands, obligations, costs and expenses suffered or incurred arising out of or by reason of or resulting from SCP for services rendered hereunder or from the gross negligence or intentional acts of SCP, except to the extent that any such third party claims shall arise as a result of a breach by TTV of any of the covenants, conditions, representations or warranties made hereunder or as a result of the gross negligence or intentional acts of TTV. TTV shall notify SCP promptly of any litigation or claim to which any indemnity hereunder may apply.

8. **Breach; Cross Default.** No act or omission by any party hereunder shall constitute a default or breach of this Agreement unless the non-breaching party shall first notify the other party in writing setting forth the alleged breach or default and the breaching party fails to cure the same within ten (10) days after receipt of such notice.

9. **Remedy for Breach.**

(a) The parties hereto recognize that the services to be rendered hereunder and the rights and licenses granted hereunder are of a special, unique, unusual, extraordinary and intellectual character, are of an artistic and professional nature, require skill of the highest order, and further are of peculiar value, the loss of which cannot be adequately compensated for in damages; thus, in the event of a material breach or the threat to commit a material breach by any party hereto, the non-breaching parties shall be entitled, as a matter of right, without further notice, in addition to any other remedies they may have, to seek judicial relief by way of injunction, as well as monetary relief to compensate the non-breaching parties for, lost revenue, lost profit, lost earnings and any other damages resulting from such breach.

(b) All remedies provided in this Agreement shall be deemed cumulative and the exercise of one shall not preclude the exercise of any other remedy for the same event or any other event; nor shall the specification of remedies herein exclude any rights or remedies at law or in equity. The delay or failure of one party to assert or exercise any right, remedy, or privilege hereunder, with actual or constructive notice or knowledge of the breach of any representation, warranty, or provisions herein, shall not constitute a waiver of any such right, remedy, privilege or breach. No waiver in any event shall be effective unless such waiver is in writing, and then it shall be applicable only in the specific instance for which such waiver was given.

10. **Independent Contractor.** The parties hereto acknowledge and agree that in performing the services hereunder, each party is acting as an independent contractor of the others. Nothing contained herein or otherwise shall be construed in such manner as to create the relationship of principal and agent or the relationship of employer/employee between any parties hereto. No party will have the authority to enter into agreements of any kind on behalf of the other or otherwise bind or obligate the other in any manner to any third party.

4

Confidential
DDR-00046934

11. **Notices.**

(a) Except as otherwise expressly stated, all notices, consents and approvals required or permitted to be given under this Agreement shall be in writing and shall be deemed given when personally delivered or three (3) days after having been mailed by certified mail, postage prepaid, return receipt requested, addressed, or the following day if delivered by Federal Express or another nationally recognized overnight courier as follows:

| | |
|---|---|
| If to Salem: | Salem Media Group, Inc.<br>4880 Santa Rosa Road<br>Camarillo, CA 93012<br>Attn: Christopher J. Henderson, General Counsel |
| If to D'Souza: | D'Souza Media LLC<br>6700 Woodlands Pkwy Ste 230 - #309<br>The Woodlands, TX 77382<br>Attn: Dinesh J. D'Souza, President/CEO |
| If to TTV: | TruetheVote.org<br>PO Box 3109 Houston TX 77253<br><br>Attn: Catherine Engelbrecht |

(b) Any party may change its said address for mailed notices, consents, or approvals by written notice to the other parties in accordance with the provisions of this Section 11. Notice by telegram or mail in accordance with the provisions of this Section 11 shall be deemed to have been given at the time of dispatch.

12. **Assignment.** The parties acknowledge that this Agreement shall not be assigned by either party hereto without the express prior written consent of the other party.

13. **Venue; Choice of Law.** Regardless of where it is signed, this Agreement shall be deemed to be an agreement made in Irving, Texas ("Venue") and shall be interpreted as an agreement to be performed wholly in the State of Texas. The laws of the State of Texas shall be applied to this Agreement without regard to the principles of conflicts of laws.

14. **Resolving Disputes.** The parties hereto mutually agree to resolve any and all legal claims arising from or in any way or relating to this Agreement through mediation or, if mediation does not resolve the claim or dispute within ten (10) days of notice demanding mediation, by binding arbitration under the Federal Arbitration Act subject to the terms and conditions provided below. Arbitration shall be conducted in the Venue in accordance with: (a) the rules of procedure issued by the American Arbitration Association; or (b) the rules of procedure issued by another alternative dispute resolution service mutually acceptable to all parties. The party or parties breaching this Agreement shall be jointly and severally responsible for payment to the non-breaching party or

5

parties of all of the costs and expenses, including attorneys' fees, incurred by the non-breaching party or parties in enforcing the terms of this Agreement. Any award issued in accordance with this Section 14 shall be rendered as a judgment in any trial court having competent jurisdiction. All other rights, remedies, exhaustion requirements, statutes of limitation and defenses applicable to claims asserted in a court of law will apply in the arbitration. Notwithstanding the provisions of this Section 14, the parties hereto shall possess and retain the unrestricted and unqualified right to seek and obtain equitable and/or injunctive relief in a court of competent jurisdiction, without posting bond or other security, to enforce the provisions of this Agreement.

15. **Cooperation.** The parties hereto agree, without additional compensation, to cooperate with and provide assistance to each other and to their respective legal counsel in connection with any litigation (including arbitration or administrative hearings) or investigation affecting either party, in which, in the reasonable judgment of a party's counsel, the other party's assistance or cooperation is needed. A requested party shall provide testimony or other assistance and shall travel at the requesting party's request in order to fulfill this obligation; provided, the requesting party shall reimburse the requested party for the reasonable costs of such travel.

16. **Force Majeure.** Except where expressly prohibited by applicable laws (if any apply), if the regular operations of a party are suspended because of an act of God, inevitable accident, fire, pandemic, lockout, strike or other labor dispute, riot or other civil commotion, act of public enemy, enactment, rule, order or act of any government or governmental instrumentality (federal, state or local), failure of Internet facilities, failure or delay of transportation facilities, or other cause of a similar or different nature not reasonably within that party's control, and if any such suspension period shall exceed three (3) consecutive weeks, the remaining parties may, by written notice, terminate this Agreement with no further liability hereunder. No such suspension shall operate to extend the Term.

17. **Representations and Warranties; Miscellaneous.**

(a) The parties hereto represent and warrant that: (1) they have the full right and power to enter into and perform this Agreement in accordance with its terms; and (2) they are under no obligation whatsoever which will or might prevent from fully performing the obligations under this Agreement.

(b) This Agreement and any documents referred to herein or executed contemporaneously herewith constitute the parties' entire agreement with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements, promises and understandings, whether oral or written, with respect to the subject matter hereof. This Agreement may not be amended, altered or modified except by a writing signed by the parties.

(c) This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors and, subject to the provisions of this Agreement in Section 12 relating to assignments, their assigns.

6

Confidential
DDR-00046936

    (d) Any provisions of this Agreement which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise render ineffective the remaining provisions of this Agreement.

    (e) The delay or failure of any party to assert or exercise any right, remedy or privilege hereunder, with actual or constructive notice or knowledge of the breach of any representation, warranty or provision herein, shall not constitute a waiver of any such rights, remedy, privilege or breach provided such action is within a reasonable period of time. No waiver shall in any event be effective unless in writing, and then it shall be applicable only in the specific instance for which given.

    (f) Except as provided to the contrary herein with regard to SCP, none of the provisions of this Agreement will be for the benefit of, or enforceable by, any third-party beneficiary.

    IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date first written above.

**"Salem"**

**SALEM MEDIA GROUP, INC.**

By: *[signature]*
Name: David P. Santrella
Title: President - Broadcast Media

**"D'Souza"**

**D'Souza Media LLC**

By: *Dinesh D'Souza*
Name: Dinesh DSouza
Title: Manager

**"TTV"**

**TruetheVote.org**

By: *[signature]*
Name: Catherine Engelbrecht
Title: President

7

Confidential
DDR-00046937