IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MARK ANDREWS**,<br><br>Plaintiff,<br><br>v.<br><br>**DINESH D'SOUZA**, *et al.*,<br><br>Defendants. | Case No. 1:22-cv-04259-SDG |

**DEFENDANTS TRUE THE VOTE, INC., CATHERINE ENGELBRECHT, AND GREGG PHILLIPS' RESPONSES TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56, Defendants True the Vote, Inc. ("TTV"), Catherine Engelbrecht ("Engelbrecht"), and Gregg Phillips ("Phillips") (together, "TTV Defendants"), hereby respond to Plaintiff's Statement of Additional Material Facts (Doc. 294-1).

1. In the Film, Engelbrecht explains how the team came up with the term "mules": "When we started the project, we had to figure out: How are we going to describe the individuals and the elements involved. And to us it felt a lot like a cartel, it felt a lot like trafficking. It could be trafficking in drugs. Trafficking in humans. In this instance it's ballot trafficking. So, we began to use that vernacular. A mule is, by our definition, a person that is involved in picking up ballots from locations and running them to the drop boxes. So, you have the collectors on the

1

one hand. You have the stash houses, which are the non-profits. And then you have the mules that are doing the drops." Pl. MSJ Ex. 2 at 26:36.

**TTV Defendants' Response**:

TTV Defendants admit that Engelbrecht stated the cited quotation in the Film. However, the interview TTV Defendants participated in, which D'Souza Defendants selected portions of for the Film, was filmed months before TTV Defendants obtained the Gwinnett County video surveillance footage which included the footage of Plaintiff. Declaration of Catherine Engelbrecht, Doc. No. 302-7 ("Engelbrecht Decl."), ¶¶ 20, 23, 60; Declaration of Gregg Phillips, Doc. 302-12 ("Phillips Decl."), ¶¶ 32, 39. Additionally, the cited quotation provides a definition of the definition of a "mule" for the Film, but there is no one general definition of what a "mule" is. Deposition of Dinesh D'Souza, Doc. 302-9 ("Dinesh D'Souza Dep.") at 36:6-13 ("A mule is a delivery man or delivery woman. A mule is someone who is a conduit for depositing ballots, typically multiple ballots . . . into a mail-in drop box."); Doc. 302-5, Deposition of Catherine Engelbrecht ("Engelbrecht Dep.") at 288:13-289:4 (discussing the distinction between a "small m" mule versus a "large M" Mule, and that even non-geotracked videos were still reflective of "things that ran afoul of the law"); Doc. No. 302-12 (Phillips Decl.), ¶ 27; Doc. 302-7 (Engelbrecht Decl.), ¶ 16.

2. Defendants communicated, including in private exchanges to each other and in public statements, that including the surveillance video in the Film and

in promotional materials was indispensable to convincing audiences of the ballot trafficking "mules" narrative. Pl. MSJ Ex. 47 at 41:00 ("I think the movie is going to move the needle and it's gonna force some hands here because … if they don't like the geolocation work or if they don't like the video, you really can't dismiss both, it's immutable, right? I mean that person was there and they were voting multiple ballots, what are you going to do?"); Pl. MSJ Ex. 14 at 64:3-25, 67:2-8, 88:7-8 (calling the surveillance videos the "key visual features of the film"); Pl. Resp. Ex. 233 ("I would like to have tons of videos for the website. So not all for the movie. But we do want to overwhelm people with evidence so video upon video until they literally yell, 'Stop! We've seen enough'"); Pl. Resp. Ex. 234; Pl. Resp. Ex. 235; Pl. MSJ Ex. 55 at DD_000079-81 (Texts from D'Souza to Phillips and Engelbrecht asking for video proof including: "If you have the geotracking and the boxes had surveillance, where's the video?", "This is what we need to show. Just to shut these guys up.", "Even if it's indistinct it might be worth showing just to say: Here you go." and after Phillips shares a video, D'Souza replies, "I don't see anything on this video. Am I missing something?").

**TTV Defendants' Response**:

TTV Defendants object to Statement 2 insofar as it conflates all "Defendants," and TTV Defendants are not responsible for the statements of other parties. TTV Defendants admit that each the quoted statements above are quoted accurately. TTV

Defendants admit that Dinesh D'Souza appears to have thought it was desirable to have surveillance video in the Film. TTV Defendants are not filmmakers, and therefore do not know whether having such surveillance video was "indispensable to convincing audiences of the ballot trafficking 'mules' narrative." Phillips Decl. (ECF No. 302-12), ¶ 45; Engelbrecht Decl. (ECF No. 302-7), ¶ 43.

3.     Defendants communicated their belief that dropboxes should be monitored, including by civilians. Pl. MSJ Ex. 162 (A post on X by @DineshDSouza stating, "We need 24/7 surveillance on all mail-in ballot dropboxes.  This is already stipulated in the election rules.  If states don't do this, citizens might have to take matters into their own hands #2000Mules." The post includes an image of an individual in a hat and sunglasses "disguise" pretending to read an upside-down newspaper, captioned "Just hanging out nonchalantly at my local dropbox."); Pl. Resp. Ex. 236 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; Pl. Resp. Ex. 237; Pl. Resp. Ex. 238; Pl. Resp. Ex. 239.

**TTV Defendants' Response**:

Statement 3 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants object to Statement 3 insofar as it conflates all "Defendants," and TTV Defendants are not responsible for the statements of other

4

parties. TTV Defendants admit that the quotations in Statement 3 are quoted correctly, and admit that they believe voting dropboxes should be monitored. TTV has an election integrity hotline where citizens can report potential election irregularities. Doc. 294-10 (Pl. Resp. Ex. 238), at TTV_009268.

4.     One goal of Defendants was the banning of dropboxes. Pl. Resp. Ex. 238 (a TTV memo to supporters under the header "2000 Mules" states, "True the Vote testified before legislatures in Georgia, Arizona, Wisconsin, and Pennsylvania to advise on legislative reforms to election laws, including reductions or eradications of ballot dropboxes"); Pl. Resp. Ex. 240 (Text from D'Souza stating, "Why the Wisconsin Supreme Court's decision to outlaw mail-in drop boxes can be termed the '2000 Mules effect.'"); Pl. Resp. Ex. 241 (Phillips writes to Engelbrecht, D'Souza and Debbie D'Souza: "Honestly, banning these boxes is one of the top four or five outcomes we can have from our work"); Pl. MSJ Ex. 80 (email exchange with D'Souza, Engelbrecht, and an Arizona politician about Defendants' "video evidence of ballot trafficking/harvesting/stuffing occurring IN Arizona" for a ballot drop box prohibition bill).

**TTV Defendants' Response**:

Statement 4 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants object to Statement 4 insofar as it conflates all "Defendants," and TTV Defendants are not responsible for the statements of other

parties. TTV Defendants admit that they advised on several legislative reforms to election laws, "including reductions or eradications of ballot dropboxes." Doc. 294-10 (Pl. Resp. Ex. 238), at TTV_009266.

5.   One goal of Defendants was to lead to the arrest and indictments of alleged "mules." Pl. MSJ Ex. 97 at 35:01 (Kirk: "We got the video of the 'murder,' right?" Engelbrecht: "Ya." Kirk: "That's a crime." Phillips: "Right." Kirk: "You can't do that unless you are an assistor, right, which you say there were none–" Engelbrecht: "Which there were none." Kirk: "--for that particular area or county. Then why is that person not yet been indicted?  This is the question that you guys are going to get a lot, by the way." Phillips: "Well, we certainly hope that that will happen."); Pl. MSJ Ex. 47 at 38:48-41:16 (After discussing efforts to get law enforcement to take action against the alleged "mules," Phillips states "I think the movie is going to move the needle, and it's going to force some hands here, because not only is it – you know they can't really dismiss the – if they don't like the geolocation work or if they don't like the video, you really can't dismiss both."); Pl. MSJ Ex. 135 at 94 (calling for "law enforcement to arrest the mules and get them to talk"); Pl. MSJ Ex. 135 at 88 ("You indict five of these guys, light them up to the sun, and then they start to sing."); Pl. Resp. Ex. 242 (Email from Engelbrecht: "we have partnered with Sheriffs associations to work investigations at the local level").

**TTV Defendants' Response**:

Statement 5 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants object to Statement 5 insofar as it conflates all "Defendants," and TTV Defendants are not responsible for the statements of other parties.

TTV Defendants admit that if individuals broke the law then they should be indicted. TTV Defendants did not believe the individual they later learned to be Mark Andrews was a "mule" according to the definition in the Film. Doc. No. 279-26 (DDR-00049511 (TTV Ex. X) (Phillips telling Dinesh D'Souza "[i]n addition, this isn't a mule, didn't meet the threshold," and D'Souza responding: "All good points. I will take them on the podcast."); Doc. 304-8 (MA_000817, TTV Defs.' Ex. 58); Doc. 303-4 (TTV_008975, TTV Defs.' Ex. 29) ("We did not track Mr. Andrews going to more than 10 dropboxes. He's not among the 242 individual devices identified that did go to 10+ ballot dropboxes in metro-Atlanta, GA."); Doc. No. 302-9 (Dinesh D'Souza Dep.) at 274:18-23 (admitting that in DDR-00049511, Phillips was saying Plaintiff was not a mule); Doc. No. 302-7 (Engelbrecht Decl.), ¶ 121; Doc. No. 302-12 (Phillips Decl.), ¶ 119.

TTV Defendants also reasonably believed that Georgia law required that for individuals not depositing their own ballots, there needed to be the signature of an assistor. Doc. 303-6 (TTV Defs.' Ex. 31, TTV_010031-33) ("surveillance footage

shows numerous instances in which individuals deposited multiple ballots at a time – a practice which is prohibited under Georgia law except under very limited circumstances."); Doc. 303-4 (TTV Defs.' Ex. 29, TTV_008975) ("It's important to note that Mark Andrews (unnamed and unrecognizable) was shown as one of the many Georgians who voted multiple ballots without properly signing as an "assistor", in the section of the movie that discussed Dropbox abuse in one isolated dropbox in Gwinnett County, GA."); Doc. 303-7 (TTV Defs.' Ex. 32, TTV_009376-9390), at TTV_009377 ("Through an Open Records Request . . . we sought confirmation as to whether these individuals were authorized assistors who had signed ballot envelopes confirming by oath they were legally authorized to assist in the casting ballots other than their own. Gwinnett County responded to our request and stated that they had no record of any envelopes bearing assistor signatures. Therefore, none of the individuals could have legally cast more than one ballot."); Doc. 302-7 (Phillips Dep.) at 111:8-19, 112:17-22, 123:9-18, 242:8-15; Doc. 302-5 (Engelbrecht Dep.) at 111:11-112:20, 114:5-115:3, 288:13-289:1 (testifying Engelbrecht's understanding of the law was that depositing more than your own ballot was illegal without signing as an assistor, and there were no assistor signatures); Doc. 303-8 (TTV Defs.' Ex. 33, MA-0000933), at 25:40 (Engelbrecht stating "There is a possible [exception] in that he could have been an assistor. . ."); Doc. No. 302-7 (Engelbrecht Decl.), ¶ 38; Doc. No. 302-12 (Phillips Decl.), ¶ 41.

Among other things, TTV retained an attorney to assist with drafting, reviewing, and providing feedback on complaints that were drafted before they were sent to the Georgia Secretary of State. Doc. No. 302-7 (Engelbrecht Decl.), ¶¶ 33, 36; Doc. 302-5 (Engelbrecht Dep.) at 121:3-122:25.

6. During an interview on The Gateway Pundit (TGP), which showed an unblurred video of Plaintiff voting, after one of the TGP hosts tells a story about people who confronted a "mule" in Michigan, Phillips states, "If these drop boxes are gonna be in place, America, Americans and patriots have to get eyes on these drop boxes. The people who confronted that guy are legit heroes." Pl. MSJ Ex. 47 at 49:49.

**TTV Defendants' Response**:

Statement 6 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit Statement 6, but state that they had no editorial control over what was shown on the Gateway Pundit program. Doc. No. 302-7 (Engelbrecht Decl.), ¶ 93; Doc. No. 302-12 (Phillips Decl.), ¶ 87.

7. The alleged geolocation project described in the Film and related statements was exclusively limited to battleground states that Joe Biden won during the 2020 Presidential Election (Arizona, Georgia, Michigan, Pennsylvania, and Wisconsin). It did not include any analysis of the battleground states won by Donald Trump in 2020, like Florida. Pl. MSJ Ex. 2; Pl. MSJ Ex. 18 at 47:8-20; Pl. MSJ Ex.

9

97 at 36:30, 42:41; PL MSJ Ex. 135 at 53 ("Let's look at the vote margins in five states. Michigan: 154,000 votes. Pennsylvania: 80,000 votes. Wisconsin: 20,000 votes. Georgia: 12,000 votes. Arizona: 10,000 votes. Biden won all these states. Yet if he had lost them, he would have lost the election. To flip these states is to flip the Electoral College, and to flip the Electoral College is to flip the country. The factual question True the Vote set out to investigate is: Did Biden really win them?").

**TTV Defendants' Response**:

Statement 7 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit that the geolocation project described in the Film focused on the 2020 Presidential Election battleground states. TTV Defendants note that in Florida, President Trump won by over 370,000 votes, meaning the state was not as competitive as the other states described above. *See, e.g.*, https://www.cnn.com/election/2020/results/president.

8. Within these battleground states won by Joe Biden in 2020, the alleged geolocation project described in the Film and related statements focused mainly on "key urban areas " that consistently vote heavily in favor of Democratic candidates, such as the Atlanta metro in Georgia. Pl. MSJ Ex. 2 at 01:28:21 ("Do we know who those ballots were for? We can't know who they were for. However, you have to inject common sense. Are we saying that in the centers of Democrat-held districts

we are seeing hundreds and hundreds of visits to drop boxes with pro-Trump ballots? It beggars belief."); Pl. MSJ Ex. 135 at 55-56, 86 ("If you look at the tradition of these cities, what do we know about them for fifty, sixty, seventy years? They are centers of left-wing voter fraud."); PL MSJ Ex. 18 at 46:13-47:8.

**TTV Defendants' Response**:

Statement 8 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit that the geolocation project described in the Film focused on areas where there were more people (urban areas) and where there was believed to be pervasive election fraud, which included several urban areas.

9. D'Souza Defendants generally coordinated with the Kari Lake campaign, and tried to coordinate with Republican candidates in other states as well, in regards to the Film. Pl. Resp. Ex. 243 (text from Debbie D'Souza to Engelbrecht: "The good news is we are working with Purdue campaign for the Georgia theaters. I have a good friend that works with Purdue and is heading it up. We are also doing the same in Arizona with Kari Lake campaign. We don't, however, have contacts like that in the other 3 key states. If you do, let us know." Engelbrecht: "Are you looking for campaigns primarily or just influencers?" Debbie: "Campaigns are good because they know how to galvanize the people."); Pl. Resp. Ex. 244 (email from a vendor to Bruce Schooley discussing rush shipping of a DVD of the Film to Kari

11

Lake for her campaign event on 4/25/2022); Pl. Resp. Ex. 245 (discussing needing to communicate policies on fundraising at theaters to "the Purdue campaign and Kari Lake/Lace"); PL Resp. Ex. 246 ("Kari Lake has a great ad which uses some of the footage from trailer and I'm seeing the security footage everywhere it seems").

**TTV Defendants' Response**:

Statement 9 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants state that term "coordinate" is vague and ambiguous. TTV Defendants admit D'Souza Defendants had discussions with campaigns in regards to the Film.

10. D'Souza Defendants communicated regarding the Film with the David Perdue campaign, for Perdue's Senate candidacy in Georgia, going so far as to try to add an additional movie theater serving an "imperative geographic electorate" to their theater screening list upon a request from David Perdue's contact person. Pl. Resp. Ex. 247; Pl. Resp. Ex. 248; Pl. Resp. Ex. 249; Pl. Resp. Ex. 250; Pl. Resp. Ex. 251; Pl. Resp. Ex. 243; Pl. Resp. Ex. 252.

**TTV Defendants' Response**:

Statement 10 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit Statement 10.

11. In the License Agreement, ███████████████████

██████████████████████████████

Pl. MSJ Ex. 20.

**TTV Defendants' Response**:

TTV Defendants admit Statement 11.

12. On May 2, 2022, Debbie D'Souza emails publicist Patricia Jackson regarding a promotional appearance, ██████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

Pl. Resp. Ex. 253.

**TTV Defendants' Response**:

Statement 12 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit Statement 12.

13. On January 30, 2023, TTV issued a statement on their website about a group that implemented "patriot" dropbox monitoring during the 2022 elections. TTV stated, "The stunning lack of ballot security and overt abuse was proven through True the Vote's research and went on to be featured in the movie '2000 Mules.' Citizens wanted to help, but didn't know where to begin. Then one concerned patriot, Melody Jennings, wrote a social media post suggesting that

Americans could have ballot drop box watch parties in their own communities. Her idea caught on … fast." TTV also said in the statement, "Last Friday, we had a conference hearing in Arizona Supreme Court to begin litigation on the merits of the case. 'We' means Melody and True the Vote, as we have backed Melody's fight since it first began. Our legal team is fully engaged in this case, defending every American's First Amendment right to peaceably assemble. True the Vote is proud to support Melody and the movement known as "Clean Elections USA" in this critical fight for freedom." Pl. Resp. Ex. 254.

**TTV Defendants' Response**:

Statement 13 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit Statement 13.

14. On February 23, 2025, Dinesh D'Souza wrote on the social media site "X," in a post that garnered 136.8K views in less than 24 hours: "Who would pay Stacey Abrams $2 billion for climate change? No one. But was the money really for that? Or was it a payoff for helping to rig the 2020 election? DOGE and @elonmusk exposed the money trail, and "2000 Mules" busted the election fraud. Attn @PamBondi". The tag "@PamBondi" is to the X account of the current U.S. Attorney General. @DineshDSouza, X, (Feb. 23, 2025, 1:59 PM), https://x.com/DineshDSouza/status/1893737536494637179.

**TTV Defendants' Response**:

Statement 14 is not material to Plaintiff's or TTV Defendants' motions for summary judgment. TTV Defendants admit Statement 14.

15. On May 6, 2022, D'Souza posted the Tucker Carlson Tonight interview, which features unblurred footage of Plaintiff voting, on the Dinesh D'Souza Rumble. Pl. MSJ Ex. 132. As of the date of this filing, Rumble shows that there have been about 778,000 views on the D'Souza post of the Tucker Carlson Tonight interview (https://rumble.com/v13qlbn-catherine-engelbrecht-joins-tucker-to-discuss-the-groundbreaking-technology.html?mref=hsiwx&mrefc=3).

**TTV Defendants' Response**:

TTV Defendants admit that Dinesh D'Souza appears to have posted the Tucker Carlson Tonight interview on the Dinesh D'Souza Rumble. TTV Defendants dispute Statement 15's characterization of the clip "featur[ing] unblurred footage of Plaintiff voting," especially because Plaintiff's clip was one of ten shown during the segment, and the footage including Plaintiff in the interview is displayed in a small, pixelated box. Doc. No. 304-3 (TTV Defs.' Ex. 53, MA-0001018). TTV Defendants are unable to respond to the remainder of Statement 15 because the link Plaintiff provides displays an error; the website says "[v]ideo is not found." https://rumble.com/v13qlbn-catherine-engelbrecht-joins-tucker-to-discuss-the-groundbreaking-technology.html?mref=hsiwx&mrefc=3.

15

16. Courtni Andrews recognized her father immediately when viewing both blurred and unblurred clips from the Film from the way he "walks, his posture, that car we've had since I was a kid. As soon as I saw that, I was like, oh, that's my dad." Pl. MSJ Ex. 43, Decl. of Courtni Andrews at 13-14.

**TTV Defendants' Response**:

TTV Defendants admit that Courtni Andrews stated as such, but also stated that "[f]from what I remember, probably my mom told me about it." Doc. No. 252-18 (Pl. MSJ Ex. 43, Decl. of Courtni Andrews) at ¶ 12.

17. Brendetta Andrews stated that her husband's truck as shown in the Film was identifiable in part because of college bumper stickers and a Michelle Obama sticker made the "truck distinctive. And the truck's -- the truck's in the movie, it's in the trailer, it's everywhere." Pl. MSJ Ex. 44 at 58:2-5.

**TTV Defendants' Response**:

TTV Defendants admit that Brendetta Andrews testified as cited above, but also testified that she took the stickers off the truck, which is what she claims made the truck distinctive. Doc. No. 2521-19 (Pl. MSJ Ex. 44) at 57:22-58:14.

18. David Cross submitted his Georgia State Election Board complaint relating to Plaintiff as a direct result of viewing Englebrecht's and Phillips' April 9, 2022 appearance on the Charlie Kirk Show, where they played an unblurred clip of Plaintiff voting. D'Souza MSJ Ex. 39, Decl. of David Cross at 18-22.

16

**TTV Defendants' Response**:

TTV Defendants object to paragraph 18 of the Declaration of David Cross because it is only based on his "understanding," which is insufficient under Rule 56. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . ."); *Wyant v. Burlington N. Santa Fe R.R.*, 210 F. Supp. 2d 1263, 1273 (N.D. Ala. 2002) ("Even if the affidavit is otherwise based upon personal knowledge . . . , a statement that the affiant believes something is not in accordance with the Rule."); *Cermetek Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) (equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

TTV Defendants dispute Statement 18's characterization that "they played an unblurred clip of Plaintiff voting"—rather, *The Charlie Kirk Show* showed videos to Phillip sand Engelbrecht on a personal laptop computer, from publicly available Gwinnett County ballot dropbox video. Doc. 303-8 (TTV Defs.' Ex. 33, MA-0000933), at 25:03; Doc. 302-7 (Phillips Dep.) at 87:18-22; Doc. No. 302-7 (Engelbrecht Decl.), ¶ 71; Doc. No. 302-12 (Phillips Decl.), ¶ 74.

Neither Engelbrecht nor Phillips had any editorial control over *The Charlie Kirk Show* program. Doc. 302-7 (Phillips Dep.) at 115:19-22, 131:16-21, 133:2-6; Doc. 302-5 (Engelbrecht Dep.) at 301:5-21, 303:2-25, 308:4-14; Phillips Dep. at

87:18-22; Doc. No. 302-7 (Engelbrecht Decl.), ¶ 75; Doc. No. 302-12 (Phillips Decl.), ¶ 78. TTV Defendants admit that David Cross states that he continued in his own investigation after seeing the Charlie Kirk interview.

Filed this 28th day of March, 2025.

/s/ Jake Evans
JAKE EVANS
Georgia Bar No. 797018
PHILIP J. GEORGE
Georgia Bar No. 441996
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
P: (678) 553-2100
F: (678) 553-2212
Jake.Evans@gtlaw.com
Philip.George@gtlaw.com

*Attorneys for Defendants True the Vote, Inc., Catherine Englebrecht and Gregg Phillips*

## **CERTIFICATE OF COMPLIANCE WITH L.R. 5.1**

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1.

*/s/ Jake Evans*
JAKE EVANS
Georgia Bar No. 797018

*Attorney for Defendants True The Vote, Inc., Catherine Engelbrecht, and Gregg Phillips*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within and foregoing **Defendants True the Vote, Inc., Catherine Engelbrecht, and Gregg Phillips' Responses to Plaintiff's Statement of Additional Material Facts** was electronically filed on the Court's ECF filing system, which will automatically serve a copy on all counsel of record.

This 28th day of March, 2025.

                                        **GREENBERG TRAURIG, LLP**

                                        */s/ Jake Evans*
                                        JAKE EVANS
                                        Georgia Bar No. 797018

                                        *Attorney for Defendants True The Vote, Inc., Catherine Engelbrecht, and Gregg Phillips*