# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **MARK ANDREWS,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**DINESH D'SOUZA, *et al.*,**<br><br>　　　Defendants. | Case No. 1:22-cv-04259-SDG |

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR <u>PARTIAL SUMMARY JUDGMENT AS TO TTV DEFENDANTS</u>

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ............................................................................................2

1.    TTV Defendants are Liable for all the Defamatory Statements......................2

2.    Defendants' Statements were "Of and Concerning" Plaintiff.........................7

3.    Negligence is the Appropriate Standard of Fault and TTV Defendants' Conduct Meets that Standard..........................................................10

    (a)    The Statements are Not Privileged Under Georgia Law....................11

        (i)    Plaintiff is Not a Limited Purpose Public Figure......................11

        (ii)    The Statements are Not Conditionally Privileged Because They Deal with Election Integrity .............................................13

    (b)    The Undisputed Facts Show TTV Defendants Acted with Both Negligence and Actual Malice ............................................................16

    (c)    TTV Defendants' Assistor Signature Argument is a Red Herring..................................................................................................18

CONCLUSION .....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Atlanta Journal Co. v. Doyal*,
    60 S.E.2d 802 (Ga. Ct. App. 1950).....................................................................3

*Atlanta Journal-Constitution v. Jewell*,
    555 S.E.2d 175 (Ga. Ct. App. 2002).........................................................11, 12

*Berisha v. Lawson*,
    973 F.3d 1304 (11th Cir. 2020).................................................................12

*Chaney v. Harrison & Lynam, LLC*,
    708 S.E.2d 672 (Ga. Ct. App. 2011).......................................................15, 16

*Choice Hotels International, Inc. v. Ocmulgee Fields, Inc.*,
    474 S.E.2d 56 (Ga. Ct. App. 1996)................................................................15

*Davis v. Macon Telegraph Publishing Co.*,
    92 S.E.2d 619 (Ga. Ct. App. 1956)................................................................10

*Five for Entertainment S.A. v. Rodriguez*,
    No. 11-cv-24142, 2013 WL 4433420 (S.D. Fla. Aug. 15, 2013) .................13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..............................................................................11

*Howe v. Bradstreet Co.*,
    69 S.E. 1082 (Ga. 1911) ................................................................................3

*Krass v. Obstacle Racing Medica, LLC*,
    667 F. Supp. 3d 1177 (N.D. Ga. 2023) .........................................................12

*Matthews v. Mills*,
    850 S.E.2d 424 (Ga. Ct. App. 2020)..............................................................5

*Matthis v. Cannon*,
    573 S.E.2d 376 (Ga. 2002) ..........................................................................12

*Mullinax v. Miller*,
    531 S.E.2d 390 (Ga. Ct. App. 2000)..........................................................5, 6

*North Atlanta Golf Operations, LLC v. Ward*,
    860 S.E.2d 814 (Ga. Ct. App. 2022)................................................................15

*Sewell v. Trib Publications, Inc.*,
    622 S.E.2d 919 (Ga. Ct. App. 2005)................................................................12

*Sheftall v. Central of Georgia Ry. Co.*,
    51 S.E. 646 (Ga. 1905) ...................................................................................13

*Smith v. DiFrancesco*,
    802 S.E.2d 69 (Ga. Ct. App. 2017)............................................................13, 14

*Smith v. Stewart*,
    660 S.E.2d 822 (Ga. Ct. App. 2008)............................................................9, 10

*Southern Business Machines v. Norwest Financial Leasing, Inc.*,
    390 S.E.2d 402 (Ga. Ct. App 1990).................................................................15

*Straw v. Chase Revel, Inc.*,
    813 F.2d 356 (11th Cir. 1987).........................................................................17

*Tanisha Systems, Inc. v. Chandra*,
    No. 1:15-CV-2644-AT, 2015 WL 10550967 (N.D. Ga. Dec. 4, 2015)............3

*Triangle Publications, Inc. v. Chumley*,
    317 S.E.2d 534 (Ga. 1984) .............................................................................17

*Tyler v. Thompson*,
    707 S.E.2d 137 (Ga. Ct. App. 2011)..................................................................3

*Wolf v. Ramsey*,
    253 F. Supp. 2d 1323 (N.D. Ga. 2003).........................................................5, 12

**STATUTES**

O.C.G.A. § 51-5-7(4).........................................................................................5, 12

## PRELIMINARY STATEMENT

TTV Defendants are the original source of the now widely-discredited 2000 Mules[1] narrative, and yet, incredibly, they now seek to disclaim all responsibility for any of the false and defamatory statements portraying Plaintiff as a ballot mule engaged in criminal activity—even statements that they themselves made using their own words.

TTV Defendants do not dispute that the defamatory statements at issue here were false, or that TTV Defendants published certain of the statements, or that Plaintiff was harmed.[2]  Rather, they argue that they cannot be held liable because: (1) for most (but not all) of the statements, they purportedly lacked "editorial control" over them; (2) the statements were not sufficiently "of and concerning" Plaintiff; and (3) the actual malice standard of fault applies and has not been met.

The undisputed facts, however, establish that TTV Defendants knew the statements concerning Plaintiff were false when made and they nevertheless continued to peddle their false narrative. Though the two remaining sets of

---

[1]    Defined terms are given the same definition provided in Plaintiff's Motion unless otherwise indicated.

[2]    *See* Defendants True The Vote, Inc., Catherine Engelbrecht, And Gregg Phillips' Response To Plaintiff's Statement Of Undisputed Material Facts ("TTV SMF Resp."), ECF 302-2 ¶¶ 71 (TTV admits Phillips text about Plaintiff saying: "this isn't a mule"), 14, 32, 33, 95, 106, 116 (admitting that TTV reposted or made certain defamatory statements), 144-151 (admitting that Plaintiff has suffered damages).

Defendants have now turned on each other in an attempt to escape liability, discovery has also revealed that TTV Defendants acted in concert with D'Souza Defendants in making the statements at issue such that they are joint and severally liable for all the statements.

For the reasons set forth below and in Plaintiff's opening brief, all of TTV Defendants' arguments fail as a matter of law on the undisputed facts, and Plaintiff is entitled to partial summary judgment against TTV Defendants for liability on his defamation claims.

## ARGUMENT

### 1.    TTV Defendants are Liable for all the Defamatory Statements

TTV Defendants do not dispute that they themselves published at least some of the defamatory statements. *See* Defendants True The Vote, Inc., Catherine Engelbrecht, And Gregg Phillips's Response In Opposition To Plaintiff's Motion For Partial Summary Judgment ("Opp."), ECF 302 at 1 ("TTV Defendants did not publish *almost* all the statements" (emphasis added).). Consequently, Plaintiff has met his burden on summary judgment to show that TTV Defendants published some of the statements.

For the remainder of the defamatory statements, TTV Defendants' argument that, they either "had nothing whatsoever to do" with the publication or had no

"editorial control" over the other statements, and thus they cannot be held liable, Opp. at 5, 10, is not supported by Georgia law.

First, Georgia law is clear that joint and several liability turns on joint publication or conspiracy, not "editorial control." *See Howe v. Bradstreet Co.*, 69 S.E. 1082, 1082 (Ga. 1911); *Atlanta J. Co. v. Doyal*, 60 S.E.2d 802, 809-10 (Ga. Ct. App. 1950); *Tyler v. Thompson*, 707 S.E.2d 137, 141 (Ga. Ct. App. 2011) ("After the conspiracy is formed, members of the conspiracy are jointly and severally liable for acts of co-conspirators done in furtherance of the conspiracy."); *Tanisha Sys., Inc. v. Chandra*, No. 1:15-CV-2644-AT, 2015 WL 10550967, at *9 (N.D. Ga. Dec. 4, 2015) (civil conspiracy claim could proceed where plaintiff alleged defendants "materially contributed" to the defamatory post, and "operated as a team to create the defamatory blog post at issue and to reinforce its impact") (citation omitted).

Second, TTV Defendants assert in a conclusory fashion that they did not act "in concert" with respect to D'Souza's promotional statements. But the evidence establishes that *all* Defendants conspired and worked jointly to publish the statements. TTV Defendants do not dispute that they met with D'Souza Defendants to discuss the creation of the Film; that TTV Defendants' research and the surveillance footage they provided served as the backbone of the Film; that D'Souza Defendants relied on that research; that Engelbrecht and Phillips appeared

3

in the Film giving unscripted interviews; that TTV Defendants reviewed and commented on the trailers and Film during the course of the production; that all Defendants were in contact during creation of the Film; that TTV advertised the Film as "True the Vote's Movie" produced by D'Souza; and that Engelbrecht and Phillips personally profited financially from the Film. TTV SMF Resp. ¶¶ 16, 23-24, 29-31, 34, 38, 90, 238-40. Importantly, TTV Defendants do not dispute that they entered into the License Agreement with D'Souza Defendants to provide their research for use in the Film. *Id.* ¶ 25. They also do not dispute that they reposted the Film's trailer on their accounts, appeared in interviews with the D'Souza Defendants, texted with the D'Souza Defendants about the SEB investigation that exonerated Plaintiff, reposted each other's interviews, and worked together on promotional efforts. TTV SMF Resp. ¶¶ 32-33, 71, 75, 86, 88-89, 96, 105, 107, 111, 123. In light of all this evidence, TTV Defendants' assertion that they had "nothing to do" with and had no editorial control over the Film or promotional statements cannot not be countenanced. They are jointly and severally liable for these statements.

In all events, as a factual matter, the evidence shows that TTV Defendants *did* have "editorial control" over the statements. *See* Plaintiff's Consolidated Opposition to Defendants' Motions for Summary Judgment ("Pl. Opp." or "Plaintiff's Opposition"), ECF 294 at 27-30. Importantly, TTV Defendants do not

argue that their promotional statements or statements in the Film were edited

incorrectly. Instead, TTV Defendants' own words and the surveillance footage

they provided was used without objection.  It is undisputed that they never once

took issue with the way that their research was represented in the Film and related

promotional activities, even though they had ample opportunity to do so. *See e.g.,*

TTV SMF Resp. at ¶¶ 25, 34, 96, 97, 99.

The cases cited by TTV are not to the contrary. In *Mullinax v. Miller*, 531

S.E.2d 390 (Ga. Ct. App. 2000), the court found there was no evidence the

defendant "was even aware" of an ad's content but "clearly could be liable if

he . . . directed someone else to write it, knowing that it would be printed," "if he

approved the sentence after someone else wrote it or if he paid for the article." *Id.*

at 392-93. In *Wolf v. Ramsey*, 253 F. Supp. 2d 1323 (N.D. Ga. 2003), the defendant

testified that the statements at issue were not in relation to the plaintiff, and the

defendant was unaware that the photo of the plaintiff would be shown. *Id.* at 1338.

In *Matthews v. Mills*, 850 S.E.2d 424 (Ga. Ct. App. 2020), the sole written

statement at issue was a police report in which there was no evidence defendant

"played any role in, or had any control over, the drafting or content of the report."

*Id.* at 428.

TTV Defendants cannot analogize their situation to any of these cases. TTV

Defendants admit that they advertised the Film as "True the Vote's Movie."  TTV

SMF Resp. ¶ 90. They admit that they provided the "highly confidential" footage for the Film, and never objected to its use in promotional statements. TTV SMF Resp. ¶¶ 25, 34, 96, 97, 99. It is clear from the transcript of *The Charlie Kirk Show* that Phillips and Engelbrecht knew exactly what footage was being shown and that they were commenting (falsely) concerning Plaintiff, Pl. SMF ¶ 93, and TTV admits it reposted the interview on its own account, which is exactly the situation contemplated by *Mullinax v. Miller* as creating editorial control. 531 S.E.2d at 392-93; TTV SMF Resp. ¶¶ 93-97. TTV Defendants also admit that Engelbrecht explained ballot fraud while a video of Plaintiff played on the *Tucker Carlson Show*, and that TTV also reposted that interview. TTV SMF Resp. ¶¶ 104, 106. TTV Defendants were also aware prior to the Gateway Pundit interview that the footage shown on *The Charlie Kirk Show* was going to also be used in that interview.  Plaintiff Mark Andrews' Response To Statement Of Undisputed Material Facts In Support Of Defendants True The Vote, Inc., Catherine Engelbrecht, And Gregg Phillips' Motion For Summary Judgment ("Pl. Resp. to TTV SMF"), ECF 294-3 ¶ 144 (Engelbrecht and Phillips informed footage would be used in interview for Gateway Pundit) They also admit that they explained on the *Gateway Pundit* how they used the footage for research, referencing the video while making defamatory statements. *Id.* ¶¶ 99-100. Finally, as to *Truth Matters*, TTV reposted the interview where video of Plaintiff played as they explained the

"mules" scheme. *Id.* ¶¶ 115-16. Notably, TTV Defendants have not argued that there was *any* inaccurate editing of their appearances on any of these programs when the programs aired.

Finally, TTV Defendants claim they cannot be responsible for the statements in the Film because Engelbrecht and Phillips gave their interviews contained in it before the final Film was edited. Opp. at 2. But this totally ignores that they were given ample opportunity to make any corrections or objections to the way they were included in the Film and they never did so. *See, e.g.,* TTV SMF Resp. ¶¶ 25, 34. Instead, they attended multiple pre-screenings and appeared on stage at the premier of the Film in front of 500 people and took credit for it. *Id.* ¶¶ 86, 90. Engelbrecht and Phillips admit they were listed as Executive Producers; that they reviewed the Film and were given the opportunity to (and did) provide comments; and that they attended pre-screenings and the premiere, and promoted the Film widely. *See* TTV SMF Resp. ¶¶ 10, 32-34, 71, 75, 86, 88-90, 96, 105, 107, 111, 123. They did all of that after the inclusion of the clip of Plaintiff in the Film.

**2.    Defendants' Statements were "Of and Concerning" Plaintiff**

Faced with the undisputed facts that their repeated publication of actual video and pictures of Plaintiff and his car – including some that were not blurred – allowed multiple individuals to recognize Plaintiff in the Film, TTV Defendants take an everything-but-the-kitchen-sink approach to arguing that the defamatory

statements were not "of and concerning" Plaintiff. None of TTV Defendants'
arguments are availing.

As an overarching matter: TTV Defendants admit that multiple individuals
*did* recognize Plaintiff in both the blurred and unblurred images shown in the Film
and other statements, including Plaintiff, Plaintiff's wife, Plaintiff's daughter, and
two reporters. TTV Response to Pl. SMF at ¶¶ 139-143. These facts alone should
end the inquiry as to whether the statements are "of and concerning" Plaintiff.[3]

TTV Defendants argue, however, that not a single person was able to
identify Plaintiff unless Plaintiff notified them first that he was in the Film. Opp. at
18. This is both factually untrue and legally irrelevant. Indeed, Mr. Cross states
that he filed the SEB complaint as a direct result of seeing TTV Defendants'
appearance on *the Charlie Kirk Show*, which included the unblurred video of
Plaintiff. SAF ¶ 18. Moreover, although Plaintiff speculated in his deposition that
one of the reporters had identified him from his affidavit in the SEB investigation,
*see* TTV Defendants' Statement of Additional Material Facts, ECF 302-1, ¶ 69,
contemporaneous factual documents show that the reporter contacted Plaintiff

---

[3] This Court already rejected the argument that a blurred image of Plaintiff could
not be "of and concerning" him, because accepting the allegations in the
complaint as true, "both he and his wife recognized his blurred image." MTD
Order at 34. The evidence now established that Plaintiff and his wife *as well as*
multiple other individuals recognized Plaintiff.

*before* any documents from the investigation had been released and also referenced Plaintiff's appearance in "2k mules." TTV SMF ¶¶ 63, 67-68.

As a legal matter, the question of whether a defamatory statement is "of and concerning" an individual is not whether that individual can identify a specific person who recognized him from the statement without first being told it related to him. "The test is whether persons who knew or knew of the plaintiff could reasonably have understood that the [portrayal] was a portrayal of the plaintiff." *Smith v. Stewart,* 660 S.E.2d 822, 829 (Ga. Ct. App. 2008). This burden is met even if the statement is not universally understood to be about the plaintiff, so long as "those who knew the plaintiff can make out that [she] is the person meant." *Id.*; *see also* MTD Order at 35.

It is irrelevant to the "of and concerning" test that TTV Defendants did not identify Plaintiff by name, know him personally, or that TTV Defendants claim they were not involved in D'Souza Defendants' statements and wanted to use blurred images. Further, as explained in Plaintiff's Opposition, Plaintiff is still identifiable in blurred images, and TTV Defendants' arguments about Plaintiff being identified only through "extrinsic evidence" are factually wrong. *See* Pl. Opp. at 7-12. The undisputed facts show that Plaintiff was recognized from the videos.

Whether or not Defendants had possession of the video of Plaintiff when they made certain statements or what their intention was in making the statements is likewise irrelevant to whether those statements were defamatory when they were ultimately published.  As explained in Plaintiff's Opposition, the "of and concerning" test does not require the defendant's knowledge that the statements in question referred to the plaintiff. What matters is what the reasonable viewer would think when they saw the statement. *Smith v. Stewart*, 660 S.E.2d at 829 ("The test is whether persons who knew or knew of the plaintiff could reasonably have understood that [it] was a portrayal of the plaintiff."); *Davis v. Macon Tel. Publ'g Co.*, 92 S.E.2d 619, 636 (Ga. Ct. App. 1956) ("The language of an alleged libel must be construed, not by what the [publisher] intended to mean, but by the construction which would be placed upon it by the average and reasonable [viewer]").

There can be no question that the statements were "of and concerning" Plaintiff.

### 3. Negligence is the Appropriate Standard of Fault and TTV Defendants' Conduct Meets that Standard

TTV Defendants attempt to circumvent this Court's prior holding that negligence is the appropriate standard of fault in this matter by arguing that various privileges apply such that the appropriate standard is actual malice. MTD Order at 33. The circumstances here do not come close to satisfying the criteria for invoking

the cited privileges. Here, negligence is the appropriate standard of fault, even though the undisputed facts establish that TTV Defendants acted with not only negligence but also actual malice.

    (a)    *The Statements are Not Privileged Under Georgia Law*

        (i)    *Plaintiff is Not a Limited Purpose Public Figure*

TTV Defendants persist in the assertion that Plaintiff drew himself into the public narrative surrounding 2000 Mules—in which he was publicly accused of being a criminal ballot mule—and thus Plaintiff is a limited purpose public figure and the actual malice standard applies. Opp. at 20. This self-serving argument is unsustainable under Georgia law and the undisputed facts. Indeed, were it to be accepted, it would mean that every single voter becomes a limited purpose public figure simply by the act of voting.

Defendants rely on *Gertz* but conveniently omit that "the instances of truly involuntary public figures must be exceedingly rare," and saved for those who have "assumed roles of especial prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). In *Jewell*, the court found the plaintiff was a limited public figure after he "voluntarily assumed a position of influence in the controversy" and "invite[d] public criticism and rebuttal" by "grant[ing] ten interviews and one photo shoot." *Atlanta J.-Const. v. Jewell*, 555

S.E.2d 175, 184 (Ga. Ct. App. 2002).[4]   Defendants' own case makes clear that a

limited purpose public figure is "the actor – *in the events giving rise to the public*

*controversy*," not just "an actor." *Krass v. Obstacle Racing Medica, LLC*, 667 F.

Supp. 3d 1177, 1210 (N.D. Ga. 2023) (emphasis added) (emphasis omitted); *see*

*also Sewell v. Trib Publ'ns, Inc.*, 622 S.E.2d 919, 924 (Ga. Ct. App. 2005)

(reversing holding that a teacher was a limited public figure and finding he was not

involved "in the events giving rise to the public controversy").

Defendants' characterization of Plaintiff is unavailing. The record plainly

shows Plaintiff did not "thrust himself to the forefront of the controversy." *Id.* at

923. Mark Andrews has not assumed any public-facing role and has no ulterior

incentive to challenge the defamatory statements. *See Jewell*, 555 S.E.2d at 182;

*Krass*, 667 F. Supp. 3d at 1208. He is a private individual who responded

reasonably to a serious and unfounded accusation. *See* Pl. Opp. at 18-21.

---

[4]   The remaining cases cited by Defendants are also factually distinguishable. .
*See Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020) (finding plaintiff
to be a limited public figure where he was "widely known to the public . . .
publicly linked to a number of high-profile scandals of public interest," availed
himself to the "Albanian media in an effort to present his own side of the story,
and he was in close proximity to those in power."); *Wolf*, 253 F. Supp. 2d at
1340 (applying the actual malice standard where the parties stipulated plaintiff
was a limited-purpose public figure); *Matthis v. Cannon*, 573 S.E.2d 376, 382
(Ga. 2002) (holding that plaintiff, as a top decision-maker at the county's waste
management authority, was a limited-purpose public figure in the controversy
surrounding the county's recycling facility and landfill).

>    (ii)    *The Statements are Not Conditionally Privileged Because They*
>           *Deal with Election Integrity*

TTV Defendants make the sweeping assertion that all statements were privileged under Georgia law because the statements related to the undefined and broad category of "election integrity." Opp. at 33 (citing O.C.G.A. § 51-5-7(4)); *see, e.g., Five for Ent. S.A. v. Rodriguez*, No. 11-cv-24142, 2013 WL 4433420, at *8 (S.D. Fla. Aug. 15, 2013) ("[T]o claim a qualified privilege, Defendants must establish that each of the statements individually was entitled to a privilege . . . Defendants' motion has not done a specific analysis for each of the statements; instead, the motion makes broad generalizations."). TTV Defendants fail to do any specific analysis or connect any of its statements to the undefined and overbroad rubric of "election integrity." They cannot manufacture a controversy, drag Plaintiff into it, and then use privilege as a cloak for its unlawful actions.

Moreover, for a statement to be conditionally privileged, TTV Defendants must show that they "(a)[] acted in good faith; (b) in connection with an interest to be upheld; (c) the statement was properly limited in its scope and occasion; and (d) publication was made to proper persons." *Smith v. DiFrancesco*, 802 S.E.2d 69, 73 (Ga. Ct. App. 2017). "[T]he absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege." *Sheftall v. Cent. of Ga. Ry. Co.*, 51 S.E. 646, 648 (Ga. 1905). Here, as explained in Plaintiff's Opposition at 14-17, Defendants fail this test.

The undisputed facts show that TTV Defendants did not act in good faith because, as discussed previously, Defendants had no evidence or factual basis for accusing Plaintiff of being a criminal a ballot mule. *See Smith*, 802 S.E.2d at 73 (record did not establish that defendant acted in good faith because defendant "had no basis" to believe his statement was true). At no point did any Defendant possess any evidence supporting the claim that Plaintiff (and other voters featured in the Film) were "mules" who, consistent with Defendants' own definition, had been geotracked picking up ballots on multiple occasions and depositing them in drop boxes. *See* TTV SMF Resp. ¶¶ 42-44. Indeed, discovery has revealed that *none* of the voters in the Film were geotracked because "the ability to match [the surveillance footage and geotracking data] was negligible, was nonexistent." *Id.* ¶ 190; *see also* D'Souza SMF ¶ 131. As to Plaintiff, TTV Defendants admit that they knew that the surveillance footage of him voting was not matched to the geolocation data because *no* footage of *any* Gwinnett County voter was tracked. TTV SMF Resp. ¶¶ 5-6, 75, 82-85, 178-79, 189-93. TTV Defendants nevertheless continued to peddle – and stand by as others peddled – their blatantly false narrative that Plaintiff was a criminal ballot mule. There is no basis for any finding that TTV Defendants made the statements concerning Plaintiff in good faith, or to protect election integrity.

Further, TTV Defendants' statements were neither properly limited in scope nor audience. The statements were not limited in scope because they were unverified claims that Plaintiff committed crimes, which go far beyond the scope needed to discuss the general issue of election integrity, and were also published repeatedly, significantly more than needed to address any concern of election fraud. *Cf. Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc.*, 474 S.E.2d 56, 59 (Ga. Ct. App. 1996) (holding that a "single letter," "made on a proper occasion," "limited to those concerned," "was properly limited in scope," and distinguishable from over fifty harassing phone calls in another case (citing *Southern Business Machines, etc. v. Norwest, etc.*, 194 Ga. App. 253, 258-260(3), (4), 390 S.E.2d 402 (1990))). Defendants' statements about Plaintiff were also broadcast broadly through the Film, Book, and promotional interviews and social media posts, instead of being discreetly communicated to authorities capable of and tasked with investigating their claims and curing any perceived harm. *N. Atlanta Golf Operations, LLC v. Ward*, 860 S.E.2d 814, 820 (Ga. Ct. App. 2022) (defendant not entitled to privilege as matter of law where "he did not attempt to give management any feedback [about the matter of concern], instead choosing Twitter as the forum for raising the problems"); *cf. Chaney v. Harrison & Lynam, LLC*, 708 S.E.2d 672, 679 (Ga. Ct. App. 2011) (proper audience found where defendant "was communicating with the proper people about a topic" of public interest, and

statements were "submitted to appropriate recipients," the city counsel). As TTV

admits, the Film was a for-profit venture with the apparent purpose of making

money for the filmmaker, investors, and contributors, including all Defendants, not

for some grand public purpose. TTV SMF Resp. ¶¶ 237-39.

      *(b)*     *The Undisputed Facts Show TTV Defendants Acted with Both Negligence and Actual Malice*

Unsurprisingly, TTV Defendants' Opposition fails to grapple with the most

damning facts – that they admit they never geotracked Plaintiff, that they knew he

was not a mule as defined in the Film, and yet they continued to defame him even

after he was cleared by the SEB. Instead, they seek to hide instead behind the

actual malice standard which does not apply here.  But in all events, because the

undisputed facts establish that TTV Defendants knew, or should have known, that

the defamatory statements were false at the time they were made, TTV

Defendants' conduct meets both the standard for negligence and for actual malice.

TTV Defendants admit that they never performed geotracking on Plaintiff,

or from any other voter in Gwinnett County, and that Engelbrecht knew this. TTV

SMF Resp. ¶¶ 164-93. Defendants also knew before any of the defamatory

statements were published that their purported geotracking data was unreliable. *See

id.* And yet despite this knowledge, TTV Defendants repeatedly represented that

their research was reliable and supported their false propositions. TTV Defendants

also admit that they knew at the time of the Film premiere that Plaintiff had been

conclusively cleared by the SEB investigation. In fact, they admit they told

D'Souza that Plaintiff "isn't a mule." TTV SMF Resp. ¶¶ 70-71. Despite this

knowledge, TTV Defendants continued to peddle the 2000 Mules narrative. This is

far from the ordinary standard of care expected of publishers.

Despite TTV Defendants' assertions, the *Triangle* factors for negligence

weigh in Plaintiff's favor. *Triangle Publ'ns, Inc. v. Chumley*, 317 S.E.2d 534, 537

(Ga. 1984). The extent of damage to Plaintiff's reputation was significant. A

reasonable publisher would not have published the statements knowing they had no

evidence to support them and knowing how destructive the accusations were.

Further, as explained above, the reliability of TTV Defendants' sources was non-

existent. No amount of "newsworthiness" or desire to promptly publish could ever

outweigh these facts or make up for the lack of care. Pl. Opp. at 51.

The same facts that show TTV Defendants' negligence also show their

actual malice. Actual malice requires that the defendant "either knew the allegedly

defamatory material was false, or published it with a reckless disregard of whether

it was false or not." *Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 (11th Cir. 1987).

As discussed above, the undisputed evidence is clear: TTV Defendants repeatedly

admit that they knew Plaintiff was not a mule, that he was never geotracked, and

that their research was unreliable. Yet they continued to make and republish the

defamatory statements.[5]  Further, as explained above, Section 2 *supra*, TTV

Defendants' assertion that because they had "no involvement" with certain

statements is both factually incorrect and not the proper standard for joint and

several liability.

TTV Defendants also assert they cannot be at fault under an actual malice

standard because they did not know Plaintiff or have any specific ill will towards

him, Opp. at 27-28, but such a showing is not what the law requires. *See Straw*,

813 F.2d at 361 (clarifying that "actual malice" under the constitution does *not*

mean "ill will").

*(c)     TTV Defendants' Assistor Signature Argument is a Red Herring*

Finally, TTV Defendants repeatedly assert they cannot have acted with

actual malice because they reasonably believed assistor signatures were required

for individuals depositing multiple ballots. TTV MSJ at 3; Opp. at 28. This

argument is a red herring. The defamatory statements in question do not involve an

accusation that Plaintiff broke the law because he submitted all of his family's

ballots without an assistor signature. Rather, in the defamatory statements, and

what is relevant to this Motion, Defendants repeatedly characterized Plaintiff as a

---

[5]    TTV Defendants admit that even after Phillips confirmed that Plaintiff "isn't a
mule," neither Phillips nor Engelbrecht suggested that D'Souza Defendants
remove images of Plaintiff from the Film, trailer or any other materials. TTV
SMF Resp. 76.

"ballot mule" who was paid by left wing non-profits and went to multiple drop boxes depositing multiple ballots as part of a vast conspiracy to steal the 2020 election. *See* TTV SMF Resp. ¶¶ 39-44; Pl. MSJ at Section A.1 (describing defamatory statements). TTV Defendants have not produced – and cannot produce – a shred of evidence that they had any basis to believe that Plaintiffs was paid to deposit ballots, that he visited any nonprofit to collect ballots or that he deposited ballots in multiple ballot boxes. TTV SMF Resp. ¶¶ 1-2, 6-7, 39-50, 88-123, 134-38.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment should be granted, and judgment should be entered for Plaintiff as to liability on Count III of the First Amended Complaint pursuant to Fed. R. Civ. P. 56.

Dated: March 28, 2025    Respectfully submitted,

By: */s/Lea Haber Kuck*
Lea Haber Kuck*
Quinn Balliett*
Scott Boisvert*
Sonia Qin*
Danuta Egle*
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
lea.kuck@probonolaw.com
quinn.balliett@probonolaw.com
scott.boisvert@probonolaw.com

sonia.qin@probonolaw.com
danuta.egle@probonolaw.com

Rajiv Madan*
Paige Braddy*
1440 New York Avenue NW
Washington, DC 20005
Tel: (202) 371-7000
raj.madan@probonolaw.com
paige.braddy@probonolaw.com

Vernon Thomas*
320 S. Canal
Chicago, IL 60606-1720
Tel: (312) 407-0648
vernon.thomas@probonolaw.com

Von A. DuBose, Esq.
Georgia Bar No. 231451
DuBose Trial Law
128 Richardson St. SE
Atlanta, GA 30312
Tel: (404) 720-8111
von@dubosetrial.com

Sara Chimene-Weiss*
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #430
Phoenix, AZ 85020
Tel: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Rachel E. Goodman*
John Paredes*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
rachel.goodman@protectdemocracy.org
john.parades@protectdemocracy.org

20

Jared Fletcher Davidson*
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Tel: (202) 579-4582
jared.davidson@protectdemocracy.org

Jane Bentrott*
Catherine Chen*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Tel: 202-843-3092
jane.bentrott@protectdemocracy.org
catherine.chen@protectdemocracy.org


*Counsel for Plaintiff*

*\*Admitted Pro Hac Vice*

## <u>RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that Plaintiff's Reply in Further Support of His Motion for Partial Summary Judgment as to TTV Defendants was prepared double-spaced using Times New Roman font (14 point), in compliance with Local Rule 5.1.C.

Dated: March 28, 2025

*/s/Lea Haber Kuck*
Lea Haber Kuck*
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
lea.kuck@probonolaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the within and foregoing Plaintiff's Reply in Further Support of His Motion for Partial Summary Judgment as to TTV Defendants was electronically filed with the Clerk of Court using CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: March 28, 2025                  */s/Lea Haber Kuck*
                                       Lea Haber Kuck*
                                       One Manhattan West
                                       New York, NY 10001-8602
                                       Tel: (212) 735-3000
                                       lea.kuck@probonolaw.com