# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **MARK ANDREWS,**<br><br>        Plaintiff,<br><br>    v.<br><br>**DINESH D'SOUZA, *et al.*,**<br><br>        Defendants. | Case No. 1:22-cv-04259-SDG |

## PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR <u>SUMMARY JUDGMENT AS TO D'SOUZA DEFENDANTS</u>

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................... iii

PRELIMINARY STATEMENT ............................................................1

ARGUMENT .......................................................................................3

1.  D'Souza Defendants' Request to Strike Plaintiff's Facts Should Be Rejected. ....................................................................................3

2.  Defendants' Statements were "Of and Concerning" Plaintiff.........................4

3.  Negligence is the Appropriate Standard of Fault and D'Souza Defendants' Conduct Meets that Standard. ....................................8

    (a)  The Statements were Not Privileged Under Georgia Law...................9

    (b)  The Undisputed Facts Show D'Souza Defendants Acted with Negligence....................................................................................12

    (c)  Even if Actual Malice Were the Standard – And It Is Not –The Undisputed Facts Show D'Souza Defendants Acted with Actual Malice....................................................................................14

4.  D'Souza Defendants are Jointly Liable for TTV Defendants' Statements.....................................................................................17

5.  Plaintiff Suffered Harm as a Result of Defendants' Statements. ..................20

CONCLUSION ..................................................................................20

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Bell v. Johnson Publishing Co.*,
   2018 WL 357888 (M.D. Ga. Jan. 10, 2018) .....................................................4

*Chaney v. Harrison & Lynam, LLC*,
   708 S.E.2d 672 (Ga. Ct. App. 2011)......................................................... 10, 11

*Choice Hotels International, Inc. v. Ocmulgee Fields, Inc.*,
   474 S.E.2d 56 (Ga. Ct. App. 1996).................................................................11

*Davis v. Macon Telegraph Publishing Co.*,
   92 S.E.2d 619 (Ga. Ct. App. 1956)...................................................................8

*Drummond v. McKinley*,
   15 S.E.2d 535 (Ga. Ct. App. 1941).................................................................17

*Echols v. Lawton*,
   913 F.3d 1313 (11th Cir. 2019) .........................................................................1

*Five for Entertainment S.A. v. Rodriguez*,
   No. 11-cv-24142, 2013 WL 4433420 (S.D. Fla. Aug. 15, 2013) ....................9

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...........................................................................................8

*Harcrow v. Struhar*,
   511 S.E.2d 545 (Ga. Ct. App. 1999)...............................................................13

*Holmes v. Clisby*,
   45 S.E. 684 (Ga. 1903) ......................................................................................6

*McAndrew v. Lockheed Martin Corp.*,
   206 F.3d 1031 (11th Cir. 2000).......................................................................17

*Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Community Trust*,
   780 S.E.2d 311 (Ga. Ct. App. 2015)..........................................................17, 18

*North Atlanta Golf Operations, LLC v. Ward*,
   860 S.E.2d 814 (Ga. Ct. App. 2022)...............................................................11

*Sheftall v. Central of Georgia Railway Co.*,
    51 S.E. 646 (Ga. 1905) ...................................................................................9

*Smith v. DiFrancesco*,
    802 S.E.2d 69 (Ga. Ct. App. 2017) ...........................................................9, 10

*Smith v. Stewart*,
    660 S.E.2d 822 (Ga. Ct. App. 2008) ...........................................................4, 5

*Southern Business Machines v. Norwest Financial Leasing, Inc.*,
    390 S.E.2d 402 (Ga. Ct. App. 1990) ...............................................................11

*StopLoss Specialists, LLC v. Vericlaim, Inc.*,
    340 F. Supp. 3d 1334 (N.D. Ga. 2018) ..........................................................1

*Straw v. Chase Revel, Inc.*,
    813 F.2d 356 (11th Cir. 1987) .....................................................................15

*Tanisha Systems, Inc. v. Chandra*,
    No. 1:15-CV-2644-AT, 2015 WL 10550967
    (N.D. Ga. Dec. 4, 2015) ..........................................................................18, 19

*Triangle Publications, Inc. v. Chumley*,
    317 S.E.2d 534 (Ga. 1984) ........................................................................5, 12

*Zeal Global Services Private Ltd. v. SunTrust Bank*,
    508 F. Supp. 3d 1303 (N.D. Ga. 2020) ....................................................17, 18

## STATUTES

O.C.G.A. § 51-5-7(4) ...............................................................................14

## PRELIMINARY STATEMENT

In their response to Plaintiff's Motion for Partial Summary Judgment ("Motion"), D'Souza Defendants[1] admit that the portrayal of Mr. Andrews in their film 2000 Mules is false. Indeed, Dinesh D'Souza has issued a public apology to Mr. Andrews, as has former defendant Salem Media Group, which also removed the Film from its platforms and announced that it would no longer distribute the Film and the Book.[2] Attempting to avoid accountability for their actions, however, D'Souza Defendants seek to paint themselves as innocent victims of TTV Defendants' lies. Of course, TTV Defendants in their summary judgment opposition point the finger back at D'Souza Defendants. Nevertheless, for the reasons set forth below, and in Plaintiff's Reply in Further Support of their Motion as to TTV Defendants, Plaintiff is entitled to partial summary judgment on liability for his defamation claims[3] against *all* Defendants.

---

[1] Defined terms will be given the same meaning as in Plaintiff's Motion for Partial Summary Judgment unless otherwise specified.

[2] https://investor.salemmedia.com/news-events/press-releases/detail/847/salem-media-statement

[3] Under Georgia law, the elements of a defamation claim are: (a) a false and defamatory statement of and concerning the plaintiff; (b) an unprivileged communication of the statement to a third party; (c) fault by the defendant amounting at least to negligence; and (d) harm to the plaintiff—unless the statement amounts to per se defamation. *Echols v. Lawton*, 913 F.3d 1313 (11th Cir. 2019); *see also StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1346 (N.D. Ga. 2018).

As to D'Souza Defendants, the undisputed facts reveal that they knew by the time the Film premiered that Plaintiff was not a "ballot mule" and had been found by the Georgia State Election Board to have voted legally. Ignoring a cease and desist letter from Plaintiff's counsel, D'Souza Defendants continued to promote the Film and published the Book, which included a still photo of Plaintiff voting and again labeled him a ballot mule engaged in unlawful conduct. D'Souza Defendants only assumed their contrite posture after Plaintiff uncovered overwhelming evidence in discovery showing that the Film was pure fiction and there was no basis for any allegation that Plaintiff had engaged in any unlawful conduct. Indeed, the undisputed facts show that Plaintiff has been widely vilified for doing nothing more than legally casting his ballot and the ballots of his family.

Their only arguments as to why they should not be held liable for the false and defamatory statements that they admittedly published are: (1) that the statements are not sufficiently "of and concerning" Plaintiff; (2) that the actual malice standard of fault applies and is not met; and (3) that they cannot be held liable for TTV Defendants' statements. All of these arguments fail for the reasons set forth below.

## ARGUMENT

**1.    D'Souza Defendants' Request to Strike Plaintiff's Facts Should Be Rejected.**

Apparently recognizing that the undisputed facts are fatal to D'Souza Defendants, they ask the Court to disregard nearly half of Plaintiff's Statement of Material Facts for purportedly failing to comply with local rules concerning citations to evidence. *See* Defendants Dinesh D'Souza And D'Souza Media LLC's Response In Opposition To Plaintiff's Motion For Partial Summary Judgment ("Opp."), ECF 308 at 22-23. Their request should be denied.

D'Souza Defendants fail to articulate any real prejudice or cite any support for their requested relief. Plaintiff cited documents in their entirety where necessary to preserve their full and accurate meaning or where the documents are short and self-contained. Where necessary to provide substantive clarity, Plaintiff provided pincites. This is a practice that D'Souza Defendants themselves follow, rendering their objections frivolous.

Their claim that Plaintiff improperly relied on "pleadings" rings similarly hollow. They complain about (1) documents that are *not* pleadings, i.e. sworn interrogatory responses, or (2) Plaintiff's citations to their Answer, when such admissions are admissible as judicial admissions; D'Souza Defendants do not dispute the relevant facts; and Dinesh D'Souza himself admitted under oath that he reviewed the Answer and there were no inaccuracies. Pl. MSJ Ex. 14 (D'Souza

Dep. Tr.) at 25:18-27:5. D'Souza Defendants' argument is nothing more than an attempt to distract from the substantive issues before the Court.

**2.    Defendants' Statements were "Of and Concerning" Plaintiff.**

D'Souza Defendants assert the defamatory statements were not "of and concerning" Plaintiff because Plaintiff could not name anyone who identified him in the Film or related promotional materials that had not first been told that Plaintiff appears in the film.  They contend this shows that Plaintiff is "in fact, impossible to identify" in the images. Opp. at 35-38; *see also* D'Souza SMF ¶ 218.

However, the question of whether a defamatory statement is "of and concerning" an individual is not whether that individual can identify a specific person who recognized him from the statement without first being aware it related to him. Rather, "[t]he test is whether persons who knew or knew of the plaintiff could reasonably have understood that the [portrayal] was a portrayal of the plaintiff." *Smith v. Stewart*, 660 S.E.2d 822, 829 (Ga. Ct. App. 2008); *see also* MTD Order at 35 (citing *id.*; *Bell v. Johnson Publ'g Co., LLC*, 2018 WL 357888, at *4 (M.D. Ga. Jan. 10, 2018)).

Plaintiff more than satisfies this test here, because the undisputed facts show that multiple people could and did identify him.[4]  Multiple people identified

---

[4]    This Court already rejected the argument that a blurred image of Plaintiff could not be "of and concerning" him, because, viewing the allegations in the light

Plaintiff's blurred image in the Film and accompanying promotional materials, including Plaintiff himself, members of his family, family friends, and the Georgia SOS investigator. *See* Pl. SMF ¶¶ 139-43; SAF ¶ 16. D'Souza Defendants do not dispute that Plaintiff recognized himself, or that reporters contacted him and identified him as the person in the Film. *See* Defendants Dinesh D'Souza And D'Souza Media LLC's LR 56.1 Responses To Plaintiff's Statement Of Undisputed Material Facts ("D'Souza SMF Resp."), ECF 308-2 ¶¶ 139-40, 142. Moreover, D'Souza Defendants do not deny posting unblurred footage of Plaintiff, *see id.* ¶ 107, in which Plaintiff is inarguably identified. *See, e.g.*, *Triangle Publ'ns, Inc. v. Chumley*, 317 S.E.2d 534, 537 (Ga. 1984). The undisputed facts demonstrate, at minimum, that "those who knew the plaintiff can make out that [he] is the person meant" in Defendants' statements, and thus that they are "of and concerning" him as a matter of law. *See Smith*, 660 S.E.2d at 829.

D'Souza Defendants' attempt to sweep aside these identifications simply because the individuals were aware of Plaintiff's appearance in the Film prior to identifying him is unavailing. *See* Opp. at 35-37. Georgia law is clear that it is not

most favorable to Plaintiff, "both he and his wife recognized his blurred image." MTD Order at 34. The evidence now confirms that Plaintiff, his wife, and multiple other individuals recognized Plaintiff. This alone is sufficient to establish that Plaintiff was identifiable.

only permissible for this sort of contextual information to be considered,[5] but rather that "[a] publication *must* be construed in the light of all the attending circumstances, the cause and occasion of the publication, and all other extraneous matters which will tend to explain the allusion or point out the person in question." *Holmes v. Clisby*, 45 S.E. 684, 685 (Ga. 1903) (emphasis added). D'Souza Defendants do not cite to a single case to support their suggestion that a person's prior understanding of the Film's context here is preclusive.

In all events, though Plaintiff speculated in his deposition that one of the reporters had identified him from his affidavit in the SEB investigation, D'Souza SMF Resp. ¶¶ 139-40, at least one reporter did identify Mr. Andrews from the Film; her text message was sent *before* Mr. Andrews' name was made public through the SEC investigation and she explicitly referenced "2k mules." *See* TTV SMF ¶¶ 63, 67-68. Indeed, even David Cross acknowledges that he filed the SEB

---

[5]  D'Souza Defendants claim that "[d]iscovery . . . revealed that not one person saw the film and identified Mr. Andrews unless they did so *after* he told them he was in the film and they were *already aware* that he was the blurred individual."  Opp. at 36; *see also* D'Souza SMF ¶ 218. However, in his deposition and interrogatory responses cited by D'Souza Defendants, Plaintiff only indicated that he had "talked to them about the movies" and that they had been "told" or were "otherwise aware that Plaintiff's image appears in the film."  From this information, they later identified the specific "blurred individual" that was Plaintiff on their own accord.

complaint as a direct result of seeing TTV Defendants' appearance *on The Charlie Kirk Show*, which included the unblurred video of Plaintiff. SAF ¶ 18.

Finally, D'Souza Defendants falsely claim that Plaintiff's own attorneys mistook another individual for Plaintiff when they produced Exhibit 160, which contains an image of a man, who is not Plaintiff, voting. Opp. at 6-7, 35-36. This is disingenuous and offensive. Plaintiff's attorneys never represented that this other individual was Plaintiff. Plaintiff Mark Andrews' Response To Defendants Dinesh D'Souza And D'Souza Media LLC's Statement Of Undisputed Material Facts ("Pl. Resp. to D'Souza SMF") at 160. Further, even a cursory examination of the images on the actual document produced show the only similarity between the two individuals is a shaved head.

Significantly, D'Souza Defendants only flagged this purported "look-alike" of Plaintiff *after* this litigation was filed, in an attempt to justify Plaintiff's wrongful inclusion in the Film after the fact. Pl. Resp. to D'Souza SMF at 159. During the creation of the Film, however, D'Souza Defendants had no difficulty distinguishing between Plaintiff and the "look-alike"; indeed, they continually complained internally and to the TTV Defendants that they did not have any video evidence showing the same person voting multiple times. Pl. Resp. to D'Souza SMF at 147, 159.

Finally, D'Souza Defendants claim Plaintiff must also prove "that the defendant either knew that a reasonable observer would identify him, or that the defendant was subjectively aware or negligent that the plaintiff would be identifiable." Opp. at 37-38. D'Souza Defendants purport to derive this requirement from *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), but the "of and concerning" prong was not at issue in *Gertz*; the Supreme Court only addressed the requisite degree of fault as to falsity. *See id.* at 349. The other cases cited by D'Souza Defendants from irrelevant jurisdictions are similarly inapposite. Under Georgia law, the "of and concerning" prong is an objective test conducted from the perspective of a reasonable person viewing the defamatory statement, for which analysis of the defendants' state of mind is wholly irrelevant. *See Davis v. Macon Tel. Pub. Co.*, 92 S.E.2d 619, 636 (Ga. Ct. App. 1956).

There can be no question that the statements were "of and concerning" Plaintiff.

### 3.    Negligence is the Appropriate Standard of Fault and D'Souza Defendants' Conduct Meets that Standard.

D'Souza Defendants attempt to sidestep this Court's prior holding that negligence is the appropriate standard of fault here, *see* MTD Order at 33, by arguing that various privileges apply such that the appropriate standard is actual malice. The circumstances here do not come close to satisfying the criteria for invoking the cited privileges. Rather, negligence is the appropriate standard of

fault, even though the undisputed facts establish that TTV Defendants acted with not only negligence but also actual malice.

       *(a)*     *The Statements Were Not Privileged Under Georgia Law*

D'Souza Defendants make the sweeping assertion that all statements at issue were privileged under Georgia law because the statements related to "election integrity." Opp. at 24 (citing O.C.G.A. § 51-5-7(4)); *see, e.g.*, *Five for Ent. S.A. v. Rodriguez*, No. 11-cv-24142, 2013 WL 4433420, at *8 (S.D. Fla. Aug. 15, 2013) ("[T]o claim a qualified privilege, Defendants must establish that each of the statements individually was entitled to a privilege."). But they fail to explain how any individual statement is actually connected to the privilege, and the undisputed evidence shows that the test for conditional privilege is not met.

For a statement to be conditionally privileged, D'Souza Defendants must show: that they "(a)[] acted in good faith; (b) in connection with an interest to be upheld; (c) the statement was properly limited in its scope and occasion; and (d) publication was made to proper persons." *Smith v. DiFrancesco*, 802 S.E.2d 69, 73 (Ga. Ct. App. 2017). "[T]he absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege." *Sheftall v. Cent. of Ga. Ry. Co.*, 51 S.E. 646, 648 (Ga. 1905). Here, as explained in Plaintiff's Consolidated Opposition to Defendants' Motions for Summary Judgment ("Pl. Opp."), ECF 294, Defendants' statements fail this test. *Id.* at 14-17.

First, D'Souza Defendants' did not act in good faith. They admit that they never had any evidence for accusing Plaintiff of being a criminal a ballot mule. D'Souza SMF Resp. ¶¶ 81-84; *see Smith*, 802 S.E.2d at 73 (record did not establish that defendant acted in good faith because defendant "had no basis" to believe his statement was true). Further, the evidence establishes the following:

- D'Souza Defendants were on notice while they were making the Film that they did not have footage of anyone going to more than one drop box and had no evidence that Plaintiff was mule. *See* D'Souza SMF Resp. ¶¶ 81-84, 190-94, 203-10, 212; SAF ¶ 4; Pl. SMF ¶¶ 202-12, 221.

- D'Souza Defendants knew before the Film premiered that Plaintiff had been cleared by the SEB. D'Souza SMF ¶ 116; TTV SMF ¶ 47.

- Mr. Phillips told Mr. D'Souza that Plaintiff was "not a mule," but D'Souza ignored this fact. D'Souza Defendants Responses to Pl. SMF ¶¶ 71-72.

- D'Souza Defendants received cease and desist letters from Plaintiff, all of which they ignored, publishing a second edition of the Book three weeks later. D'Souza SMF Resp. ¶ 132.

With this knowledge, D'Souza Defendants nevertheless continued to peddle their false narrative that Plaintiff was a criminal ballot mule. D'Souza Resp. to Pl. SMF ¶¶ 1-7, 57, 78, 89, 94, 123; TTV Resp. to Pl. SMF ¶¶ 20, 77, 88, 103, 110, 118, 129-131, 142, 160. No reasonable juror could find that D'Souza Defendants made these statements in good faith, or to protect election integrity. *Cf. Chaney v. Harrison & Lynam, LLC*, 708 S.E.2d 672, 679 (Ga. Ct. App. 2011) ("[N]othing in

the record indicates that [statements] were not made as part of a good faith effort to resolve the [relevant] issues.").

Additionally, as explained in Pl. Opp. at 16-17, D'Souza Defendants' statements were neither properly limited in scope nor audience. Instead, they were sweeping accusations of criminality, broadcast widely. *Cf. Choice Hotels Int'l, Inc. v. Ocmulgee Fields, Inc.*, 474 S.E.2d 56, 59 (Ga. Ct. App. 1996) (holding that a "single letter," "made on a proper occasion," "limited to those concerned," "was properly limited in scope," (citing *Southern Business Machines, etc. v. Norwest, etc.*, 194 Ga. App. 253, 258-260(3), (4), 390 S.E.2d 402 (1990))); *see N. Atlanta Golf Operations, LLC v. Ward*, 860 S.E.2d 814, 820 (Ga. Ct. App. 2022) (defendant not entitled to privilege as matter of law where "he did not attempt to give management any feedback [about the matter of concern], instead choosing Twitter as the forum for raising the problems"); *cf. Chaney*, 708 S.E.2d at 679 (proper audience found where defendant "was communicating with the proper people about a topic" of public interest, and statements were "submitted to appropriate recipients," the city counsel).

The Court should reject D'Souza Defendants' argument, which would allow anyone to widely publicize entirely baseless allegations about any voter to intimidate them and other voters, and then claim the statements were privileged because the statements had to do with "election integrity."

(b)    *The Undisputed Facts Show D'Souza Defendants Acted with Negligence*

D'Souza Defendants assert they were not negligent in publishing the defamatory statements because their failure to perform any due diligence whatsoever into the source of the "data" that formed the core of the 2000 Mules narrative is irrelevant to the question of whether they were negligent when they asserted that Plaintiff was a ballot mule in the Film, Book, and other promotional statements. Opp. at 29-30. Not only is this argument directly contracted by D'Souza Defendants' briefing and Statement of Undisputed Material Facts, which include lengthy justifications for their reliance on the (nonexistent) geotracking data, it also misses the point. Plaintiff asserts *not only* were they negligent with respect to failing to investigate the validity of the geospatial analysis, but just as importantly, that the undisputed facts demonstrate they were negligent with respect the specific issue of whether Plaintiff was a ballot mule. *See* Section 3(a) *supra*. The undisputed facts are more than sufficient to demonstrate that D'Souza Defendants acted negligently.

Though this Court need look no further than the facts discussed above to determine D'Souza Defendants acted with negligence, Plaintiff briefly addresses D'Souza Defendants' specific arguments on the factors outlined in *Triangle Publications, Inc. v. Chumley*, 317 S.E.2d 524, 537 (Ga. 1984) for avoidance of all doubt.

As to the first factor (sufficiency of time for a thorough investigation), D'Souza Defendants appear to agree with Plaintiff's contention that the Film did not require prompt publication and acknowledge the production of 2000 Mules was not "rushed" and that it "required several months to film and complete." *Compare* Pl. MSJ at 28-29 and Opp. at 33. During this time, D'Souza Defendants repeatedly questioned whether the surveillance footage supported the TTV narrative. SMF ¶¶ 209, 211-12, 216, 224. Getting no real satisfactory answers, they premiered the Film and pursued the narrative regardless.

The second factor (newsworthiness and public interest) also weighs in Plaintiff's favor because D'Souza Defendants do not dispute that the Film was a profit-making venture. D'Souza SMF Resp. ¶¶ 230-36. The venture was also intended to assist their preferred political candidates. *See* SMF ¶¶ 250-54. Defendants thus prioritized the timing of any release to further their political agenda, not due to its supposed "newsworthiness." *See id.*

The third *Triangle* factor (potential damage to the plaintiff's reputation) also heavily weighs in Plaintiff's favor.  Because falsely accusing a person of committing a crime is defamation per se, it cannot be disputed that the "extent of damage" to Plaintiff's reputation is significant. *See* Section 5 *infra*; *Harcrow v. Struhar*, 511 S.E.2d 545, 546 (Ga. Ct. App. 1999).

D'Souza Defendants likewise fail the fourth factor (the reliability and trustworthiness of the source), because their reliance on TTV Defendants was not reasonable. D'Souza Defendants spend pages waxing poetic about Mr. Phillip's purported qualifications, Opp. at 8-12, but they either misrepresent the facts or rely on documents that TTV Defendants themselves have disavowed.  Pl. Resp. to D'Souza SMF ¶¶ 170-71. Indeed, D'Souza Defendants had ample information before them demonstrating that Mr. Phillips did not have a reputation as a credible person. Pl. SMF ¶¶ 201, 216-20, 222-23. As to Ms. Engelbrecht, D'Souza acknowledged that she had no training or expertise in geolocation research or anything else relevant to TTV's purported research.  Pl. SMF ¶ 220. Finally, TTV Defendants' failure to convince law enforcement that their purported research warranted further investigation, *see* Opp. at 11-12, should have also been a red flag to the D'Souza Defendants, requiring some sort of validation of TTV Defendants' credibility.

(c)     *Even if Actual Malice Were the Standard – And It Is Not –The Undisputed Facts Show D'Souza Defendants Acted with Actual Malice*

Although the appropriate standard of fault for Plaintiff's defamation claim is negligence, *see* Section 3(a) *supra*, the same undisputed facts establish that D'Souza Defendants acted with actual malice.

Actual malice requires that the defendant "either knew the allegedly defamatory material was false, or published it with a reckless disregard of whether it was false or not." *Straw v. Chase Revel, Inc*., 813 F.2d 356, 361 (11th Cir. 1987). The record as discussed above establishes that despite overwhelming evidence that Plaintiff was not a "mule," D'Souza Defendants repeatedly continued to portray him as one in publication after publication.

The D'Souza Defendants contend that the SEB investigation and Plaintiff's demand letter fail to demonstrate malice because the SEB investigation did the "irresponsible bare minimum" and they "had no reason to think there was an issue with the content of *2000 Mules*." Opp. at 15-16. They do not even address Plaintiff's cease and desist letter. D'Souza Defendant's out-of-hand dismissal of the SEB investigation and Plaintiff's letter does not inoculate them from liability. To the contrary, it demonstrates their reckless disregard for the truth and their commitment to broadcasting their narrative no matter the cost to innocent individuals who were collateral damage.

In fact, for months *before* the Film was released, the D'Souza Defendants harbored misgivings about whether the surveillance footage actually supported the mules narrative, even as they continued to emphasize the importance of having such footage in the Film. Pl. SMF ¶¶ 202-12, 221; D'Souza SMF Resp. ¶¶ 203-10, 212; SAF ¶ 4. D'Souza Defendants attempt to dismiss this avalanche of evidence

by claiming their concerns were only about the initial batch of videos provided by TTV Defendants. Opp. at 5. But TTV Defendants assert they sat for the interviews that were featured in the Film *before* they provided D'Souza Defendants with the second batch of videos. *Id.* at 2. D'Souza Defendants thus once again plowed ahead with production despite having zero credible evidence to support the foundation of the Film.

Further, the second batch of videos was no more reliable or indicative of illegal behavior than the first. D'Souza Defendants maintain that the videos showed "numerous clips of individuals clearly depositing multiple ballots" – which is perfectly legal in Georgia in certain circumstances – and "repeat drops by the same person." Opp. at 6. But the only example they give is of Plaintiff's supposed "lookalike," which resulted from a desperate search they conducted *only after* the litigation was filed when they were scrambling to come up with a defense. Further, D'Souza Defendants admit this "lookalike" *is not Plaintiff.* In other words, even today, D'Souza Defendants have no evidence whatsoever of the same person voting at multiple drop boxes.

The undisputed facts demonstrate that D'Souza Defendants were committed to publishing their for-profit Film with complete disregard for the truth as to the statements about Plaintiff. This is actual malice.

**4.    D'Souza Defendants are Jointly Liable for TTV Defendants' Statements.**

D'Souza Defendants also assert that they cannot be held liable for TTV Defendants' statements because, they contend, there was no explicit agreement to defame anyone and because TTV Defendants purportedly violated their agreement with the D'Souza Defendants.  *See* Opp. at 25-27.  D'Souza Defendants are wrong on the law and misstate the facts.

Under Georgia law, "[a] conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort."  *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 780 S.E.2d 311, 317 (Ga. Ct. App. 2015); *Drummond v. McKinley*, 15 S.E.2d 535, 535 (Ga. Ct. App. 1941). It is irrelevant if the act of publishing a book, film, or statement is "legal" if the act constitutes a tort, as it does here.

The cases cited by Defendants for this proposition are also distinguishable. *McAndrew v. Lockheed Martin Corp.* held that the intra-corporate conspiracy doctrine did not bar claims of a criminal conspiracy to prevent a witness from testifying in front of a grand jury. 206 F.3d 1031, 1041-42 (11th Cir. 2000). In *Zeal Global Services Private Ltd. v. SunTrust Bank*, the court held that "[a] conspiracy exists when two or more persons in any manner, either positively *or tacitly*, arrive at a mutual understanding as to how they will accomplish an unlawful design." 508

F. Supp. 3d 1303, 1314 (N.D. Ga. 2020) (emphasis added). The undisputed facts here show that the Defendants at least tacitly—if not explicitly—came to a mutual understanding as to how they would promote their false narrative that defamed Plaintiff. The law does not state that Defendants must explicitly agree to commit every act in furtherance of the conspiracy.

"The existence of a conspiracy may 'be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.'" *Metro Atlanta Task Force.*, 780 S.E.2d at 318. The undisputed facts show D'Souza Defendants and TTV Defendants (1) worked in close collaboration to formulate their story about the purported mules; (2) developed their purported "evidence," and published the statements about Plaintiff and others, even though they never possessed evidence that *any* voters depicted in the Film were criminal ballot "mules;" and (3) continue to promote the lies about Plaintiff even after a public government investigation cleared Plaintiff of any wrongdoing. *See, e.g.,* Pl. SMF ¶¶ 66-78, 87, 102-03, 108-10, 113-14, 117-19. All of the Defendants frequently communicated and strategized together to develop, publish, disseminate and promote the 2000 Mules narrative included in the Film and Book. *See id.* ¶¶ 15-31, 37-39, 49-50, 89, 104-07, 136-38. Defendants used each other's research, promoted each other's statements, and worked to create a common narrative. *See Tanisha Systems., Inc., v. Chandra*, No. 1:15-CV-2644-AT, 2015

18

WL 10550967, at *6 (N.D. Ga. Dec. 4, 2015) (2015 WL 10550967, at *6 (finding plaintiff alleged conspiracy to defame where plaintiff alleged defendant was "commenting on and supporting [co-defendant's] allegedly defamatory blog post and second, by acting as a co-conspirator with [co-defendant] in the creation of the blog post by virtue of [their] alleged assistance in collecting" information). Further, they entered into written profit-sharing arrangements for the Film. Pl. SMF ¶ 126.

D'Souza Defendants make much of the licensing agreement between themselves and TTV Defendants, asserting that because TTV Defendants allegedly violated the agreement, there could be no "concert of action" as required by law for joint and several liability. Opp. at 26-29. The existence of this contract between the Defendants cannot insulate D'Souza Defendants where the evidences shows that D'Souza Defendants approved and encouraged TTV Defendants' statements— even those that they now contend violated the agreement. The undisputed facts show that the Charlie Kirk and Tucker Carlson interviews were explicitly for the purpose of promoting the 2000 Mules narrative. Charlie Kirk named 2000 Mules at the start of the interview. Pl. Resp. to D'Souza SMF ¶ 233. Ms. Engelbrecht and Mr. Phillips went on to have an in-depth discussion of "mules," including the footage of Mr. Andrews that is featured in the Film, who they claimed during the interview is one of their profiled 2000 mules. *Id.* Mr. D'Souza also knew of the appearances at the time and approved. Texts show: (1) Ms. Engelbrecht informed

Mr. D'Souza that they taped *The Charlie Kirk Show* and D'Souza approved, and (2) Mr. Phillips informed Mr. D'Souza that Ms. Engelbrecht was going to appear on *The Tucker Carlson Show*, and then discussed how to best leverage the appearance to promote the Film. D'Souza SMF Resp. ¶¶ 96, 105. Further, D'Souza Defendants do not dispute that the Tucker Carlson interview was *reposted* on Dinesh D'Souza's account. *Id.* ¶ 107.

**5.    Plaintiff Suffered Harm as a Result of Defendants' Statements.**

Finally, D'Souza Defendants assert in the "Facts" section of the Opposition that Plaintiff cannot show he suffered harm as a result of the defamatory statements, arguing the threats to Plaintiff were too attenuated to cause harm and calling attention to Plaintiff's wife's social media activity. Opp. at 18-20.  D'Souza Defendants fail to include any legal argument on this point. This is unsurprising, because the undisputed facts instead show that Plaintiff established harm or "special damages," as he is required to do to succeed on a defamation claim under Georgia law. *See* Pl. MSJ at 37.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment should be granted, and judgment should be entered for Plaintiff as to liability on Count III of the First Amended Complaint pursuant to Fed. R. Civ. P. 56.

Respectfully submitted, this 28th day of March, 2025.

/s/Lea Haber Kuck
Lea Haber Kuck*
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
lea.kuck@probonolaw.com

Von A. DuBose, Esq.
Georgia Bar No. 231451
DuBose Trial Law
128 Richardson St. SE
Atlanta, GA 30312
Tel: (404) 720-8111
von@dubosetrial.com

Sara Chimene-Weiss*
PROTECT DEMOCRACY PROJECT
7000 N. 16th Street, Suite 120, #430
Phoenix, AZ 85020
Tel: (202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Rachel E. Goodman*
John Paredes*
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
rachel.goodman@protectdemocracy.org
john.parades@protectdemocracy.org

Jared Fletcher Davidson*
PROTECT DEMOCRACY PROJECT
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Tel: (202) 579-4582
jared.davidson@protectdemocracy.org

21

Jane Bentrott*
Catherine Chen*
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Tel: 202-843-3092
jane.bentrott@protectdemocracy.org
catherine.chen@protectdemocracy.org

Quinn Balliett*
Scott Boisvert*
Sonia Qin*
Danuta Egle*
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-3000
quinn.balliett@probonolaw.com
scott.boisvert@probonolaw.com
sonia.qin@probonolaw.com
danuta.egle@probonolaw.com

Rajiv Madan*
Paige Braddy*
1440 New York Avenue NW
Washington, DC 20005
Tel: (202) 371-7000
raj.madan@probonolaw.com
paige.braddy@probonolaw.com

Vernon Thomas*
320 S. Canal
Chicago, IL 60606-1720
Tel: (312) 407-0648
vernon.thomas@probonolaw.com

*Counsel for Plaintiff*
*Admitted Pro Hac Vice*

## <u>RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that Plaintiff's Reply in Further Support of His Motion for Partial Summary Judgment as to D'Souza Defendants was prepared double-spaced using Times New Roman font (14 point), in compliance with Local Rule 5.1.C.

Dated: March 28, 2025                    <u>*/s/Lea Haber Kuck*</u>
                                         Lea Haber Kuck*
                                         One Manhattan West
                                         New York, NY 10001-8602
                                         Tel: (212) 735-3000
                                         lea.kuck@probonolaw.com

                                         *Counsel for Plaintiff*
                                         *\*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of Plaintiff's Reply in Further Support of His Motion for Partial Summary Judgment as to D'Souza Defendants was this day filed with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all counsel of record.

Dated: March 28, 2025                      /s/ Lea Haber Kuck
                                                         Lea Haber Kuck*
                                                         One Manhattan West
                                                         New York, NY 10001-8602
  Tel: (212) 735-3000
  lea.kuck@probonolaw.com

*Counsel for Plaintiff*
*\*Admitted Pro Hac Vice*